ACCEPTED
03-15-00642-CV
7749114
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/9/2015 3:35:08 PM
JEFFREY D. KYLE
CLERK

## CASE NO. 03-15-00642-CV

## IN THE THIRD COURT OF APPEALS AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/9/2015 3:35:08 PM
JEFFREY D. KYLE
Clerk

## OFFICER DENNIS TUMLINSON, Appellant,

### vs.

## CAROLYN BARNES, Appellee.

## APPELLANT TRAVIS COUNTY SHERIFF'S OFFICE SENIOR CERTIFIED PEACE OFFICER DENNIS TUMLINSON'S BRIEF

Respectfully Submitted,

DAVID ESCAMILLA
County Attorney, Travis County
Travis County Attorney's Office
P.O. Box 1748
Austin, Texas 78767
Telephone:        (512) 854-9513
Facsimile:        (512) 854-4808
andrew.williams@co.travis.tx.us
pat.kelly@co.travis.tx.us

/s/ Andrew M. Williams
Andrew M. Williams
State Bar No. 24068345
Patrick M. Kelly
State Bar No. 11228000
ATTORNEYS FOR APPELLANT

*DATE: November 9, 2015*

## ORAL ARGUMENT NOT REQUESTED

## IDENTITIES OF PARTIES AND COUNSEL

Trial Court Cause Number:    D-1-GN-15-000877

| | |
|---|---|
| Plaintiff: | Carolyn Barnes |
| Attorneys for Plaintiff: | Carolyn Barnes, Pro se |
| | 419 Indian Trail |
| | Leander, Texas 78641 |
| | Barnes.legalguidance@gmail.com |
| | |
| Defendant: | Officer Dennis Tumlinson |
| Attorneys for Defendant: | Andrew Williams |
| | Patrick Kelly |
| | Assistant County Attorneys |
| | P.O. Box 1748 |
| | Austin, Texas 78767 |
| | andrew.williams@co.travis.tx.us |
| | pat.kelly@co.travis.tx.us |

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS ................................................................................ iii

INDEX OF AUTHORITIES ............................................................................ iv

STATEMENT OF THE CASE .......................................................................... vi

ISSUES PRESENTED .................................................................................. vii

STATEMENT OF THE FACTS ........................................................................ 1

SUMMARY OF THE ARGUMENT .................................................................... 4

ARGUMENT AND AUTHORITIES .................................................................... 5

Issue 1: Subject Matter Jurisdiction Precludes Appellee's Claims Against a Government Official Because Appellee Failed to Establish Jurisdiction. ..................................................................................... 6

1. Appellee failed to demonstrate the trial court's jurisdiction and failed to plead a viable cause of action in law or fact based on the facts alleged, regardless of whether they were true. ........................ 6

2. Appellee's claims cannot trigger the injunctive relief sought, since merely requesting a declaratory judgment does not confer jurisdiction where it would not otherwise exist. ............................... 8

Issue 2: Affirmative Defenses of Official Immunity, Statute of Limitations and Res Judicata are Dispositive on the Question of the Court's Jurisdiction, Notwithstanding the Merits of Any Potential Claim ...... 11

1. Official Immunity Precludes Appellee's Claims Because She Failed to Properly Invoke a Waiver of Immunity. .......................... 11

2. Even if Appellee could successfully invoke a waiver of official immunity, the statute of limitations has run on any potential claim. ............................................................................................ 14

3. Res judicata bars this reiteration of Appellee's previous lawsuit. . 15

4. This cause of action is a collateral attack on a criminal judgment. ............................................................................................ 16

CONCLUSION .......................................................................................... 17

PRAYER .................................................................................................. 18

CERTIFICATE OF COMPLIANCE .................................................................. 20

CERTIFICATE OF SERVICE ........................................................................ 20

# INDEX OF AUTHORITIES

*Cases*

*Bagg v. University of Tex. Medical Branch*, 726 S.W.2d 582 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) ...........................................................................12

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000) ................................5, 6

*Carpenter v. Barner*, 797 S.W.2d 99 (Tex. App.—Waco 1990, writ denied) ........12

*City of Arlington v. Randall*, 301 S.W.3d 896, (Tex. App.—Fort Worth Dec. 10, 2009, pet. filed) ......................................................................................................7

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) ...............................12

*Cox v. Klug*, 855 S.W.2d 276 (1993) .......................................................................14

*Dear v. City of Irving*, 902 S.W.2d 731 (Tex. App.—Austin 1995, writ requested) ...............................................................................................................................12

*Financial Acquisition Partners, LP v. Blackwell*, 440 F. 3d 278 (5th Cir. 2006) .....1

*Ford v. Landmark Graphics Corporation*, 875 S.W.2d 33 (Tex. App.— Texarkana 1994, no writ) ......................................................................................................10

*Hailey v. Glaser*, No. 06-12-00065-CV, 2012 Tex. App. LEXIS 9657, at *3 (Tex. App.—Texarkana Nov. 21, 2012, no pet. h.) ........................................................8

*Hinojosa v. Tarrant County*, 355 S.W.3d 812 (Tex. App.—Amarillo 2011, no pet.) ...............................................................................................................................11

*Lazarides v. Farris*, 367 S.W.3d 788 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ............................................................................................................................9

*Rylander v. Caldwell,* 23 S.W.3d 132 (Tex. App.—Austin 2000, no pet.) ...............5

*Test Masters Educational Services v. Singh, et al.* 428 F. 3d 559 (5th Cir. 2005)..16

*Tex. A & M Univ. Sys. v. Luxemburg*, 93 S.W.3d 410 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) .......................................................................................7

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W. 3d 217 (Tex. 2004) ..............5

*Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002)11

*Tex. Natural Res. Conservation Comm'n v. Lakeshore Util*. Co., 164 S.W.3d 368 (Tex. 2005) ..........................................................................................................11

*Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246 (Tex. 2002) ................... 6, 10, 11

*Valenzuela v. Aquino*, 853 S.W.2d 512 (Tex. 1993) ...............................................10

*Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W. 3d 85 (Tex.App – Houston [1st Dist.] 2003, pet. denied)..................................................................................14

*Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374 (Tex. App.—Dallas 2009, no pet.)..................................................................................................................9

## Statutes

Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) ........................................ vi, 5

Tex. Civ. Prac. & Rem. Code §101.026 ......................................... 12, 13

Tex. Civ. Prac. & Rem. Code §101.101 .............................................14

Tex. Civ. Prac. and Rem. Code §16.003................................................14

Texas Code of Criminal Procedure Article 46B .......................... 2, 16, 17

## Rules

Fed. R. Civ. P. 41(b) ...............................................................16

Tex. R. App. P. 28.1 ..................................................................... vi

Tex. R. App. P. 9.4........................................................................20

Tex. R. App. P. 9.4(i)(3) ...............................................................20

Tex. R. Civ. P. 683.......................................................................9

## STATEMENT OF THE CASE

Nature of the Case: Carolyn Barnes ("Appellee") sued Dennis Tumlinson, Travis County Sheriff's Office Senior Certified Peace Officer ("Appellant") and five other Travis County employees, alleging violations of civil and constitutional rights under the Texas Constitution, a "continuing tort", global conspiracy, assault and aggravated perjury, seeking monetary damages, injunctive relief and a declaratory judgment. Travis County Defendants moved the trial court to dismiss the cause of action for lack of subject matter jurisdiction, because Barnes failed to establish a waiver of immunity. Travis County Defendants filed an amended plea to the jurisdiction and a motion to dismiss pursuant to Chapter 13, because Barnes filed an impermissible retrospective ultra vires action, filed outside the statute of limitations and re-plead a matter already foreclosed by res judicata. The trial court granted the Chapter 13 Motion to Dismiss and Amended Plea to the Jurisdiction with respect to all but one Travis County Defendant, Officer Tumlinson. Appellant files this accelerated interlocutory appeal under Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) and Tex. R. App. P. 28.1.

The Trial Court: The Honorable Orlinda Naranjo in the 419th Judicial District Court of Travis County, Texas heard the Chapter 13 Motion to Dismiss and Amended Plea to the Jurisdiction on behalf of Appellant.

Trial Court's Disposition: The trial court denied Appellant's Chapter 13 Motion to Dismiss and Amended Plea to the Jurisdiction with respect to Officer Tumlinson.

Parties at Trial: Plaintiff: Carolyn Barnes
Defendant: Dennis Tumlinson

# ISSUES PRESENTED

Issue 1:    Subject Matter Jurisdiction Precludes Appellee's Claims Against a Government Official Because Appellee Failed to Establish Jurisdiction.

Issue 2:    Affirmative Defenses of Official Immunity, Statute of Limitations and Res Judicata are Dispositive on the Question of the Court's Jurisdiction, Notwithstanding the Merits of Any Potential Claim.

## STATEMENT OF THE FACTS

On January 8, 2010, Carolyn Barnes ("Appellee[1]" and/or "Barnes") was arrested by Travis County Sheriff's Office Senior Certified Peace Officer Dennis Tumlinson ("Officer Tumlinson") for assaulting Officer Tumlinson while going through the security screening process at the Travis County Criminal Justice Complex. Barnes was charged with Assault on a Public Servant, Cause Number D-1-DC-10-200140, *State of Texas vs. Carolyn Machalec Barnes*, 147th Judicial District Court, Travis County, Texas. [2]

While out on personal bond, on May 11, 2010, Barnes was arrested for shooting at a United States Census Worker. She was charged with the offense of Aggravated Assault with a Deadly Weapon by the Williamson County Sheriff's Office deputies, Cause Number 10-663-K368, *State of Texas vs. Carolyn M. Barnes*, 368th Judicial District Court, Williamson County, Texas.

Travis County Cause Number D-1-DC-10-200140 was dismissed on July 12, 2010. The case was refiled on July 12, 2010, as an Interference with the Duties of a Public Servant in *State of Texas vs. Carolyn Barnes*, Cause Number C-1-CR-10-401111, County Court at Law Number 3, Travis County, Texas. Barnes was found

---

[1] Plaintiffs in the District Court Cause Number D-1-GN-15-000877 are listed as Carolyn Barnes, individually and on behalf of her children.

[2] A District Court may rely on public documents in deciding a Motion to Dismiss without converting it into a motion for summary judgment. *Financial Acquisition Partners, LP v. Blackwell*, 440 F. 3d 278, 286 (5th Cir. 2006).

incompetent to stand trial and was committed to the Kerrville State Hospital for mental health services. Cause Number C-1-CR-10-401111 was dismissed on October 23, 2012, pursuant to Texas Code of Criminal Procedure Article 46B.009 which provides time credits towards sentencing for persons who are confined in a mental health facility.

A jury found Barnes guilty on June 11, 2013, in Williamson County Cause Number 10-663-K368, and she was sentenced to three years in the Texas Department of Criminal Justice Institutional Division. Barnes has filed numerous mandamus writs, habeas corpus applications and/or writs of prohibition regarding Cause Number 10-663-K368.

Barnes filed suit on January 11, 2011, against media individuals as well as Officer Tumlinson in Cause Number D-1-GN-11-000106, *Carolyn Barnes vs. Austin American Statesman, et al.*, in the 353rd Judicial District Court, Travis County, Texas. In the 2011 civil lawsuit, Barnes alleged the defendants in the 2011 civil lawsuit engaged in defamation per se and re-publication of libel, slander and defamation, among many other allegations. The matter was ultimately dismissed for want of prosecution on August 20, 2013.

On January 9, 2012, Barnes filed a lawsuit in Federal District Court, Cause Number 1:12-CV-00028LY. In that cause, she sued many of the same individuals that she has sued in the instant case including Officer Tumlinson. Her claims were

dismissed with prejudice for failure to comply with a court order to clarify and shorten her pleadings. March 18, 2014, a Final Order was issued in Federal District Court on March 18, 2014, barring Plaintiff from further filings in that Cause of Action. On March 17, 2015, in appeal number 14-50350, The Fifth Circuit affirmed the District Court's order in dismissing her case in 1:12-CV-00028-LY.

On March 6, 2015, Barnes filed the case at bar against approximately 79 individuals, which included the Appellant. Barnes alleged gross abuses of power, acts of violence, fraud on the court, obstruction of justice, usurpation of power, global conspiracy, violations of public trust and unwarranted impositions of cruel and unusual punishment by all named Defendants. Barnes requested that the court enter declaratory judgment and injunctive relief based on actions taken pursuant to the criminal arrests and subsequent prosecution in the above-referenced criminal cases.

One of her claims was against a federal worker. For that reason, the Federal Defendant filed Notice of Removal in State Court on April 17, 2015, and the case was removed to Federal District Court. However, Officer Tumlinson, along with five other Travis County Defendants, having not yet answered, did not receive this notice when filed.

On April 20, 2015, Officer Tumlinson, along with five other Travis County Defendants, filed their Rule 91a Motion to Dismiss, Plea to the Jurisdiction, and in the Alternative, Original Answer to Plaintiff's Original Petition. Barnes was properly

noticed and served with that filing. Once Officer Tumlinson received notice of the removal and out of an abundance of caution, Officer Tumlinson, along with five other Travis County Defendants, filed a Rule 12(b)(6) Motion to Dismiss in Federal Court on April 24, 2015. Federal Court entered an order on June 4, 2015, severing all defendants who are not United States Employees and remanding those claims to state court.

On July 9, 2015, Officer Tumlinson, along with five other Travis County Defendants, filed their Amended Rule 91(a) Motion to Dismiss, Plea to the Jurisdiction and Amended Answer to incorporate 12(b)(6) motion into state court pleadings. On July 23, 2015, Officer Tumlinson, along with five other Travis County Defendants, filed their Chapter 13 Motion to Dismiss. On September 9, 2015, the 419th Judicial District Court, Travis County, Texas, heard the Travis County Defendant's Chapter 13 Motion to Dismiss and their Amended Plea to the Jurisdiction. The motion was granted with respect to all other Travis County Defendants and Denied with respect to Officer Tumlinson.

## SUMMARY OF THE ARGUMENT

Carolyn Barnes sued approximately 79 defendants in Travis County alleging conspiracy, violation of civil and constitutional rights under the Texas Constitution, assault on the job by an officer and aggravated perjury, allegedly arising in part out of her 2010 arrest. Officer Tumlinson, along with five other

Travis County Defendants, moved the trial court to dismiss the case for lack of jurisdiction, due to a variety of defenses. The trial court granted the Chapter 13 Motion to Dismiss and Amended Plea to the Jurisdiction with respect to all Travis County Defendants except the arresting Travis County Sheriff's Officer, Tumlinson. While typically only a final adjudication on the merits can be appealed, interlocutory appeals are permitted in the case of a plea to the jurisdiction. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). A plea to the jurisdiction, without regard to the merits of the case, would properly be extended to include Officer Tumlinson, as well. Officer Tumlinson retains immunity from suit, since the trial court lacks subject matter jurisdiction and due to the affirmative defenses of immunity, statute of limitations and res judicata.

## ARGUMENT AND AUTHORITIES

**Standard of Review**

The trial court lacked subject matter jurisdiction over Barnes' claims, because the suit was not permitted by law. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W. 3d 217, 226 (Tex. 2004). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Rylander v. Caldwell,* 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.). The purpose of a plea to the jurisdiction is to dismiss a cause of action without regard to whether the claim has merit. *Bland Indep. Sch. Dist. v. Blue*, 34

S.W.3d 547, 554 (Tex. 2000). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Id.* It is plaintiff's burden to plead a clear and unambiguous waiver of immunity. *Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246 (Tex. 2002). Because subject matter jurisdiction presents a question of law, the appellate court reviews the district court's decision de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Further, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Independent School Dist.*, 34 S.W.3d at 555.

**Issue 1:    Subject Matter Jurisdiction Precludes Appellee's Claims Against a Government Official Because Appellee Failed to Establish Jurisdiction.**

**1.    Appellee failed to demonstrate the trial court's jurisdiction and failed to plead a viable cause of action in law or fact based on the facts alleged, regardless of whether they were true.**

In a plea to the jurisdiction, it is plaintiff's burden to plead a clear and unambiguous waiver of immunity. *Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246 (Tex. 2002). Appellee did not establish a waiver of immunity, as is discussed in more depth below, nor did she establish jurisdiction based on the facts she

alleged. Regardless of the merits of Appellee's case, the trial court lacks jurisdiction over this matter.

Appellee's attempt to cast the suit as one of a personal nature fails to circumvent the reality of the suit, which is filed against Appellant in his official capacity. While immunity is further discussed in the affirmative defenses section of this brief and while a plea to the jurisdiction does not depend on the truth or falsity of the allegations, Appellee did bear the burden of establishing that, if allegations were true, there would be a viable cause of action. Appellee, however, did not invoke a waiver of immunity and did not establish jurisdiction.

Appellee's claims should have been dismissed because her legal theories are indisputably meritless. Specifically, she asserts her claims for declaratory, injunctive and monetary relief arise out of violations of the Texas Constitution.

However, under the Texas Supreme Court's decision in *City of Beaumont v. Bouillion* and its progeny, no private cause of action exists against a governmental entity or its officials for money damages relating to alleged violations of Texas constitutional rights. *See City of Arlington v. Randall*, 301 S.W.3d 896 (Tex. App.—Fort Worth Dec. 10, 2009, pet. filed) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995), and holding that there is no private right of action for damages arising from unconstitutional conduct under Texas constitution's free speech and free assembly clauses); *Tex. A & M Univ. Sys. v.*

*Luxemburg*, 93 S.W.3d 410, 425 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (op. on reh'g) (holding *Bouillion* applies to bar private right of action for damages arising from other alleged Texas constitutional violations); *Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 468-69, 471 (Tex. App.—Fort Worth 1997, writ denied) (op. on reh'g) (holding *Bouillion* applies to alleged Texas constitutional due process provision violations by individual public officials and governmental entities).

Accordingly, Barnes' claims for damages, which are based solely on alleged violations of her Texas constitutional rights, are frivolous and lacking an arguable basis in law. Moreover, because these claims rely on an indisputably meritless legal theory, Barnes cannot remedy this deficiency by amending her pleadings. Rather, the matter is jurisdictionally barred.

Appellee has failed to assert a cause of action or plead facts necessary to overcome the immunities to which Appellant is entitled. Thus, Appellee's claims against Officer Tumlinson should be dismissed.

**2.      Appellee's claims cannot trigger the injunctive relief sought, since merely requesting a declaratory judgment does not confer jurisdiction where it would not otherwise exist.**

To the extent that Barnes seeks a general injunction requiring compliance with the law, such an injunction cannot be granted. *See Hailey v. Glaser*, No. 06-12-00065-CV, 2012 Tex. App. LEXIS 9657, at *3 (Tex. App.—Texarkana Nov.

21, 2012, no pet. h.). An injunction must be definite, clear and precise; it must inform the defendant of the acts restrained without calling on the defendant to make inferences. Tex. R. Civ. P. 683; *Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.). An injunction is not available to "prevent commission of wrongs not imminently threatened". *Webb*, 298 S.W.3d at 384. Barnes has not specified any imminently threatened wrong; her allegations simply catalogue past events[3].

Moreover, injunctive relief is not available unless Barnes establishes that she would have no adequate remedy at law. *See Lazarides v. Farris*, 367 S.W.3d 788, 803 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (party seeking injunctive relief preventing alleged ultra vires acts must plead and prove, among other things, existence of imminent harm, irreparable injury and absence of adequate remedy at law). Here, if in the future Appellant fails to comply with duties in connection with any future criminal charges against Barnes, Barnes may bring the matter to the attention of the judge presiding over the proceeding. *Enriquez v. Rodriguez-Mendoza*, 2013 Tex. App. LEXIS 1039, *7-8 (Tex. App.—Austin Feb. 1, 2013).

Appellee is not entitled to injunctive relief, as she has not pleaded a cause of action against the Appellant or proven that he has engaged in a wrongful act. Appellee pleads in general terms that a conspiracy exists and alleges gross abuses

---

[3] Barnes currently has an adequate remedy at law for judicial review of her Williamson County conviction, through her pending appeal, Cause Number 03-13-00434-CR.

of power, acts of violence, fraud on the court, obstruction of justice, usurpation of power, violations of public trust and unwarranted impositions of cruel and unusual punishment by Appellant and the other originally named Defendants. However, she failed to show how Appellant committed a wrongful act.

Without a cause of action or a wrongful act, an applicant cannot prove a probable right to recovery. *Ford v. Landmark Graphics Corporation*, 875 S.W.2d 33, 34-35 (Tex. App.—Texarkana 1994, no writ). These remedies are available only if liability is established under a cause of action. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n.2 (Tex. 1993) ("No final relief, including a permanent injunction, can be granted in a contested case without a determination of legal liability . . . ."); *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied) (noting that "[a] permanent injunction is not a cause of action but an equitable remedy," and that "[t]o obtain an injunction a party must first assert a cause of action"). The Petition failed to state any theory or basis for this recovery. Appellee fails to identify a cause of action for which she may recover. Appellee must plead and prove a clear and unambiguous waiver of sovereign immunity to assert a viable cause of action. *Travis County v. Pelzel*, 77 S.W.3d 246 (Tex. 2002). Having failed to do so, on the face of the pleadings, Appellee does not have a probable right to recovery. Because her case is

frivolous[4] and there is no prospective basis for her claims, there is no room to consider injunctive or declaratory relief. Thus, those claims for relief are jurisdictionally barred, as well.

**Issue 2:** **Affirmative Defenses of Official Immunity, Statute of Limitations and Res Judicata are Dispositive on the Question of the Court's Jurisdiction, Notwithstanding the Merits of Any Potential Claim.**

### 1. Official Immunity Precludes Appellee's Claims Because She Failed to Properly Invoke a Waiver of Immunity.

The burden was on Appellee to plead a clear and unambiguous waiver of immunity. *Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246 (Tex. 2002). It is well established in Texas that only the legislature can waive governmental immunity and it must do so by clear and unambiguous language. *Hinojosa v. Tarrant County*, 355 S.W.3d 812, 818-819 (Tex. App.—Amarillo 2011, no pet.). "This determination is singularly that of the legislature." *Id*. citing *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, at 857 (Tex. 2002) and *Tex. Natural Res. Conservation Comm'n v. Lakeshore Util*. Co., 164 S.W.3d 368, 377 (Tex. 2005). Here, there was no legislative waiver of immunity, nor did Appellee try to invoke one.

A government agent who does not violate clearly established law is entitled to sovereign/official immunity. *City of Lancaster v. Chambers*, 883 S.W.2d 650,

---

[4] On November 5, 2015, in a related lawsuit that Barnes had filed against the Austin American Statesman, KXAN TV and other media defendants arising out of the same episodes contained here, Barnes' case was dismissed and she was declared to be a vexatious litigant.

656 (Tex. 1994). Appellant asserts that in connection with the incident which forms the basis of this lawsuit, he was performing discretionary duties within the course and scope of his employment and is therefore immune from liability by virtue of his official immunity (I C.R. at 358). *See id.* at 653. Appellant asserts that official immunity acts as an affirmative bar to Appellee's recovery. *See* Tex. Civ. Prac. & Rem. Code §101.026.

Furthermore, official immunity is effective against all claims, regardless of whether they are lodged against the individual possessing it in his official or personal capacity. *See Dear v. City of Irving*, 902 S.W.2d 731, 737 (Tex. App.—Austin 1995, writ requested); *Carpenter v. Barner*, 797 S.W.2d 99, 101 (Tex. App.—Waco 1990, writ denied); *Bagg v. University of Tex. Medical Branch*, 726 S.W.2d 582, 586 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

Appellee's claims for relief are affirmatively barred by the doctrine of sovereign immunity. The Texas Tort Claims Act excludes recovery for those acts that are the product of discretionary powers and insomuch as a suit against a public official in his official capacity is a suit against the governmental entity. Travis County is a political subdivision of the State of Texas and enjoys sovereign immunity, both from suit and from liability, except insofar as the Texas Legislature has provided a limited waiver of its sovereign immunity by way of the Texas Tort Claims Act. Appellant hereby affirmatively pleads and asserts a claim to and defense

of sovereign immunity, including, but not limited to, the exemptions, exceptions and limitations of the Texas Tort Claims Act.

At all times relevant to this cause of action, Appellant acted in his official capacity as an employee of Travis County, Texas, and with the good faith belief that his actions were proper under the Constitution and laws of the state (I C.R. at 358). Further, a government agent who does not violate clearly established law is entitled to official immunity. Appellant asserts that in connection with the incident which forms the basis of this lawsuit, Travis County's employee Officer Tumlinson was performing discretionary duties within the course and scope of his employment, in good faith and is therefore immune from liability by virtue of his official immunity. Appellant asserts that his official immunity acts as an affirmative bar to Appellee's recovery. *See also* Tex. Civ. Prac. & Rem. Code §101.026.

Appellee failed to perform all of the conditions precedent to the filing of this lawsuit under the Texas Tort Claims Act. She failed to provide the statutorily required notice under §101.101 of the Texas Tort Claims Act. Failure of a Claimant under the Texas Tort Claims Act to give requisite timely notice of claim perpetually bars claimant's action and is a plea in bar, the purpose of which is to forever preclude the cause of action pleaded, even if all of plaintiffs' allegations are proven as true. *See Cox v. Klug*, 855 S.W.2d 276 (1993). Tex. Civ. Prac. & Rem. Code §101.101.

**2.** **Even if Appellee could successfully invoke a waiver of official immunity, the statute of limitations has run on any potential claim.**

All claims against Officer Tumlinson arise out of the January 8, 2010 arrest and subsequent prosecution of Appellee Barnes, therefore the statute of limitations has run on any potential claim, pursuant to Tex. Civ. Prac. and Rem. Code §16.003. If the plaintiffs' suit is not permitted by law, the court by nature lacks jurisdiction to hear it. *See Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W. 3d 85, 96-97 (Tex.App – Houston [1st Dist.] 2003, pet. denied). Appellee complains about actions that occurred during Barnes' January 2010 arrest and subsequent prosecution in Travis County as well as Barnes' May 2010 arrest and subsequent prosecution in Williamson County. All Travis County criminal charges against Appellant were dismissed October 23, 2012. Appellant has failed to state a claim that would fall within the statute of limitations. The statute of limitations runs from the time of the act itself, which was in 2010. This lawsuit was filed on March 6, 2015, well beyond the expiration of the statute of limitations.

Thus, acts alleged in relation to this claim are barred by limitations, since they occurred more than two years before Appellee filed this suit. Thus, the suit cannot be allowed, regardless of its merits.

### 3. Res judicata bars this reiteration of Appellee's previous lawsuit.

Appellee previously filed suit against Officer Tumlinson in Federal Court, alleging claims arising out of the same set of facts. Thus, this suit is barred by the affirmative defense of res judicata. The case at bar is very similar to Barnes' previous case that was dismissed by the United States District Court, Western District of Texas, Cause Number 1:12-CV-00028-LY. The Travis County Defendants sued in the previous case were the same ones sued in this case, although Officer Tumlinson is the only one for whom the case is ongoing. The facts are essentially the same in both cases. For example, in the current case, Barnes complains about an alleged "conspiracy that began in 2010 in Travis County and has continued unabated..." (I C.R. at 5). Likewise in the Third Amended Complaint from her previous lawsuit, 1:12-CV-00028-LY, she alleges: "[her constitutional rights] were clearly established in 2010" and "the conspiracy is continuing and ongoing." *See* Pl.'s Third Am. Comp. at 3-4, ¶2. Moreover, Appellant stated in a recent hearing that the allegations were of, "a continuing tort that started in May of 2010 with the same core men" (I R.R. at 53:22-24).

The test for whether res judicata applies has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior matter was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Test Masters Educational Services v. Singh, et al.* 428 F. 3d 559, 571 (5th Cir. 2005). Here all of these elements are met: Appellant, like the other Travis County Defendants named in the case at bar as originally filed, were all named in the previous federal lawsuit. Certainly the United States District Court Western District of Texas is a Court of Competent Jurisdiction. Under the black letter law of Fed. R. Civ. P. 41(b), the prior action was concluded by a judgment on the merits because a dismissal under that Rule, "operates as an adjudication on the merits." To determine the fourth element, whether two suits involve the same claim or cause of action for res judicata purposes, courts use a transactional test "under which a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction or series of connected transactions out of which the original action arose." *Id*. at 571.

As described above, both the case at bar and 1:12-CV-00028-LY deal with allegations of conspiracy between Travis County and Williamson County officials with an alleged intent to harm Ms. Barnes. For these reasons, res judicata applies and thus the trial court does not have jurisdiction over it.

**4.     This cause of action is a collateral attack on a criminal judgment.**

On or about October 23, 2012, the Travis County Court at Law Number 3 dismissed Cause Number C-1-CR-10-401111, *State of Texas vs. Carolyn Barnes*, pursuant to Texas Code of Criminal Procedure Article 46B.009. On or about June

11, 2013, a jury found Barnes guilty in Williamson County Cause Number 10-663-K368. As a result of being found guilty, Ms. Barnes was sentenced to three years in the Texas Department of Criminal Justice Institutional Division (TDCJ-ID) on June 11, 2013. Barnes appealed this conviction and said appeal is currently pending with the Texas Third Court of Appeals, Case Number 03-13-00434-CR. Further, Barnes has filed several Writs of Mandamus, Habeas Corpus Applications and a Writ of Prohibition with the appeals courts and the Texas Supreme Court, all of which have been denied.

Barnes has failed to plead any discernible cause of action against Officer Tumlinson. Rather, it appears from Appellee's pleading that she is attempting to have the trial court enter a declaratory judgment that would contradict the findings of the Williamson County Jury in June 11, 2013, in Cause Number 10-663-K368. Further, Appellee is attempting to have the trial court enter a declaratory judgment that would contradict the Travis County Court at Law Number 3's court order for a Texas Code of Criminal Procedure Article 46B commitment.

By asserting these claims in a civil court, Appellee is seeking to undo the criminal judgment rendered against her. As such, the claim is a collateral attack upon the judgment over which the trial court has no jurisdiction.

///

## CONCLUSION

The trial court erred in not granting the Appellant's Chapter 13 Motion to Dismiss and/or Amended Plea to the Jurisdiction. It is a matter of law that a cause of action does not exist for Barnes' allegations under the procedural posture in which she presented it. There are numerous incurable defects on the face of the pleadings that foreclose the trial court's jurisdiction in this matter. Even if there were a basis for overcoming Appellant's immunity, Appellee failed to invoke it. Furthermore, if she had managed to properly invoke a waiver of immunity, the statute of limitations would still prevent the claim. Independently of those barricades, res judicata would independently foreclose the action. Moreover, the injunctive relief Appellee seeks is not available under these retrospective circumstances. Appellee has no viable claim, regardless of the truth or falsity of her allegations.

## PRAYER

Based on all of the above, Appellant requests the Court reverse the Trial Court's order and render judgment in favor of Travis County Sheriff's Office Senior Certified Peace Officer Dennis Tumlinson, dismissing all claims for lack of subject matter jurisdiction. Appellant seeks all further relief to which he may be justly entitled.

339216-1   214.1281                    18

Respectfully Submitted,

DAVID ESCAMILLA
County Attorney, Travis County
Travis County Attorney's Office
P.O. Box 1748
Austin, Texas 78767
Telephone:   (512) 854-9513
Facsimile:    (512) 854-4808

By:   /s/ Andrew M. Williams
Andrew M. Williams
State Bar No. 24068345
Patrick M. Kelly
State Bar No. 11228000
**ATTORNEYS FOR APPELLANT**
**DENNIS TUMLINSON**

## CERTIFICATE OF COMPLIANCE

By my signature below, pursuant to Tex. R. App. P. 9.4(i)(3), I hereby certify that the foregoing Appellant Travis County Sheriff's Office Senior Certified Peace Officer Dennis Tumlinson's Brief contains 4437 words and is compliant as to form pursuant to Tex. R. App. P. 9.4.

/s/ Andrew M. Williams
Andrew M. Williams
Patrick M. Kelly
Assistant County Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Appellant Travis County Sheriff's Office Senior Certified Peace Officer Dennis Tumlinson's Brief** was served in accordance with the Texas Rules of Appellate Procedure by electronic filing and electronic service on this 9th day of November, 2015, as follows:

*Via Electronic Filing*
Jeffrey D. Kyle, Clerk
Court of Appeals
Third District of Texas
P.O. Box 12547
Austin, Texas 78711

*Via Electronic Service*
Carolyn Barnes
419 Indian Trail
Leander, TX 78641
Barnes.legalguidance@gmail.com

/s/ Andrew M. Williams
Andrew M. Williams
Patrick M. Kelly
Assistant County Attorneys

**IN THE THIRD COURT OF APPEALS
AT AUSTIN**

**OFFICER DENNIS TUMLINSON,**
Appellant,

**vs.**

**CAROLYN BARNES,**
Appellee.

**APPELLANT'S APPENDIX**

**LIST OF DOCUMENTS**

1.     Plaintiff's Third Amended Original Complaint (Cause No. 1:CV-00028-LY) ................................................................................................ TAB A

2.     Order (Cause No. 1:12-CV-00028-LY) ...............................................TAB B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

JUL 1 6 2012

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY CLERK

| | |
|---|---|
| CAROLYN BARNES § | |
| And Her Children § | |
|    Plaintiffs § | |
| § | |
| V. § | |
| § | |
| DENNIS G. TUMLINSON, § | |
| GREG HAMILTON, TRAVIS COUNTY § | |
| SHERIFF DEPARTMENT, BILL SWAIM, § | |
| DAVID ESCAMILLA, IRMA GUERRERO, § | CIVIL ACTION # A-12-CA-028 |
| ALLISON SAENZ, RON MORGAN, § | 42 USC § 1983 |
| COTTON, ROBERT LERMA, THREE § | 42 USC § 1985 (2), § 1988 |
| UNIDENTIFIED DEPUTIES, DEBORAH § | 18 USC § 241, 242 |
| KLEKAR, TRAVIS COUNTY, TEXAS § | 18 USC § 1961-1968 |
| AUSTIN AMERICAN STATESMAN, § | 18 USC § 1512 |
| AUSTIN LEGAL BLOG, ZACH RYALL, § | 18 USC § 1513 |
| ONE THAT KNOWS, ANOTHER THAT § | 18 USC § 1343 |
| KNOWS, LIBERALS R. CLUELESS, § | 18 USC § 1957 |
| NATIVESON, HURST, ANONYMOUS, § | Tex. CCP 46B |
| ERIN CARGILE, KXAN, § | Tex. Health & Safety Code, |
| NOELLE NEWTON, JIM BERGAMO, § | Title 7, Subtitle C, |
| KVUE-TV, § | Chapters 571, 574 |
| KEYE, § | |
| JAMES WILSON, WILLIAMSON § | JURY TRIAL |
| COUNTY SHERIFF DEPARTMENT, § | |
| KATHLEEN GITTEL, § | |
| HAROLD POPPA, § | |
| MICHAEL SCHEFFLER, § | |
| D. "DIANE" HERNANDEZ, § | |
| NICK RICHTER, § | |
| RUSSELL TRAVIS, § | |
| PAUL BOGAN, JOHN FOSTER, § | |
| ROBERT NEWELL, § | |
| PETE HUGHEY, § | |
| DOUG WAGGONER, § | |
| BELINDA BARTZ, § | |
| JEREME BRINKMANN, § | |
| RICHARD DE LA VEGA, § | |
| JOHN FOSTER, § | |
| DALE RYE, DEE HOBBS, § | |
| SUZANNE BROOKS, § | |
| JOHN BRADLEY, TRAVIS MCDONALD, § | |

Tab A

| | |
|---|---|
| **ROBERT MCCABE, ALAN SCHREIBER,** | § |
| **KEN ANDERSON,** | § |
| **BURT CARNES,** | § |
| **DOUG SHAVER,** | § |
| **MARTY GRIFFITH,** | § |
| **JOHN CLIFTON,** | § |
| **DUSTY HUMES,** | § |
| **DAVID RUPPART,** | § |
| **WILLIAMSON COUNTY, TEXAS** | § |
|    **Defendants** | § |

### PLAINTIFF'S THIRD AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Plaintiffs, Carolyn Barnes, (hereinafter referred to as "BARNES"), and her children, and files this the Third Amended Original Complaint, and brings this action against said Defendants, jointly and severally, because they have willfully subjected Plaintiffs to the deprivation of rights, privileges, or immunities as guaranteed by the Constitution and laws of the United States of America and the State of Texas, and in support thereof would show the following:

### I. VENUE

1.      Venue is appropriate in the Western District of Texas, Austin Division because the plaintiffs and the named defendants reside or conduct business in the Western District.

2.      Venue is also proper in the Western District of Texas, Austin Division, in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the Western District of Texas.

3.      Venue is proper in the Western District of Texas, Austin Division, as this is the district where the claim arose in accordance to 29 U.S.C. § 1391(b).

## II. JURISDICTION

1.      Jurisdiction over these claims and causes of action is appropriate in federal district court pursuant to 18 U.S.C. §§1961 et seq. and 42 U.S.C. §1983.  This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights) and (4).  This court also has supplemental or pendent jurisdiction pursuant to 28 U.S.C.S.  § 1367 to hear and adjudicate the state claims that will be set forth in this complaint.   Defendants have violated 42 U.S.C. Sections 1983 and 1985(2), as well as 18 U.S.C. Sections 241, 242, 1961-68, 1512, 1513, 1343, 1957.

2.      BARNES' deprivation of liberty, familial relationships, property, personal effects, and reputation were legally cognizable results and reasonably foreseeable consequences of and from the numerous and compounding violations of her right to be left alone[1] and other constitutional violations set forth herein, which were clearly established rights in 2010, and at all relevant times prior and subsequent thereto.  All of the constitutional rights that were violated by defendants were clearly established and well-recognized at the time of each of the violations.  Since all defendants (except the media participants) are employees, agents, representatives, or attorneys of the government, they enjoy qualified immunity for their actions and misconduct.  Qualified immunity protects a public official from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The conduct of defendants does not fall within the protective parameters of qualified immunity.  Further the custom, policy, practice, and habit of the TRAVIS

---

[1] "(The right to privacy is a person's) right to be left alone by the government... the right most valued by civilized men." - Former Supreme Court Justice Louis Brandeis

COUNTY Sheriff's Department (TCSD) of TRAVIS COUNTY, Texas, and the WILLIAMSON COUNTY Sheriff's Department (WCSD) of WILLIAMSON COUNTY, Texas amounted to a deliberate indifference and conscious disregard towards the rights, safety, and welfare of the citizens, and that deliberate indifference and conscious disregard were the moving forces behind the constitutional violations and the conspiracy to violate the constitutional rights of BARNES and her children.   The conspiracy is continuing and on-going and the harm, injury, and damage continue to compound and accrue.

## JUDICIAL NOTICE

1.      BARNES requests that this court take judicial notice of the entire contents of the court's file in Cause No. 10-663-K368 pending in WILLIAMSON COUNTY District Court, including the probable cause affidavit filed by BARNES and the motion for a full *Franks* hearing and the Memorandum to the file making the Tex. Const. Art. I, § 10 election to appear as counsel and with co-counsel, and the entire contents of the Arnold Garza case in Cause No. 09-08516-1 in Williamson County Court No. 1 and in Case No. 03-10-00307-CR in the Third Court of Appeals, which are all incorporated herein by reference the same as if set forth at length.

2.      BARNES requests that this court take judicial notice of the entire contents of the court's file in Case number 03-12-00073-CV and Case number 03-11-00647-CR filed in the Third Court of Appeals; and Cause No. WR-75,685-02 filed in the Texas Court of Criminal Appeals, which are incorporated herein by reference the same as if set forth at length.

3.      BARNES requests that this court take judicial notice of the entire contents of the court's file in USDC No. 1:11-CV-414-LY and USDC No. Cause No. A-11-CR-237-LY filed in this court and Case number 11-50764 filed in the Fifth Circuit, which are incorporated herein by reference the same as if set forth at length.

4.      BARNES requests that this court take judicial notice of the entire contents of the court's file in Cause No. 99-360-C368—(CARNES recused himself and brought in "visiting judge" Don Humble to throw the case—the WCSD, WCSD sheriff, and RYE were involved), filed in Williamson County District Court, and Case No. 01-00159-CV filed in the Third Court of Appeals, which are incorporated herein by reference the same as if set forth at length.

5.      BARNES requests that this court take judicial notice of the entire contents of the court's file in USDC No. A-01-CV-547-H filed in this court and Case No. 02-50937 in the U.S. Court of Appeals for the Fifth Circuit, which is incorporated herein by reference the same as if set forth at length.

### III. PARTIES

1.      Plaintiff, Carolyn Barnes, (hereinafter referred to individually as "BARNES") is a resident of WILLIAMSON COUNTY, Texas and is *sui juris,* individually and on behalf of her children collectively referred to herein as Plaintiffs.

2.      Defendant, DENNIS G. TUMLINSON (hereinafter referred to as "TUMLINSON") is a resident of TRAVIS COUNTY, Texas and can be served with citation and copy of this original petition at his place of employment with the TRAVIS COUNTY Sheriff's Department, assigned to "security" at the Heman Marion Sweatt TRAVIS COUNTY Courthouse, 1000 Guadalupe, Austin, TX 78701.  Each of the acts

5

complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the TRAVIS COUNTY Sheriff's Department, TRAVIS COUNTY, Texas.  TUMLINSON is being sued in his personal and official capacity.

3.      Defendant, GREG HAMILTON, (hereinafter referred to as "HAMILTON") is a resident of TRAVIS COUNTY, Texas, is the Sheriff of TRAVIS COUNTY, and may be served with citation in this cause by serving him at his place of employment with the TRAVIS COUNTY Sheriff's Office at the Ruiz Building, 5555 Airport Blvd., Austin, TX 78751.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the TRAVIS COUNTY Sheriff's Department, TRAVIS COUNTY, Texas.  HAMILTON is being sued in his official capacity.

4.      Defendant, TRAVIS COUNTY SHERIFF'S DEPARTMENT (hereinafter referred to as "TCSD") operates in TRAVIS COUNTY, Texas, and may be served with citation in this cause by serving the Sheriff, GREG HAMILTON, at the address noted above.

5.      Defendant, BILL SWAIM (hereinafter referred to as "SWAIM") is a resident of TRAVIS COUNTY, Texas and may be served with citation in this cause by serving him at his place of employment at the TRAVIS COUNTY Attorney's Office, 314 11th St W, Austin, TX 78701.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the TRAVIS COUNTY Attorney's

6

Office, TRAVIS COUNTY, Texas.  SWAIM is being sued in his personal and official capacity.

6.      Defendant, DAVID ESCAMILLA (hereinafter referred to as "ESCAMILLA") is the TRAVIS COUNTY Attorney, who resides in TRAVIS COUNTY, and who may be served with citation in this cause by serving him at his place of employment at the TRAVIS COUNTY Attorney's Office, 314 11th St W, Austin, TX 78701.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the TRAVIS COUNTY Attorney's Office, TRAVIS COUNTY, Texas.  ESCAMILLA is being sued in his personal and official capacity.

7.      Defendant, IRMA GUERRERO (hereinafter referred to as "GUERRERO") is a resident of TRAVIS COUNTY, Texas and may be served with citation in this cause by serving her at her place of employment at the TRAVIS COUNTY Probation Office, Blackwell-Thurman Criminal Justice Center, 509 W. 11th St., Room 2.900, Austin, TX 78701.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with the TRAVIS COUNTY Probation Department, Pretrial Services, TRAVIS COUNTY.  GUERRERO is being sued in her personal and official capacity.

8.      Defendant, ALLISON SAENZ (hereinafter referred to as "SAENZ") is a resident of TRAVIS COUNTY, Texas and may be served at her place of employment at the TRAVIS COUNTY Probation Office, Blackwell-Thurman Criminal Justice Center, 509 W. 11th St., Room 2.900, Austin, TX 78701.  Each of the acts complained of herein

7

arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with the TRAVIS COUNTY Probation Department, Pretrial Services, TRAVIS COUNTY, Texas. SAENZ is being sued in her personal and official capacity.

9.      Defendant, RON MORGAN, (hereinafter referred to as "MORGAN") is a resident of TRAVIS COUNTY, Texas and may be served at his place of employment at the TRAVIS COUNTY Probation Office, Blackwell-Thurman Criminal Justice Center, 509 W. 11th St., Room 2.900, Austin, TX 78701. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the TRAVIS COUNTY Probation Department, Pretrial Services, TRAVIS COUNTY, Texas. MORGAN is being sued in his personal and official capacity.

10.     Defendant, unknown first name COTTON, (hereinafter referred to as "COTTON") is a resident of TRAVIS COUNTY, Texas, and may be served at her place of employment in the TRAVIS COUNTY Jail, 509 W. 11th, Austin, TX 78701. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with the TRAVIS COUNTY Jail, TRAVIS COUNTY, Texas. COTTON is being sued in her personal and official capacity.

11.     Defendant, DEBORAH KLEKAR, (hereinafter referred to as "KLEKAR") is a resident of TRAVIS COUNTY, Texas, and may be served at her place of employment in the TRAVIS COUNTY Jail, 509 W. 11th, Austin, TX 78701. Each of the acts complained of herein arise from the conduct of Defendant while acting under

color of state law, and was committed within the scope of her employment and authority with the TRAVIS COUNTY Jail, TRAVIS COUNTY, Texas. KLEKAR is being sued in her personal and official capacity.

12.     Defendant, ROBERT LERMA, (hereinafter referred to as "LERMA") is a resident of TRAVIS COUNTY, Texas, and may be served at his place of employment in the TRAVIS COUNTY Jail, 509 W. 11th, Austin, TX 78701.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the TRAVIS COUNTY Jail, TRAVIS COUNTY, Texas.  LERMA is being sued in his personal and official capacity.

13.     Defendant, three unidentified female deputies employed in the TCJ, (hereinafter referred to as "UNIDENTIFIED THREE") are residents of TRAVIS COUNTY, Texas, and may be served at their place of employment in the TRAVIS COUNTY Jail, 509 W. 11th, Austin, TX 78701.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of their employment and authority with the TRAVIS COUNTY Jail, TRAVIS COUNTY, Texas.  UNIDENTIFIED THREE are being sued in their personal and official capacity.

14.     Defendant, TRAVIS COUNTY, TEXAS may be served with citation in this cause by serving the County Judge, Samuel T. Biscoe, at his place of employment, 314 W. 11th St., #520, Austin, TX 78701.

9

15.     Defendant, AUSTIN AMERICAN STATESMAN, (hereinafter referred to as "STATESMAN"), may be served with citation in this cause by serving its registered agent at 305 S. Congress Ave., Austin, Texas 78704.

16.     Defendant, ONE THAT KNOWS, is a competitor of Plaintiff and may be served with citation in this cause when he is identified by the AUSTIN AMERICAN STATESMAN.

17.     Defendant, ANOTHER THAT KNOWS, is a competitor of Plaintiff and may be served with citation in this cause when he is identified by the AUSTIN AMERICAN STATESMAN.

18.     Defendant, LIBERALS R. CLUELESS, is a competitor of Plaintiff and may be served with citation in this cause when he is identified by the AUSTIN AMERICAN STATESMAN.

19.     Defendant, NATIVESON, is a competitor of Plaintiff and may be served with citation in this cause when he is identified by the AUSTIN AMERICAN STATESMAN.

20.     Defendant, HURST, is a competitor of Plaintiff and may be served with citation in this cause when he is identified by the AUSTIN AMERICAN STATESMAN.

21.     Defendant, ANONYMOUS, has not been identified and will be served with citation when the identity and address is discovered.

22.     Defendant, AUSTIN LEGAL BLOG, is an online blog sponsored by the AUSTIN AMERICAN STATESMAN, and may be served with citation in this cause at the above address for the Austin American Statesman.

23. Defendant, ZACH RYALL, (hereinafter referred to as "RYALL"), is an employee of the AUSTIN LEGAL BLOG, AUSTIN AMERICAN STATESMAN, and may be served with citation in this cause at his place of employment at the AUSTIN AMERICAN STATESMAN.

24. Defendant, ERIN CARGILE, (hereinafter referred to as "CARGILE"), is a resident of TRAVIS COUNTY and a reporter for KXAN Austin News, and may be served with citation in this cause at her place of employment at KXAN Austin News, 908 W Martin Luther King Jr. Blvd., Austin, Texas 78701.

25. Defendant, KXAN Austin News, may be served with citation in this cause by serving the station manager, Eric Lassberg, president and general manager of KXAN, or registered agent at its place of business at 908 W Martin Luther King Jr. Blvd., Austin, Texas 78701.

26. Defendant, NOELLE NEWTON, (hereinafter referred to as "NEWTON"), is a resident of TRAVIS COUNTY and a reporter for KVUE-TV, and may be served with citation in this cause at her place of employment at KVUE-TV, 3201 Steck Avenue, Austin, Texas 78757.

27. Defendant, JIM BERGAMO, (hereinafter referred to as "BERGAMO"), is a resident of TRAVIS COUNTY and a reporter for KVUE-TV, and may be served with citation in this cause at his place of employment at KVUE-TV, 3201 Steck Avenue, Austin, Texas 78757.

28. Defendant, KVUE-TV, is a news station in TRAVIS COUNTY, Texas, who may be served with citation in this cause by serving the station manager or registered agent at its place of business at 3201 Steck Avenue, Austin, Texas 78757.

29.     Defendant, KEYE, is a news station in TRAVIS COUNTY, Texas, who may be served with citation in this cause by serving the station manager or registered agent at its place of business at 10700 Metric Blvd., Austin, TX 78758.

30.     Defendant, JAMES WILSON, (hereinafter referred to as "WILSON") is a resident of WILLIAMSON COUNTY, Texas, is the Sheriff of WILLIAMSON COUNTY, and may be served with citation in this cause by serving him at his place of employment with the WILLIAMSON COUNTY Sheriff's Office at 508 Rock Street, Georgetown, Texas 78626.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department, WILLIAMSON COUNTY, Texas.  WILSON is being sued in his personal and official capacity.

31.     Defendant, WILLIAMSON COUNTY SHERIFF'S DEPARTMENT (hereinafter referred to as "WCSD") operates in WILLIAMSON COUNTY, Texas, and may be served with citation in this cause by serving the Sheriff, JAMES WILSON, at 508 Rock Street, Georgetown, Texas 78626.

32.     Defendant, KATHLEEN GITTEL, (hereinafter referred to as "GITTEL"), is a resident of WILLIAMSON COUNTY, Texas, and may be served with citation in this cause by serving her at Liberty Hill, Texas 78642.

33.     Defendant, HAROLD POPPA, (hereinafter referred to as "POPPA"), is a resident of Burnet County, Texas, and may be served with citation in this cause by serving him at 642 Balcones Ridgeway, Bertram, Texas 78605-4075.

12

34.     Defendant, MICHAEL SCHEFFLER, (hereinafter referred to as "SCHEFFLER"), is a resident of WILLIAMSON COUNTY, Texas, and may be served with citation in this cause by serving him at his place of employment with Texas Department of Public Safety at 5805 North Lamar Boulevard or 6121 North Lamar Boulevard, Austin, Texas (512) 424-2076; (512) 424-2000. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the Texas Department of Public Safety. SCHEFFLER is being sued in his personal and official capacity.

35.     Defendant, D. HERNANDEZ, (hereinafter referred to as "HERNANDEZ"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at her place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. HERNANDEZ is being sued in her personal and official capacity.

36.     Defendant, NICK RICHTER, (hereinafter referred to as "RICHTER"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's

13

Department of WILLIAMSON COUNTY, Texas.   RICHTER is being sued in his personal and official capacity.

37.     Defendant, RUSSELL TRAVIS, (hereinafter referred to as "TRAVIS"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas.  TRAVIS is being sued in his personal and official capacity.

38.     Defendant, PAUL BOGAN, (hereinafter referred to as "BOGAN"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas.  BOGAN is being sued in his personal and official capacity.

39.     Defendant, ROBERT NEWELL, (hereinafter referred to as "NEWELL"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within

14

the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. NEWELL is being sued in his personal and official capacity.

40.     Defendant, PETE HUGHEY, (hereinafter referred to as "HUGHEY"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. HUGHEY is being sued in his personal and official capacity.

41.     Defendant, DOUG WAGGONER, (hereinafter referred to as "WAGGONER"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. WAGGONER is being sued in his personal and official capacity.

42.     Defendant, BELINDA BARTZ, (hereinafter referred to as "BARTZ"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at her place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct

15

of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. BARTZ is being sued in her personal and official capacity.

43. Defendant, JEREME BRINKMANN, (hereinafter referred to as "BRINKMANN"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. BRINKMANN is being sued in his personal and official capacity.

44. Defendant, RICHARD DE LA VEGA, (hereinafter referred to as "DE LA VEGA"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. DE LA VEGA is being sued in his personal and official capacity.

45. Defendant, JOHN FOSTER, (hereinafter referred to as "FOSTER"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street,

16

Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas. FOSTER is being sued in his personal and official capacity.

46.    Defendant, DALE RYE, (hereinafter referred to as "RYE"), is a resident of WILLIAMSON COUNTY and a prosecutor for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at 405 M.L.K., Suite 240, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Attorney's Office of WILLIAMSON COUNTY, Texas. RYE is being sued in his personal and official capacity.

47.    Defendant, DEE HOBBS, (hereinafter referred to as "HOBBS"), is a resident of WILLIAMSON COUNTY and a prosecutor for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at the WILLIAMSON COUNTY Attorney's Office at 405 M.L.K., Suite 240, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Attorney's Office of WILLIAMSON COUNTY, Texas. HOBBS is being sued in his personal and official capacity.

48. Defendant, SUZANNE BROOKS, (hereinafter referred to as "BROOKS"), is a resident of WILLIAMSON COUNTY and a county court at law judge for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at her place of employment at the WILLIAMSON COUNTY Courthouse, County Court at Law No. 2, 405 MLK, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with WILLIAMSON COUNTY, Texas. BROOKS is being sued in her personal and official capacity.

49. Defendant, JOHN BRADLEY, (hereinafter referred to as "BRADLEY"), is a resident of WILLIAMSON COUNTY and a prosecutor for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at the WILLIAMSON COUNTY District Attorney's Office at 405 M.L.K. Street, Suite 265, Georgetown, TX 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with WILLIAMSON COUNTY, Texas. BRADLEY is being sued in his personal and official capacity.

50. Defendant, TRAVIS MCDONALD, (hereinafter referred to as "MCDONALD"), is a resident of WILLIAMSON COUNTY and a prosecutor for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at the WILLIAMSON COUNTY District Attorney's Office at 405 M.L.K. Street, Suite 265, Georgetown, TX 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was

18

committed within the scope of his employment and authority with WILLIAMSON COUNTY, Texas. MCDONALD is being sued in his personal and official capacity.

51.     Defendant, ROBERT MCCABE, (hereinafter referred to as "MCCABE"), is a resident of WILLIAMSON COUNTY and a prosecutor for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at the WILLIAMSON COUNTY District Attorney's Office at 405 M.L.K. Street, Suite 265, Georgetown, TX 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with WILLIAMSON COUNTY, Texas. MCCABE is being sued in his personal and official capacity.

52.     Defendant, ALAN SCHREIBER, (hereinafter referred to as "SCHREIBER"), is a resident of WILLIAMSON COUNTY and a court appointed lawyer for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at 1708 Blue Heron Cove, Round Rock TX 78681.

53.     Defendant, KEN ANDERSON, (hereinafter referred to as "ANDERSON"), is a resident of WILLIAMSON COUNTY and a former district attorney, magistrate, and district judge for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at WILLIAMSON COUNTY Courthouse, 277th Judicial District Court, 405 MLK, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with WILLIAMSON COUNTY, Texas. ANDERSON is being sued in his personal and official capacity.

54.     Defendant, BURT CARNES, (hereinafter referred to as "CARNES"), is a resident of WILLIAMSON COUNTY and a district judge for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at WILLIAMSON COUNTY Courthouse, 368th Judicial District Court, 405 MLK, Georgetown, Texas 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with WILLIAMSON COUNTY, Texas. CARNES is being sued in his personal and official capacity.

55.     Defendant, LLOYD DOUG SHAVER, (hereinafter referred to as "SHAVER"), P.O. Box 8693, Horseshoe Bay, TX 78657, Office: 830-598-8242, or through the WILLIAMSON COUNTY Courthouse, 368th Judicial District Court at 405 MLK, Georgetown, Texas 78626, where he is serving as a visiting judge. SHAVER is being sued in his personal and official capacity.

56.     Defendant, MARTY GRIFFITH, (hereinafter referred to as "GRIFFITH"), is a resident of WILLIAMSON COUNTY and a probation officer for WILLIAMSON COUNTY, Texas, who may be served with citation in this cause at his place of employment at WILLIAMSON COUNTY Adult Probation - Main Office, 301 Inner Loop Road, Georgetown, TX 78626. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with WILLIAMSON COUNTY, Texas. GRIFFITH is being sued in his personal and official capacity.

57.     Defendant, WILLIAMSON COUNTY, TEXAS, may be served with citation in this cause by serving the County Judge, Dan A. Gattis, at his place of

employment at WILLIAMSON COUNTY Courthouse at 710 S. Main Street, Ste. 101, Georgetown, TX 78626, Phone: (512) 943-1550.

58.     Defendant, JOHN CLIFTON, (hereinafter referred to as "CLIFTON"), is a resident of TRAVIS COUNTY and an investigator for the federal marshals or federal courthouse security, and may be served with citation in this cause at his place of employment at the U.S. District Courthouse, 200 West 8th Street Austin, TX 78701. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the federal government.  CLIFTON is being sued in his personal and official capacity.

59.     Defendant, DUSTY HUMES, (hereinafter referred to as "HUMES"), is a resident of TRAVIS COUNTY and a clinical psychologist, who may be served with citation at her place of business at 901 S. Mo-Pac, Ste. 1-480, Austin, Texas 78746 or at 2201 San Pedro NE, Building 4, Ste. 102, Albuquerque, New Mexico 87110.  See www.dustyhumesphd.net

60.     Defendant, DAVID RUPPART, (hereinafter referred to as "RUPPART"), is a resident of WILLIAMSON COUNTY and a deputy for the WCSD, who may be served with citation in this cause at his place of employment at the WCSD at 508 Rock Street, Georgetown, Texas 78626.  Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the WILLIAMSON COUNTY Sheriff's Department of WILLIAMSON COUNTY, Texas.  RUPPART is being sued in his personal and official capacity.

21

## IV. ALLEGATION OF BASIC FACTS AND
## EVENTS FORMING THE BASIS OF THE CLAIMS

1.     Whenever, in this complaint it is alleged that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's co-conspirators, agents, servants, employees, attorneys, or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification by said Defendant.

2.     On January 8, 2010, BARNES was physically assaulted from behind by TUMLINSON as she was leaving the Heman Marion Sweatt TRAVIS COUNTY Courthouse simply because she was calling to report his abusive behavior.

3.     TUMLINSON jumped up and ran at BARNES and knocked her cell phone out of her right hand as she attempted to place a call when she was leaving the courthouse. BARNES had a legal right to make a telephone call from her cell phone as she was exiting the building.

4.     TUMLINSON was wearing a heavy, square, metal plate or vest under his shirt and he forcefully rammed BARNES into the exit ropes after he forcefully slapped her cell phone from her hand, causing it to crash to the floor. This brutal assault caused the destruction and loss of the Blackberry cell phone and the loss of BARNES' diamond bracelet.

5.     After violently knocking the phone out of her hand and ramming her into the exit ropes, TUMLINSON forcefully grabbed BARNES' right wrist and pulled her right arm and twisted it up behind her back and violently rammed her into the brick wall and announced loudly that she was under arrest. When BARNES responded that there was nothing illegal about making a cell phone call, TUMLINSON stated that BARNES

had hit him when it was only TUMLINSON doing the hitting and engaging in aggressive, violent, and retaliatory behavior.[2]

6.     The unwarranted and brutal assault occurred in a public building during business hours.   BARNES was not engaging in any illegal activity or criminally trespassing as this was public property, and BARNES was there conducting business with the court and engaging in her profession as an officer of the court.  This was not the first time that TUMLINSON had behaved inappropriately and obnoxiously towards an officer of the court.[3]

7.     TUMLINSON was not lawfully discharging any official duty under the law.  TUMLINSON enjoys no immunity, qualified or otherwise, for his malicious and unconstitutional actions because no reasonable law enforcement officer would have reasonably believed that his actions were lawful, legal, and constitutional.

8.     BARNES told TUMLINSON very clearly that he would have to commit aggravated perjury if he persisted with his false allegations, but TUMLINSON proceeded nevertheless with a conscious disregard and deliberate indifference towards the rights, safety, and welfare of Plaintiffs.  TUMLINSON acted with utmost confidence in his criminal behavior because he knew he would get away with it because his fellow employees and the TRAVIS COUNTY attorneys, agents, elected officials, and representatives would cover-up his illegal and unconstitutional activity as it is in their mutual best interests to do so, including but not limited to, KLEKAR, COTTON,

---

[2] TUMLINSON had a known history of being abusive and obnoxious to others; but there was a complete failure to properly discipline, train, and supervise him.  He should never have been placed in a position to be in contact with the public, untrained and unsupervised.
[3] The prior January 2009, TUMLINSON had intentionally knocked another lawyer's personal property and papers to the ground after engaging in a rude altercation.  A complaint was filed against TUMLINSON, however, the TCSD and TRAVIS COUNTY failed to take any corrective or remedial action, such as

LERMA, UNIDENTIFIED THREE, HAMILTON, SWAIM, ESCAMILLA, MORGAN, GUERRERO, and SAENZ.

9.      TUMLINSON, HAMILTON, and KLEKAR also received encouragement and false defamatory *per se* information from WCSD and WILLIAMSON COUNTY when they were contacted immediately after the false arrest of BARNES, due to the malicious flags they have kept on BARNES' driver's license for the past decade.

10.     TRAVIS   COUNTY,   TCSD,   TRAVIS   COUNTY   ATTORNEY'S OFFICE, HAMILTON, KLEKAR, ESCAMILLA, SWAIM, and others were negligent and grossly negligent in placing TUMLINSON in a position to interact with the public based upon his known propensities to engage in bullying, inappropriate behavior, and violence.  These Defendants were negligent and grossly negligent in hiring, retaining, and failing to supervise, train, and discipline TUMLINSON when he exhibited all these anti-social propensities from the inception of his employment.[4]  Had these Defendants taken appropriate action even as late as the year prior to this latest assault when they received a complaint from another lawyer about TUMLINSON's bad behavior in this position interacting with the public, BARNES would not have been assaulted and sustained such irreparable injury, harm, and damage.

11.     After the brutal assault and false arrest, BARNES was initially taken to a small room in the Jail where TUMLINSON grabbed her purse and started going through it without her consent and confiscated her driver's license.  TUMLINSON went to a

---

training or classes, or supervision, or appropriate disciplinary action.  Had corrective or remedial action been taken, perhaps the assault on BARNES would not have occurred in January 2010.

[4] At the end of his probationary period, the recommendation was NOT to hire, however, TUMLINSON was able to convince his supervisor/evaluator that it was their fault for failing to properly train him.  So, he was hired in spite of the clear propensities he was already exhibiting.  Also, he listed his prior employment with Hays County and Gonzalez County; however, BARNES' freedom of information and open records requests yielded no history of these entities ever employing him.

24

computer and put in BARNES information from her driver's license and then said, "Well, it looks like we need to call WILLIAMSON COUNTY; she may have some warrants out for her arrest there." TUMLINSON and his superiors called WCSD and other employees of WILLIAMSON COUNTY prior to drafting his probable cause affidavit. KLEKAR came into the room and BARNES told her that someone needed to pull the video at the courthouse immediately and see the truth—BARNES had not assaulted TUMLINSON and the video recording would prove that TUMLINSON ran at BARNES from behind and assaulted her repeatedly. KLEKAR stated that she was a supervisor and assured BARNES that she would immediately secure the videotape to ascertain the truth.

12.   BARNES was subjected to a violent loss of rights, property, and reputation as she was subjected to a false arrest, aggravated kidnapping, and further aggravated sexual assault by the UNIDENTIED THREE while in custody. These Defendants, TUMLINSON, HAMILTON, KLEKAR, and TCSD intentionally and maliciously published a fabricated lie and committed aggravated perjury when they released the knowingly false press release to the AUSTIN AMERICAN STATESMAN, knowing that the newspaper would simply publish whatever they were told without a good faith investigation into the facts or truth, and that it would then be republished on the AP wire and become national news. These Defendants also knew that the AUSTIN AMERICAN STATESMAN, through the use of the Internet and AUSTIN LEGAL BLOG, would invite and allow further and continuing defamation against BARNES by competitors and co-conspirators and even allow them to hide behind a cloak of secrecy as they maliciously engaged in false and fraudulent personal attacks on BARNES and her character, further destroying her right to be free from unreasonable searches and seizures,

defamation, libel, character assassination, and right to be left alone, and thereby, deprived her of a right to a fair jury trial before a fair and impartial tribunal, equal protection under the law, due process, and due course of law.  The false probable cause affidavit, false arrest, and false imprisonment created a media frenzy whereby the media defendants, STATESMAN, AUSTIN LEGAL BLOG, KXAN, KEYE, and KVUE television stations published defamatory *per se* allegations causing further harm and damage to Plaintiffs and this was a reasonably foreseeable result of the violations of BARNES' 1st, 4th, 5th, 6th, and 14th amendment rights.  The STATESMAN, RYALL, and AUSTIN LEGAL BLOG further allowed ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVESON, and HURST to maliciously malign and personally attack BARNES and further defame her with utmost malice and a specific intent to harm, injure, and damage BARNES.

13.     It has become the habit, practice, custom, policy and procedure of TRAVIS COUNTY and WILLIAMSON COUNTY law enforcement and prosecutors to use the media to deprive the accused of their constitutional rights; and they intentionally draft and redraft probable cause affidavits to justify their arrests knowing that they will serve as the press release and taint the public against the accused and reinforce the public's misplaced trust in certain law enforcement employees and prosecutors who abuse their position of public trust and power to oppress the citizens of this State and Nation with malicious prosecutions motivated by hate, greed, and political ambition.

14.     BARNES sustained bodily injury from the brutal aggravated assault by TUMLINSON; however, when BARNES was taken to jail, she was deprived of medical attention and not allowed to make any telephone calls.  When BARNES arrived at the jail

26

and asked to speak to TUMLINSON's supervisor, she was told he had no supervisor. BARNES diligently sought to have the video recording reviewed and have these false allegations cleared up, so that she could be released. BARNES was scheduled to be in court for a hearing and they would not even allow her to call and let the Judge know what had happened.

15.     BARNES repeatedly told every deputy present that TUMLINSON had been the one who assaulted her and that she wanted to file a report and complaint against him. All deputies absolutely refused to file a report or take any information from her. BARNES was deprived of equal protection under the law, due process, and due course of law in connection with the State's refusal to take her complaint, information, and file the report of the criminal law violations by TUMLINSON.   It is the habit, custom, policy and procedure of the TCSD and WCSD to refuse to take any information or complaint against one of their employees. A citizen assaulted by a law enforcement officer has no recourse or remedy, which violates the Texas Open Courts Doctrine.

16.     BARNES repeatedly told TUMLINSON, all deputies present, and KLEKAR, that she had not assaulted TUMLINSON, that it was TUMLINSON who brutally assaulted her, and that the security video tape would prove who assaulted whom. TUMLINSON, KLEKAR, and Deputy Hill all assured BARNES that the video tape would be secured and preserved.  Both KLEKAR and Deputy Hill led BARNES to believe that KLEKAR had actually pulled the video and was reviewing it.

17.     BARNES was taken to a filthy closet and thrown inside still in handcuffs. The deputies started stripping off BARNES jewelry behind her back without even removing the handcuffs.  BARNES' watch was damaged and had to be repaired because

27

they were not even trying to be careful, they were just forcefully yanking everything off. Deputy Hill had told BARNES that she would be allowed to make a call. COTTON came in and started bullying BARNES and stated that BARNES would not be allowed to make a call to anyone. Requests for medical attention for the injuries sustained during TUMLINSON's assault were denied. COTTON, KLEKAR, TUMLINSON, and LERMA refused to clean the open bleeding wounds and just tossed one band-aid at BARNES. BARNES was left alone in an extremely filthy closet. It was several hours later when BARNES was allowed to make a call after COTTON had left for the day.

18.     After KLEKAR reviewed the video and saw the truth, she came to the jail and pulled LERMA off to the side and discussed BARNES with him. They discussed what to do with BARNES due to the obvious false arrest, aggravated assault, aggravated kidnapping, and other crimes committed by TUMLINSON and his use of excessive force on an officer of the court. LERMA had previously told BARNES he would talk to her "in a minute" before KLEKAR pulled him aside. When LERMA finished the discussion with KLEKAR, he came back to the small window on the door of the filthy closet and said "Second thought, I don't need to talk to you." Then, in a menacing and snide tone, he said, "Enjoy the ride." BARNES was then allowed to make a call and then told that she was being taken to "special housing for people who hit cops." Everyone just kept pretending that BARNES had actually assaulted TUMLINSON and they were therefore punishing her for his bad behavior.

19.     BARNES was then taken to a back area of the jail where she was held down and violently stripped completely naked and brutally assaulted by the UNIDENTIFIED THREE while LERMA watched with another male and laughed. This

28

brutal and barbaric behavior was clearly the habit, practice, and custom of these jail personnel who brutally assault and violently punish and injure arrestees in violation of the law and the Constitution. This conduct was shocking, outrageous, against public policy, and not tolerated in a civilized society.

20.    BARNES was left in a freezing cold room without pants, blanket, or food. BARNES was deprived of any and all medical care and had to go directly to the emergency room when she was finally released.

21.    BARNES was held until after midnight even though her lawyer posted her bond hours earlier. Due to calls made to WCSD, the WCSD flags on her driver's license, and the fact that TUMLINSON had assaulted BARNES, COTTON and/or LERMA had placed a "medical hold" on BARNES so that she could not be released even though her bond had been posted. BARNES was held for 12 hours without being afforded any medical care for the injuries sustained in the aggravated assault, food or water, or any other basic necessities.

22.    While BARNES was being released, she immediately reported the missing diamond bracelet and missing money taken from her purse. In response, she was assaulted again. TUMLINSON had also stepped on BARNES' coat and ripped it in the back when he yanked it up while still standing on the sleeve. Immediately upon her release BARNES was barely able to drive to the emergency room, where she spent the next 8 hours; then another 4 hours in waiting area and car before she was able to drive home. BARNES had to cancel all her appointments the following week. BARNES suffered an extreme infection all over her face that took over a year to get rid of as a direct and proximate result of the filthy jail conditions.

29

23.     TUMLINSON and his superiors emailed the probable cause affidavit back and forth until it was defamatory enough to destroy BARNES' credibility, presumption of innocence, and reputation in the media.  TCSD and TRAVIS COUNTY have at all times failed and refused to produce the different drafts of the probable cause affidavits, despite numerous requests for same.   They clearly wanted to maximize the damage to BARNES to protect TUMLINSON and cover-up for his assault on an officer of the court while acting under color of state law.   TCSD made the deliberate, intentional, and knowing decision to help cover-up for TUMLINSON and protect him from the consequences of his actions because these were his superiors assisting him and editing and approving his drafts of the probable cause affidavit.

24.     Predictably, the AUSTIN AMERICAN STATESMAN, KXAN, KVUE, and KEYE, not only ran the defamatory *per se* false accusations contained in the probable cause affidavit without even attempting to get BARNES' side or talk to BARNES' attorney, but the AUSTIN AMERICAN STATESMAN also provided a forum that allowed BARNES' competitors and the co-conspirators to defame and personally attack BARNES even more on the Internet.  This forum is called the AUSTIN LEGAL BLOG and RYALL is employed by the AUSTIN AMERICAN STATESMAN and was permitted to make his own rude and derogatory comments on the Internet.  The other lawyers who were allowed to post defamatory *per se* statements and personal attacks on BARNES were allowed to hide behind aliases; to-wit: "ONE THAT KNOWS," "ANOTHER THAT KNOWS," "LIBERALS R. CLUELESS," "NATIVE SON,"  and "HURST," in order to deprive BARNES of a fair trial and the presumption of innocence. This defamation is permanent and irreversible.   The AUSTIN AMERICAN

STATESMAN has failed and refused to disclose the names of these malicious individuals despite formal discovery requests for same. BARNES has been deprived of her right to pursue her claims by this policy of providing a forum for defamation and then protecting those who defame their competitors. This action violates the Texas Open Courts Doctrine and Texas Deceptive Trade Practices Consumer Protection Act, Sec. 17.46(8) "Disparaging the goods, services, or business of another by false or misleading representation of fact"), because it allows competitors and the coconspirators to disparage BARNES with impunity, in violation of Texas Constitution, Art. I, § 8.

25. An equally foreseeable consequence of the false and fraudulent probable cause affidavit was the media sensationalism by CARGILE for KXAN, by NEWTON and BERGAMO for KVUE, and by reporters at KEYE. These reports repeated the false allegations made by TUMLINSON and/or his supervisors who edited and approved the probable cause affidavit, knowing it would serve as a press release and be repeated all over the mass media on a national level.

26. Another foreseeable consequence, were the numerous blogs making defamatory comments and statements in response to the false and fraudulent probable cause affidavit, particularly LAWYERSTIGERSANDBEARS.BLOGSPOT.COM.

27. It was reasonably foreseeable that the false arrest and imprisonment, false and fraudulent affidavit, media sensationalism, and Internet publication would result in permanent harm, injury, and damage to BARNES' reputation, credibility, and livelihood; and would cause serious mental anguish and extreme emotional distress to Plaintiffs. All of this media frenzy was encouraged and fueled by the defamation *per se* from WILLIAMSON COUNTY, WCSD, and various employees, deputies, and prosecutors

employed by WILLIAMSON COUNTY.

28.    BARNES diligently attempted to secure a copy of the video recording of TUMLINSON's violent assault from behind that was captured on the courthouse security cameras to prove the truth, clear her name, and mitigate damages, to no avail.  All of BARNES' efforts at discovery were blocked, stalled, and thwarted by TCSD and TRAVIS COUNTY and their prosecutors, including but not limited to SWAIM and ESCAMILLA.  BARNES even sought the assistance of the Texas Attorney General under the Texas Open Records and Public Information Act, but ESCAMILLA fought those requests as well.

29.    BARNES attempted to visit with the TRAVIS COUNTY prosecutors concerning the presentation of this incident to the grand jury and attempted to secure a copy of the video recording or at least view the recording and other pertinent discovery, to no avail.  Calls were not returned and no one would come out and visit with BARNES. The prosecutors refused to provide any means for BARNES to present her charges against TUMLINSON to the grand jury.  BARNES was told that only the district attorney could present cases to the grand jury.  BARNES went to TRAVIS COUNTY Victim's Services, but they refused to see her or offer her any assistance because she was "in the system," so they could not talk to her.  There literally is no avenue for citizens assaulted, harmed, injured, or damaged by a law enforcement officer or employee of TRAVIS COUNTY or WILLIAMSON COUNTY to gain access to the criminal justice system or pursue a claim.  BARNES even called the Austin Police Department since the assault took place within the city limits of Austin, Texas; however, she was told that the TCSD had exclusive jurisdiction over investigations of assaults in the TRAVIS COUNTY

32

courthouse. Therefore, it is the intentional, deliberate, and knowing policy, practice, and custom of TCSD and TRAVIS COUNTY to make sure that no person attacked or injured by a TCSD employee or other TRAVIS COUNTY employee can file a complaint or "petition the Government for a redress of grievances." (U.S.Const. Amend. 1). This violates the Texas Bill of Rights, equal protection under the law and due process.

30.    BARNES then prepared packets for presentment to the grand jury and sent those packets to the next four grand juries that were impaneled, to no avail. The TRAVIS COUNTY employees and prosecutors would intercept the mail that was clearly addressed to the Foreman of the Grand Jury, and fail to present it to the respective grand juries. BARNES sent the packets certified mail return receipt requested and properly addressed to the Foreman of the Grand Jury in care of the District Judge who impaneled the grand jury. BARNES reported the interception and interference with the mail to the U.S. Postmaster, who following an investigation, stated that the four packets were delivered to the TRAVIS COUNTY courthouse and were then diverted by the TRAVIS COUNTY internal mail room. It costs BARNES great time and expense to prepare and deliver these packets. The law provides that "any credible person" may present maters to the grand jury for investigation. However, it is the policy, habit, custom, and practice of TRAVIS COUNTY and WILLIAMSON COUNTY to block ordinary citizens from having access to the grand juries and to ensure that only its prosecutors can access and control the grand jury process. Thus, the grand juries have lost their independence and are nothing more than puppets of the prosecutors. The system is intentionally designed to provide only one side to the grand jury—the State's side; thereby depriving the citizens of their right to grand jury protection from vindictive or malicious prosecutions, due process, redress of

33

grievances, and equal protection under the law.

31.    BARNES still has not been able to view the videotaped recording from the courthouse security camera or obtain a copy of it.  TRAVIS COUNTY, acting through TCSD, HAMILTON, KLEKAR, ESCAMILLA, SWAIM, and the TRAVIS COUNTY Attorney's Office have obstructed and prevented BARNES from timely and meaningful access to the best evidence of the truth in order to prevent her from proving that TUMLINSON had assaulted her from behind and that BARNES did not ever hit TUMLINSON.  These Defendants were not concerned about the truth, but were only concerned with cover-up and escaping any liability or accountability.  These Defendants knew that TUMLINSON had committed an aggravated assault, aggravated kidnapping, and aggravated perjury; but they not only covered-up for him, they continued to place him in the same position to interact with the public with absolutely no supervision whatsoever.

32.    While covering up for TUMLINSON, TRAVIS COUNTY and its prosecutors, SWAIM and ESCAMILLA, also obstructed justice.  Employees and attorneys for TRAVIS COUNTY, Texas, including SWAIM, and ESCAMILLA have at all times blocked, obstructed, hindered, and prevented BARNES from obtaining exculpatory evidence and a fair and speedy trial; as well as from filing any complaint against TUMLINSON or any of the other deputies who brutally assaulted, stripped, and violated her rights while in custody, and who subjected her to repeated false arrests and false imprisonments in retaliation against her for attempting to pursue her complaints and secure justice.[5]

---

[5] Just in Travis County alone, BARNES was subjected to three false arrests and false imprisonments within a 6 month time frame, arising out of the same TUMLINSON incident.  These were all as a result of the

34

33.     Thus, the violent offender is protected and the real victim is retaliated against in violation of equal protection, due process, due course of law and other valuable rights secured by the 1st, 4th, 5th, 6th, 8th, 9th, and 14th amendments to the United States Constitution and by Texas Constitution, Art. I, Sections 3, 3a, 8, 9, 10, 11, 13, 16, 17, 19, 27, 28, and 29.

34.     The unconstitutional actions, misbehavior, and abuse by TRAVIS COUNTY, TCSD, TUMLINSON, KLEKAR, LERMA, COTTON, UNIDENTIFIED THREE, SWAIM, MORGAN, SAENZ, GUERRERO, ESCAMILLA, and HAMILTON were caused by the defamation and hatred from WILLIAMSON COUNTY, WCSD, WILSON, RYE, HOBBS, and various employees and policy makers of WILLIAMSON COUNTY, who have harassed, assaulted, subjected to repetitive false arrests, malicious prosecutions, and defamation for 15 years in retaliation against her for her zealous representation of clients, exposure of their corruption, and filing civil suits against them.

35.     In WILLIAMSON COUNTY, for the past 15 years BARNES has been a vocal critic of the customs, habits, practices, policies, and procedures of the WILLIAMSON COUNTY Criminal Justice system, especially the wayward deputies who trample on civil and constitutional rights with great pride, bravado, and fanfare, the malicious prosecutors who train and encourage these overt violations, and certain politically motivated or self-interested judges who do absolutely nothing to correct it.[6]

---

criminal conspiracy with WCSD, WILLIAMSON COUNTY, HOBBS, RYE, BRADLEY, MCCABE, MCDONALD, and other employees of WILLIAMSON COUNTY.

[6] Once BARNES is able to access her files, records, and evidence, BARNES will be able to present numerous incidents, misbehavior, criminal activity, abuses, malicious and politically motivated prosecutions, and retaliation over the past 15 years of BARNES, her clients, and others similarly situated to show the habit, practice, custom, practice, policy, and procedure of WILLIAMSON COUNTY derived from its extensive KKK affiliations and that same resulting mentality, which they like to euphuistically refer to as the "good ole boy" system to cover up the racist, sexist, and "economic cleansing" intent. BARNES has sought and been denied any recourse by the state and federal courts, which has only fueled

BARNES has repeatedly placed WILLIAMSON COUNTY on notice of this criminal activity by the deputies, prosecutors, and other employees. WILLIAMSON COUNTY has been on notice since 1997, and especially since 1999 when BARNES filed her initial action against the WCSD, sheriff, and WILLIAMSON COUNTY under Cause No. 99-360-C368 filed in CARNES' court. The WILLIAMSON COUNTY commissioner's court would have executive session meetings with RYE and others concerning the allegations in that litigation, and they led a vicious and malicious retaliatory campaign against BARNES and subjected her to numerous false arrests, harassment, and abuse ever since that time. The attorney for WILLIAMSON COUNTY, WCSD, and WILLIAMSON COUNTY Commissioner's Court, for civil litigation, Mike Davis, was the first to start the "mental illness" defamatory *per se* campaign during that litigation and conspired with Kevin Madison to have BARNES arrested from her office on Main Street, the first day she moved her office from TRAVIS COUNTY to WILLIAMSON COUNTY on another false and bogus arrest. Thus, WILLIAMSON COUNTY, WCSD, WILSON, WILLIAMSON COUNTY Commissioner's Court, and all the top policy makers of WILLIAMSON COUNTY have known about this malicious conspiracy against BARNES for over a decade, and they have encouraged it and done nothing to resolve it or rectify the situation caused by the false arrests, compounding harassment,

---

and flamed, encouraged and escalated, the abuse and open hostility. BARNES has been assaulted from behind three times by male deputies at a courthouse while conducting business. BARNES has been subjected to over a dozen false arrests, and her children have been subjected to harassment, accusations, and abuses in school because it is the habit, practice, and custom of WILLIAMSON COUNTY and WCSD, to attack their targets through children and often use school employees and CPS investigators to harass, injure, and harm the children to get to the parents or get to the parents though the schools or CPS. Both of BARNES' children were subjected to false accusations of crime, illegal searches and seizures, and had their personal property stolen from them by WILLIAMSON COUNTY law enforcement employees. The events covered in this pleading are the tip of the iceberg of what BARNES and her children have been subjected to over the past 15 years, just for BARNES standing up to these corrupt bullies. The custom, habit and

malicious prosecutions, and defamatory "caution flags" and other derogatory comments made when anyone runs BARNES' driver's license number. They have not even attempted to make a good faith investigation into these matters and have failed and refused to respond in any meaningful manner to the numerous letters and attempts to resolve this dispute sent by BARNES over the years. BARNES even deposed the sheriff and county judge during the second case against WILLIAMSON COUNTY. Thus, all of these unlawful acts were done or approved by the persons with final policy-making authority.

36.     BARNES has a wealth of experiences and cases that will prove this pattern, practice, habit, custom, policy, and procedure that is ingrained and endemic in WILLIAMSON COUNTY. However, this court has advised of the Rule 8 limits on pleadings and notice of intent to dismiss, therefore, BARNES cannot plead them all now to show the habit, practice, custom, policy and procedure of WILLIAMSON COUNTY, WCSD, and the malicious prosecutors. The last case, the Arnold Garza case, starting in early 2010, was so replete with corruption that it led to the immediate retaliation against BARNES that actually began during the time BARNES was representing Arnold Garza.

37.     In order to demonstrate the habit, practice, and custom of WILLIAMSON COUNTY and its law enforcement officers and prosecutors, the Arnold Garza case is relevant because the same tactics were used against BARNES as were used against Arnold Garza and others. The Round Rock Police Department acted illegally and unconstitutionally on December 14, 2009 when they unlawfully entered the habitation of Arnold Garza without a warrant or probable cause in violation of United States

---

pattern will be amply established and there will be no doubt in any objective persons mind that these were not isolated incidents, but were calculated, concerted efforts to run BARNES out of town and discredit her.

37

Constitution Amend. 4, 14 and Texas Constitution, Art. I § 9. Arnold Garza was initially thrown on the floor in his own home and told he was being arrested for "failure to ID;" then when they took him to jail and discovered that he had given his correct name and date of birth, they charged him with the vague and overly broad favorite, "interference with the duties of a police officer."[7]

38.     WILLIAMSON COUNTY Attorney's Office, (RYE, HOBBS, and Melissa Hervey, Justice of Texas Court of Criminal Appeals Barbara Hervey's daughter), consistent with their habit, practice, and custom maliciously prosecuted Arnold Garza, and BROOKS blatantly violated Arnold Garza's constitutional and legal rights, as is her custom, practice, and habit. BROOKS pulled out the play book to protect the county from civil liability when rights are violated, and threw Arnold Garza in jail for six months for "contempt of court" then court appointed a lawyer so she could institute C.C.P. art. 46B and thereby incarcerate him indefinitely without any semblance of due process until he is ready to plead guilty to gain his freedom.

39.     After the commitment order was entered, BARNES was retained and filed a motion to recuse BROOKS. The case should have been transferred to one of the other two county judges; however, BROOKS, as is the custom and habit of judges wanting to throw a case, immediately caused Judge Stubblefield's secretary to abuse his rubber stamp and assign a "visiting judge" to the case. The "visiting judge" selected was not even on the approved list for appointments in this administrative district. This "visiting

---

[7] Of all the frivolous and false arrests and malicious prosecutions heaped on BARNES since 1997, "interference with the duties of a public servant" has been the only conviction because you can literally convict anyone under that statute. That malicious prosecution was by RYE as well. BARNES was actually arrested for "evading arrest and refusal to sign the traffic citation" but when those allegations proved to be false, the charges morphed into "interference with duties" just like Arnold Garza's false arrest was transformed.

judge" was selected because he was a close family friend and political cohort of Justice Barbara Hervey and her daughter, Melissa Hervey, was the prosecutor maliciously prosecuting the case with HOBBS and RYE.

40.     BARNES has a long contentious history with HOBBS and RYE because they engage in overt illegal, unethical, and retaliatory activities and have for years.[8] BARNES has repeatedly reported their abuses of office, to no avail.  All actions set forth herein by RYE were supervised, directed, and ratified by HOBBS.

41.     BARNES exposed the abuse and constitutional violations, and corruption of the "forensic expert" and got the commitment order reversed because it was nothing but a fraudulent ruse.  BARNES was targeted when she represented Arnold Garza and exposed the criminal conspiracy and illegal combination headed by RYE, HOBBS, and the WILLIAMSON COUNTY Attorney's Office and BROOKS, which then, in retaliation, turned on BARNES and her family.  Thereafter, at the request and instigation of HOBBS, RYE, BROOKS, and others, MCDONALD, MCCABE, BRADLEY, the WILLIAMSON COUNTY District Attorney's Office, and the WCSD directly participated in the criminal conspiracy to cover-up for the wrongdoing or criminal activity of RYE, HOBBS, Melissa Hervey, WILLIAMSON COUNTY Attorney's Office, and BROOKS on behalf of WILLIAMSON COUNTY.

42.     Even though BROOKS was technically out of the case, she and her staff deliberately defamed BARNES, controlled the case because they controlled the settings

---

[8] BARNES has been involuntarily separated from her files and records, but when those records can be accessed, BARNES has several incidents and patterns of illegal and unethical conduct by these two prosecutors spanning years—they worked under the prior County Attorney, Eugene Taylor, and they have continued in their same positions under the new County Attorney, who may be the next District Attorney, replacing BRADLEY, who recently lost in the primaries to Jana Duty.  RYE had been involved from the very first false arrest of BARNES in 1997 and the ensuing civil litigation arising out of that false arrest and

and the "visiting judge" and undermined the case. BROOKS ordered the WCSD deputies who were assigned to courthouse security to follow and stay with BARNES and Arnold Garza at all times. Ever since BROOKS instituted that protocol to harass, intimidate, and oppress BARNES, she has not ever been allowed into the WILLIAMSON COUNTY Courthouse without being escorted everywhere by a WCSD deputy. The WCSD deputies have been ordered to stay with BARNES and watch and monitor her for the entire time she is in the courthouse, in violation of United States Constitution, Amends. 1, 4, and 14, as well as Texas Constitution, Art. I, §§ 3, 3a, 9, 13, 19, 27, and 29. That practice and policy has continued unabated ever since the Arnold Garza case, and has substantially impaired BARNES ability to practice law.

43.     RYE unethically represented to the "visiting judge" at two separate pre-trial hearings that there were no video or audio recordings to produce. This is the habit, practice, and custom to withhold evidence that is clearly exculpatory (there were at least twelve audio-video recordings and RYE finally produced 6 of them two days prior to trial after BARNES served the subpoena *duces tecum* on the officers to appear and bring the audio-video recording from their patrol car and on the dispatcher to bring his recording—had BARNES not subpoenaed them, RYE never would have produced them); RYE also failed to disclose an exculpatory civilian witness who also had exculpatory photographs, suborned perjury by the arresting officer, tampered with the witnesses by instructing the officers to ignore the subpoenas BARNES served on them such that the main witnesses were "out of town" during the trial and the "visiting judge" would not issue a writ of attachment.

malicious prosecution, and was the prosecutor in the most recent Arnold Garza trial, out of which this instant false arrest and malicious prosecution arose.

44.     On May 3, 2010, two days prior to trial, while BARNES was back in the WILLIAMSON COUNTY Attorney's office again attempting to get the discovery the judge had ordered RYE to produce weeks before, RYE and an armed male escort used their position with the County to gain the private security code to the front gate to BARNES' residence.  They intentionally and knowingly trespassed on BARNES' private property with a loaded shotgun and firearm, despite bold "PRIVATE PROPERTY NO TRESPASSING Violators Will Be Prosecuted" signs clearly and visibly displayed. BARNES was not home, but they alarmed and frightened BARNES' minor child because they were snooping around the house with a sidearm and loaded shotgun.

45.     In keeping with the habit, practice, and custom of WCSD, WILLIAMSON COUNTY, and its prosecutors, the deputies of WCSD will send out communications defaming BARNES and contact other local law enforcement agencies and the law enforcement officers at the schools where BARNES' children are in attendance to harass and intimidate BARNES personally and through her children.   This habit, custom, pattern, and practice have been going on for over a decade and BARNES' children have been harassed and traumatize repeatedly over the years.  Just in connection with the Arnold Garza case, BARNES' minor child was confronted by two men he did not know at the house after school on Monday, May 3, 2010; these two men were at the house, which is secluded and secure behind a locked security gate, and they were armed and displaying the sidearm and the loaded shotgun; and they were in a civilian car, in civilian clothes, and looking for his mother.  On Friday, May 7, 2010, while the trial was in progress, BARNES minor son was handcuffed at school in front of his friends and teachers, and had to be rescued by the school's assistant principal.  On Saturday, May 8,

41

2010, BARNES' minor son and his minor friends were frightened and alarmed by three marked WCSD units surrounding the home with weapons drawn and almost witnessed his mother shot to death—the first time he was forced to witness WCSD pull loaded weapons on his mother was when he was only 7 years old and it severely traumatized him: he has witnessed his mother being abused and subjected to false arrests and violence at the hands of uniformed WCSD deputies ever since he was 2 years old. On Monday, May 10, 2010, the same officer who had handcuffed him on Friday, May 7, 2010, and 4 other officers arrested BARNES' minor son at school in front of his friends and teachers. These WILLIAMSON COUNTY law enforcement officers began stalking him and filing frivolous criminal charges against him like "disruption of class," "curfew" violation even though he does not reside in the city limits, and "possession of drug paraphernalia" when they searched a car he was a passenger in and found something down in one of the seats, and did not charge the driver or owner of the vehicle or any of the other passengers, and would not even let him see what it was they found. They stopped him and searched him and his vehicle constantly, made him miss lunch at school one day claiming they saw "a joint" in his car—when he went out and unlocked the car door for them to search his car, it was a large grass bur stuck on his friend's backpack. Yet, they did not go into the school and retract the defamatory statements made to school personnel. They warned parents to keep their children away because he was "bad news." They had circulated rumors that ATF was going to raid the BARNES' residence—this was the rumor for weeks prior to RYE entering BARNES' property and the unwarranted deadly force raid by WCSD on Saturday, May 8, 2010.

42

46.     The Arnold Garza case was tried from May 5-7, 2010, and very vocal complaints were made throughout the trial by BARNES concerning RYE's criminal, dishonest, and unethical activities, including his criminal trespass to BARNES' residence on May 3, 2010.  On May 8, 2010, BARNES home was surrounded by seven or eight armed WCSD deputies, who were crouched down with their weapons drawn and pointed at BARNES through her open windows.  The deputies would not tell BARNES why they were there or if they had a warrant.

47.     This malicious and retaliatory armed home invasion was at approximately 7:30 or 7:40 p.m. on Saturday evening, May 8, 2010.  BARNES was subjected to a vicious unlawful restraint, search, and seizure, by WCSD, HERNANDEZ, RICHTER, TRAVIS, NEWELL, HUGHEY, BOGAN, FOSTER,, WAGGONER, FOSTER, DE LA VEGA, BRINKMANN, and/or BARTZ because SCHEFFLER with utmost malice directed them to BARNES' residence.

48.     WCSD had no warrant.   There was no probable cause to surround BARNES' home and endanger BARNES and minor children, and this gross violation of the 4th amendment and Art. I, § 9 of the Texas Constitution was done intentionally, deliberately, knowingly, and with malice.  BARNES was not allowed to leave and keep her social plans for that evening, and had to call others for assistance.

49.     BARNES' habitation is 1.7 miles from the front gate, which can only be accessed with a private, secret, and confidential security code, and which is clearly posted with a bold red "PRIVATE PROPERTY NO TRESPASSING Violators Will Be Prosecuted" sign, and over .6 miles from when the pavement ends so it is clearly a private road, and then through another secondary gate with fencing around the 30 acres of private

residential area.  There is no way they did not know that this was private property and that they were engaging in criminal trespass without a warrant, probable cause, or exigent circumstances.

50.     Not only was the property clearly posted as "PRIVATE PROPERTY NO TRESPASSING, Violators Will Be Prosecuted," it was clearly private property with a fence and secondary gate, and these criminal actors knew that they were restricting BARNES' movement without BARNES' consent so as to alarm BARNES and interfere substantially with her liberty and this restraint and seizure was accomplished by force, intimidation, and threatened use of deadly force.

51.     BARNES repeatedly advised these criminal actors that if they did not have a warrant that they must immediately leave the private property and they failed and refused to do so and held BARNES hostage for 20 minutes before a downpour of rain sent them to the three WCSD vehicles that they had blocking the driveway.  BARNES was forced to retreat upstairs to escape their deadly conduct and threat of being caught in a hostile cross-fire, and called 911.  No assistance ever came in response to the 911 call and the dispatcher employed by WCSD failed and refused to disclose whether or not they had a warrant and failed and refused to instruct the criminal actors to leave, or cease and desist from this criminal and unconstitutional activity.  These criminal actors knew they would have BARNES trapped and surrounded and that no one would come to BARNES' aid or assistance because the WCSD would be the only entity answering a 911 call from BARNES—this has been the habitual pattern ever since 1997 when BARNES called 911 for assistance during the first false arrest by WCSD.

52. The recordings and reports later proved that two of the deputies had already planted the excuse to kill BARNES by falsely claiming that they heard BARNES "pumping a shotgun" and if it had not been for the sniper looking at BARNES through an upstairs bedroom window with his scope and verifying that she did not have a gun, these deputies were prepared to open fire and to utilize a sniper to kill BARNES. They would have employed the same media frenzy and blamed BARNES for her own death; and as is the habit, practice, and custom because they could count on the STATESMAN, KXAN, KVUE, KEYE, and all the local papers and television stations to simply re-broadcast their deliberate and calculated deceptions and cover-up schemes.

53. No reasonable law enforcement officer could have reasonably believed that this conduct was lawful, and would perforce know that this conduct was unconstitutional in violation of United States Constitution, Amends. 4, 14 and Texas Constitution Art. I, §§ 9, 19 and 29. These rights were well established in 2010 and for at least 15 years prior thereto when Plaintiffs' same rights have been repeatedly violated. These officers knew that they had no warrant and that no valid exception to the warrant requirement applied. The content of the dubious suspicion (SCHEFFLER's malicious misdirection to them to go to BARNES' residence)[9] failed to match the extreme degree of

---

[9] The audio recording recovered from one of the WCSD deputy's vehicle revealed how the WCSD deputies ended up at BARNES' residence on May 8, 2010, instead of at 33 Indian Trail, Liberty Hill, as reported by GITTEL. When the deputy radioed to dispatch that they could not locate 33 Indian Trail, (because they were in Leander, not Liberty Hill), SCHEFFLER interrupted and asked if they were on Indian Trail; when they answered in the affirmative, SCHEFFLER then directed them to BARNES' residence—you go through the neighborhood and when the road ends, cross the river, and "Carolyn Barnes claims to own all that property over there." That was their only "probable cause" to go to BARNES' residence four hours after the alleged "shots" and surround BARNES' residence with weapons drawn. When the tapes were reviewed, there was a four hour delay from the time GITTEL claims to have heard the shots and the time that the WCSD deputies arrived at BARNES' residence, and BARNES was not even home at the time that GITTEL claims to have heard the shots that POPPA assumed were aimed at her. After SCHEFFLER's misdirection to BARNES, no one ever looked for or found the vagrant woman who came out of the pasture near a condemned house at 33 Indian Trail in Liberty Hill, as initially reported by GITTEL. Once the WILLIAMSON COUNTY prosecutor, MCDONALD, met with the WCSD deputies that Saturday, May 8,

45

the intrusion and the serious risk of death posed by the unreasonable conduct of these officers.

54.     On Monday, May 10, 2010, BARNES filed a letter and probable cause affidavit with the WILLIAMSON COUNTY District Attorney and WILLIAMSON COUNTY Attorney, seeking an investigation into all of this criminal activity, and to file criminal charges against RYE's criminal activities surrounding the Arnold Garza trial and the malicious retaliation of WCSD surrounding the residence the previous Saturday.

55.     On Tuesday, May 11, 2010, BRINKMANN called and informed BARNES that he had a warrant for her arrest for Aggravated Assault on a Public Servant. BRINKMANN refused to tell her any details. BRINKMANN has made outlandish and theatrical accusations in the past against BARNES, and BARNES assumed at the time that one of the deputies who stormed her home on Saturday had claimed she drew a weapon or shot at them.

56.     When BARNES arrived at the WCSD on May 11, 2010, she was met by BRINKMANN and BARTZ (this deputy tried for years to bring criminal charges against BARNES accusing her of neglect and abuse of her children and threatened to take BARNES' children from her during the times of intense retaliation). BARTZ took BARNES' keys from her and they led her to an interrogation room.

57.     After a while, BRINKMANN entered the room and started playing his childish deceptive games and told BARNES this outlandish and incredible story that BARNES was standing at her front door talking to a census worker and just suddenly pulled out a gun and starting shooting at her point blank several times. BARNES

2010, and planned the malicious arrest and prosecution, no one care any longer about the truth, they had their desired target, and it was just a matter of tampering with the records, the witness, and manipulating

immediately felt that she was being charged with a murder or that the victim was in the hospital. BARNES knew that no census worker had ever been on her property, so it was clearly a bogus charge from the inception, and it was clear that they knew it was groundless and bogus. When BARNES asked if the victim were dead, they said no; and when BARNES asked if the victim was in the hospital, BRINKMANN said "no, you missed." This was not even credible and BARNES could not even imagine how they concocted such an outlandish story. So, BARNES asked "what would be my motive?" and BRINKMANN sarcastically said "you thought she looked like Dale Rye."[10] BARNES knew right then that this was a malicious charge and retaliation because of BARNES' complaint against RYE for trespassing on her property and gaining access to the security code through the misuse of his position with WILLIAMSON COUNTY.

58. Once again, RYE commits a crime, and rather than investigating and charging him, they fabricate new charges against BARNES. This has been the habit, practice, and custom of WILLIAMSON COUNTY, the WCSD, and the WILLIAMSON COUNTY prosecutors for 15 years.[11] RYE and HOBBS have escaped any accountability

---

the "facts."

[10] BARNES has no idea what GITTEL looks like because WCSD and MCCABE, MCDONALD, and BRADLEY have failed and refused to provide BARNES with a photo or any other information about her accuser; however, if she looks like Dale Rye, she is one ugly woman. Dale Rye is bald on the top of his head, with long, gray, wavy hair surrounding his large bald spot, wears glasses, and walks on his tip-toes. There is no way anyone could look like Dale Rye. However, the WCSD and MCDONALD, MCCABE, BRADLEY, HOBBS, and RYE concocted this outlandish motive that BARNES, due to her severe mental disease, persecutory delusions, and paranoia suffered a complete break with reality and thought GITTEL was RYE and tried to kill her thinking she was RYE! HOBBS participated in a media interview immediately on May 11, 2010 and stated that BARNES was a "disturbed individual."

[11] During the 1999 lawsuit against WCSD and deputies during the first false arrests, the attorney representing WCSD sent an open fax to BARNES' employees advising them that she was crazy and when BARNES' took his deposition to find the basis for the defamatory per se statements made to BARNES' employees, he brought in the DSM-IV and diagnosed BARNES, but could not back up his mere self-serving defamatory statements. This has been the standard operating procedure for these boys ever since that time because they feel they do not have to respond when their corruption is exposed if they can simply dismiss BARNES as crazy, with no credibility. Due to the ingrained "good ole boy" sexual prejudice, this tactic is often effective due to a like-minded audience.

or liability for years of abusive and criminal conduct.

59.     BARNES has been retaliated against ever since the Vanessa Marie Stalling case in 1995 where the deputies planted evidence and perjured themselves and the prosecutor had to dismiss the case in the middle of the trial. BARNES' first bogus false arrest occurred in 1997. BARNES has been arrested over 12 times during the past 15 years, especially after BARNES was unsuccessful in obtaining relief from the courts and redress of her grievances, with a lawsuit against WILLIAMSON COUNTY, WCSD, and deputies in 1999, and another filed in 2002.[12]

60.     On May 11, 2010, at the point where the "interrogation" became childish and nonsensical, BARNES informed BRINKMANN that when he wanted to get serious, she would answer his questions, but she was not going to play games with him. BRINKMANN and BARTZ then informed BARNES she was going to jail and that they were already in the process of searching her home. BRINKMANN refused to provide BARNES with a copy of the arrest warrant or search warrant. BARNES requested a copy of the warrants and probable cause affidavit repeatedly for over a week, and her attorney also began requesting copies, because they were never filed of record.

61.     BARNES was then placed in jail on May, 11, 2010,[13] and not allowed to make any phone calls for five hours while deputies employed by WILLIAMSON COUNTY and the WCSD ransacked her home, vehicles, storage buildings, travel trailers,

---

[12] BARNES cannot access her files or information at this time in order to provide the details from the prior false arrests, abuses, and lawsuits, however, BARNES incorporates all those arrests, charges, discovery in those cases, and the prior litigation against WILLIAMSON COUNTY, WCSD, employees of WILLIAMSON COUNTY, and deputies of WCSD, by reference the same as if set forth at length in order to prove the habit, practice, custom, policy, and procedure of WILLIAMSON COUNTY, WCSD, and certain prosecutors and certain judges, and to prove the intent, motive, and malice of these Defendants. *See* Paragraphs 1-5 in the Judicial Notice part of Section II above.

[13] It is over two years later and BARNES is still in forced captivity, stripped of all her legal rights, with no recourse in violation of the open courts doctrine.

and barn, taking what they wanted, without a warrant.

62.     About two hours later, a deputy came and took BARNES back into the interrogation room and demanded the combination to her private and business safe, which would have significantly compromised attorney-client privilege with her clients and invaded her right to privacy and right to be left alone.  BARNES stated that she would go with the deputy to open the safe for them, but that she had to be present when they searched it.  BARNES had nothing to hide, but had to protect the privacy and privilege of her clients.  WCSD refused to let BARNES go open the safe so they could search it in her presence.  Unlawfully and without a warrant, WCSD, HUGHEY, BOGAN, FOSTER, WAGGONER, NEWELL, RICHTER, TRAVIS, HERNANDEZ, BRINKMANN, BARTZ, DE LA VEGA, SCHEFFLER, HOBBS, RYE, BRADLEY, MCDONALD, and MCCABE disrespectfully and forcefully removed the large safe from BARNES' residence, scraping off the paint and destroying the tumbler in the process and threw it in the back of an open truck bed.  These WILLIAMSON COUNTY employees knew they had no warrant to search the safe or to remove the safe from BARNES' residence, and they also knew that BARNES had voluntarily agreed to open the safe for them and allow them to search it, if it was done in her presence.

63.     WILLIAMSON COUNTY, WCSD, HUGHEY, FOSTER, BOGAN, WAGGONER, NEWELL, RICHTER, TRAVIS, HERNANDEZ, BRINKMANN, BARTZ, DE LA VEGA, SCHEFFLER, HOBBS, RYE, BRADLEY, MCDONALD, and MCCABE knew they had no warrant to search BARNES' vehicles, buildings, storage units, barn, or travel trailers; however, they used the keys that BARTZ and BRINKMANN took from BARNES at the jail to unlock and ransack her Jeep that was

49

parked in the WILLIAMSON COUNTY parking garage; then, took the keys and entered her locked residence, all of her locked vehicles at the residence, her locked barn, locked storage units, locked buildings, and locked travel trailers. On May 11, 2010, the law was clearly established that deputies could not enter and search locked vehicles, buildings, barns, storage units, or travel trailers without a warrant; nevertheless, in keeping with the habit, practice, custom, and policy of WILLIAMSON COUNTY and the WCSD, they proceeded with a conscious disregard and deliberate indifference to the constitutional rights, safety, and welfare of others. During this unauthorized search, the said deputies took whatever they wanted from these locked premises, and caused damages and destruction to the premises and contents of the premises. This was an unreasonable search and seizure and it was conducted with utmost malice and deprived BARNES of her right to privacy and to be left alone.[14] This search was conducted like a general warrant for an invasive fishing expedition. Further, when they were through, they left everything wide open and unlocked.

64. BARNES had a reasonable expectation of privacy in her locked automobiles, her locked safe, her locked travel trailers, and her locked buildings on her property. It was not reasonable for these officers to search these areas without a warrant and to remove the safe from her home and other items of personal property from her locked buildings and automobiles without a warrant while holding BARNES in jail, and refusing to serve her with a copy of the arrest warrant or the search warrant or probable

[14] Hours later after the search and ransacking was concluded, BRINKMANN came into the jail and told the jailers that the search was done and that they could turn the phones back on. The WCSD had turned off the phones to prevent BARNES from making any calls for over 5 hours while they conducted the search, so that there would be no witnesses to their crimes. BARNES was not even allowed to call her minor son to warn him and his friends, so that they would not be in harm's way with the property and residence swarming with armed and hostile WCSD deputies and prosecutors.

50

cause affidavit.  Further, the alleged arrest and search warrants obtained after the search were not based on probable cause, but on a false and fraudulent probable cause affidavit (signed by BRINKMANN and issued with a view toward creating media sensationalism rather than the truth); were not obtained from a neutral and detached magistrate; and did not specifically describe the things to be looked for, but allowed a general fishing expedition.

65.     These officers could not have reasonably believed that their conduct was consistent with clearly established constitutional rights and the case law interpreting same.  Mere suspicion, animosity or hostility, and/or maliciously coached accusations cannot substitute for probable cause.

66.     There was never any impartial intermediary that intervened to break the chain of causation—no neutral and detached magistrate, and no independent review by a district attorney because they were involved with the deputies from the inception and during the conspiratorial "investigation" phase where MCDONALD was physically present at the Cedar Park Annex when the WCSD deputies met on Saturday, May 8, 2010, to plan this bad faith and malicious "investigation" and arrest, when they concocted a "crazy" motive for media sensationalism, and malicious prosecution.  The prosecutors were involved from the inception of this bogus "investigation" which consisted of tampering with the governmental records and reports to make it look like BARNES was the perpetrator and the shots were fired at her residence, tampering with the witnesses, and manipulating GITTEL to fabricate accusations and identify BARNES from an intentionally suggestive photo array.  No reasonable investigation would have resulted in the creation and fabrication of a felony crime when none was initially reported, especially

when it would require a criminal trespasser (GITTEL) to be absolved of her crime and to prosecute the landowner (BARNES) contrary to the clear intent of the Castle Doctrine. No reasonable deputy or prosecutor, acting in good faith, would ever conclude that BARNES perpetrated this crime or that a crime was committed, based on the initial report and actions of GITTEL and POPPA.[15]

67.    GITTEL claimed that she encountered the vagrant woman with a revolver coming out of a pasture near a condemned house at 33 Indian Trail in Liberty Hill around 3:45 p.m., and that she called POPPA from her cell phone at 4:10 p.m. to arranged to meet with him at Spoons Restaurant.  At 5:20 p.m., POPPA called 911 to report shots being fired as a requirement on the printed from for his report to the Census Bureau, and GITTEL was heard in the background with him when he made the call.  (The WCSD showed up at BARNES' residence with weapons drawn at 7:30 or 7:40 p.m.)  Since POPPA was at the Spoons Restaurant in Leander with GITTEL when he made the call from his cell phone, the call went to the Leander Police Department, and was then transferred to WCSD.  The initial report was that GITTEL had gone to 33 Indian Trail, Liberty Hill, Texas not 419 Indian Trail, Leander, Texas (BARNES' residence). GITTEL initially reported that she heard gunshots as she left, she did not say that she was

---

[15] It is a fact that GITTEL had a cell phone on her because she called POPPA, according to her account, at 4:10 p.m. to arrange to meet with him at the Spoon's Restaurant.  Despite discovery requests and a court order directing MCCABE, MCDONALD, and BRADLEY to produce GITTEL's cell phone records, the Defendants continue to fail and refuse to produce these exculpatory records.  If GITTEL had a cell phone on her and she was really being shot at and in fear of her life, why did she never call 911?  These same malicious prosecutors also continue to fail and refuse to produce the print out from the Census Bureau and the map showing the location where GITTEL was scheduled to be on May 8, 2010, despite a court order to produce this evidence, especially when GITTEL and POPPA had these in their hands on May 8, 2010 when they met with HERNANDEZ.  No reasonable investigator would fail to make copies of these documents and preserve this crucial evidence.  These documents are clearly exculpatory because they will show that GITTEL was never sent to BARNES' residence at 419 Indian Trail in Leander, and the map certainly did not direct her to BARNES' property or residence.  No reasonable "investigator," deputy, or prosecutor, acting in good faith would fail to preserve this exculpatory evidence or refuse to produce it.  This is the

"shot at;" however, when the dispatcher asked POPPA if the shots were fired at GITTEL, he responded "well, that's the assumption, if you hear shots, you assume they're fired at you." So, speculation, conjecture, and surmise by POPPA, (who was not even there), when mixed with hatred and malice, is massaged into an absolute beyond a reasonable doubt fact to convict someone of a first degree felony and destroy their life and reputation. No reasonable investigator, whether a deputy or prosecutor, would have acted in this manner. Also, GITTEL initially stated that the house was a "condemned" house "with everything pulled outside like it was being remodeled" when BARNES home was built new in 2004; and she stated that the woman, who may have been a "vagrant," came "out of a pasture," not out of the house. After WCSD got involved, everything got so tampered with, manipulated, and twisted, that the truth may never be known.

68.    Around 7:30 or 7:40 p.m., four hours after the alleged incident, WCSD, including HERNANDEZ, who had met with GITTEL and POPPA at the Spoons Restaurant, RICHTER, TRAVIS, and others, were attempting to locate 33 Indian Trail in Leander, not Liberty Hill as initially reported. When they could not locate 33 Indian Trail in Leander, they called dispatch and asked for better directions from GITTEL; but, before they could get a response, SCHEFFLER, as is his habit, practice, and custom, intervened and directed the deputies to go to BARNES' residence. SCEFFLER asked if they were on Indian Trail, and when they responded in the affirmative, SCHEFFLER directed them to go through the neighborhood, over the river, and "Carolyn Barnes claims to own all that property over there." That misdirection and the long-standing

___

habit, practice, custom, and policy of Williamson County and its law enforcement agencies and prosecutors.

malice was the only "probable cause"[16] for the WCSD, HERNANDEZ, TRAVIS, RICHTER, and other deputies, to travel a mile away and surround BARNES' residence with their weapons drawn and pointed at BARNES. They had no warrant, there were no exigent circumstances since the alleged incident had occurred four hours previously, and they had no legitimate probable cause because neither the mere speculation, conjecture, and surmise of POPPA nor the malice of these deputies and SCHEFFLER (who has been involved for a decade with numerous incidents of harassment, trespass on BARNES' private property, assaults, and bogus charges filed against BARNES) is not probable cause.

69.     While BARNES was held in jail for three days, WCSD could not find one shred of evidence to corroborate this concocted artifice.[17] Rather than admit the obvious, WSCD, WILLIAMSON COUNTY, its Sheriff, WILSON, its deputies, HUGHEY, DE LA VEGA, BRINKMANN, BARTZ, BOGAN, FOSTER, WAGGONER, NEWELL, HERNANDEZ, TRAVIS, RICHTER, and its malicious prosecutors, MCCABE, BRADLEY, MCDONALD, proceeded nevertheless with a conscious disregard and deliberate indifference to the rights, safety, and welfare of Plaintiffs. They immediately began their usual delay tactics, hiding the evidence and witnesses, and bulling, threatening, and intimidating BARNES and her attorney.   Initially, MCCABE, BRADLEY, and MCDONALD absolutely refused to produce a copy of the warrants, just as BRINKMANN, BARTZ, and WCSD had done. These prosecutors absolutely refused

---

[16] Malice, speculation, and suspicion are not probable cause to resort to deadly force to invade a private habitation and engage in criminal trespass.

[17] At the time of these retaliatory charges, the State was well aware of the fact that Arnold Garza and BARNES were material witnesses against HOBBS, RYE, BROOKS, and Melissa Hervey and others acting in concert with them, including numerous law enforcement officers and two court appointed persons who also violated the laws and Constitution of the United States and Texas.

to produce the exculpatory evidence even after the court ordered them to do so. MCCABE, BRADLEY, and MCDONALD refused to disclose the location of the safe or allow BARNES access to the content of her safe until May 18, 2010, despite numerous requests.[18]  This was an unreasonable invasion of privacy and it had nothing to do with the alleged offense.  After ransacking, all of BARNES vehicles, travel trailers, barn, buildings, storage units, and residence, they were not ever able to locate the revolver that GITTEL described in great detail, or any handgun at all, no bullets, no shells, no shoe prints on over .6 of a mile of dirt road to prove she was there, or any other evidence to corroborate this malicious fabrication.

70.    The probable cause affidavit presented by BRINKMANN was not based on personal knowledge and contained knowingly false and grossly misleading statements of material fact.  BRINKMANN's false probable cause affidavit left the reader with the clear impression that GITTEL had gone to BARNES' residence to speak with her as part of her duties for the Census Bureau (that proved not to be true) and that BARNES pointed a handgun directly as GITTEL and fired five shots at her; when this was not what was initially reported by GITTEL.  GITTEL's initial report did not have any of the necessary elements of a crime under the current law after the passage of the Castle Doctrine.  No reasonable law enforcement officer or investigator would have reasonably believed that a felony crime had been committed, especially when MCDONALD, a WILLIAMSON COUNTY assistant district attorney, was present during the planning

_____

[18] MCCABE, BRADLEY, MCDONALD, WILSON, WCSD, HUGHEY, DE LA VEGA, BRINKMANN, BARTZ, BOGAN, FOSTER, WAGGONER, NEWELL, HERNANDEZ, TRAVIS, RICHTER, and other deputies whose names will appear in the records that BARNES is unable to access, failed and refused to return BARNES' safe to her or allow her to see the contents. BARNES was forced to hire four movers to move the large safe back to her home. The safe was significantly damaged, with paint scrapped off the sides where they just slid it on the gravel and concrete, the tumble was twisted, bent, and unusable from

55

and discussion stage of the "investigation" to render legal advice to the deputies. Even if these events had occurred in the city limits rather than rural acreage, the allegation of "shots being fired" would have been a misdemeanor crime. This alleged probable cause affidavit amounted to making a false statement of material fact under oath, in violation of Sections 37.02, 37.03, 32.46, 36.04, and 36.06 of the Texas Penal Code in order to shield fellow law enforcement officers and public officials from prosecution in violation of Section 38.05 Texas Penal Code.[19] This intentionally false and misleading probable cause affidavit led to another media frenzy and defamation *per se* by KXAN, KVUE, and KEYE. These media Defendants not only re-published the false and inflammatory probable cause affidavit, they repeated the false and fraudulent probable cause affidavit of TUMLINSON; they also, published highly prejudicial comments and information maliciously fed to them by HOBBS in his efforts to cover-up the criminal activity he and RYE engaged in and to deprive BARNES of her constitutional rights; and they falsely stated defamatory *per se* statements claiming that BARNES' neighbors were afraid of her because she had shot at them before, when this is absolutely not true, and this was all published to deprive BARNES of due process, and fair trial, and presumption of innocence. "ANONYMOUS" also repeatedly made false statements of material fact on the Internet in order to deprive BARNES of a fair trial and the presumption of innocence.

71. As is the habit, practice, custom, and policy of WILLIAMSON COUNTY and its malicious prosecutors, just as in the Vanessa Marie Stalling and Arnold Garza

---

where they forced their way into the safe. They also photographed the contents of the safe, but at all times failed and refused to provide copies of the photographs to BARNES or her attorney.

[19] This subterfuge had the intended and actual outcome of directing attention away from the prosecution of the law enforcement personnel and RYE and HOBBS, for their criminal activity during the Arnold Garza case, where felonies were committed, as well as gross violations of his 4th amendment rights and liability under 42 U.S.C. § 1983.

cases, (and many in between including the David Morton, Dennis Jarowzewski, Randy Gourley, Bobby Blackwood, Tres Stephenson, and Sarah Helton cases),[20] they continued to fabricate a case and maliciously prosecute an innocent person, rather than admit a mistake and apologize. These Defendants also have the habit, practice, and custom of over-charging a crime by falsely alleging a felony when no felony applies, in order to fraudulently get merits and pay-raises for making felony arrests, and invoke the district court's jurisdiction and maximize the harm, fine, and sentence. The District Court never had legitimate jurisdiction over this matter or over BARNES because the facts reported by the purported victim do not support a felony offense.

72.     When BARNES was finally able to post the excessive bond to secure her release—$50,000 surety bail bond—BARNES was not released; but was informed that TRAVIS COUNTY had a hold on her and a warrant out for her arrest. BARNES had not violated any term or condition of her release on bond from the bogus assault charges out of TRAVIS COUNTY—the TUMLINSON case—and had appeared for every hearing. There was absolutely no good faith reason for TRAVIS COUNTY to have a warrant out for BARNES' arrest, and this was the result of the conspiracy between TCSD, WCSD, HOBBS, RYE, BROOKS, BRADLEY, MCCABE, MCDONALD, BRINKMANN, FOSTER, SWAIM, ESCAMILLA, MORGAN, SAENZ, GUERRERO, and various deputies and county employees in Williamson and Travis Counties.

---

[20] BARNES has many other names and events in her files and records, spanning at least 15 years, but it is difficult to remember every name and incident without being able to access the records. There was a young lady, I believe her name was Stacey, who Sulak had arrested prior to the first false arrest of BARNES for "disorderly conduct" because he did not like her bumper sticker. Had WILLIAMSON COUNTY and WCSD timely disciplined or re-trained or fired Sulak, then he would not still have been out on the streets with the opportunity to pull BARNES over in 1997 and turn his ignorant "mistake" into another false arrest, false imprisonment, and malicious prosecution. Had WILLIAMSON COUNTY and WCSD properly trained, supervised, and disciplined their deputies, BARNES and her children would not have

73.    On May 14, 2010, WCSD transported BARNES to TCSD, where she was held and forced to post another $50,000 surety bail bond.  Two bogus charges and $100,000 in bail when BARNES is a landowner, tax payer, been practicing law for over 25 years, and has minor children in school—she was absolutely no flight risk and neither of these governmental "victims" had a scratch, mark, or bruise on them—just a mere accusation with all evidence being exculpatory in nature.  No reasonable deputy, sheriff, or prosecutor would act in this manner.  BARNES did not receive the full benefit of her bargain under any one of these surety bail bond contracts due to the unilateral breach by Defendants when they failed to follow the constitutions and laws of this State and Nation.

74.    Upon BARNES release after posting the additional $50,000 bond in TRAVIS COUNTY, which was excessive and violated equal protection under the law, it was discovered that there was no motion to revoke the bond because the TRAVIS COUNTY District Attorney had already decided not to prosecute the felony allegations by TUMLINSON.  The TRAVIS COUNTY District Attorney claimed to have nothing to do with the revocation, warrant, and increase in bond amount.  MORGAN, SAENZ, and GUERRERO, who were employed with TRAVIS COUNTY Pretrial Services, did it on their own, without any legal authority—none of these three are lawyers or prosecutors. MORGAN had communicated with "someone in WILLIAMSON COUNTY" who advised them to revoke and increase the bond, so MORGAN had SAENZ use GUERRERO's rubber stamp to sign the document to revoke and had the judge just sign off on the warrant assuming that the report was accurate that BARNES had violated a term or condition of the Pre-trial release, when she had not.  The Judge denied signing the

endured 15 years of hell and retaliation.  Sulak did not last long, but the malice his actions caused continues unabated and unresolved.

warrant because he was not ever made aware of the situation, and it is still unclear if the purported signature is his or was obtained by the use of another rubber stamp. When BARNES confronted the Judge, he denied knowledge of it; when BARNES confronted GUERRERO, she denied knowledge of it, but did admit that it was her signature from her rubber stamp. GUERRERO pulled the copy of the pretrial release contract after admitting that she did not know what the terms and conditions were, even though she was in charge of that office. After reading the terms and conditions of the pretrial release contract, she admitted that BARNES had not violated any term or condition. However, BARNES was still out another $5,000 in cash due to this "mistake" or "oversight" by GUERRERO's office, and she stated she would look into it. BARNES never heard a response, despite notices to TRAVIS COUNTY, TRAVIS COUNTY Attorney, ESCAMILLA, and notices to the risk manager for TRAVIS COUNTY.

75.     It was clear that WILLIAMSON COUNTY and TRAVIS COUNTY were conspiring and coordinating their respective prosecutions and pretrial tactics. BARNES filed her written complaints with TRAVIS COUNTY on May 27, 2010 and placed them on notice of the claims for violation of 42 U.S.C. Sections 1983 and 1985.

76.     BARNES had contacted the Attorney General's Office again with respect to the corruption and crimes committed by WILLIAMSON COUNTY employees during the Arnold Garza case, and had received a response instructing her to contact the FBI and report this activity. On May 27, 2010,[21] when BARNES arrived for the meeting, the FBI office in Austin took BARNES' driver's license and ran it. Then, rather than meet with BARNES, the agent called WILLIAMSON COUNTY, WCSD, and the prosecutors due

59

to the "caution flag" that WILLIAMSON COUNTY and WCSD placed on BARNES' driver's license years ago, claiming that she is a 10-96, dangerous, assaults cops, etc.

77.    Just three hours after the visit to the FBI, MCCABE, BRADLEY, MCDONALD, HOBBS, DE LA VEGA, WILSON, WCSD, and WILLIAMSON COUNTY retaliated against BARNES by filing a motion for mental examination to determine sanity, competency, and mental retardation and a motion to increase bond for filing a "false police report" and claiming she was "re-offending." No reasonable deputy or prosecutor would have believed that BARNES had filed a false police report or that she was "re-offending" just because she went to the FBI to report their abuse of office and malicious abuse of process.    These motions were filed to discredit and punish BARNES for communicating with the FBI agent.

78.    There was no good faith or bona fide basis for these reckless and intentionally defamatory accusations.    WILLIAMSON COUNTY, BRADLEY, MCCABE, and MCDONALD presented no sworn testimony by counsel for BARNES to support these wild and groundless accusations.[22] WILLIAMSON COUNTY, BRADLEY, MCCABE, and MCDONALD could not show any "recent, severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant" as required by the standard in this area.    WILLIAMSON COUNTY could not present any evidence that would support a bona fide doubt[23] as to BARNES' competency or sanity simply for reporting

---

[21] BARNES had also served her notice of claim against TRAVIS COUNTY on May 27, 2010 with respect to the TUMLINSON assault.   ESCAMILLA and SWAIM were representing TRAVIS COUNTY in receiving the claim and in resisting the open records and FOIA requests from BARNES.

[22] Further, counsel for BARNES had a sworn affidavit on file proving these malicious bad faith allegations were not true.

[23] The Court of Criminal Appeals has defined a "bona fide doubt" as "a real doubt in the judge's mind as to the defendant's competency." *Fuller v. State*, 253 S.W.3d 220, 228 (Tex.Crim.App. 2008).   The sum total time of dealing with BRADLEY, MCCABE, MCDONALD, and SHAVER will be shown in the transcript because BARNES had no other dealings with them off the record; so the jury will be able to judge for

the criminal activity of these coconspirators. This form of retaliation would have an impermissible chilling effect on the Constitutional rights of citizens to seek redress of grievances and to report corruption by elected officials, law enforcement officers, and other governmental employees.

79.    BRADLEY, MCCABE, and MCDONALD went to CARNES, *ex parte*, and immediately obtained a court order ordering Dr. Burrows to examine BARNES for sanity, competency, and mental retardation, even though BARNES had not ever raised a sanity defense or had any trouble whatsoever communicating with her attorney. Dr. Burrows was the same forensic psychologist who had fraudulently found Arnold Garza incompetent to stand trial before his family retained BARNES, and who then flip-flopped and found him competent to escape cross-examination by BARNES. Both BARNES and her attorney immediately filed a response and motion to set aside the *ex parte* order, which was entered with malice by CARNES to further aid, assist, and abet the malicious prosecution.

80.    On June 4, 2010, RICHTER, SCHEFFLER, and 6 other WCSD deputies trespassed onto BARNES' private property again even though both gates were locked and clearly marked Private Property No Trespassing. When BARNES objected to them coming thru her locked gate and trespassing, and she asked them to leave her property. They looked her in the face and said "NO!" Then, they threatened to arrest BARNES if she did not get in her house and stay there. SCHEFFLER even had a helicopter in the air circling BARNES' residence real low with a bright spot light shining in her home and over her property after midnight, and these Defendants would not allow BARNES'

---

themselves if BARNES' conduct in court supported a "real doubt in the judge's mind" about BARNES' competency.

friends into the property to assist her in this unwarranted search and seizure, without a warrant. They were clearly intending to terrorize, intimidate, and threaten the occupants of BARNES' residence and disturb the neighbors in order to further malign BARNES' reputation.

81.     On June 7, 2010, BARNES sent another written complaint to TRAVIS COUNTY, including placing them on notice of the violations of 42 U.S.C. Sections 1983 and 1985.

82.     On June 9, 2010, as BARNES was leaving the courtroom following a hearing in the WILLIAMSON COUNTY District Court for the pending felony assault on a public servant case, DE LA VEGA and 7 other WCSD deputies surrounded BARNES in a circle with a video camera and audio recorder, and arrested her again without any charges being on file.   When MCCABE could not obtain the re-arrest of BARNES pursuant to his bad faith motion to increase bond on June 9, 2010, he conspired with HOBBS, BRADLEY, MCDONALD, and DE LA VEGA to arrest her any way on these false charges.   With no information or complaint on file,[24] DE LA VEGA arrested BARNES at the courthouse when she was there pursuant to a notice of hearing in the pending felony case.   The alleged statement of Deputy Martin could not in good faith support a prosecution under Section 37.08 of the Texas Penal Code, in fact no charges had been filed.[25]   Any such prosecution would be clear retaliation and malicious

---

[24] In misdemeanor cases *a capias may be issued only on the request of the prosecution after an information and complaint have been filed charging the defendant with an offense [C.C.P. Arts. 21.22, 23.04].*

[25] In misdemeanor cases a capias may be issued only on the request of the prosecution after an information and complaint have been filed charging the defendant with an offense *[C.C.P. Arts. 21.22, 23.04].* The complaint supporting the information and capias must be made by a credible person and may be sworn to before the district or county attorney or magistrate *[C.C.P. Art. 21.22].* This would represent another act of false swearing with the intent to harm another and further violations of Sections 37.02, 37.03, 32.46, 36.04, and 36.06 of the Texas Penal Code in order to shield fellow law enforcement officers and public officials

vindictiveness by HOBBS and RYE, who just maliciously prosecuted Arnold Garza and violated the laws and Constitution of the United States and Texas to do so. It will be impossible to prove the elements of filing a false police report, the alleged offense for which she was falsely arrested, and WILLIAMSON COUNTY, WCSD, HOBBS, and DE LA VEGA have no good faith probable cause to bring these charges or to threaten these charges. The statements made by Deputy Martin do not constitute a crime and there was no investigation at all as he did not ever complete the report, and there were no statements made by BARNES that were false because every statement was factual and undisputed. That is the reason that WILLIAMSON COUNTY, WCSD, and HOBBS did not have Deputy Martin execute the requisite sworn statement, but had DE LA VEGA, who had no personal knowledge, engage in false swearing to secure a bad faith arrest warrant. By prosecuting BARNES, or threatening to prosecute BARNES, and by arresting BARNES on these false conclusions, WILLIAMSON COUNTY, WCSD, BRADLEY, MCCABE, MCDONALD, RYE, HOBBS, BRINKMANN, FOSTER, DE LA VEGA, BARTZ, BOGAN, HUGHEY, WAGGONER, HERNANDEZ, NEWELL, RICHTER, TRAVIS, WILSON, BROOKS, ANDERSON and CARNES continued to engage in other and further violations of Sections 2.01, 2.03, 37.02, 37.03, 32.46, 36.04, 36.06, 39.02, and 39.03 of the Texas Penal Code in order to shield fellow law enforcement officers and public officials from prosecution in violation of Section 38.05 Texas Penal Code.

---

from prosecution in violation of Section 38.05 Texas Penal Code. A complaint in this form must state a source of knowledge or facts on which the magistrate can make an independent probable cause determination *[see Green v. State, 615 S.W.2d 700, 705-706 (Tex. Crim. App. 1980)* warrant invalid when based on complaint in form of affidavit by sheriff which merely alleged in conclusory terms that he had reason to believe that defendant committed offense; *Young v. State, 776 S.W.2d 673, 677 (Tex. App., Amarillo 1989, no pet)*, which, at best, is what Deputy Martin states.

63

83.     BARNES was thrown back in jail, again, and had to post another bond. Upon her release, she discovered that no charges had even been filed—the arrest warrant was issued at the request only of deputy DE LA VEGA.   Filing a police report is constitutionally protected and the first amendment provides far reaching protection against government censorship of free expression, and the fourteenth amendment extends those protections to State action.   WILLIAMSON COUNTY has no power to restrict expression because of its message, ideas, subject matter, or content. *Police Department of the City of Chicago v. Mosley*, 1972, 408 U.S. 92, 95-96, 92 S.Ct. 2286, 2289-90, 33 L.Ed.2d 212, 216-17.   To allow a prosecutor or deputy to retaliate against BARNES for requesting that a report be filed to fulfill the requirement of the safe manufacturer to repair the damages caused by these Defendants' violations of BARNES' constitutional rights would impermissibly restrict BARNES' 1st amendment rights and right to redress grievances.   The filing of groundless criminal charges against citizens simply for reporting the wrongdoing of these county employees would be unconstitutional and have an impermissible chilling effect on the rights of citizens to redress of grievances and document damages caused by constitutional violations.   The values protected by the Texas and United States Constitutions would not be served if the fear of retaliatory prosecutions effectively muzzled citizens from reporting the criminal activity of County employees causing damages and losses to the citizenry.   The conduct retaliated against is constitutionally protected.

84.     The filing of charges and the threatened charges under Section 37.08 against BARNES as a basis to increase the bond and to request a mental exam is retaliatory and done in bad faith.   Under the facts of this case, constitutional conduct is

64

being retaliated against and there is a long history of animosity or vindictiveness by the WILLIAMSON COUNTY, WCSD, BRINKMANN, BARTZ, the Williamson County Attorney's Office, HOBBS, and RYE towards BARNES. The timing of these charges is also suspect, as is this prosecution coming on the heels of the Arnold Garza case. No prosecutor acting in good faith would have conspired with DE LA VEGA to engage in a false and malicious arrest by aggravated perjury. Clearly, retaliation is a major motivating factor and played a prominent role in the decision to threaten prosecution under Section 37.08 and in using that threat to file a motion to increase the bond in the felony prosecution as well as the Motion to Examine Defendant for Competency and Sanity.[26] These filings are in bad faith and filed solely to continue to fuel the media sensationalism caused by the defamatory and bad faith statements made by HOBBS and FOSTER with a retaliatory and malicious motive and to improperly prejudice the community against BARNES and prevent her from obtaining a fair trial, and impede, disrupt, and obstruct BARNES' ability to represent Arnold Garza.

85. Due to the nature of the conspiracy that was made known to all

---

[26] In an affidavit filed with the court, BARNES stated: "Affiant graduated *magna cum laude* from Texas Lutheran University and the University of Texas School of Law. Affiant has practiced law in Texas for over 25 years. Affiant is very familiar with the habit, practice, and custom of Dale Rye, Dee Hobbs, the WILLIAMSON COUNTY Sheriff's Department, the WILLIAMSON COUNTY District Attorney's Office, and the WILLIAMSON COUNTY Attorney's Office and it is their habit, practice, and custom to cover-up illegal activity by law enforcement and other governmental employees, and to not timely or meaningfully investigate or prosecute the same, and to retaliate against and illegally and unconstitutionally punish those who expose this corruption and illegal activity. The latest threats and acts to maliciously prosecute affiant for filing a false report simply because she reported this criminal activity to outside agencies is beyond the pale. Just for filing a report complaining about the illegal and unconstitutional activity of these governmental employees and elected officials, the WILLIAMSON COUNTY Attorney, the WILLIAMSON COUNTY District Attorney's Office and the WILLIAMSON COUNTY Sheriff's Department have conspired and agreed to file further malicious, groundless, and harassing charges for no good faith reason other than to further harass, embarrass, and humiliate affiant with another false arrest, jail, malicious prosecution, exorbitant bail/bond, and punitive fines without due process or due course of law, and they have filed a motion to increase the bond/bail which is already set high at $50,000, and a motion for a psychological examination to determine mental retardation, competency, or sanity, when no charges have even been filed. The malice by WILLIAMSON COUNTY is shown by the full interview that

participants on Saturday, May 8, 2010, during the planning phase conducted at the Cedar Park Annex with MCDONALD, HERNANDEZ, TRAVIS, RICHTER, BOGAN, HUGHEY, NEWELL, SCHEFFLER, WAGGONER, BRINKMANN, BARTZ, and others in attendance, the consequences that flowed from these malicious actions were reasonably foreseeable.  All conspirators agreed to falsify the police report and records and suppress the clearly exculpatory evidence, and manipulate the alleged "victim." HERNANDEZ falsified the report to state she was dispatched to BARNES' residence at 419 Indian Trail in Leander where shots were fired, rather than the truth—she was dispatched to the Spoons Restaurant by H.E.B. Plus in Leander to take a report from POPPA  and GITTEL because they needed to file a police report in compliance with the Census Bureau's policies and procedures.  The truth is that neither GITTEL nor POPPA ever said that shots were fired at 419 Indian Trail in Leander and they never said that the Census Bureau had sent them to that address or that the Census Bureau had sent them out to talk to or meet with BARNES.

86.     BRINKMANN executed a false probable cause affidavit swearing under oath that BARNES had committed a first degree felony; DE LA VEGA executed a false probable cause affidavit swearing under oath that BARNES had committed a misdemeanor filing a false police report; and MCCABE falsely swore under oath that BARNES was re-offending in order to revoke her bond and hold her in jail without bond. All three of these WIILIAMSON COUNTY employees acted with malice, to inflict pretrial punishment, and in concert pursuant to a conspiracy to harm, injure, and damage BARNES.

---

Dee Hobbs gave to the press as an agent, representative, and employee of the WILLIAMSON COUNTY Attorney's Office and WILLIAMSON COUNTY, Texas."

87.     By June 15, 2010,[27] BARNES and her attorney had filed her response to the motion for mental examination to determine sanity, competence, and mental retardation, along with proof from a forensic psychiatrist and forensic psychologist that BARNES was more than competent to stand trial; and the prosecutor's own routine forensic psychiatrist, Dr. Coons, who makes over $50,000 a year rendering opinions to support the WILLIAMSON COUNTY prosecutors, also agreed that BARNES was competent to stand trial.   The prosecution's case was not materializing as they had planned—the motive concocted by HOBBS, RYE, BRINKMANN, MCDONALD, BRADLEY, MCCABE, and WCSD from the inception of this bad faith prosecution was that BARNES was so out of touch with reality and so paranoid and delusional that she shot at GITTEL thinking she looked like Dale RYE.   During the "interrogation" of BARNES on May 11, 2010, BRINKMANN stated that as the motive, reinforced by HOBBS' statements to the media that BARNES was "a disturbed individual."   The WILLIAMSON COUNTY and TRAVIS COUNTY Defendants, acting in concert and pursuant to a malicious criminal conspiracy, planned to completely discredit BARNES and destroy her reputation and business, then quickly send her away to a mental hospital for the criminally insane so they would never have to prove their knowingly false allegations.   That was the reason for their extensive and repeated efforts to hold BARNES in jail without bond so she could not prepare her defense, conduct discovery,

---

[27] On June 15, 2010, BARNES also filed Notice of her election under Texas Constitution Art. I, § 10 to appear by herself as counsel and through counsel of her choice in the pending felony case. The prosecutors did not ever object to or oppose this notice. BARNES continued as counsel on the case until she was unconstitutionally removed without due process by SHAVER on February 28, 2011, immediately before being thrown into pretrial captivity, without any semblance of due process—where BARNES remains, indefinitely. Ironically, BARNES had sought and obtained this right to dual representation under Texas Constitution, Art. I, § 10 for Arnold Garza. It is a denial of equal protection under the law for one court in WILLIAMSON COUNTY to allow Arnold Garza to enjoy this Constitutionally protected right to dual representation, while another court in WILLIAMSON COUNTY denies BARNES the equal right.

67

run her practice, earn any income, make her house payment, pay her taxes, pay her bills, support her children, or continue paying for experts and her lawyer. That was the reason behind the multiple arrests and multiple, increasing bonds and the reason for filing the motion to determine sanity, mental retardation, and competency. As pointed out in BARNES' response, only the defense can raise sanity as a defense, these malicious prosecutors cannot allege insanity as a motive. No reasonable deputy, investigator, or prosecutor acting in good faith would file and bring a prosecution where the motive entails an allegation that the accused was insane at the time of the offense.

88.    MCCABE, MCDONALD, BRADLEY, WCSD, and DE LA VEGA had the bogus motion to increase bond set for hearing on June 28, 2010. BARNES' son was hit by a speeding car while crossing the street in New York on June 24, 2010, and was in serious condition in the hospital awaiting surgery. However, CARNES, MCCABE, MCDONALD, BRADLEY, WCSD, and DE LA VEGA refused to reschedule the hearing date so that BARNES could travel to be with her son and BARNES was not even allowed to be there while he was in serious pain awaiting the surgery, or for the surgery, or the immediate recovery period due to the malice of WILLIAMSON COUNTY, its prosecutors, CARNES, and WCSD.

89.    On June 28, 2010, BARNES was forced through a hearing on MCCABE's bad faith motion to increase the bond and DE LA VEGA's false probable cause affidavit and false arrest. These Defendants were not able to prove any of the elements of filing a false police report or any other crime, and could support no grounds for revoking the bond or increasing the bond. The malice, hatred, and bad faith was palpable in the

68

courtroom,[28] as the malicious prosecutors struggled to have BARNES thrown back in jail with a bond so high she could not get out.  However, they simply could not prove their allegations, as usual.

90.     CARNES was equally upset because he was ready and willing to throw BARNES back in jail.  CARNES has been extremely hostile and filled with animosity towards BARNES for years, and has recused himself from every case BARNES has been involved in due to his ire for BARNES, except for a bad faith tax suit filed by WILLIAMSON COUNTY where he entered a default judgment against BARNES when BARNES had filed an answer and owed no taxes.  CARNES refused to recuse himself in the felony case despite his long history of open hostility and animosity towards BARNES.[29]  CARNES was refusing to hear any of BARNES' motions and stated he would only hear the prosecutor's motions pre-indictment.  BARNES was entitled to an examining trial or full *Franks* hearing prior to indictment; however, despite the formal written request, CARNES failed and refused to grant her request because everyone knew that there would be no evidence to support the charge or probable cause if BARNES had an examining trial and could confront the witness and lack of evidence against her.[30]

---

[28] The prosecutor had his half of the courtroom filled with prosecutors, deputies, and spectators to watch his show.  They were so certain they could get BARNES held in jail and prevent her from conducting discovery and proving that they fabricated these charges with malice. Their efforts continued unabated and the prosecutors filed three additional bad faith motions to revoke the bond and increase the bond.

[29] Interestingly, the first time BARNES sued WILLIAMSON COUNTY for their shocking and outrageous habit, practice, custom, policy, and procedure of intentionally, knowingly, and deliberately violating the constitutional and civil rights of the citizens of this country, CARNES recused himself from hearing that case; however, after being aware of an additional decade of further harassment, retaliation, and wrong-doing by WILLIAMSON COUNTY against BARNES, CARNES does not recuse himself over a decade later in this case.  CARNES needed to impanel a Grand Jury with Linda McDaniel as the foreman and most likely other political allies to ensure that BARNES would be indicted before he recused.

[30] BARNES was forever deprived of this due process, due course of law, and fundamentally essential right to expose the aggravated perjury in this PC affidavit executed by BRINKMANN and to have it suppressed and set aside under the case of *Franks v. Delaware*, 438 U.S. 154 (1978).  Had BARNES been afforded equal protection under the law, due process, and due course of law, she could have shown the falsity of the statements contained in this PC Affidavit and had it set aside because the statements in the affidavit are not

69

91.     CARNES had no choice but to deny the motion to increase the bond because the prosecutors and WCSD deputies failed to meet their burden of proof or prove that BARNES had "re-offended" by filing a false police report.   However, CARNES simply could not resist the malicious energy that the hearing aroused due to the frustration of the bad faith actors to prove their allegations, and he unilaterally without any notice, due process, or opportunity to be heard ordered that BARNES be placed on an ankle monitor and that a 10 p.m. to 5 a.m. curfew be imposed on her as if she was a teenager who was drinking and doing drugs.[31]  This was solely to harass, demean, and punish BARNES for not being guilty of all these bogus charges and for, once again, embarrassing the bad faith actors, his buddies and political allies.   There was no

---

truthful, but are deliberately and intentionally false and misleading.  BARNES was entitled to challenge the lack of truthfulness and prevent the false and fraudulent PC affidavit from being presented to a hand-picked grand jury that did not investigate.  Aggravated perjury cannot support a warrant or an indictment.  Both the alleged warrant and the indictment were based on aggravated perjury and the untruthful statements of fact contained in this PC Affidavit made by BRINKMANN pursuant to a criminal conspiracy. BRINKMANN knew at the time he made the affidavit that the statements contained therein were not truthful or accurate.  Upon a showing of the lack of truthfulness, BARNES was entitled to a motion to strike the PC affidavit and set it aside, along with anything predicated thereon, including any warrant or indictment in this cause.  *See* Art. 38.23 CCP stating in part that "no evidence obtained by an officer or other person *in violation of any provisions of the Constitution or laws of the State of Texas,* or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."  The statements contained in the PC affidavit are not truthful and everything obtained as a result thereof, including the warrants and indictment, should be quashed, set aside, and stricken from the record.  Further, upon a showing that the alleged magistrate involved was not neutral and detached, the warrant and anything predicated thereon, including the indictment should be quashed and set aside.  No reasonable deputy acting in good faith would have believed that these alleged magistrates were neutral or detached.  These deputies know who to go to for bad faith warrant signing.  WILLIAMSON COUNTY and WCSD, acting by and through its deputies, named prosecutors, and magistrates clearly and knowingly violated BARNES 4th and 14th amendment rights, as well as her rights secured by the Texas Constitution Art. I, Sections 9 and 19.  These Defendants violated BARNES' rights guaranteed by the United States Constitution 5th, 6th and 14th amendments and Texas Constitution Art. I, Sections 10 and 19 by obstructing BARNES' access to the evidence necessary to prove and support the grounds to challenge the truthfulness in the PC Affidavit and the lack of neutrality and detachment of the alleged magistrates. This court should order an full investigation into this criminal conspiracy and order WILLIAMSON COUNTY to show cause why these criminal offenders are not being charged and prosecuted for their crimes.

[31] If the offense allegedly occurred at BARNES' rural residence where she is alleged to have runoff a criminal trespasser, it is difficult to comprehend the reasoning behind the 10 pm to 5 am curfew and electronic monitoring to enforce it because confinement to the rural residence would place more trespassers in harm's way.  That would be like confining someone arrested for DWI to a bar between 10 pm and 5 am.

70

legitimate governmental interest in breaching the terms and conditions of the $50,000 surety bail bond contract or to further seize and restrain BARNES, and this malicious and punitive action violated due process and equal protection under the law.

92.     BARNES immediately objected to the ankle monitor and curfew because it was not warranted, not supported by the evidence or the intent of the law, a malicious abuse of process, and it was unconstitutional to unilaterally modify and breach the terms and conditions of a surety bail bond contract when BARNES had fully performed her end of the bargain and had substantially changed her position in reliance upon the $50,000 contract.  However, BARNES was ordered to shut up by CARNES and he refused to let her speak.[32]

93.     Immediately after the hearing when BARNES was focused on quickly getting to New York as her son was already in surgery, a WCSD deputy, RUPPART, came up behind BARNES in the hallway of the WILLIAMSON COUNTY Courthouse and bumped into her from behind.  Then, he quickly scooted around her just like a boxer in the ring, and when BARNES ignored him and started to walk around him, he delivered two sharp blows to her chest with the heel of his open hand with such force that it knocked BARNES back and he shouted "you're not going anywhere!"  Then, he spoke into his communicator and announced that BARNES was under arrest for assaulting a public servant.  These malicious Defendants were determined not to let BARNES go to her seriously injured son.  Fortunately, the supervisor of courthouse security came immediately and RUPPART had not had time to put together a coherent story, and when he reported that he came up behind BARNES and she bumped him, it was not logical or

71

believable. The supervisor asked "you're arresting her because she bumped you?" Then, the supervisor had another deputy detain BARNES in a nearby courtroom so the supervisor could talk to RUPPART and figure out how BARNES bumped him when he was following BARNES. After quite awhile, the supervisor came and told BARNES she was free to go and she could file charges, if she wanted, on the assault because she had red marks that later turned to bruises on her chest from the excessive force blows.

94.     Immediately, WILLIAMSON COUNTY and TRAVIS COUNTY conspired to force BARNES back for a hearing in TRAVIS COUNTY and refused to reset the hearing so that she could stay with her son. BARNES was forced back against her will to attend a bad faith hearing on July 7, 2010.

95.     On July 8, 2010, BARNES was required to be back in the same TRAVIS COUNTY court for another hearing. With utmost malice and vindictiveness, knowing BARNES was already out on a surety bond in the amount of $50,000.00, TRAVIS COUNTY, TCSD, SWAIM and ESCAMILLA conspired to harm, injure, and damage BARNES further and did then and there retaliate further against Barnes by engaging in acts of criminal retaliation and official oppression. BARNES was performing her duties as a public servant in the TRAVIS COUNTY Courthouse on July 8, 2010, when three uniformed and armed TCSD deputies, crossed the bar, and violently arrested BARNES as she was conducting her livelihood as an officer of the court,[33] and they disrupted, impeded, interfered, with, and obstructed BARNES in the performance of her duties as a

---

[32] BARNES has several witnesses to the overt animosity, hatred, ill will, and abusive tone of voice exhibited by CARNES, MCCABE, BRADLEY, MCDONALD, SHAVER, SCHREIBER, and SWAIM throughout these proceedings.

[33] These Defendants acted with malice, violated the attorney-client privilege, and made a huge theatrical show to an audience the TCSD, SWAIM, HAMILTON, ESCAMILLA, and TRAVIS COUNTY had assembled to watch the show. There was no legitimate, reasonable, or good faith reason for arresting BARNES in this manner.

72

public servant, and did then and there, physically interrupt, disrupt, and interfere with attorney-client privileged communications and compromised and invaded attorney-client information, and did then and there commit an aggravated assault, aggravated kidnapping, false arrest, and false imprisonment pursuant to a criminal conspiracy and organized criminal activity designed to tortiously and maliciously interfere with and deprive BARNES of well-established constitutional rights. BARNES was arrested on a completely bogus, groundless, and bad faith charge of "interference with the duties of a public servant"[34] arising out of TUMLINSON's assault six months earlier—BARNES

---

[34] This is a favorite charge of bad faith deputies and prosecutors because the statute is so ambiguous, vague, indefinite, and overly broad that you can literally convict anyone under the statute for anything. All you need is a jury to think, with perfect 20-20 hindsight that they would not have done that because the lowest culpability applies—"criminal negligence." The legislature literally abdicated their role to define what is criminal to the majority feeling of six jurors so that no one has fair advanced notice of what actions would be considered criminal. Obviously, in this case, it took over six months to realize the alleged "crime." In the Arnold Garza case, he was charged with this nefarious charge after they had arrested him in his own home without a warrant or probable cause for "failure to ID" and then realized at the jail that he had given the correct "ID." BARNES represented a case where a 72-year-old lady was arrested on this charge simply for informing an officer of the law he was violating. In the only case these malicious Defendants have ever convicted BARNES on is this charge—in that case the alleged motive for the traffic stop was speeding, however, two law enforcement officers (BARNES had a lawsuit pending against one these officers, a WCSD deputy, arising out of a previous assault and false arrest) placed BARNES and her minor child in a felony stop and each one had their loaded weapons drawn and pointed in at BARNES on both sides of the vehicle just to terrorize the child). They ended up violently arresting BARNES and her minor child for "a felony evading arrest and refusal to sign the traffic citation." The video proved that BARNES had not evaded arrest and they never wrote a ticket or presented it for signature as required by the law. There were eight deputies out there placing spikes under the tires and rocking the vehicle back and forth to flatten the back tires to make it look like BARNES had evaded arrest and they confiscated and destroyed BARNES audio-recording of the incident where BARNES repeatedly told them that they were required to give her a ticket and promptly release her if the charge was speeding. The video recording proved that BARNES had repeatedly told them to just give her the ticket and let her go because she had to pick up her other minor son from school. The youngest minor child was taken to the jail and interrogated on the way there and at the jail, and not released until after midnight on a school night and the other minor child was left stranded at school until after midnight when the youngest one made sure he was picked up. Every time these malicious Defendants arrest BARNES, she is never able to call and make arrangements for her children or check on them in any manner. When they were not able to prove that they had written a ticket or that BARNES had evaded arrest; the malicious prosecutors (HOBBS and RYE) charged her with "interference with the duties of a public servant." When BARNES proved on a motion to dismiss that their duty was to write the speeding ticket and promptly release BARNES upon her signing of the ticket and that BARNES had not done anything at all to interfere with their clear duty under the law; the hand-picked "visiting judge" who did not even have an oath of office on file as required, allowed RYE and HOBBS to amend their pleadings on the day of trial over BARNES' objections and change it to "interference with the duty of the public servant" to "maintain the peace." They were the ones who resorted to deadly violence and refused to write

73

had just posted a $50,000 surety bail bond on May 14, 2010 on this incident. There was no good faith reason to file these charges or to arrest BARNES for a third time over this TUMLINSON incident. No reasonable law enforcement officer, county prosecutor, or Judge could have believed that they were acting lawfully and legally when they knew that they had already acted illegally and unconstitutionally in forcing BARNES to pay an additional $5,000 fine to secure her release from jail on May 14, 2010 as a result of the aggravated kidnapping, aggravated assault, and false arrest and imprisonment committed by TUMLINSON, TCSD, and TRAVIS COUNTY.

96.     There can be no good faith argument for the unconstitutional actions of TRAVIS COUNTY, TCSD, SWAIM, HAMILTON, and ESCAMILLA in assaulting, kidnapping, and imprisoning BARNES three times and extracting three separate bails, penalties, and fines, together with the repetitive and compounding defamation *per se* in the media. ESCAMILLA, SWAIM, TCSD, HAMILTON, and TRAVIS COUNTY acted with malice because BARNES had already served notice of her claims against them and sent the freedom of information and open records requests to them and ESCAMILLA and SWAIM were blocking discovery through the Attorney General.[35]

---

the ticket and let BARNES go, but BARNES was convicted for breaching the peace and interfering with their duty to "maintain the peace."

[35] These actions were undertaken with extreme malice by SWAIM, ESCAMILLA, and MORGAN, while they were at the same time and continuously over the previous six months obstructing BARNES' access to information under the Texas Open Records Act and Freedom of Information Act. ESCAMILLA has been at the forefront of obstructing access by writing letters to the Texas Attorney General to prevent BARNES from obtaining access to critical evidence to prove BARNES is not guilty and that TUMLINSON and several other county employees are is guilty of felony offenses. MORGAN was instrumental in the illegal and unconstitutional revocation of BARNES' first bond and the illegal and unconstitutional second false arrest and second false imprisonment of BARNES, and in the illegal and unconstitutional increase in bond to $50,000.00 without any semblance of due process or due course of law and without following the proper and legal statutory procedure in violation of the contract through Pre-trial Services where MORGAN is employed. All of the actions undertaken by SWAIM, MORGAN, and ESCAMILLA are in retaliation against BARNES for her services as a public servant in the representation of Carol Ann Davis, whom they were prosecuting as a favor for Karen Matlock, an assistant attorney general who has used her position as assistant attorney general to advance private interests,  influence private litigation and non-governmental

74

97.     BARNES was rearrested in court this third time by TRAVIS COUNTY, TCSD, SWAIM, HAMILTON, and ESCAMILLA, pursuant to a vague, indefinite, ambiguous, and overly broad statute—Tex. Penal Code Ann. § 38.15 (Vernon 2003). The act requirement of the statute is vague, uncertain, indefinite, ambiguous, and overly broad because it includes "interrupting, impeding, disrupting, or otherwise interfering with the performance of official duties" and, when read in context, was clearly intended to apply in emergency type situations, rather than for every routine, everyday occasion or encounter with the public. Such a broad interpretation and application of this criminal statute would quickly reduce a free people to an oppressed nation in a police state; and individual freedom would dangle precariously on the whim of each law enforcement officer because the prosecutors and court could mesh any activity to fit within the criminal statute *ex post facto*. This criminal statute violates the fundamental principle that a criminal statute that is so vague that it does not give reasonable notice of what it prohibits violates due process, especially when the culpability required is just criminal negligence. Further, if the language is so overly broad, indefinite, vague, or ambiguous, the penal code section is unconstitutional under the separation of powers provision of the

---

matters in the courts dealing with false prosecutions of Carol Ann Davis and in protecting the unlawful activity of employees of the Texas Department of Public Service. Carol Ann Davis was married to a DPS officer. It is believed that Karen Matlock's husband is employed by DPS and that she routinely represents DPS officers when they are being sued. These opinions were gained by a review of the documents involving the lengthy litigation between TRAVIS COUNTY, Karen Matlock, and Carol Ann Davis over many years, and documents concerning the death of Lindy Harrison Honnerkamp, the ex-wife of Warren Tom Harrison. BARNES has been named as a witness in that pending case. BARNES should not be retaliated against for fulfilling her duties as a public servant and witness against these Defendants in the malicious prosecution of Carol Ann Davis by SWAIM, MORGAN, and ESCAMILLA for political reasons. This is not the first malicious prosecution of Carol Ann Davis by Travis County. SWAIM, MORGAN, and ESCAMILLA promoted their own personal interests in advancing their own personal agendas in taking these illegal, unconstitutional, and vindictive actions against BARNES, due to her research and participation in the Carol Ann Davis case. Their hatred towards Carol Ann Davis has clouded their judgment, and they do not want her to have fair representation. SWAIM is the only "Special Prosecutor" in ESCAMILLA's office and he handles cases when the prosecution is politically motivated.

75

Texas Constitution[36] because it involves the unconstitutional delegation of legislative power to the judiciary to determine what activity is criminal, after the fact, like a springing *ex post facto* law—in this case, the unconstitutional delegation of legislative power is to six jurors. Tex. Penal Code Ann. § 38.15, as written, is unconstitutionally vague because it criminalizes unknown, uncertain, and indefinite conduct on its face; and has led to numerous selective or retaliatory prosecutions.

98.    TRAVIS COUNTY, TCSD, HAMILTON, SWAIM, ESCAMILLA, TUMLINSON, KLEKAR, LERMA, COTTON, and others involved in this malicious prosecution now allege that BARNES did not commit a first degree felony as sworn under oath by TUMLINSON, or even a third degree felony—they now allege that BARNES "interrupted, impeded, disrupted, or otherwise interfered with the performance of" some uncertain, indefinite, vague, or ambiguous official duty that TUMLINSON had—perhaps, the duty to patrol the courthouse looking for people on cell phones as if that were a violation of some rule or law. That is a far cry from the media sensationalism created by the deliberate and intentional misstatement of material facts by TUMLINSON, HAMILTON, KLEKAR, LERMA, COTTON, TRAVIS COUNTY and others responsible for the malicious, defamatory *per se* press release. Even if convicted of a violation of this vague, ambiguous criminal statute—Texas Penal Code Section 38.15— BARNES has already been punished far more than the range of punishment set forth in Texas Penal Code Section 12.22, which sets the range of punishment for a Class B misdemeanor.[37] BARNES has been forced to pay over $5,040.00 in excessive fines and

---

[36] Article II, Section 1 of the Texas Constitution provides for three distinct and separate branches of government and Art. III, §§ 30, 43 vest the power to pass laws and to revise the criminal law of the State in the legislature.
[37] § 12.22. CLASS B MISDEMEANOR. An individual adjudged guilty of a Class B misdemeanor shall be

76

penalties, incurred two separate hospital bills, and suffered the loss of her blackberry phone, eyeglass repair tool that was a gift from her son, and a diamond bracelet worth in excess of $7,000.00, been confined in jail for five days just on the three false arrests, now being held indefinitely (pursuant to the malicious conspiracy between SWAIM, ESCAMILLA, HAMILTON, WILSON, BRADLEY, MCCABE, MCDONALD, HOBBS, RYE, WCSD, TCSD, WILLIAMSON COUNTY and TRAVIS COUNTY), and had her reputation repeatedly denigrated in the media due to the aggravated perjury suborned, promoted, and published by TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and their various policy makers, elected officials, employees, agents, attorneys, deputies, and representatives.

99.     Further, the criminal statute, Texas Penal Code Section 38.15, provides that "(d) It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only."   When BARNES attempted to call 911 on her cell phone as she left the courthouse before TUMLINSON ran up from behind and slapped the phone out of her right hand sending it crashing to the floor—BARNES was only talking.  This is a clear defense to prosecution in this case and it would be a further and gross violation of BARNES 1st and 14th amendment rights to be criminally prosecuted for speech only, as well as violation of Texas Constitution Art. I, Sections 8, 9, 19, and 29.  BARNES cannot be prosecuted for anything she said or the fact that she was making a call to report the bad behavior of TUMLINSON.  BARNES cannot find any other case where a defendant has had such an excessive fine and penalty

---

punished by:
     (1) a fine not to exceed $2,000;
     (2) confinement in jail for a term not to exceed 180 days; or
     (3) both such fine and confinement.

77

imposed when this statute is alleged to have been violated. BARNES is entitled to equal protection under the law and to impose a further fine or penalty on BARNES would violate her right to due process and equal protection under the law, as well as the double jeopardy and due course of law protections addressed above.

100. In all of these malicious prosecutions, BARNES immediately requested a speedy trial. BARNES has a right to a speedy trial under the Texas Constitution Art. I, Sections 10, 19, and 29, and the Sixth and Fourteenth Amendments of the United States Constitution, which require that the trial be held within a reasonable time after the arrest. Neither TRAVIS COUNTY nor WILLIAMSON COUNTY have any interest in granting BARNES her request for a speedy trial because these are malicious prosecutions and they want to maximize the damage, injury, and damage to her reputation, law practice, ability to earn a livelihood and care for her children, and her real and personal property. TRAVIS COUNTY waited over six (6) months after three false arrests to file these misdemeanor charges, during this over six month period of delay, TRAVIS COUNTY destroyed the exculpatory evidence—the audio-video recording of the incident that was captured on the courthouse security cameras,[38]—and repeatedly imposed excessive fines, penalties, and unconstitutional punishment on BARNES. WILLIAMSON COUNTY waited four months to indict BARNES because CARNES, BRADLEY, MCCABE, and MCDONALD had to impanel their own special grand jury, rather than utilize the one in place at the time. Then, for over two years, these Defendants have failed and refused to

---

[38] ESCAMILLA and SWAIM resisted release of this audio-video recording from the inception and obstructed the discovery of this video tape long before they decided to file these malicious and vindictive charges against BARNES. BARNES was only successful in getting Judge Flowers to enter an order preventing the destruction or alteration of the recording; however, it did not prevent ESCAMILLA and SWAIM from later fraudulently claiming it never existed in order to continue to obstruct BARNES' access to the only tangible evidence of the truth.

produce the exculpatory evidence, and have fraudulently and maliciously indefinitely confined BARNES pretrial without due process.

101. Under Texas law Article 1.05 of the Code of Criminal Procedure and the Texas Constitution Article 1, Section 10, BARNES is entitled to a speedy trail by an impartial jury. The delay by TRAVIS COUNTY and WILLIAMSON COUNTY has been unreasonable and BARNES has suffered harm in presenting her defense because the main exculpatory evidence has been destroyed, and the jury will not be impartial due to the bad faith litigation tactics in suborning, promoting, and publishing the aggravated perjury and defamation of TUMLINSON, BRINKMANN, DE LA VEGA, MCCABE, HOBBS, and FOSTER, to the media, tampering with governmental records, and unilaterally suppressing evidence and witnesses favorable to the defense.

102. Favorable evidence that is critical to BARNES' defense, in both of these cases, is now unavailable, despite BARNES' diligent efforts to secure, protect, and obtain this exculpatory evidence in a timely and meaningful manner. BARNES has not done anything to cause the delay in trying these cases—BARNES has been at every hearing demanding timely discovery, a speedy trial, and the exculpatory evidence, and has done everything possible to protect, preserve, and present the most probative and essential key evidence in these cases, to no avail; and BARNES has diligently sought the speedy resolution of these false and fabricated accusations due to the unprecedented damage to her reputation and right to practice law that the aggravated perjury and other felonies committed by these Defendants, acting in concert, have caused.

103. All delays in these cases are directly attributable to TRAVIS COUNTY and WILLIAMSON COUNTY as part of their bad faith litigation tactics to obstruct

79

justice, suborn perjury, manipulate any eyewitness testimony, and hide and secrete the exculpatory evidence that would prove the truth, clear BARNES' name, and mitigate the harm, damages, injury, and losses.

104.    BARNES was arrested, jailed, and forced to post bond/bail five times in seven months, before being indefinitely incarcerated pretrial, to retaliate against BARNES for exposing the corruption in TRAVIS COUNTY and WILLIAMSON COUNTY, especially in the criminal justice system.

105.    On July 9, 2010, BARNES was ordered to the Williamson County Probation Office, however, when she arrived she was not allowed to take her purse, cell phone, or any personal belongings into the building with her.  Once inside, GRIFFITH was rude, demeaning, and made fun of BARNES' legal abilities and qualifications before he physically forced the ankle monitor on her left leg with threats of having her immediately arrested and thrown back in jail without bond.  GRIFFITH refused to allow BARNES to call her attorney or consult with her attorney.  BARNES had advised that it was unconstitutional and unlawful to unilaterally modify the surety bail bond contract and GRIFFITH told BARNES in a threatening and demeaning tone of voice that she either submit to the criminal tagging or he would call deputies to come arrest her.  BARNES knew in WILLIAMSON COUNTY that this was a real and imminent threat, so she informed GRIFFITH that by placing that criminal tag leg iron on her that WILLIAMSON COUNTY and all those who were responsible for this shocking and outrageous conduct would be contractually bound to pay $7,000.00 per day per person responsible, including him.  GRIFFITH was the final policy maker and refused to consult with anyone and agreed to the terms by forcefully and vindictively attaching the criminal

tag leg iron on BARNES.  Therefore, BARNES is entitled to recover said liquidated damages in the amount of $7,000.00 per day from GRIFFITH, SHAVER, BRADLEY, MCCABE, MCDONALD, DE LA VEGA, BRINKMANN, and any other person the jury finds was responsible for this cruel pretrial vindictive punishment.  BARNES was forced to wear this criminal tag leg iron from July 9, 2010 through February 28, 2011.

106.    BARNES and her attorney filed an application for *habeas corpus* to remove the unfair and unjust *sua sponte* imposition of the criminal tag leg iron by CARNES; however, CARNES failed and refused to set the application for hearing—just as he did with all of BARNES' pretrial motions.

107.    BARNES prepared pleadings and a petition for writ of *habeas corpus* in order to seek relief and protection from the federal courts.  In July 2010, BARNES went to the federal courthouse in Austin, Texas, with the monitor so that the court could see the device, in order to file for relief and obtain a hearing date for service and notice.  However, when she arrived, a large man with a very short haircut came out and started threatening and abusing BARNES—the very first thing out of his mouth when he approached BARNES from behind was "I'm not going to have you coming in here starting trouble!"  BARNES had not done anything at all and there was no trouble until this man, who was later identified as CLIFTON, came out and started berating BARNES.  CLIFTON acted like he knew BARNES, but to the best of BARNES' knowledge she had never seen CLIFTON, either before or since that day.  CLIFTON called WILLIAMSON COUNTY and spoke to some employee, and then refused to allow BARNES into the federal courthouse claiming she was a security risk.  Thus, BARNES was not able to seek redress of grievances, oversight, or protection from the federal courts either.  CLIFTON

81

violated BARNES' civil rights, obstructed justice, and hindered BARNES' access to the courts for no legitimate reason.[39]   CLIFTON has also agreed to testify against BARNES in the malicious prosecution of the felony case in WILLIAMSON COUNTY and according to MCCABE, MCDONALD, and BRADLEY, CLIFTON has agreed to commit aggravated perjury to aid and assist in the conviction of BARNES.

108.   On July 13, 2010, Judge Flowers finally dismissed the false and malicious felony charges in Travis County arising from TUMLINSON's aggravated assault, aggravated kidnapping, and aggravated perjury.   BARNES was permanently prevented, blocked, and hindered from presenting her complaint against TUMLINSON to any grand jury in Travis County, Texas, in violation of 18 U.S.C. §§ 241 and 242; 42 U.S.C. §§ 1983 and 1985.

109.   WILLIAMSON   COUNTY,   WCSD,   BRADLEY,   MCCABE, MCDONALD, and CARNES failed and refused to allow BARNES to present her complaint to the grand jury and failed and refused to present the incident to the grand jury in May, June, July, or August, 2010, in violation of 18 U.S.C. §§ 241 and 242; 42 U.S.C. §§ 1983 and 1985.   Finally, on September 2, 2010, MCCABE, BRADLEY, MCDONALD, and BRINKMANN deliberately, intentionally, and knowingly presented a one-sided, false, and fraudulent case to the grand jury that CARNES had selected with Linda McDaniels serving as the foreman, while blocking BARNES access and ability to testify and present the exculpatory evidence and exculpatory witnesses to the grand jury. BARNES and her witnesses were sitting outside the grand jury room, but MCCABE would not allow them inside to testify or present evidence.   Exculpatory evidence had previously been provided to BRADLEY, MCCABE, and MCDONALD, but they failed

---

[39] United States Constitution, Amends. 1, 4, 14.  18 U.S.C. § 242.

82

and refused to present the exculpatory evidence or BARNES' affidavits to the grand jury. BRADLEY, MCDONALD, MCCABE, and BRINKMANN knowingly, intentionally, and deliberately presented the false affidavit of BRINKMANN knowing that it was false, fraudulent, deceptive and misleading in order to obtain a bad faith, vindictive, and malicious indictment against BARNES with utmost malice.

110.    BARNES was deprived of a hearing on her objection to mental exam, motion for a full *Franks* hearing, motion to reduce bond, three separate responses to the bad faith motions to increase bond, and numerous discovery motions.   While the WILLIAMSON COUNTY Defendants were obstructing BARNES access to the courts and timely and meaningful discovery, they were also fabricating or tampering with evidence or records, suborning perjury, and engaging in further and additional violations of BARNES' constitutional rights by placing known perjury before the grand jury and blocking BARNES access to the grand jury, misleading the grand jury on the facts and applicable law to convince them that a first degree felony had been committed, and exerting undue influence on the grand jury with inadmissible and highly prejudicial information tending to incite, inflame, and influence the grand jury to agree to the indictment.   The WILLIAMSON COUNTY Defendants had also maliciously maligned BARNES in the national media, forced her to undergo extensive mental examinations, and continued the unreasonable search and seizure of BARNES and imposition of excessive fines and pretrial punishment and detention by coercing BARNES, without any semblance of due process, into a house arrest, curfew, leg iron, electronic monitoring, criminal tagging, together with interception, monitoring, and/or tracking with electronic devices and with audio and video surveillance without a warrant.   Further, there was no

83

independent grand jury because the malicious prosecutors waited until CARNES impaneled a new grand jury with Linda McDaniel as the foreman before presenting the knowingly false probable cause affidavit to the grand jury to obtain the rubber-stamped indictment.

111.    After learning of the indictment, BARNES immediately moved to set all her pending pretrial motions[40] for hearing on October 5, 2010, the next appearance date, since CARNES had refused to set any of them for a hearing until after the indictment was secured.  However, at the time for the hearing on October 5, 2010, CARNES announced that he was recusing himself.  CARNES deliberately stayed on just to prevent BARNES from having an examining trial and full *Franks* hearing, and to insure that an indictment would be handed down, before he recused himself.  The grounds and reasons for recusal pre-existed this incident and he was not ever a fair and impartial judge or magistrate, but at all times abused his office, engaged in official oppression, and violated the public trust to satisfy his own personal animosity and urge for vindictive retaliation.

112.    Defendants then conspired to quickly secure the assignment of a notoriously oppressive retired judge, SHAVER, to act as a subterfuge and artifice to carry out their malicious scheme.[41]  BARNES immediately filed an objection to his assignment and set out the reasons therefore because it was clear that BARNES would not receive due process, equal treatment under the law, or due course of law from SHAVER. SHAVER is simply not fair, neutral, or impartial.  Without referring the objection to his

---

[40] These included the discovery motions and "MOTION TO REMOVE RESTRICTIVE AND PUNITIVE CRIMINAL TAG" that stated the following: "Defendant was not provided with any due process hearing prior to the Court ordering her to turn over all her weapons; to submit to criminal tagging; to submit to house arrest; and to submit to a curfew.  All of these additional actions were taken after Defendant had already posted a $50,000.00 surety bond without any of those conditions or terms."

assignment, SHAVER summarily denied BARNES' objection and stated that she was not entitled to object to his assignment. As anticipated, BARNES received the same retaliatory and vindictive treatment from SHAVER, who worked out of CARNES' office and utilized CARNES' staff, so that the refusal to grant BARNES equal access to the courts and ability to obtain hearings continued. So, the change in judges resulted in no substantive change and no fundamental or structural improvement at all.

113. Thus, BARNES was indicted on September 2, 2010; her motions were still not heard on October 5, 2010; SHAVER made his first appearance on November 4, 2010, but also refused to hear any of BARNES' motions and announced that she would only be allowed one day to present all of her pretrial motions on December 16, 2010, and could not obtain any discovery until after that time. The jury trial was set for February 28, 2010.

114. BRADLEY, MCCABE, MCDONALD, SWAIM, ESCAMILLA, TRAVIS COUNTY and WILLIAMSON COUNTY continued to work in tandem on these two groundless, vindictive, and malicious prosecutions. On November 4, 2010, BARNES had to appear in WILLIAMSON COUNTY on the GITTEL aggravated assault with a deadly weapon charge, and the next day, on November 5, 2010, BARNES had to appear in TRAVIS COUNTY on the TUMLINSON interference with the duties of a public servant charge. On December 15, 2010, BARNES had to appear in TRAVIS COUNTY on the TUMLINSON misdemeanor charge, and the next day, on December 16, 2010, had to appear in WILLIAMSON COUNTY on the GITTEL felony charge. SWAIM would come to the hearings, when he did appear, with the TRAVIS COUNTY

---

[41] This case illustrates the inherent flaw of any system that would allow one political figure to appoint judges without accountability to the voters. The potential for abuse of that power is too tempting. In this

file and a thick, fully expanded, accordion file that he claimed he received from WILLIAMSON COUNTY concerning BARNES' "criminal history" there. Defendants always refer to their bad acts, harassment, retaliation, and false arrests as BARNES' "criminal history." SWAIM at all times refused to allow BARNES to view the contents of the thick accordion file from WILLIAMSON COUNTY.

115.   On December 16, 2010, SHAVER did not conduct a normal hearing or even permit any presentation of BARNES' pretrial motions or hear any argument. SHAVER brought in a piece of paper and quickly read off his rulings. In over 25 years of trial work, BARNES had never experienced a "hearing" where one could not be heard; instead the decisions were predetermined and dictated into the record.

116.   In keeping with the habit, practice, policy, and custom of WILLIAMSON COUNTY, MCCABE, BRADLEY, MCDONALD, BRINKMANN, WCSD, and WILSON, continued to obstruct justice, thwart discovery, conceal, hide, and fail to preserve and produce exculpatory evidence, engage in bad faith litigation tactics, and delay the case, thereby destroying BARNES critical right to a fair and speedy trial. BARNES is routinely and historically forced to choose between obtaining the exculpatory evidence or right to a speedy trial, both individually and on behalf of her clients. These Defendants routinely fail and refuse to produce *Brady* material. Even with the court order and knowing of the impending February 28, 2011 jury trial setting, they refused to produce the *Brady* material.

117.   SWAIM, ESCAMILLA, TCSD, HAMILTON, TUMLINSON, and KLEKAR also continued to engage in the same dilatory tactics. BARNES diligently sought access to the large accordion file SWAIM, ESCAMMILLA, and TRAVIS

case, rather than a court of law, we ended up with a Star Chamber.

COUNTY had in their possession and the video recording from the courthouse security camera showing TUNLINSON assaulting BARNES, to no avail. SWAIM would tell the judge that BARNES just had to come to his office to review the files and evidence, however, he would instruct the receptionist and secretaries to say that he was not there and that the file was not there. Every time BARNES made an appointment, the same thing occurred. WILLIAMSON COUNTY, TRAVIS COUNTY, WCSD, TCSD, SWAIM, ESCAMILLA, BRADLEY, MCCABE, and MCDONALD were clearly working in concert on these two malicious prosecutions to block, interfere with, and prevent BARNES' access to the evidence and witnesses that would prove the truth and clear her name; to deprive her of her right to a fair and speedy trial and to mitigate the extensive damages, injuries, and irreparable harm to Plaintiffs. This delay and obstruction of justice has prevented BARNES from exposing this criminal conspiracy by proving that these Defendants knew from the inception that all these charges were bogus, false, fraudulent, and career-ending, but they proceeded nonetheless with malice, a conscious disregard, and deliberate indifference to the rights, safety, and welfare of Plaintiffs.

118. BARNES filed a motion to compel WILLIAMSON COUNTY to comply with the discovery orders and produce the exculpatory evidence, however CARNES' employee refused to set BARNES' motion to compel for a hearing; forcing BARNES to have to file a motion for continuance because it would not be a fair trial—CARNES' employee also refused to set that motion for a hearing. Thus, BARNES was forced to appear for trial without the evidence she had diligently sought for over eight months prior to trial, and not knowing if the case would go to trial or not.

119. This was BARNES' first and only motion for continuance, it was caused by the bad faith litigation tactics of the WILLIAMSON COUNTY prosecutors and deputies, it was sworn to, and no oppositional response or controverting affidavit was filed. However, on February 28, 2011, SHAVER denied the motion for continuance and stated that the case would go to trial without the exculpatory evidence. SHAVER refused to enforce his own discovery orders, and continued to allow WILLIAMSON COUNTY, CARNES, BRADLEY, MCCABE, MCDONALD, and other employees of WILLIAMSON COUNTY to dictate and direct the proceedings. Despite BARNES' filing of a motion to cease the *ex parte* communications and grand standing to the press and obtaining orders to prevent, the *ex parte* communications and decisions continued and the prosecutors continued to make derogatory and defamatory remarks to the press. The *ex parte* communications and defamatory accusations to the press completely undermined the integrity of the proceedings and created a fundamental structural defect in the proceedings. There was simply no way that BARNES was ever going to obtain a fair and speedy trial or have any viable means to prove the truth and clear her name due to this orchestrated scheme.

120. SWAIM was even present in the WILLIAMSON COUNTY district court to assist the WILLIAMSON COUNTY prosecutors and influence SHAVER on February 28, 2011. SWAIM and TRAVIS COUNTY appeared, aided, and abetted BRADLEY, MCCABE, MCDONALD, and WILLIAMSON COUNTY in the malicious prosecution of BARNES, and SWAIM even made SHAVER aware that he was "prosecuting" BARNES "in another case pending in TRAVIS COUNTY."

88

121.   After lunch, during the jury selection process, it became apparent that discussions and decisions had occurred over the lunch break because SHAVER reversed his decision to deny the continuance; but, he did it in a twisted manner to assist the malicious prosecutors and pursuant to a devious unconstitutional scheme using trickery and deception.

122.   The continuance was sought by BARNES solely to obtain the exculpatory evidence that WILLIAMSON COUNTY, WCSD, HERNANDEZ, BRINKMANN, BRADLEY, MCCABE, and MCDONALD failed and refused to produce—the cell phone records from GITTEL's phone showing who she talked with on May 8, 2010 and showing she never called 911; the addresses or print out of the assigned addresses, as well as the maps provided by the Census Bureau for these addresses, to prove who GITTEL was really sent to talk to and the addresses where she was really sent to on May 8, 2010, to prove that she was not sent to visit with BARNES and was not sent to BARNES' address, *etc*.  This *Brady* material is not only exculpatory, but it would also prove that these Defendants knew the truth at the time they all met to plan this malicious and retaliatory scheme on Saturday, May 8, 2010, and throughout this malicious prosecution.

123.   It was clear WILLIAMSON COUNTY could not prove their case— MCCABE had even announced an amendment to the indictment removing the allegation that GITTEL was a public servant because WILLIAMSON COUNTY knew that the defense could prove that GITTEL could not legally and lawfully trespass and that the rules, regulations, and training manual specifically instructed census enumerators NOT to

89

go beyond a locked gate without the landowner's permission or consent.[42]  Thus, even though WILLIAMSON COUNTY and these malicious prosecutors and investigators had failed and refused to produce the exculpatory evidence proving that GITTEL was not ever sent to BARNES' address and that she could not have been shot at because she never called 911, they still could not overcome the undisputed fact that for their plan to work, they would have to admit that GITTEL was a criminal trespasser, if they were intending to allege that she was on BARNES' property.

124.   Rather than simply grant BARNES the continuance required by due process, SHAVER abused his position to coerce BARNES to choose between her constitutional rights because he did not ever intend to afford her any rights unless they were beneficial to the prosecutors and WILLIAMSON COUNTY who selected and paid him for his participation in this malicious scheme.

125.   BARNES had a right to represent herself, being a duly licensed lawyer, and to appear with co-counsel of her choice;[43] and she had filed that written election on June 15, 2010.  Neither the court nor the prosecutors had ever placed BARNES on notice that there was any objection to this election.  However, SHAVER stated that he would not grant BARNES a continuance to obtain the exculpatory evidence unless she agreed to have a court-appointed attorney.  The granting of the continuance was definitely tied and connected to and conditioned upon BARNES agreeing to the court-appointed attorney.

126.   BARNES had not ever asked for a court-appointed attorney, and did not want one.  BARNES had retained her own counsel to assist her.  This forced appointment

---

[42] WILLIAMSON COUNTY, BRADLEY, MCCABE, and MCDONALD also failed and refused to produce a copy of this training manual or the policies and procedures, and the Census Bureau refused to produce it in response to a FOIA request, but BARNES had obtained a copy nonetheless.  It is clearly *Brady* material.

90

of a lawyer violated equal protection under the law because WILLIAMSON COUNTY routinely denies court-appointed attorneys to people who qualify, and BARNES certainly did not qualify under the WILLIAMSON COUNTY standards.

127.    There was definitely an undisclosed ulterior motive to this forced court-appointment.  However, BARNES would forfeit her right to complain on appeal about not being provided with the exculpatory evidence when the court offered the continuance, even if it was unconstitutionally conditional.  Further, BARNES knew that her real co-counsel and BARNES could over-ride any court-appointed lawyer, and she anticipated that the court-appointment would be the usual standby counsel appointed for *pro se* defendants.  So, BARNES finally relented and agreed to a court-appointed attorney in order to get the continuance until June 13, 2011 solely and only to obtain the *Brady* material that WILLIAMSON COUNTY, BRADLEY, MCCABE, and MCDONALD continue to withhold from BARNES to this day.

128.    BARNES could not have predicted or foreseen the malicious scheme that these Defendants had devised.  Had the true intent behind the granting of the continuance been disclosed, BARNES never would have sought or agreed to the continuance, and certainly never would have agreed to the court-appointed attorney, who turned out to be SCHREIBER; and BARNES would have just tried the case on February 28, 2011 because WILLIAMSON COUNTY, BRADLEY, MCCABE, MCDONALD, BRINKMANN, and GITTEL could not have proven their malicious allegations.  Even without the exculpatory evidence and knowing they had suborned perjury and would be putting aggravated perjury into evidence, BARNES still felt confident the truth would prevail.

---

[43] Texas Constitution Art. I, §10.

91

129.    BARNES sole purpose in seeking the continuance on February 28, 2011, was to obtain the exculpatory evidence that SHAVER had ordered WILLIAMSON COUNTY, WCSD, GITTEL, POPPA, BRADLEY, MCCABE, and MCDONALD to produce on December 16, 2010.   However, after the appointment of SCHREIBER, SHAVER then immediately forbid BARNES from filing anything further in her case and forbid her to even say anything else in her defense.

130.    After February 28, 2011, the District Clerk, CARNES' court coordinator, and the court reporter ignored any filings or requests made by BARNES.   BARNES has been *de facto* enjoined from representing herself in this pending criminal case and the matters arising therefrom ever since February 28, 2011, despite the clear holding in *Faretta v. California,* 422 U.S. 806, 820 (1975).   This forced appointment of a lawyer clearly violates Texas Constitution Art. I, Section 10, as well as United States Constitution Amends. VI and XIV.   BARNES was entitled to represent herself and to utilize her retained attorneys as agreed, and she had a right to her own trial strategy and presentation of her own defense.   The unconstitutional actions of SHAVER at the prompting of BRADLEY, MCCABE, MCDONALD, acting in concert with SWAIM and ESCAMILLA, have forever deprived BARNES of this valuable constitutionally protected fundamental structural right.   This action has prevented BARNES from fulfilling her contractual obligations to her retained attorneys thereby depriving her of their assistance, completely derailed the defense, and forever deprived BARNES of her right to a speedy trial before a fair and impartial jury.   It also set up the unconstitutional institution of punishment, banishment, and outlawry of BARNES, without due process or

due course of law that ensued pursuant to the malicious conspiracy to punish BARNES without a trial knowing she was not guilty of all the charges fabricated against her.

131.   The unprecedented actions of SHAVER ignore the well-established law in this State that the judge can appoint a stand-by attorney to assist the accused, but the court has no discretion to deprive the accused of his right to self-representation.   The actions of SHAVER violated the 6th Amendment to the United States Constitution and Texas Constitution Article I, Section 10, 19, 27, 28, and 29.   Only the Legislature can suspend the laws in this State; the court is not free to suspend the laws of this State.[44]   If the Legislature cannot suspend the Texas Constitution, then the courts are not free to suspend the Texas Constitution.   At every step in the proceedings, the court has suspended the Constitution and laws of this State and deprived BARNES of due course of law.

132.   On February 28, 2011, immediately after forcing the court-appointed attorney on BARNES and while she had no representation, (having herself been banned from speaking on her own behalf or representing herself), BARNES was subjected to an unconstitutional *sua sponte* revocation of the $50,000 surety bail bond by SHAVER without any semblance of due process, notice, hearing, or opportunity to be heard; resulting in a frank breach of the $50,000 surety bail bond contract that BARNES had with the State of Texas, due solely to the vindictive and punitive actions of WILLIAMSON COUNTY, and its prosecutors, deputies, CARNES and SHAVER.

133.   BARNES had come to try the case to a jury, but, instead was thrown back in jail without any warning or opportunity to contact her clients, her children, or make arrangements for the care of her minor child or the handling of her business and personal

affairs.   This was the epitome of malice and is the habit, practice, and custom of WILLIAMSON COUNTY and TRAVIS COUNTY.   Once in the jail, BARNES learned that she would be held <u>without bail</u> in solitary confinement with a Level One Classification—the most onerous, oppressive, and punitive form of incarceration.   This was a direct violation of Tex. Const. Art I, §§ 11, 11b, 19, and 29 and U.S. Const. amends. 4, 8, and 14.

134.   BARNES was held in solitary confinement without any exposure to sunlight or the outdoors, fed a starch and sugar diet through the slot in the door like a dog in a kennel, not allowed to shower daily or given clean clothes, deprived of sleep and clean water, deprived of appropriate medical care, deprived of privacy because a trustee was paid to stand at BARNES cell door and watch her 24-hours a day, and BARNES was shackled and hand-cuffed to a wide leather belt at the waist whenever she left solitary confinement and videotaped at all times.   BARNES was not permitted to visit, call, or see any family or friends or her real lawyers.   BARNES was repeatedly abused and harassed and denied appropriate medication, medical care, wellness modalities, or adequate pain relief.   BARNES was physically assaulted, verbally abused, and maliciously maligned while in the jail.   BARNES was nearly suffocated by deputies forcefully strapping her down on a hard board with a hard neck brace that deliberately constricted BARNES' breathing—BARNES was deprived of oxygen until EMS administered oxygen to revive BARNES.   Has it not been for EMS arriving, WCSD would have asphyxiated BARNES with malice.   BARNES was physically abused at the hospital by a WCSD when she pulled on BARNES handcuff chains while BARNES' wrist were handcuffed to the leather belt and her feet were shackled and forcefully and violently pulled BARNES off

---

[44] Texas Constitution Article I, § 28.

the high exam table to the floor, crushing BARNES' left elbow and jamming her left shoulder. The shoulder injury was not addressed and the required physical therapy that was denied until BARNES was in the MSU. BARNES was also exposed to fungal infections, Hepatitis B, viral infections, and bacterial infections due to the filth in the jail.

135.   BARNES remained in solitary confinement from February 28, 2011 through June 1, 2011, when she was kidnapped and forced against her will, under cover of darkness, to Vernon, Texas, where she was held under atrocious conditions for over ten months in the MSU; and she remains in captivity to this day, without ever having a jury trial. This unprecedented action clearly violated the laws and Constitutions of Texas and the United States.[45]   BARNES has been deprived of equal protection, due process, and due course of law.

136.   On March 1, 2011, BARNES' representatives immediately filed another application for writ of *habeas corpus*[46] and physically went to the courthouse to file it and spoke personally with CARNES' court coordinator to get it set for hearing. The court failed and refused to set either of the applications for writ of *habeas corpus* for hearing. BARNES' representative was treated rudely and disrespectfully and escorted from the courthouse. The court suspended the writ of *habeas corpus* and obstructed justice. The suspension of the "writ of right" was in violation of Texas Constitution Article I, Section 12.[47]

---

[45] Texas Constitution, Art. I, §§ 3, 3a, 9, 11, 11b, 13, 19, and 29; United States Constitution, Amends. 4, 5, 6, 8, and 14.

[46] The first application for writ of *habeas corpus* had been filed by BARNES' prior lawyer after CARNES and GRIFFITH unconstitutionally forced the criminal tag and leg iron on BARNES in July 2010; however, CARNES and SHAVER refused to hear it.

[47] Texas Constitution Article I, Section 12 provides that the Writ of *Habeas Corpus* is a "writ of right and shall never be suspended." This writ of right should be "speedy and effectual." However, BARNES has been held in captivity for over a year due to the direct suspension of the "writ of right" so it has not been "speedy and effectual."

137.   SHAVER, the clerks, and CARNES' court coordinator refused to acknowledge anything that was not filed by SCHREIBER and he was not doing anything—thus, the reason the prosecutors insisted upon him as the court-appointed attorney.   BARNES had no right of recourse and the open courts doctrine was overridden by this malicious abuse of process of forcing a court-appointed lawyer on the accused—not to assist them, but to ensure that all their constitutional rights would be waived and they would be deprived of any right to appeal or seek redress of grievances or writ of *habeas corpus*.   This was the very situation that concerned the Supreme Court in deciding the *Faretta* case, when California had amended its constitution to remove the right to self-representation.   Texas' constitution not only protects the right to self-representation, but has the added language "or both" for double protection of the constitutional right for dual representation.   Texas' constitution also adds the language of Section 29 to make these rights clear, solid and forever inviolate.

138.   Although, SCHREIBER originally stated that he would file an application for writ of *habeas corpus* and obtain the transcripts of the hearing to show the lack of constitutionality in revoking the surety bail bond and breaching the contract between BARNES, the Surety Company, and The State of Texas, over time he failed and refused to do so.   After spending over two hours "visiting" with the malicious prosecutors, SCHREIBER became extremely hostile and uncooperative with BARNES.[48] SCHREIBER is nothing more than a co-prosecutor in this case and he has a significant

---

[48] Initially SCHREIBER was senile appearing and very condescending and disrespectful towards women, which BARNES attributed to his age or vice; he would refer to BARNES as "Kiddo" from the first meeting.   There were only four brief meetings between BARNES and SCHREIBER, but he went from being senile and incompetent to being extremely disrespectful, dishonest, unethical, and insistent upon fashioning a defense that the prosecutors wanted, rather than one based on the truth.   After he met with the prosecutors, he became a co-prosecutor rather than a defense lawyer.

conflict of interest because he is placing his own self-interest above and before the best interests and desires of his purported client. WILLIAMSON COUNTY, BRADLEY, MCCABE, MCDONALD, HOBBS, RYE, ANDERSON, CARNES, SHAVER, SWAIM, and ESCAMILLA knew that SCHREIBER would be easily manipulated and controlled by the prosecutors and that he would never try the case—certainly, not effectively, and that is why he was chosen to be the appointed lawyer thrust on BARNES under grossly false pretenses.

139. By the first week in April, 2011, it became obvious that SCHREIBER was ineffective and incompetent, claiming he had not ever filed a petition for writ of *habeas corpus* before and did not know how to do one. SCHREIBER further admitted that he had not ever tried a case in Texas, not even a misdemeanor. BARNES has been a trial lawyer for almost 30 years, and it became painfully obvious that SCHREIBER did not know Texas law, the Texas Criminal Code, the Texas Penal Code, or any Texas procedure. It also became obvious why the prosecutors selected SCHREIBER—he had no intention of trying the case and would only plea bargain.[49] BARNES suspects he has not tried a case first chair in decades. He refused to do anything to prepare the case or pursue the obtainment of the discovery that formed the basis of the discovery orders that BARNES had already obtained from the court—the sole reason for the continuance was to get the exculpatory evidence and he failed and refused to do so. He stated that he was not BARNES' "investigator or secretary" and that HE was "the lawyer" and would do

---

[49] From the very first meeting, before he knew anything about the case, SCHREIBER began trying to coax BARNES into a plea bargain; and even though she repeatedly refused and insisted upon a jury trial and presentment of her defense, he progressively became more and more aggressive with his insistence upon a plea bargain, and had even spent the "two hours visiting" with the prosecutors trying to negotiate a plea bargain. SCHREIBER simply was not going to try any case—he was retired and had moved to WILLIAMSON COUNTY to be near his granddaughter and these court appointments were just a source of easy income for him.

things "his way." "His way" turned out to be the prosecutors' way because he went right along with their theory of motive, without ever considering the lack of evidence or rationality to their accusations.[50]

140.   From February 28, 2011, when he was appointed until early April when BARNES fired him,[51] SCHREIBER refused to withdraw, yet, did nothing to prepare the case for trial—he did not even speak with the witnesses or view the scene, and he did nothing to free BARNES from the illegal and unconstitutional pre-trial punishment and incarceration.

141.   The case was set for trial on June 13, 2011, and the pretrial hearing was set for April 28, 2011, which was the next time BARNES was back in court following the wrongful revocation of the surety bail bond and breach of contract.  BARNES was no closer to obtaining the *Brady* material than she had been on February 28, 2011.  Her

---

[50] The appointment of counsel cannot be used as a subterfuge to deprive an accused of his constitutional rights—that is exactly the facts of this case.  This is the very situation that the framers of the Texas Constitution intended to address, guard against, and prevent in drafting the wording of Article I, Section 10 because there is an inherent risk of corruption when the prosecutor is malicious and the charges are vindictive and the prosecutor is allowed to hand-pick a visiting judge and a defense counsel.  There is an inherent bias against the accused when the prosecutor, the judge, and the defense counsel are all paid by the State because if the defense counsel is unethical and incompetent as SCHREIBER is, then it deprives BARNES of any representation when she is prevented from representing herself.  BARNES has been left standing alone against the unchecked corruption of the malicious prosecutor who has done nothing short of soliciting and obtaining two co-prosecutors, while continuing the subterfuge of pretending that BARNES has legal representation when, in fact, she was deprived of her right to be heard by herself and of her right to be heard by counsel both.  BARNES was deprived of her 6th Amendment right to effective assistance of counsel and a vigorous and zealous defense.  Further, under the facts of this case, BARNES had already filed Defendant's Notice of Constitutional Election and Memorandum to the File (file-marked June 15, 2010), and stated her election in all capital letters on pages 4-5, pursuant to Texas Constitution Article I, Section 10.  The State did not ever file a response or objection to this election; and BARNES subsequently obtained a court order preventing any further *ex parte* communication and requiring all discussions, communications, and hearings to be conducted in BARNES' presence.

[51] BARNES fired him because he was not only rude, arrogant, condescending, and disrespectful, he simply refused to listen to her or prepare HER defense.  SCHREIBER was insistent upon assuming the allegations by the prosecutors were true and then developing a defense to mirror those false allegations—essentially a false defense to a false charge, rather than presenting and standing on the truth, confronting the evidence, and cross-examining the witnesses.  Most importantly, SCHREIBER had not been honest with BARNES and his tactics and ideas were unethical.  BARNES did not feel comfortable or confident in the integrity and skills of SCHREIBER, and in this case, a *pro se* defense would be better than the court-appointed defense.

hands were tied by a dishonest and unethical court-appointed lawyer who was being spoon-fed and manipulated by the prosecutors.  WILLIAMSON COUNTY, SHAVER, MCCABE, BRADLEY, MCDONALD, HOBBS, RYE, TRAVIS COUNTY, SWAIM, and ESCAMILLA had simply set up a Star Chamber to take care of BARNES and rid them of their two malicious prosecutions that were false, fraudulent, and vindictive from their inception.

142.    After BARNES fired SCHREIBER in early April 2011, he had no other contact with BARNES—no visits, no letters, no calls.  On April 28, 2011, the next opportunity BARNES had to communicate with the "visiting" judge after the malicious revocation of the surety bail, BARNES advised the court of the ineffective assistance of counsel and the fact that SCHREIBER was incompetent, had never tried a case in Texas, not even a misdemeanor, and attempted to make a record to prove his deficiencies; however, the court would not allow BARNES to make a record for appeal.  SCHREIBER did not even know about the Castle doctrine, which is central to the defense in this case, and said he had to "research" it.  SHAVER interrupted BARNES' attempt to make a record to prove SCHREIBER's lack of effective assistance and SHAVER merely asked SCHREIBER, "Are you licensed to practice law in Texas?" and when SCHREIBER indicated that he was, SHAVER said "Good enough."  SHAVER summarily deemed SCHREIBER, with his mere "license to practice law in Texas," was "good enough" for due process in defending against a first degree felony brought by a malicious prosecutor without any regard for the truth, fairness, or justice.  A lawyer who can merely fog a mirror is not "good enough" and this lawyer, in particular, is NOT representing BARNES' best interest, but is representing his own best interest at BARNES' expense.

This fact is demonstrated repeatedly after the hearing on April 28, 2011 because SCHREIBER repeatedly violated his ethical obligations and statutorily mandated duties.

143. BARNES was immediately thrown back in jail, just after seeing SCHREIBER completely bungle the motion to depose GITTEL—he simply said nothing and allowed MCCABE to present his objection, did not respond, and made no effort to make a record for appeal—it was treated as if it were MCCABE's motion rather than a defense motion. SCHREIBER made no attempt to obtain the exculpatory evidence that BARNES had been seeking for almost a year and that would have supported the motion to depose GITTEL. The transcripts would prove the truth and that is the reason SHAVER is obstructing justice and advising the court reporter and district clerk to ignore BARNES' repeated requests for the clerk's record and court reporter's record on appeal and in support of the applications for writ of *habeas corpus*.

144. All of the WILLIAMSON COUNTY and TRAVIS COUNTY Defendants knew that SCHREIBER's incompetence, laziness, or senility would be attributable to BARNES on appeal and that the appellate courts would hold that errors were waived by trial counsel's failure to object, make a record, or preserve error. BARNES was not even allowed to speak and had to watch and bear this atrocity in silence. This is the manner in which all Defendants planned for and intended the trial to proceed. BARNES would be convicted and all error would be waived by trial counsel's failure to preserve error for appeal.

145. Then, SCHREIBER, who was not prepared to try the case in June, conspired with the malicious prosecutors, and they revived the "competency" issue that had already been resolved and put to rest in June and July 2010, at great expense to the

defense. This was and always has been a defamatory ruse by the prosecutors in this malicious prosecution—their entire theory of motive was fashioned around BARNES being "a disturbed individual" who "suffered a complete break with reality" and shot at GITTEL because BARNES thought she "looked like RYE." Now, WILLIAMSON COUNTY had a court-appointed attorney they could manipulate and they did; additionally SCHREIBER wanted revenge for BARNES' reporting of his incompetence to the court on April 28, 2011, and her efforts to make a record for appeal to prove the same.

146. BARNES had already retained two expert witnesses on the issue of competency who had previously evaluated her and filed reports with the court.[52] However, rather than utilize BARNES' retained experts, SCHREIBER wanted a different result, and he, therefore, retained another psychologist to advance his interest—Dusty Humes—HUMES. In violation of his fiduciary duty and ethical obligations, SCHREIBER did not ever discuss any of his plans with BARNES; as a matter of fact, SCHREIBER never visited with BARNES or spoke with BARNES again after she fired him during the first week of April, 2011. From that day forward, everything SCHREIBER did was on his own without any consultation, approval, or participation of BARNES; and nothing was in BARNES' best interest, but was solely to advance the personal interests of SCHREIBER.

147. BARNES had no notice or knowledge that the malicious prosecutors and SCHREIBER had revived the "incompetency" and "mental illness" issue. So, when

---

[52] Dr. Robert Cantu and Dr. John Breeding had filed written reports that BARNES was more than competent to stand trial—as would be expected with almost 30 years of criminal defense work—and WILLIAMSON COUNTY's retained expert, Dr. Richard Coons, had agreed that BARNES was competent

101

HUMES came to the jail under the false pretense of seeing if she could work out the "differences" that BARNES was experiencing with SCHREIBER, BARNES agreed to see her and try to resolve these "differences."[53] HUMES was very deceptive and said that she had been hired by SCHREIBER to help resolve these "differences" and that it was "highly unlikely" that she would ever testify in court. HUMES did not even ask the usual competency questions and spent the entire time on the issues with SCHREIBER, so there was nothing to put BARNES on notice that she was conducting a competency evaluation. HUMES spent a very short time with BARNES and clearly had a pre-determined opinion that was set by SCHREIBER and bolstered by BRADLEY, MCCABE, MCDONALD, HOBBS, RYE, and the WCSD and Jail deputies, since these were the same ones who had conspired with these same prosecutors on Saturday, May 8, 2010, the date of the alleged GITTEL events. They were determined to push and construct their "crazy" motive.

148. After paying HUMES to fabricate an opinion that BARNES was incompetent to stand trial, it was a very simple matter to get the prosecutors' expert, Richard Coons, to change his opinion and find BARNES incompetent to stand trial.[54] Since these opinions are not based on any scientific or objective evidence, they are easily manipulated and controlled by the prosecutors because if you want to keep the income flowing, you have to satisfy the hands that feed you. BARNES was fully competent to stand trial, as a matter of law; and this was a gross and malicious abuse of process

---

to stand trial. All three reports were on file with the court, so SCHREIBER and the prosecutors were well aware of these reports and opinions.

[53] HUMES would not even enter the solitary confinement cell with BARNES until BARNES was secured in shackles and handcuffs with her hands pinned at the waist to a large leather belt; even then, HUMES sat in a chair across the cell from BARNES near the door.

pursuant to T.C.C.P. art. 46B.  The *Dusky*[55] case never intended such a bizarre outcome with the standard being applied offensively to deprive the accused of a speedy and fair trial.

149.    This is direct and verifiable evidence of the difference between having effective assistance of counsel and having a right to appear in person or through counsel or both, as opposed to having a court-appointed attorney leading to the Star Chamber effect where the accused is left completely out of the process, their defense is hijacked and never presented, and they are thus, left, effectively, with no representation at all. When BARNES was appearing pursuant to her Tex. Const. Art. I, § 10 right, (representing herself with counsel of her choice), she was handily able to fend off the bad faith motive of the malicious prosecutors;  however, once the Star Chamber was instituted, the malicious prosecutors, with the aid and assistance of the court-appointed lawyer, were handily able to shove through their bad faith motive, and readily achieve the objective of the criminal conspiracy—punishment and confinement of BARNES indefinitely without a jury trial or any semblance of due process, equal protection, or due course of law.[56]

150.    On May 19, 2011, the WCSD deputies removed BARNES from solitary confinement and told her she had court at 9 a.m., but they did not know the purpose. BARNES had no notice whatsoever about this hearing date or the purpose of the hearing, and it was designed to be a procedural and substantive ambush.  BARNES was taken to

---

[54] Richard Coons, had previously agreed with BARNES' two expert witnesses that BARNES was competent to stand trial; however, deriving over $50,000 a year in income from the WILLIAMSON COUNTY prosecutors, he had to lean towards what they desired.

[55] *Dusky v. United States*, 362 U.S. 402 (1960). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings.

court in the prison uniform again, with her hands cuffed to the thick leather belt at her waist and in shackles, so that she would be demeaned and humiliated in front of her competitors and the audience that the prosecutors always had present, including the media and videotaping in the courtroom.

151.   When BARNES arrived at court, it became apparent that WILLIAMSON COUNTY, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER were conspiring to have BARNES committed under Tex. C.C.P. art. 46B without any semblance of due process.[57]   BARNES immediately objected to the reports and the process and made her demand for a jury determination pursuant to art. 46B.   However, SHAVER smugly stated that "your attorney has waived your right to a jury trial." BARNES objected again because SCHREIBER had no authority to waive BARNES' right to a jury trial.   SCHREIBER had not even spoken or communicated with BARNES since she fired him—and certainly did not fulfill his fiduciary obligations and responsibilities for full disclosure and the consent and permission of the client—he continued to act like the principal instead of the agent and shirked his fiduciary responsibilities as if he were completely oblivious to any creed and devoid of any ethical foundation.

152.   This was not effective ASSISTANCE of counsel, but a complete hijacking and derailment of the defense.   As maliciously planned pursuant to the criminal conspiracy to violate BARNES' constitutional rights, SHAVER signed the commitment

---

[56] BARNES was never even served with or informed of any of the pleadings, filings, motions, or orders after SCHREIBER joined the prosecution—everything was accomplished without any notice, consultation, or disclosure of information given to BARNES.

[57] Witnesses later advised BARNES that all the discussions and decisions were made off the record before BARNES was even brought in for the "hearing."   The making of the record was a fraudulent pretense.

104

order sentencing BARNES to 120 days in the Maximum Security Unit at the North Texas State Hospital in Vernon, Texas (hereinafter referred to as the MSU).

153. On that same day, May 19, 2011, the day of the "hearing" (where SHAVER denied BARNES request for a jury trial to determine the issue of competency and summarily signed the commitment order banishing her to the MSU), MCCABE authored a defamatory *per se* four-page document and delivered it to the MSU in order to deliberately, intentionally, and maliciously taint, prejudice, and direct the diagnoses and cruel and unusual punishment in the MSU. MCCABE stated that BARNES had suffered "a complete break with reality" (psychotic), suffered from "persecutory delusions" and was "paranoid." He also stated that BARNES thought that everyone at every level of government, (federal, state, and local), were plotting against her. Two of the four pages listed a long laundry list of "bad acts" and other nefarious allegations against BARNES for the sole purpose of making BARNES appear to be suffering from a "serious mental illness" when in fact, the laundry list comprised the prior bad acts of WILLIAMSON COUNTY and WCSD. MCCABE sent a long list of defamatory *per se* accusations that have no basis in truth and stated them as established fact, when they were completely false and defamatory fabrications by MCCABE. It was a planned fleshing out of the defamation started by Mike Davis when BARNES first sued WILLIAMSON COUNTY and WCSD, (its sheriff and three deputies involved in the first false arrest and malicious prosecution) in 1999, which had continued in caution flags and memorandum throughout the decade prior to this latest incident, and which was restated by HOBBS to the media on the day of BARNES' arrest on May 11, 2010. MCCABE ended the scathing

105

correspondence with the statement that BARNES was "DANGEROUS" and "needed FORCED MEDICATION."

154.    On June 1, 2011, BARNES was awakened at 2 a.m. without any warning, handcuffed and shackled, thrown into a marked patrol car, and transported over five hours in a cramped backseat sitting on a hardboard seat to the MSU, within 20 miles of Oklahoma.[58]    BARNES was permanently banished to the MSU and permanently outlawed without ever having a jury trial or opportunity to clear her name—these proceedings were completely devoid of any semblance of due process and they made a mockery of our system of justice.  BARNES has been outlawed in violation of the Texas Constitution because she was afforded none of the rights protected by the United States and Texas Constitutions, as well as the applicable Texas statutes and legal precedent. BARNES is currently serving the maximum sentence that can be imposed under the law, which is essentially a life sentence with the intended result of BARNES suffering permanent, irreversible, and irreparable brain damage, serious personal injuries from the numerous physical assaults during this cruel and unusual punishment, and permanent loss of familial relations, business relations, income, and reputation without any recourse under the law.[59]    The sentence was imposed summarily without a trial when the

---

[58] In route to the MSU, BARNES was informed that WCSD were again acting with utmost malice and impounding BARNES' vehicle because they suspected that she had escaped from solitary confinement and planted a bomb in her Jeep and parked it at the Cedar Park Annex, (where they all met on Saturday, May 8, 2010 to plot this vindictive scheme).  WCSD claimed that they suspect BARNES was trying to blow up the building and had to impound the Jeep to have the bomb squad inspect it.  WILLIAMSON COUNTY, WCSD, HOBBS, RYE, BRADLEY, MCCABE, MCDONALD, and WILSON are extremely paranoid and delusional, and as a result, BARNES was again subjected to an unreasonable search and seizure.

[59] These malicious conspirators deliberately and intentionally forced the court-appointment of SCHREIBER onto BARNES because they knew this would also deprive BARNES of any ability to appeal or to seek a writ of *habeas corpus*.  The appellate courts have always punished accused who attempt to appeal pro se when they have a bad court-appointed lawyer—ones who always forget that they are agents and owe a fiduciary duty to the client (the highest duty under the law)—by claiming that the pro se cannot appeal or seek any review, recourse, or relief because they are "represented" by a lawyer and ONLY the

106

prosecutors had evidence in their files that proved that BARNES is not guilty of these alleged crimes. When the malicious prosecutors realized they could not prevail at trial without suborning perjury and knowingly putting on aggravated perjury to obtain a conviction, they decided to derail the case and impose the maximum punishment without a trial. They knew they could only accomplish this if BARNES was in jail and had a court-appointed attorney they could manipulate and control. This is exactly what SHAVER handed them on February 28, 2011, after their lunch break together.

155. The malicious prosecutors manipulated and abused process to obtain the desired results—to imprison and perform a chemical lobotomy on a vocal political opponent and competitor in order to take BARNES out of the arena during this election year, when BRADLEY's bad deeds were catching up with him in the media. The malicious prosecutors had to first manipulate the process in order to get BARNES in jail without any right to bail, force a hand-picked court-appointed lawyer on her, and then obtain a court order finding BARNES incompetent to stand trial—it was fairly easy to accomplish this by blocking BARNES from calling her retained experts, keeping her from cross-examining the paid assassins, and preventing her from obtaining a jury trial. Then, the prosecutors made sure that the MSU would continue the ruse—at $651 per day, this was also easily accomplished.

156. The prosecutors not only sent the four-page defamatory *per se* plan of diagnoses and treatment to the MSU, but they had further contact with the MSU in order to manipulate the findings, opinions, and conclusions to unlawfully and unconstitutionally extend the commitment indefinitely without any semblance of due

---

lawyer can file pleadings. This is antithetical to the intent of the framers of the Texas Constitution, especially with their choice of words in Art. I, § 10.

107

process and in violation of the clear requirements of the Health and Safety Code, Title 7, Subtitle C.  On all objective tests concerning competency issues, BARNES made 100. The first test was given on June 6, 2011 and repeated every month thereafter.  BARNES' competency teachers continuously advised that she was more than competent to stand trial, to no avail.[60]

157.   Towards the end of the 120 day commitment, when BARNES was absolutely entitled to a jury determination, right to independent evaluation, right to be present, right to confront and cross-examine, and the court is required to receive live testimony and not just hearsay reports, the MSU attempted to coerce BARNES into signing a waiver of these statutory and constitutional rights for the benefit of the prosecutors.  However, BARNES refused to sign the waiver.  Instead BARNES filed with the court, the prosecutor, and SCHREIBER, her insistence upon these rights,[61]  which would be shown by the transcript of the September 1, 2011 "hearing" held in BARNES absence despite the clear statutory and Constitutional requirements.  BARNES was

---

[60] Since March, 2012, BARNES is no longer even required to attend the competency classes, which are not even taught by lawyers.

[61] Prior to the "hearing" on September 1, 2011, which BARNES had no notice of, BARNES filed a written "CONTINUED INSISTENCE UPON RIGHT TO APPEAR BY PROPOSED PATIENT—I, the Defendant in the above and numbered cause [10-663-K368], hereby insist upon my right to appear, and request that, by clear and convincing evidence, the court require competent medical or psychiatric testimony by allowing an independent evaluation b y a forensic psychiatrist without a financial interest in the outcome, as I am NOT mentally ill or a person with mental retardation and I do NOT meet the criteria for Civil Commitment: Charges Pending Under Code of Criminal Procedure, Article 46B, Subchapter E" and BARNES incorporated all matters raised in the federal *habeas corpus* in Cause # 1:11-CV-414-LY and A11-CR-237-LY, with which the State had been previously served.  BARNES also sent a written "INSISTENCE UPON TRIAL BY JURY BY PROPOSED PATIENT—I, the defendant in the above numbered cause [10-663-K368], hereby insist upon trial by jury and request that by clear and convincing evidence the court require competent medical or psychiatric testimony by allowing an independent evaluation by a forensic psychiatrist without any financial interest in the outcome as I am NOT mentally ill or a person with mental retardation and I do NOT meet the criteria for Civil Commitment: Charges Pending Under Code of Criminal Procedure, Article 46B, Subchapter E."  BARNES also amended, deleted, and marked through the paragraph entitled "Waiver of Jury Trial and Appearance by Attorney" so that the court-appointed attorney could not waive any of BARNES' rights; and BARNES added "I hereby request a court-appointed lawyer who is competent and ethical because Alan Schreiber is not and he has a conflict of

lawfully entitled to appear at any hearing, receive a copy of the pleadings filed and order entered, a jury trial, an independent forensic evaluation, cross-examine the witnesses and evidence against her, and the discovery necessary to effectively cross-examine the witnesses and evidence against her. SHAVER, MCCABE, BRADLEY, MCDONALD, and SCHREIBER all failed and refused to provide BARNES with a copy of the pleadings filed prior to September 1, 2011 to have her commitment extended, any evidence presented in support thereof, any notice of any hearing thereon, or a copy of the Order extending the commitment. BARNES was entitled to notice and copies of these documents under the law of the case and pursuant to Texas Health and Safety Code, Title 7, Subtitle C. However, the due course of law and due process required for a Civil Commitment pursuant to the Health and Safety Code, Title 7, Subtitle C were not met.

158. At the hearing on September 1, 2011, which was conducted without BARNES being present, SCHREIBER not only violated the clear legal requirements of the commitment statute, he failed to represent BARNES' interests as required by the commitment statute. In fact, SCHREIBER made misrepresentations of material fact, introduced hearsay, and violated his ethical obligations to BARNES. SCHREIBER claimed that BARNES was "so mentally ill that bringing her back for a hearing would be a complete waste of time." SCHREIBER had not seen or talked with BARNES in five months. SCHREIBER did not fulfill his statutory duties under Texas Health and Safety Code, Title 7, Subtitle C; so, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER thumbed their noses at the statutory requirements to make these proceedings legal and SCHREIBER and MCCABE made misrepresentations of material

---

interest;" and the "forced court-appointed attorney has no authority to waive any rights that belong to me. CCP art. 46B was violated by denying me my right to due process and jury trial in May 2011."

109

fact to the court that they had complied with the statutory duties and requirements. *See* Texas Health and Safety Code, Title 7, Subtitle C, Chapter 574, Sec. 574.004 (b), (c), (d), (e), and (f); Sec. 574.006(a); Sec. 574.007 (b)(5), (d); Sec. 574.010; Sec. 574.011 (e), (a)(6), (a)(7); Sec. 574.031 (c), (g); Sec. 574.032 (b), (c), (f); Sec. 574.035; Sec. 574.035 (g); and Sec. 574.036 (d). All of these sections of the Texas Health and Safety Code were blatantly violated—as the record will prove. Therefore, any alleged commitment order is void *ab initio* and BARNES' liberty interests are being violated and the writ of right has been unconstitutionally suspended for over a year. The commitment orders deprived BARNES of her fundamental liberty interest in freedom from forced pretrial captivity because the hearsay documents were insufficient to justify depriving her of substantive due process and due course of law under the Fourteenth Amendment to the United States Constitution and Article 1, §§ 15-a, and 19 of the Texas Constitution. *See* U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. Further, the court's application of section 574.106 of the health and safety code and the refusal of SHAVER, MCCABE, MCDONALD, and SCHREIBER to comply with the legal protections provided in chapter 574 of the health and safety code deprived her of "equal protection and of substantive due process." See U.S. Const. amend. XIV, § 1; Tex. Health & Safety Code Ann. § 574 (West Supp. 2008). Based on the statute's text, CCP Art. 46B and Section 574 required a finding that BARNES presented a danger to herself or others before the court was authorized to order the commitment. There was no clear and convincing evidence that she presented a danger to herself or others because said Defendants can not transform a mere accusation, which they suborned, into admissible evidence of an undisputed fact. SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER

110

are jointly and severally liable for this atrocious violation of BARNES' procedural and substantive due process rights, which are protected by the Constitutions and applicable statute. No reasonable lawyer, including SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER would have believed that their actions did not violate a clearly established and well-recognized constitutional right.

159. BARNES had an absolute constitutionally protected right to be present at all hearings, discussions, or communications concerning her case. A proceeding in which a person has the right to be present and participate and who was not permitted to, (either due to a lack of a hearing, or discussions or hearing occurring outside their presence) resulting in a court order, and who did not knowingly and intelligently waive that right to be present and participate is void. A court which has both subject matter and personal jurisdiction over a given case, but which performs an action outside of any legal or judicial authority or contrary to the Constitution and laws of this State, acts beyond the scope of the law and that *ultra vires* act cannot be recognized as a valid judicial act. The law will not validate its existence or performance. It is, in hoary terms, a "void" act. *Ex Parte McCain v. State*, 67 S.W.3d 204, 210 n. 16 (Tex.Crim.App. 2002); *Stine v. State*, 908 S.W.2d 429, 431 (Tex.Crim.App. 1995); *Mireles v. Waco,* 502 U.S. 9, 12 (1991) (per curiam). Therefore, any orders entered contrary to the laws of this State are VOID *ab initio*. BARNES continues in captivity pursuant to a void order; and Defendants know it is a void order.

160. Further, the American Bar Association in the STANDARDS RELATING TO COMPETENCE TO STAND TRIAL Section 7-4.2(e) (1989), the ABA has resolved it to be improper to use competence procedures for purposes unrelated to the

111

determination of competence, such as delaying the proceedings or punishing the accused pretrial. These competency procedures are being abused in this case and being used for an improper purpose to deprive BARNES of her freedom and right to due process, due course of law, right to confront and cross-examine, right to a jury trial, and right to clear her name. No reasonable lawyer, including SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER would believe that someone who has been practicing as a criminal lawyer and trial lawyer for nearly 30 years is incompetent to stand trial, and this was a criminal artifice to punish without due process.

161. Under the facts of this case, the court-appointed lawyer is a subterfuge, which has allowed, aided, and abetted the malicious prosecution by denying BARNES her constitutionally protected rights. BARNES did not ever request a court-appointed attorney because she had co-counsel of her choice at all relevant times prior to the unexpected breach of the surety bail bond contract[62] on February 28, 2011. SCHREIBER

---

[62] This unprecedented action of revoking a surety bail bond without due process, notice, hearing, or evidence in support thereof violated Texas Constitution Article I, Section 9 that provides that the "people shall be secure from all unreasonable seizures" as well as Texas Constitution Article I, Section 11 the provides that "All prisoners shall be bailable by sufficient sureties" due to the malicious punishment for BARNES' attempt to advocate and present her previously filed application for writ of habeas corpus concerning the unlawful and unconstitutional impairment of the obligation of that surety bail bond contract. Texas Constitution Article I, Section 27 clearly provides that the "citizens shall have the right to…apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address, or remonstrance" and that is exactly what BARNES was attempting to do when the "visiting judge" lashed out without exhibiting any acceptable judicial temperament or judicial restraint and punitively and oppressively *sua sponte* revoked the surety bail bond unlawfully and threw BARNES into oppressive pretrial captivity in violation of Texas Constitution Article I, Section 11b. BARNES did not violate a condition of release and was entitled to a hearing on her application for writ of habeas corpus and the "visiting judge" did not "determine by a preponderance of the evidence at a subsequent hearing that BARNES violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community," as required by Texas Constitution Article I, Section 11b. The actions on February 28, 2011 violated Texas Constitution Article I, Section 19, which provides that "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Further, the attempted forced imposition of a leg iron violated the laws of this State forbidding retaliation and punishment against citizens reporting crimes of the governmental employees or other exercises of protected free speech—Texas Constitution Article I, Section 8, 1st Amendment United States Constitution, and Texas Constitution Article I, Section 16 concerning the impairment of the obligation of contracts. The courts are simply not at liberty to do what the Legislature

was forced on BARNES in a pre-conceived plan to silence, gag, and suppress BARNES and prevent her from discovering the clearly exculpatory evidence that the malicious prosecutors had been ordered to produce on December 16, 2010—exculpatory evidence that BARNES had been requesting since the inception of this malicious prosecution.[63] This subterfuge clearly violated United States Constitution Amends. V, VI, and XIV; and Texas Constitution Article I, Section 10, 9, 11, 11b, 13, 15, 27, 28, and 29.

162.   Courts in Texas have no inherent power to ignore an express constitutional provision, express statutory provision, or the laws of this State.   The courts of this State are bound to follow the will of the people of this State, as that will is expressed by the people in the Constitution and the laws enacted by their duly elected representatives. *Queen v. State,* 842 S.W.2d 708, 711 (Tex.App.—Houston [1st Dist.] 1992, no pet.).   It is unconstitutional for the courts to suspend the laws of this State.   Texas Constitution Article I, Section 28, 29.

163.   The forced appointment of SCHREIBER is nothing less than a criminal subterfuge to prevent BARNES from enjoying due process and the equal protection under the law afforded by the United States Constitution[64] and the due course of law guaranteed

---

has been enjoined from doing in the Texas Bill of Rights.  Texas Constitution Article I, Sections 19, 27, 28, and 29.

[63] This evidence proves that not only is BARNES NOT guilty of this incredible charge, but that the malicious prosecutors were involved in designing the malicious prosecution on Saturday, May 8, 2010 and they knew from the exculpatory documents that they are refusing to produce that these charges were false, fabricated, and concocted with a malicious intent to harm and injure BARNES irreparably.

[64] The United States Supreme Court has repeatedly held that all accused persons are entitled to effective assistance of counsel, which is a constitutionally guaranteed rights under the 6th Amendment.  Under a long line of cases, the facts of this case prove that BARNES' constitutional rights have been violated.  United States Constitution Amends. I, IV, V, VI, VIII, and XIV.  The 6th amendment made applicable to the States through the 14th amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to have the assistance of counsel for the defence."  The "vital" need for a lawyer's advice and aid during the criminal process was recognized by the Court over 50 years ago in *Powell v. Alabama,* 287 U.S. 45, 57, 71 (1932).  In *United States v. Wade,* 388 U.S. at 226-227, the court stated "It is central to [the Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where

by the Texas Constitutions. Even the clear terms of the Texas Health & Safety Code requires that an attorney must follow the instructions of his client on the issue of court-ordered treatment, regardless of the attorney's own position on the matter. TEX. HEALTH & SAFETY CODE ANN. Section 574.004(c); Brian D. Shannon & Daniel H. Benson, TEXAS CRIMINAL PROCEDURE AND THE OFFENDER WITH MENTAL ILLNESS: AN ANALYSIS AND GUIDE (2nd ed. 1999). On competency, the court must provide a disinterested expert experienced and qualified in mental health to examine the client. TEX. CODE OF CRIM. PROC. ART. 46.02 Section 3. BARNES had previously filed her response both through her counsel of choice and *pro se* along with the reports of Dr. John Breeding and Dr. Robert Cantu and SCHREIBER owed a fiduciary duty to BARNES to utilize her retained experts and call them in her defense. STANDARDS RELATING TO GENERAL PROFESSIONAL OBLIGATIONS TO DEFENDANT WITH MENTAL ILLNESS Section 7-1.1(d) (1989).

164. Since TRAVIS COUNTY, SWAIM and ESCAMILLA were actively conspiring with WILLIAMSON COUNTY, BRADLEY, MCCABE, MCDONALD, and HOBBS, and were actually present in WILLIAMSON COUNTY on February 28, 2011, when this malicious scheme was put in motion, it is apparently the intent of these TRAVIS COUNTY and WILLIAMSON COUNTY prosecutors to dispense with the necessity of a jury trial in these malicious and vindictive criminal cases because these prosecutors know these are bogus, false, and groundless charges with concentric

---

counsel's absence might derogate from the accused's right to a fair trial." *See* also *United States v. Henry*, 447 U.S. 264 (1980); *Massiah v. United States*, 377 U.S. 201 (1964); *White v. Maryland*, 373 U.S. 59 (1963); *Hamilton v. Alabama*, 368 U.S. 52 (1961). BARNES has been deliberately, intentionally, and knowingly deprived of her right to legal counsel and right to self-representation BOTH since February 28, 2011. A trial court simply cannot force a lawyer on the accused to silence the accused and deprive them of their right to self-representation guaranteed under Texas Constitution, Article I, Section. 10.

114

malicious prosecutions, and just summarily banish BARNES indefinitely in a mental hospital by renewing these commitment orders annually for twenty years or longer.

165.   In June 2011, while BARNES was being held in captivity in the MSU, BARNES executed a lawful power of attorney appointing Dora Kuhn as her agent and attorney in fact to conduct her business, collect her accounts receivable, secure and protect her home and personal property, and transact banking business on her behalf. However, as a direct result of the criminal conspiracy, she was threatened with criminal charges and hauled into probate court by Judge McMaster, who is the Judge that RUPPART works for, when Judge McMaster entered an *ex parte* injunction enjoining her from taking any action under her lawful power of attorney.   There was no evidence whatsoever to support this order that tortiously interfered with BARNES' constitutional rights and contractual agreements.   This action by the WILLIAMSON COUNTY courts was part and parcel to the advancement of the criminal conspiracy because it blocked BARNES' access to her funds, property, and assets, and caused the direct loss, destruction, dissipation, and theft of over $300,000.00 in real and personal property and the loss of over $150,000.00 in collectible accounts receivable.   BARNES was unconstitutionally prevented from securing and protecting her home and assets by the WILLIAMSON COUNTY courts through a direct interference with her contracts. BARNES residence has been repeatedly burglarized, vandalized, and stripped, and BARNES is left without any recourse because as is the habit, practice, and custom of WILLIAMSON COUNTY, they will make no effort whatsoever to recover the assets or prosecute the culprits.

166. At the MSU, BARNES was violently assaulted over a dozen times, had her hair pulled out by handfuls at least five times, and suffered permanent disfigurement of her face, permanent nerve damage, and other injuries, along with extreme emotional distress, and mental anguish. These were all foreseeable consequences of the actions of TRAVIS COUNTY and WILLIAMSON COUNTY and their malicious prosecutors, SWAIM, ESCAMILLA, BRADLEY, MCCABE, MCDONALD, HOBBS, and RYE with the aid and assistance of SHAVER and SCHREIBER—both hand-picked by WILLIAMSON COUNTY, CARNES, ANDERSON, BRADLEY, MCCABE, MCDONALD, HOBBS, and RYE as is the habit, practice, and custom of WILLIAMSON COUNTY and TRAVIS COUNTY on politically charged cases or cases where the county has incurred liability for the bad acts of its employees, agents, representatives, or prosecutors.

167. Only a federal court can protect BARNES and provide the guarantees protected by the United States Constitution because WILLIAMSON COUNTY and its prosecutors control the "visiting" judge and there is no check or balance because WILLIAMSON COUNTY and its prosecutors also selected the defense attorney. WILLIAMSON COUNTY and its prosecutors selected the court to file this in, and (with the aid and assistance of CARNES who eventually recused himself, but not until after the damage had been done), selected the foreman of the grand jury (a political ally), the "visiting" judge assigned to hear this case, and the defense counsel; then, manipulated them all to send BARNES to the MSU for a chemical lobotomy and banishment. These state actors obstructed justice and outlawed BARNES with the malicious intent to cause permanent, irreversible, and irreparable harm.

116

168.    After violating BARNES' constitutional rights to due process, due course of law, equal protection, and to a examining trial, speedy trial, fair and impartial tribunal, and right to pretrial bail, WILLIAMSON COUNTY violated her right to a hearing on a writ of *habeas corpus* and illegally, unlawfully, and unconstitutionally held BARNES in either Solitary Confinement with a Level One Classification or in the MSU or state hospital for the criminally insane.  At all relevant times, BARNES has been held in harsh, punitive, and hostile conditions, and deprived of due process; her right to represent herself or to appear through counsel or both; her right to pre-trial bail; her right to an examining trial; her right to a jury determination on competency as provided under Texas Code of Criminal Procedure article 46B; her rights to due process and due course of law prior to the commitment order pursuant to Health and Safety Code Title 7, Subtitle C; her right to effective assistance of counsel; her right to a fair and impartial tribunal; her right to a speedy trial; and her right to equal protection under the law.

169.    BARNES has repeatedly sought *habeas corpus* relief, which is more fully set forth at length in the action in this federal district court under Cause No. A-11-CA-414-LY and Case number 11-50764 filed in the Fifth Circuit, and in the Texas Court of Criminal Appeals under Cause No. 75,685-02, Case number 03-12-00073-CV and Case number 03-11-00647-CR filed in the Third Court of Appeals, which pleadings are all incorporated herein by reference the same as if set forth at length.  At all relevant times, the clerk and court reporter have failed and refused to prepare and file the record for the reviewing courts.  BARNES has a right to be free from incarceration and commitments that violate State statutes and the State Constitution, and this is a protected Liberty interest.   Therefore, these pretrial sentences and commitment orders should have been

117

vacated because they violate United States Constitution Amends 4, 8, and 14. *Hamilton v. Freeman*, No. COA00-1470, 554 S.E.2d 856 (N.C. App. 2001) no writ. BARNES continues to seek *habeas corpus* relief from this unconstitutional punishment.

170. No reasonable lawyer or judge could have believed in good faith that BARNES was incompetent to stand trial, and this was a clear malicious abuse of process under C.C.P. art. 46B[65] as a matter of law. CARNES, SHAVER, BRADLEY, ANDERSON, MCCABE, MCDONALD, HOBBS, RYE, BROOKS, WCSD, WILSON, BRINKMANN, BARTZ, DE LA VEGA, BOGAN, FOSTER, HUGHEY, WAGGONER, NEWELL, HERNANEZ, RICHTER, TRAVIS, SCHEFFLER, SWAIM, ESCAMILLA, MORGAN, TUMLINSON, KLEKAR, LERMA, COTTON, and others employed by WILLIAMSON COUNTY and TRAVIS COUNTY sought the destruction of BARNES' reputation and career simply because she zealously represented her clients and exposed the short-cuts, dishonesty, and fabrications by certain law enforcement personnel and certain prosecutors. These Defendants at all times allowed their hate and animosity to override reasonableness, sound judgment, and good sense. **Immunity should never be used as an offensive weapon to knowingly, deliberately, intentionally, and with malice violate the civil and constitutional rights of any citizen.**

171. No one involved in any stage of these proceedings has clean hands and they have all entered into a criminal conspiracy with utmost malice with the intent to retaliate, obstruct justice, and harm, injure, and damage BARNES and her family and deprive her of a right to earn a livelihood. They fully intend to continue along this criminal course of conduct indefinitely as they have done for the past two years because

they have repeatedly retaliated against BARNES for 15 years without ever being held accountable. The habit and custom has been well established and is well known.

172. Under the Texas Tort Claims Act, WILLIAMSON COUNTY and TRAVIS COUNTY could not have accomplished the desired objective or their agreed upon goals without the use of state owned instrumentality; to-wit: the jails; marked patrol cars and county owned truck; guns; rifle scope; bullet proof or hard vest; shackles; handcuffs; leather restraint belt with cuffs attached; criminal tag; leg iron; electronic monitoring with harmful electromagnetic frequencies; restraint jacket; hard straight board with restraints; neck brace; tow truck on June 1, 2011; audio and video equipment during July 2010 arrest, in jail, and in court; audio-video recording equipment; unhealthy "food" in jail; rubber stamp of official signatures; notary seal; driver's license and arrest photos; hard neck brace; cameras; MSU, restraint chair; hypodermic needles; psychoactive, neuroleptic, and anti-psychotic drugs; state mental hospital; and fraudulent billing.

173. Since WILLIAMSON COUNTY, WCSD, TRAVIS COUNTY, TCSD, WILSON, HAMILTON, and the deputies and prosecutors have a policy, practice, and custom of over-charging certain people with felonies and allowing the prosecutor or jury to find the lesser and included offense, this violates equal protection, equal treatment, due process, and due course of law. These policies, practices, and customs are designed to circumvent the intention of United States Constitution Amendments IV, V, VI, VIII, and XIV, as well as violated 42 U.S.C. Section 1983 and 1985, and 18 U.S.C. Sections 241 and 242.

174. The law has been clear since 2000, that it is a constitutional violation to

---

[65] Statutes are given a construction consistent with constitutional requirements when possible because the legislature is presumed to have intended compliance with the constitution. *See Brady v. Fourteenth Court*

119

conspire to manufacture or fabricate false evidence against a citizen of the United States. *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000).[66] The fabrication of evidence and the suppression or destruction of exculpatory evidence by a prosecutor with the intent to obtain an indictment and maliciously and vindictively prosecute an officer of the court critical of the habitual and corrupt practices of the prosecutors to obtain convictions or to injure and oppress opponents gives rise to an injury cognizable under the Constitution. The obstruction of justice and manipulation of the grand jury process by a prosecutor with the intent to prevent oversight, fairness, and protection for the citizens gives rise to an injury cognizable under the Constitution. The prosecutors, SWAIM, MCCABE, MCDONALD, BRADLEY, HOBBS, RYE, and former prosecutors and judges, ANDERSON, BROOKS, CARNES, SHAVER, as well as corrupt law enforcement officers, including but not limited to, TUMLINSON, BRINKMANN, DE LA VEGA, and LERMA, all conspired together to create and precipitate the sequence of events that resulted in a deprivation of BARNES' liberty, loss of familial relationships, loss of privacy, loss of property, loss of reputation, and loss of business and income.

175. Further, Defendants created a new legal regime[67] that stacks the procedural rules in favor of the prosecution, destroys presumptions in favor of the

---

*of Appeals,* 795 S.W.2d 712, 715 (Tex.1990).

[66] "We think the right at issue in this case is appropriately identified as the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity. Understood this way, we conclude that the right at issue is a constitutional right, provided that the deprivation of liberty of which Zahrey complains can be shown to be the result of Coffey's fabrication of evidence." Coffey conceded that the alleged misconduct concerning his fabrication of evidence entitled him, at most, only to qualified immunity. *See* Brief for Appellee at 8. In the case at bar, the deprivation of liberty was based on a false probable cause affidavit, suborned perjury, and gross violations of procedural and substantive due process, due course of law, and equal protection under the law.

[67] With the malicious abuse of process pursuant to a deliberate and dishonest misuse of Tex. C.C.P. art. 46B and Tex. Health & Safety Code, Title 7, Subtitle C, in violation of Texas Constitution, Art. I, §§ 9, 13, 13, 14, 15, 15-a, 19, 27, 28, and 29; as well as United States Constitution Amends 4, 8, and 14, these malicious prosecutors can protect and cover-up for their overly zealous or wayward law enforcers and investigators—often trained, coached, and taught by the same malicious prosecutors. If a lawyer works to

accused, permits long-term detention without trial, (because fair trials are too risky when charges are false and fabricated), and "suspects" who they deem "incompetent" and "DANGEROUS" can not be released under any circumstances—unless they are first discredited, branded with a mental illness stigma, subjected to "FORCED MEDICATION" resulting in a chemical lobotomy and chemical restraints, and brainwashed and coerced into pleading guilty and doing exactly what the court-appointed attorney says to do.  This is how torture can contaminate a legal system—how a single moral catastrophe can multiply into a chain of corrupting policies and practices.  There is only one way to break that chain of corrupt practices: to enforce the law and honor, protect, and defend the Constitutions.

176.   The retaliation against Plaintiffs by Defendants resulted from a policy, practice, or custom of the governmental agencies and media culture in TRAVIS COUNTY and WILLIAMSON COUNTY, Texas.   TRAVIS COUNTY and WILLIAMSON COUNTY knew that the AUSTIN AMERICAN STATESMAN, KXAN, KEYE, and KVUE would print and publish the false and fraudulent probable cause affidavits as a press release and that they would be published nationally and picked up on the AP network and permanently published on the Internet.  TRAVIS COUNTY and WILLIAMSON COUNTY knew that it was the habit, practice, and custom of its law enforcement personnel and attorneys to fashion the probable cause affidavits to sensationalize the allegations for the benefit of the State and to inflame, prejudice, and pollute the potential jury pool in violation of the Constitutional rights of the accused.

---

combat these corrupt practices, the corrupted legal regime can handily dispose of any opposition, especially with the malicious abuse of the "visiting judge" system where the prosecutors and biased recused judge can hand-picked a "visiting" stand-in puppet to give the appearance of fairness and due process.  Pretextual procedural due process does not equal substantive due process.

TRAVIS COUNTY and WILLIAMSON COUNTY also knew of the habit, practice, and custom of the AUSTIN AMERICAN STATESMAN, KXAN, KVUE, and KEYE not to further investigate the sensationalized allegations, but to publish them verbatim as a matter of routine; thereby completely depriving the accused to any semblance of a presumption of innocence and to specifically discredit the accused in the media while holding the accused in jail, which completely destroys any hope of a fair trial or impartial jury. WILLIAMSON COUNTY and TRAVIS COUNTY also knew that these media defendants would permit coconspirators and BARNES' competitors to make defamatory *per se* comments against her with complete anonymity to bolster their fraudulent case. This is the habit, practice, custom, policy and procedure of WILLIAMSON COUNTY and TRAVIS COUNTY in order to ensure the continued suppression and cover-up of illegal activity, criminal activity, and gross civil rights' violations by its elected officials, agents, employees, representatives, law enforcement personnel, and attorneys.

177. WILLIAMSON COUNTY and TRAVIS COUNTY, WILSON, WCSD, HAMILTON, TCSD, and others have exhibited a reckless disregard for the rights, safety, and welfare of the citizens of this State by allowing the continuing and long-standing dishonest, unethical, and unconstitutional activity to the point that it has become an ingrained approach to the citizens as a standard accepted habit, practice, custom, policy, or procedure.

178. BARNES is informed and believes, and thereupon alleges that in committing said acts and/or omissions, the individual Defendants were the agents and/or employees of a governmental entity, and although acting in their individual capacities and for their own individual benefit and gratification, were using, abusing, and taking

122

advantage of a cloaking device and mechanism, emollients of office, special privileges of office, and benefits/protections secured under color of state law.[68]   These individual Defendants could not have obtained their result and personal benefit and gratification but for the abuse of governmental position and office.

179.   Moreover, the acts of the individual Defendants amount to an excessive and/or unnecessary use of force.   Said excessive/unnecessary use of force is objectively unreasonable as no reasonable deputy and/or law enforcement officer given the same or similar circumstances would have initiated such a brutal and life threatening attack on any person in the position of BARNES, for no lawful reason.   Any use of force that is not authorized by law is excessive.   TUMLINSON and the UNIDENTIFIED THREE at the TRAVIS COUNTY Jail used excessive force against BARNES.   The WILLIAMSON COUNTY Defendants, BRINKMANN, DE LA VEGA, FOSTER, RICHTER, TRAVIS, HERNANDEZ, WAGGONER, HUGHEY, BOGAN, FOSTER, NEWELL, BARTZ, MCDONALD, MCCABE, BRADLEY, and SCHEFFLER conspired to intimidate and threaten BARNES with the use of deadly force by surrounding her home and crouching down with loaded guns aimed at her while peering in her windows, and with a search helicopter, without a warrant or legitimate probable cause.   Defendant RUPPART used excessive force on BARNES at the courthouse on June 28, 2010, by running into her from behind in an effort to intimidate her, then by forcefully striking her twice in the chest with the heel of his hand, then making a false arrest and attempting to instigate another malicious prosecution on other felony assault charges.

---

[68] The traditional definition of acting under the color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," and such actions may result in liability even if the defendant abuses the position given to him by the state.

180.    Defendants, ANDERSON, CARNES, BROOKS, BRINKMANN, DE LA VEGA, FOSTER, RICHTER, TRAVIS, HERNANDEZ, WAGGONER, HUGHEY, BOGAN, FOSTER, NEWELL, BARTZ, MCDONALD, MCCABE, BRADLEY, and SCHEFFLER then conspired to humiliate, demean, dehumanize, and to physically assault BARNES in order to retaliate against her, and this was done by the WILLIAMSON COUNTY deputies and employees, acting in concert with SWAIM, ESCAMILLA, MORGAN, TUMLINSON, and the TRAVIS COUNTY employees and deputies, with utmost malice and all of these Defendants acted with utmost malice in using unnecessary force and excessive force in assaulting BARNES.   Furthermore, said excessive force committed against BARNES by said Defendants was not performed in good faith to maintain or restore order, but was performed maliciously, intentionally, and sadistically for the very purpose of punishing and causing harm to BARNES, rather than utilize the proper judicial process.   At all pertinent times, WILLIAMSON COUNTY, TRAVIS COUNTY, WCSD, TCSD, WILSON, and HAMILTON authorized or ratified the wrongful and tortuous acts and/or omissions of its deputies, officer, investigators, and employees.

### FIRST CLAIM FOR RELIEF - - §1983 AND §1985

1.    The allegations contained in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.  Exhaustion of administrative and judicial state remedies is not a prerequisite to a section 1983 action.

2.    **Section 1983.**  The Civil Rights Act of 1871 (Ku Klux Klan Act), now codified as  42 U.S.C.S. § 1983 as federal law provides:  "Every person who, under color

124

of any statute, ordinance, regulation, custom or usage, of any state or territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."    42 U.S.C.S. § 1983.  WILLIAMSON COUNTY, its prosecutors, and WCSD have all of the vestiges of the Ku Klux Klan and its elected officials have adopted the same manner and mode of operation.[69]

3.    The state action requirement for standing under 42 U.S.C.S. § 1983 has more commonly been referred to as "color of state law,"[70] from the statute itself. Plaintiffs are informed and believe, and thereupon allege that in committing said acts and/or omissions, each Defendant was the co-conspirator with a common interest, goal, and understanding, agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law, as more fully set forth hereinabove.

4.    42 U.S.C.S. § 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States.  As such, Plaintiffs allege that the governmental Defendants,[71] jointly

---

[69] *See, Mitchum v. Foster,* 225, 242 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights.").

[70] The traditional definition of acting under the color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," and such actions may result in liability even if the defendant abuses the position given to him by the state.

[71] Defendants in section 1983 cases are liable for consequences caused by "reasonably foreseeable intervening forces," *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir. 1989) because these consequences are reasonably foreseeable, if caused by pressure or misleading information provided by the actor whom the plaintiff seeks to hold liable in a section 1983 action. *See Townes,* 176 F.3d at 147 (intervening exercise of independent judgment breaks chain of causation "in the absence of evidence that

125

and severally, deprived BARNES of her First, Fourth, and Fourteenth Amendment rights and those rights, privileges, and immunities secured by the First, Fourth, Fifth Sixth, and Eighth Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated Section 1983 by the following actions, *inter alia*, and/or omissions:

a) by detaining and falsely arresting BARNES in violation of her Fourth Amendment expectation of privacy and guarantee to security from unreasonable search and seizure without reasonable suspicion and/or probable cause;

b) by falsely and maliciously charging BARNES with the commission of crimes where the truthful facts did not support the crime charged, and without probable cause to believe that such crimes had occurred and on

the police officer misled or pressured the official who could be expected to exercise independent judgment"); *Robinson v. Maruffi,* 895 F.2d 649, 655-56 (10th Cir.1990); *Borunda v. Richmond,* 885 F.2d 1384, 1390 (9th Cir. 1989); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced that decision."); *Hand,* 838 F.2d at 1428; *Smiddy,* 665 F.2d at 266-67; *Dellums v. Powell,* 566 F.2d 167, 192-93 (D.C.Cir.1977); *see also Barts,* 865 F.2d at 1197 (intervening acts break chain of causation "in the absence of a showing that the police officers deceived the court officials or unduly pressured them or that the court officials themselves acted with malice and the police joined with them"); *Lanier v. Sallas,* 777 F.2d 321, 325 (5th Cir.1985) (county court's order committing plaintiff to mental institution did not break chain of causation between doctors' false statements in their certificates of medical examination and the commitment, because the certificates' "falsity as to material facts . . . caused [the judge] to issue the order"); *cf. Myers v. County of Orange,* 157 F.3d 66, 74 (2d Cir.1998) (since district attorney's office policy regarding cross-complaints had an impact on the district attorney's "ability to make an independent prosecutorial decision," his decision to prosecute did not break causal chain between that policy and the plaintiff's injuries). Even if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an "independent" decision that results in a deprivation of liberty. The Supreme Court has ruled that a judge's decision to issue an arrest warrant did not break the causal chain between the act of a police officer who submitted an affidavit and the arrest where "a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause." *Malley,* 475 U.S. at 345, 106 S.Ct. 1092. Applying *Malley,* we have ruled that the decision of a sentencing judge does not break the causal chain between the wrongful recommendation of a probation officer and an unconstitutional sentence. *See Warner v. Orange County Dep't of Probation,* 115 F.3d 1068, 1071 (2d Cir.1997), *reinstated after opinion vacated,* 173 F.3d 120, 121 (2d Cir.1999); *see also Wagenmann v. Adams,* 829 F.2d 196, 212-13 (1st Cir.1987) (decision of court clerk acting as bail commissioner in setting bail did not insulate police officer from liability for violating plaintiff's right to be free from excessive bail). We have also sustained a claim against a police officer, despite the subsequent actions of a prosecutor and a grand jury. *See White v. Frank,* 855 F.2d 956, 962 (2d Cir.1988) ("As with the grand jury, ... the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false.").

126

the sole basis of malice, hatred and/or anger;

c)      by engaging in a deliberate misuse or malicious abuse of the criminal process by public officials, including but not limited to, the malicious abuse of T.C.C.P. art. 46B and Texas Health and Safety Code, Title 7, Subtitle C;

d)      by failing to intervene, where such intervention would have prevented the violations and/or damages of BARNES;

e)      by engaging in aggravated perjury and fabrication of evidence and tampering with the grand jury process to secure an indictment and vindictively prosecute BARNES;

f)      by causing punitive delays in the prosecutions of these malicious criminal charges in order to maximize the damage to Plaintiffs, obstruct justice and BARNES' ability to clear her name, and cause substantial prejudice to BARNES' rights to a fair and speedy trial, and that cruel delay was a purposeful device to gain tactical advantages over BARNES;[72]

g)      by committing aggravated perjury in an effort to secure a conviction against BARNES while taking no action against the real perpetrators of the crime;

h)      by causing defamatory *per se* statements to be published in the national media, business and trade journals, and permanently on the Internet; and

i)      by maliciously abusing process to deprive BARNES of due process, due course of law, equal protection, pretrial liberty, speedy trial, and a fair jury; and to impose punitive indefinite pretrial banishment and captivity.

5.      HAMILTON had authority to establish county policy as to the training and qualification of the deputies in TRAVIS COUNTY. The Commissioners Court had delegated that authority to the sheriff by acquiescing in HAMILTON's hiring and training policies. HAMILTON had an official policy or custom of providing inadequate

---

[72] Justice Douglas in his separate opinion in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, quoted Justice Brennan's discussion on the question of what constitutes reasonable governmental delay: Clearly a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is "purposeful or oppressive" is unjustifiable. The same may be true of any governmental delay that is unnecessary, whether intentional or negligent in origin. A negligent failure by the government to ensure a speedy trial is virtually as damaging to the interest protected by the right as an intentional failure; when negligence is the cause the only interest necessarily unaffected is our common concern to prevent deliberate misuse of the criminal process by public officials.

training to his deputies.

6.     ESCAMILLA and SWAIM had authority to establish county policy as to the training and qualification of prosecutors in TRAVIS COUNTY. The Commissioners Court had delegated that authority to the TRAVIS COUNTY Attorney and Special Prosecutor for TRAVIS COUNTY by acquiescing in ESCAMILLA's and SWAIM's hiring and training policies. ESCAMILLA and SWAIM had an official policy or custom of providing inadequate training to these prosecutors.

7.     GUERRERO and MORGAN had authority to establish county policy as to the training and qualification of employees in TRAVIS COUNTY Pretrial Services. The Commissioners Court had delegated that authority to GUERRERO and MORGAN by acquiescing in GUERRERO's and MORGAN's hiring and training policies. GUERRERO and MORGAN had an official policy or custom of proving inadequate training to these employees.

8.     WILSON had authority to establish county policy as to the training and qualification of the deputies in WILLIAMSON COUNTY. The Commissioners Court had delegated that authority to WILSON by acquiescing in WILSON's hiring and training policies. WILSON had an official policy or custom of providing inadequate training to his deputies.

9.     HOBBS and RYE had authority to establish county policy as to the training and qualification of the prosecutors in WILLIAMSON COUNTY. The Commissioners Court had delegated that authority to HOBBS and RYE by acquiescing in HOBBS' and RYE's hiring and training policies. HOBBS and RYE had an official policy or custom of providing inadequate training to these prosecutors.

128

10.    BRADLEY had authority to establish county policy as to the training and qualification of the prosecutors in WILLIAMSON COUNTY. The Commissioners Court had delegated that authority to BRADLEY by acquiescing in BRADLEY's hiring and training policies. BRADLEY had an official policy or custom of providing inadequate training to these prosecutors.

11.    SWAIM, ESCAMILLA, BRADLEY, MCCABE, MCDONALD, and HOBBS charged BARNES with crimes she did not commit. SWAIM and ESCAMILLA charged BARNES with "interference with the duties of a public servant" over six months after the false arrest of BARNES by TUMLINSON and several months after they had already received BARNES' notice of legal claims for false arrest, false imprisonment, and violation of constitutional rights and resisted BARNES efforts to conduct discovery by writing letters to the Attorney General on behalf of TRAVIS COUNTY to block discovery of the exculpatory evidence. SWAIM and ESCAMILLA knew that BARNES had not engaged in any conduct that "interfered" with TUMLINSON's duties because it was not his duty to keep BARNES or anyone else from using their cell phone at the entrance to the courthouse. Further, BRADLEY, MCCABE, and MCDONALD knew that the initial allegations made by GITTEL prior to the coaching and manipulation by the WCSD and prosecutors, did not constitute a felony, therefore, they fabricated jurisdiction in the district court to gain control over the malicious prosecution. They did this solely because BARNES was involved. HOBBS, the malicious prosecutor who has vindictively prosecuted BARNES for years and who immediately defamed BARNES in the media, had no good faith basis for charging BARNES with filing a false police report or any other charge arising out of BARNES' blocked attempt to get a police report for the

129

safe company and insurance company, thereby preventing the necessary repairs to the safe and residence as a result of the criminal activity of the WCSD deputies and prosecutors. If the court considers the elements required in the relevant statutes, the truthful facts do not authorize prosecution for the conduct.

12. These officials and the employees they hired, trained, and supervised were responsible for the damages, losses, and injuries sustained by Plaintiffs due to the constitutional violations set forth herein. The actions taken by said Defendants were the proximate cause of the injury, damage, and loss sustained by Plaintiffs. The employees, deputies, and prosecutors were grossly negligent; and their gross negligence was the proximate cause of the injuries, damages, and losses sustained by Plaintiffs. This type of serious incompetence or misbehavior was general or widespread throughout these respective counties due to the in-house training conducted by the WCSD and the monopoly established by ANDERSON and BRADLEY to educate, train, and guide prosecutors within the criminal law arena. Such incompetence or misbehavior was known by these respective counties due to years of citizen complaints and good faith investigations by the Citizen Review Committee in TRAVIS COUNTY, as well as numerous lawsuits, which brought the official misconduct, incompetence, and abuse to the attention of the Commissioner's Court. In fact, the prior lawsuits made the WILLIAMSON COUNTY Commissioner's Court intimately knowledgeable of the habit, practice, custom, policy, and procedure of the deputies, prosecutors, and employees, as well as the malicious prosecutions, false arrests, retaliation, harassment, and conspiracy against BARNES, which has continued unabated, and has escalated, for fifteen years. With that intimate knowledge, at no time did the WILLIAMSON COUNTY

130

Commissioner's Court take any corrective or preventative action to cease and desist or prevent further harm, injury, and damage to Plaintiffs. WILLIAMSON COUNTY has demonstrated a callous disregard and conscious indifference to the rights, safety, and welfare of Plaintiffs in this regard. HAMILTON, WILSON, ANDERSON, CARNES, BRADLEY, HOBBS, RYE, ESCAMILLA, SWAIM, GUERRERO, and MORGAN were the final authority in their respective counties on the selection, training, and activities of the county employees, deputies, and prosecutors and had policy-making powers in their respective county. These policies, and habits of serious incompetency, misbehavior, and official misconduct, were of long standing duration and were well known to the Commissioners Court, which had an official policy or custom of blindly delegating authority to these policy-makers who were known to be providing inadequate training to deputies, employees, and prosecutors in these respective counties; and this official policy or custom constituted gross negligence and was the moving force behind and the proximate cause of the incidents which form the basis of this complaint. Plaintiffs were damaged in excess of $7,000,000.00. These officials should have posted performance bonds as required by law to ensure faithful performance of their public duties, but BARNES has received no evidence of the existence of these bonds.

13.     Further, article five, section 24, of the Texas Constitution provides for the removal of county officers: "County Judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law...." For decades CARNES and ANDERSON had not only neglected their duties in this regard, they have actively

131

encouraged and rewarded such misbehavior, incompetency, and official misconduct. ANDERSON himself is the direct predecessor of BRADLEY and hired and trained BRADLEY. BRADLEY, MCCABE, MCDONALD, RYE and HOBBS have actively trained the WCSD deputies, as well. MCDONALD, individually and on behalf of BRADLEY and MCCABE, actually met with the WCSD deputies on Saturday, May 8, 2010 and planned the malicious prosecution of BARNES, gave legal advice to the deputies, and directed and participated in the "investigation" and tampering with the witness and governmental records.[73] RYE and HOBBS have been employed by the WILLIAMSON COUNTY Attorney's Office for years and were there when Eugene Taylor was the County Attorney and they stayed on when Jana Duty was elected; knowing that Jana Duty would continue to delegate her authority to them.

14.    These claims involve *Violations of State and Federal Substantive Due Process and Due Course of Law (42 U.S.C. section 1983 )* because of the unlawful use of police power, and the "arbitrary, punitive and disparate" use and abuse of process; and *Violations of State and Federal Equal Protection (42 U.S.C. section 1983 )* because of the " wrongful and punitive enforcement" of the laws, the trespassing onto and into BARNES' properties, unlawful use of police power, and the "arbitrary, punitive and disparate" use and abuse of process, including charging crimes that were not committed and forcing BARNES into pretrial captivity under C.C.P. art. 46B and violation of Texas Health and Safety Code, Title 7, Subtitle C.

15.    A complaint states a valid 42 U.S.C. § 1983 claim if it alleges a denial, under color of state law, of a right, privilege, or immunity secured by the Constitution

---

[73] *See,* See *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Burns v. Reed,* 500 U. S. 478, 492-96 (1991); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993).

132

and laws of the United States.  The following rights were denied under color of state law, protected by the Constitutions of the United States and Texas, and clearly and firmly established and well-recognized at the time of the incidents that form the basis of this complaint:

(1) equal protection under the laws,

(2) procedural and substantive due process and due course of law,

(3) reasonable pre-trial bail (and to be free of the unilateral breach of a surety bail bond contract by the State),

(4) an examining trial (full *Franks* hearing),

(5) due process and fairness in the pre-indictment, investigation, warrant, and grand jury procedures,

(6) a public jury trial before a fair and impartial jury,

(7) a speedy trial and fair ability to timely and meaningfully present defense,

(8) presumption of innocence (and freedom from the use of false probable cause affidavits as press releases to manipulate the media, and substantially impair and abridge the rights and privileges protected by Texas Constitution Art. I, §§3, 3a, 8, 9, 10, 11, 11b, 12, 13, 14, 15, 15-a, 16, 19, 20, 23, 27, 28, and 29),

(9) timely and meaningful discovery to adequately prepare the defense,

(10) preservation and timely disclosure of exculpatory evidence,

(11) confront and cross-examine the evidence and witnesses against one,

(12) have compulsory process for obtaining witnesses and evidence in one's favor,

(13) represent one's self (and be free from having a court-appointed attorney forced on you under false or fraudulent pretenses), and of being heard by himself or counsel, <u>or both,</u>

(14) practice one's livelihood, earn a living, support one's children, and practice law free from retaliation,

(15) assistance of competent and ethical counsel to present your own defense (and

133

to be free from having case and defense hijacked by court appointed counsel),

(16) notice of, appearance at, and participation in a hearing before entry of detrimental orders,

(17) privacy,

(18) be left alone,

(19) be secure in person, papers, home, and effects against unreasonable searches and seizures,

(20) be free from Warrants being issued without probable cause, or based upon false swearing or issued by a magistrate who is not neutral and detached,

(21) be free from being twice put in jeopardy, punished, or subjected to multiple arrests for the same offense,

(22) be free of being compelled to be a witness against oneself,

(23) familial relationships (loss of consortium, support, companionship, comfort, care, and solace),

(24) free speech, beliefs, ideas, opinions, and associations,

(25) petition the government for a redress of grievances,

(26) be free of oppression, retaliation, and harm from governmental employees, and right not to be framed,

(27) be free from selective, retaliatory, malicious and vindictive prosecutions,

(28) be protected from defamation *per se,*

(29) keep and bear arms,

(30) be free from excessive, oppressive, or multiple bail,

(31) be free from cruel and unusual punishment,

(32) be free from unreasonable searches and seizures, the use of Tex. C.C.P. art. 46B as a sham for punishment, and cruel and unusual punishment due to a denial of equal protection, procedural and substantive due process, and due course of law set forth in Tex. C.C.P. art. 46B and Tex. Health & Safety Code, Title 7, Subtitle C, Chapters 571 and 574,

(33) have the same standard applied to BARNES that is applied to all other accused individuals under Tex. C.C.P. art. 46B in determining "incompetence to stand trial,"

(34) be free from "sanity" exams when BARNES has not ever raised a sanity defense, (this was the malicious prosecutors' motive theory from the inception, not BARNES defense),

(35) be free from indefinite pre-trial captivity without any semblance of procedural or substantive due process or due course of law; and without *habeas corpus* relief,

(36) be free from permanent derogatory and liberty-threatening stigmata of "institutionalized," "criminally insane," "mental patient," and "mental commitments," and false psychiatric diagnoses that appear in permanent records and flagged on one's driver's license, subjecting one to repeated arrests, impounding of vehicle, searches and seizures, loss of property and funds, legal fees, and mental commitments at the whim of these same malicious defendants, and the resulting permanent decrease in earning ability and detrimental impact on future income,

(37) be free from loss of all rights prior to trial, including right to appoint a power of attorney, to take care of business, to have equal access to the courts, to discovery of evidence and witnesses against the accused, to confront and cross-examine evidence and witnesses against one, to subpoena witnesses and present evidence favorable to the accused, to be present at hearings, to have a jury determination, to receive exculpatory evidence and witnesses in a timely and meaningful manner, to a fair and impartial tribunal, to a neutral and detached magistrate, to fair pretrial publicity, to a law library or Internet for research and to prepare motions and briefs, to a computer or word processor to prepare motions and briefs, to a copier to make copies, to timely mail service, to represent one's self, to communicate with lawyers of one's choice, to communicate with clients, to communicate with family, to communicate with friends, to be in the least restrictive environment, to earn a livelihood, to provide for and protect one's children, to protect one's property from theft, dissipation, loss, and damage while being detained in an unlawful and unconstitutional captivity,

(38) equal protection under the law and the same rights as a civil litigant to recuse or object to the assignment of a hand-picked or biased judge and to have a fair and impartial judge and neutral and detached magistrate,

(39) be free from malicious abuse of process by misapplication of vague, ambiguous, or overly broad statutes,

(40) be free from malicious retaliatory conspiracies to harm, injure, and damage business and personal reputation, and to cause a chilling effect on 1st amendment rights,

(41) be free of laws, customs, practices, habits, policies, or procedures, which

135

abridge the privileges or immunities of the citizens of the United States, and

(42) be free from a deprivation of life, liberty, or property, without procedural and substantive due process or due course of law.

16.    Plaintiffs will show that the loss of liberty, privacy, peace and solitude, personal property, real property, earnings, familial relationships, and all the damages, injuries, and losses sustained by Plaintiffs were a legally cognizable result and reasonably foreseeable consequence of the Defendants misconduct, recklessness, and malice, jointly and severally acting in concert; and that all of the rights that were violated were clearly established at the time of the misconduct.

17.    BARNES' substantial rights were affected; had she not been coerced in a misleading manner to take on an additional lawyer by court-appointment in order to obtain the exculpatory evidence she was entitled to under the due course of law, she would not have been held in captivity for over a year and continuing.  Defendants, BRADLEY, MCCABE, MCDONALD, WILSON, WCSD, HERNANDEZ, TRAVIS, RICHTER, BOGAN, FOSTER, NEWELL, DE LA VEGA, BRINKMANN, BARTZ, HUGHEY, ANDERSON, CARNES, HOBBS, and RYE all engaged in truly egregious and unconscionable misconduct during the "investigatory" phase, especially by not making a good faith investigation, abandoning the search for the real location and perpetrator, and maliciously framing and punishing an innocent citizen for a crime they did not commit; and when their scheme was about to be exposed with the exculpatory evidence they had been hiding, they chose to dispense with due process and due course of law and punish BARNES without a trial.  The due process clause protects citizens against misconduct that is so ill-motivated and unjustifiable as to shock the conscience.  Long

136

ago, the Supreme Court held that the deliberate use of false testimony violates due process. The pretrial conduct here both shocks the conscience and was designed to subvert all the procedural protections afforded suspects and the accused. The perpetual and cumulating misconduct strikes at the very heart of the due process, equal protection, and due course of law guarantees.

18. When these defendants manipulated and fabricated evidence with the intent to use it to deprive BARNES of her liberty, property, and reputation, they violated federally protected rights. The false probable cause affidavit and defamatory *per se* accusations in the media frenzy were further compounded by the false and fraudulent "finding" of "incompetent to stand trial." The plotting and scheming between the prosecutors and the deputies on Saturday, May 8, 2010, the day following the Garza trial, led to the false arrest. The false arrest led to the malicious prosecutions and conspiracy between TRAVIS COUNTY and WILLIAMSON COUNTY—SWAIM, ESCAMILLA, TUMLINSON, KLEKAR, MORGAN, SAENZ, GUERRERO, MCCABE, MCDONALD, BRADLEY, SHAVER, CARNES, ANDERSON, BROOKS, HOBBS, RYE, SCHEFFLER, SCHREIBER, HUMES, BRINKMANN, DE LA VEGA, BARTZ, WAGGONER, HUGHEY, RICHTER, TRAVIS, HERNANDEZ, NEWELL, BOGAN, FOSTER, GRIFFITH, RUPPART, ET AL. The malicious prosecutions and conspiracy led to the malicious abuse of process under C.C.P. art. 46B and violations of equal protection and Texas Bill of Rights and Texas Health and Safety Code, Title 7, Subtitle C.[74] These malicious abuses of process and violations led to all the ensuing damages,

---

[74] Extended Involuntary Commitment Order: The trial judge may order a proposed patient to receive court ordered extended inpatient mental health services only if the jury, or the judge if the right to a jury is waived, finds, from clear and convincing evidence, that (1) the proposed patient is mentally ill; (2) as a result of the mental illness, he (A) is likely to cause serious harm to himself, (B) is likely to cause serious

137

losses, and irreparable harm.   Since there was no felony crime committed, the Defendants, BRADLEY, MCCABE, MCDONALD, ANDERSON, CARNES, and SHAVER acted in the clear absence of all jurisdiction.   The co-conspirators cannot use fraud to fabricate district court jurisdiction and these defendants were well aware of the fraud and fabrication, they were not neutral and detached magistrates or fair and impartial judicial officers, and they acted with utmost malice when they agreed to enter into and act in furtherance of the malicious criminal conspiracy.

19.    The good-faith exception would not apply if the material presented to the magistrate or judge is false or misleading, (*Franks* v. *Delaware,* 438 U. S. 154 (1978)), or so clearly lacking in probable cause that no well-trained officer could reasonably have thought that a warrant should issue.   The courts have repeatedly held that the unsupported assertion or belief of an officer does not satisfy the probable cause requirement. *See, e. g., Whiteley* v. *Warden,* 401 U. S. 560, 564-565 (1971); *Jones* v. *United States,* 362 U. S. 257, 269 (1960); *Nathanson* v. *United States,* 290 U. S. 41 (1933).   *Nathanson* held that, no matter how reliable the affiant-officer may be, a warrant should not be issued unless

---

harm to others, or (C) is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment; (3) his condition is expected to continue for more than ninety days; and (4) he has received court ordered inpatient mental health services under Subtitle C, Texas Mental Health Code, or under Chapter 46B, Code of Criminal Procedure, for at least sixty consecutive days during the preceding twelve months. Tex. Health & Safety Code Ann. § 574.035(a) (Vernon Supp. 2005).  To be clear and convincing under this statute, the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and the deterioration of his ability to function. Tex. Health & Safety Code Ann. § 574.035(e) (Vernon Supp. 2005). Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). **The statutory requirements for an involuntary commitment are strict because it is a drastic measure.** *In re C.O.,* 65 S.W.3d 175, 182 (Tex. App.–Tyler 2001, no pet.).

the affidavit discloses supporting facts and circumstances.  Justice Jackson's admonition

in *Brinegar* v. *United States*, 338 U. S. 160 (1949):

> "[Fourth Amendment rights] are not mere second-class rights but belong
> in the catalog of indispensable freedoms. Among deprivations of rights,
> none is so effective in cowing a population, crushing the spirit of the
> individual and putting terror in every heart. Uncontrolled search and
> seizure is one of the first and most effective weapons in the arsenal of
> every arbitrary government. . . .
>
> "But the right to be secure against searches and seizures is one of the most
> difficult to protect. Since the officers are themselves the chief invaders,
> there is no enforcement outside of court." *Id.,* at 180-181 (dissenting
> opinion).

20.      **§ 1983 – Unreasonable Seizure and Excessive Force – 4ᵗʰ Amendment**.

The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1

through 19 immediately above are herein incorporated by reference, the same as if fully

set forth verbatim for any and all purposes of this pleading.

21.      "The evil of an unreasonable search or seizure is that it invades privacy,

not that it uncovers crime, which is no evil at all." *Townes v. City of New York,* 176 F.3d

138, 148 (2d Cir.1999).  The actions and/or omissions of Defendants cannot be justified

under the circumstances of the instant case.   Likewise, Defendants are liable if they

conduct the seizure in an abusive manner even if they have the lawful authority to

conduct the seizure.  BARNES, in this situation, is protected by the Fourth Amendment

to the United States Constitution and Article I, Sec. 9 of the Texas Constitution.  In this

instance, the seizure of BARNES ran afoul of the Fourth Amendment because it was

conducted in an unlawful and abusive manner.

22.      WILSON and HAMILTON are being sued in their official or respondent

superior capacity because deputies of WCSD and TCSD, violated BARNES 4ᵗʰ

139

amendment rights. All Defendants were directly involved in the criminal conspiracy and violations of 42 U.S.C. Sections 1983 and 1985; 18 U.S.C. Sections 1962 and 1964; and 18 U.S.C. Sections 241 and 242. HAMILTON was very aware of the events and criminal actions of TUMLINSON, LERMA, COTTON, THREE UNIDENTIFIED, KLEKAR and others who were aiding and abetting the cover-up for TUMLINSON's felony activity and the felony activity of the THREE UNIDENTIFIED, LERMA, COTTON, KLEKAR and others and he failed and refused to investigate or take any corrective action. WILSON was very aware of the events and criminal actions of SCHEFFLER, DE LA VEGA, HERNANDEZ, RICHTER, TRAVIS, BOGAN, HUGHEY, WAGGONER, NEWELL, BRINKMANN, FOSTER, BARTZ, RUPPART, RYE, HOBBS, BRADLEY, MCCABE, MCDONALD, and others who were aiding and abetting the cover-up for BRINKMANN's and DE LA VEGA's felony activity and the felony activity of MCDONALD, MCCABE, BRADLEY and others and he failed and refused to investigate or take any corrective action, and those like CLIFTON who unreasonably blocked BARNES' access to the courts. All of these Defendants violated BARNES' 1st, 4th, and 14th amendment rights causing damages, harm, and injury as a direct and proximate result of these violations.

23.   **§ 1983 – Unreasonable Search – 4th Amendment**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 22 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

24.   BARNES and her children had a right to be free from unreasonable searches without a warrant and/or without probable cause and/or warrants issued on false

140

probable cause affidavit by a magistrate who was not neutral and detached. WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER, as well as GITTEL, POPPA, SCHEFFLER, the news media Defendants and their anonymous contributors listed only by their pseudonyms, violated Plaintiffs' 4th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

25.   **§ 1983 – Invasion of Privacy by Intrusion Upon Seclusion – 4th Amendment**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 24 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

26.   BARNES and her children had a right to be free from such gross invasions of privacy by intrusion upon seclusion and their right to be left alone and free from public defamation. The unjustified intrusion into Plaintiffs' private information and BARNES' client files and safe, building, vehicles, and Plaintiffs' private lives was a gross violation of BARNES and Plaintiffs' right to privacy and to be left alone. WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE,

141

MCDONALD, and SCHREIBER, as well as GITTEL, POPPA, SCHEFFLER, the news media Defendants and their anonymous contributors listed only by their pseudonyms, violated Plaintiffs' 4th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

27. **§ 1983 – Freedom Of Speech and Redress of Grievances – 1st Amendment**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 26 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

28. BARNES had a right to criticize, complain, and file suit against offenders and, at all relevant times, BARNES' right to free speech and to redress of grievances has been infringed, suppressed, and denied. TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HAMILTON, WILSON, TUMLINSON, KLEKAR, GUERRERO, SAENZ, MORGAN, ESCAMILLA, SWAIM, UNIDENTIFIED THREE, COTTON, LERMA, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER as well as SCHEFFLER, CLIFTON, GITTEL, POPPA, the news media Defendants and all their anonymous contributors listed by their pseudonyms, violated BARNES' 1st amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

29. **§ 1983 – Right to Speedy and Public Trial by an Impartial Jury – 6th**

142

**Amendment**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 28 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

30.    BARNES is entitled to a speedy and public trial by an impartial jury and to be free from being tried in the press without any rules of evidence or procedure being applied; yet, BARNES has been deprived by all of the Defendants, acting in concert, from having a speedy trial to clear her name and permanently deprived of an impartial jury due to the permanent postings on the Internet. TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HAMILTON, WILSON, TUMLINSON, KLEKAR, GUERRERO, SAENZ, MORGAN, ESCAMILLA, SWAIM, UNIDENTIFIED THREE, COTTON, LERMA, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER, as well as SCHEFFLER, GITTEL, POPPA, and all the news media Defendants and their anonymous contributors listed only by their pseudonyms, violated BARNES' 6th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

31.    **§ 1983 – Right to be Confronted With the Witnesses and to Have Compulsory Process – 6th Amendment**.   The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 30 immediately above are herein

143

incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

32.     BARNES has bee deprived by Defendants of her right to confront the witnesses and evidence against her and of her right to compulsory process in violation of the 6th amendment.  TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HAMILTON, WILSON, TUMLINSON, KLEKAR, GUERRERO, SAENZ, MORGAN, ESCAMILLA, SWAIM, UNIDENTIFIED THREE, COTTON, LERMA, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, SCHEFFLER, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER violated BARNES' 6th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

33.     **§ 1983 -- Right to Self-Representation and/or Assistance of Counsel of Choice and Effective Assistance of Counsel – 6th Amendment**.  The         allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 32 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

34.     BARNES was deprived of her right to self-representation, representation of counsel of her choice, and effective assistance of counsel in violation of the 6th amendment by WILLIAMSON COUNTY, BRADLEY, MCCABE, MCDONALD, SHAVER, and SCHREIBER. WILLIAMSON COUNTY, WCSD, and its deputies,

employees, agents, and representatives, including but not limited to, RYE, HOBBS, BROOKS, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER violated BARNES' 6th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

35.    **§ 1983 – Right to Equal Protection of the Laws and Due Process – 14th Amendment**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 34 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

36.    BARNES at all relevant times has been deprived of equal protection of the laws and due process in violation of the 14th amendment, as more fully set forth herein. TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HAMILTON, WILSON, TUMLINSON, KLEKAR, GUERRERO, SAENZ, MORGAN, ESCAMILLA, SWAIM, UNIDENTIFIED THREE, COTTON, LERMA, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, HUMES, and SCHREIBER, as well as SCHEFFLER, CLIFTON, GITTEL, POPPA, and all the news media Defendants and the anonymous Defendants listed only by their pseudonyms, violated Plaintiffs' 14th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

145

37.    **§ 1983 – Right to Be Free of Excessive, Oppressive, or Punitive Bail – 8th Amendment**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 36 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

38.    BARNES was subjected to repetitive false arrests and extractions of excessive, oppressive, and punitive bail, and eventually deprived of her right to pretrial freedom all together as a direct and proximate result of the criminal conspiracy alleged herein, in violation of the 8th amendment. TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HAMILTON, WILSON, TUMLINSON, GUERRERO, SAENZ, MORGAN, ESCAMILLA, SWAIM, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER as well as SCHEFFLER, GITTEL, POPPA, the news media Defendants and all their anonymous contributors listed by their pseudonyms, violated BARNES' 8th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

39.    **§ 1983 – Right to Be Free from Cruel or Unusual Punishment – 8th Amendment**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 38 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

40.    BARNES had a right to be free from cruel and unusual punishment, and

146

the excessive punitive pretrial actions lodged against BARNES were both cruel and unusual because our system of justice abhors the punishment of the accused before conviction and without any semblance of due process; and it is unusual because it was a denial of equal protection and application of the criminal statures to accomplish this cruel and unusual punishment, which culminated in the indefinite pretrial captivity of BARNES in a state hospital for the criminally insane. TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HAMILTON, WILSON, TUMLINSON, KLEKAR, GUERRERO, SAENZ, MORGAN, ESCAMILLA, SWAIM, UNIDENTIFIED THREE, COTTON, LERMA, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER as well as SCHEFFLER, GITTEL, POPPA, the news media Defendants and all their anonymous contributors listed by their pseudonyms, violated Plaintiffs' 8th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

41.     **§ 1983 – Right to Be Free from Deprivation of life, liberty, or property, without Due Process of Law and Right to Be Free From Malicious, Vindictive Prosecutions – 5th and 14th Amendments**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 40 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

42.   BARNES had a right to be free from deprivation of life, liberty, or property, without Due Process of Law and she has been systematically deprived of those rights by a complete loss of liberty, extensive loss of real and personal property, and a shortening of her life expectancy due to the vindictive deprivations in violation of the 5th and 14th amendments.  TRAVIS COUNTY, TCSD, WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HAMILTON, WILSON, TUMLINSON, KLEKAR, GUERRERO, SAENZ, MORGAN, ESCAMILLA, SWAIM, UNIDENTIFIED THREE, COTTON, LERMA, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, GRIFFITH, RUPPART, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, and SCHREIBER as well as SCHEFFLER, GITTEL, POPPA, the news media Defendants and all their anonymous contributors listed by their pseudonyms, violated BARNES' 5th and 14th amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

43.   **§ 1983 – Right to Keep and Bear Arms – 2nd Amendment**.  The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 42 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

44.   On May 11, 2010, without a warrant authorizing same, WCSD, WILLIAMSON COUNTY, MCCABE, MCDONALD, BRADLEY, CARNES, ANDERSON, HOBBS, RYE, SCHEFFLER, BRINKMANN, DE LA VEGA, BARTZ, WAGGONER, HUGHEY, RICHTER, TRAVIS, HERNANDEZ, NEWELL, BOGAN,

and FOSTER appropriated all of BARNES' weapons and ammunition and failed and refused to leave a complete inventory; and have illegally withheld them since that time even though they have nothing to do with any alleged crime.  GITTEL described the revolver in detail, even giving the bore size.  No revolver or other handgun was found anywhere in, on, or around BARNES' real and personal property.  The inventory left at the residence states that these Defendants removed "two shotguns and two LR," which were illegally, unlawfully, and unconstitutionally removed from a 1500 square foot locked building over 300 yards from the residence.[75]  There is not now, nor has there ever been a warrant permitting entry into the 1500 sq. foot locked building or permitting the seizure and conversion of this personal property.  This burglary of a building was accomplished in the same manner—without an affidavit, without a warrant authorizing entry, and by appropriation of private property without the effective consent of the owner, while knowingly engaging in a criminal trespass.  Thus, this search of the building and seizure of personal property was not reasonable, and the seizure of this personal property from the building was illegal, unconstitutional, and unlawful.  No reasonable law enforcement officer would have reasonably believed that this burglary of a building was lawful or constitutional, or that the continued withholding and confiscation of this personal property was legal or constitutional.  This personal property had absolutely nothing to do with the allegations and was appropriated in violation of the Texas Constitution Art. I, Section 9, 17, and 19 and in violation of the United States Constitution amend. II, IV and XIV, and in violation of Texas Penal Code Sections 39.02, 39.03, 39.04, 39.06, 30.05, 30.02, 31.03, 15.02. and 71.02.  Further, on June 10,

---

[75] WCSD deputies deceptively referred to the building as a "shed" near the house, when in fact, it is a 1500 square foot building with a thick concrete foundation and a large garage door and a back door that these

149

2010, CARNES ordered BARNES to turn over all weapons in her possession knowing that said Defendants had already illegally confiscated them, in further violation of BARNES' Constitutional rights under Texas Constitution Art. I, Section 3, 3a, 9, 10, 11, 13, 16, 17, and 19 and the United States Constitution amends. II, IV, V, VI, VIII, IX, and XIV.   WCSD, WILLIAMSON COUNTY, and its employees are not free to impose pretrial punishment and strip away constitutionally protected rights from accused who are lawfully and constitutionally presumed innocent.  WCSD, WILLIAMSON COUNTY, CARNES, BRADLEY, MCCABE, and MCDONALD, and employees and deputies of WCSD and WILLIAMSON COUNTY are not free to impose pretrial punishment and strip away constitutionally protected rights from accused who are lawfully and constitutionally presumed innocent.   WILLIAMSON COUNTY, WCSD, and its deputies, employees, agents, and representatives, including but not limited to, HERNANDEZ, BRINKMANN, TRAVIS, RICHTER, FOSTER, DE LA VEGA, BARTZ, HUGHEY, WAGGONER, BOGAN, NEWELL, RYE, HOBBS, BROOKS, ANDERSON, CARNES, BRADLEY, MCCABE, MCDONALD,  SCHEFFLER, GITTEL, and POPPA, violated Plaintiffs' 2nd amendment rights and the damages, injuries, and harm sustained by Plaintiffs was a reasonably foreseeable consequence of these violations.

45.    **§ 1983 – Governmental Entity liability**. The allegations contained in Paragraphs 1 through 180 of Section IV, particularly Paragraphs 35-36, and in Paragraphs 1 through 44, immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

---

perpetrators left wide open when they left, just like a burglar would do.

150

46. The influence of politics and a lack of accountability have fostered an anything-goes mentality within law enforcement ranks and within the prosecutors' offices. No elected official speaks out against the rampant abuses in law enforcement for fear of being perceived as "soft" on crime or as a "liberal" in an ultra-conservative county. The elected officials take no action to rectify these abuses, and, in fact, encourage and reward such abuses. This custom and practice enables employees, law enforcement personnel, and prosecutors to operate with little scrutiny. Law enforcement personnel and prosecutors are sworn to uphold the law, not break it. Honesty and integrity are indispensable tools in the criminal justice system, especially in the investigation and prosecution of cases. Thus, it is up to the judiciary to ensure that justice is done; however, the judges are former prosecutors (*i.e.*, ANDERSON hired and trained BRADLEY and was instrumental in instituting these practices when he was the District Attorney), and are under the same political pressures.[76] In cases of this nature, where the retaliation and lack of sufficient probable cause is present, the local judges bow out and bring in hand-picked "visiting" judges, *i.e.* SHAVER, to do the dirty work for pay. The gross short-comings of the court appointed lawyer system are well-known. The accused is often left with no representation at all. It, therefore, must fall on the federal courts to address systemic local corruption in the criminal justice system—certainly, the Texas Court of Criminal Appeals is not going to address it, again, due to the politics involved and the inherent hate towards anyone labeled a "criminal" in Texas.[77] The mere

---

[76] Albert Einstein once said "The world is a dangerous place, not because of those who do evil, but because of those who look on and do nothing."

[77] Find out just what the people will submit to and you have found out the exact amount of injustice and wrong which will be imposed upon them; and these will continue until they are resisted with either words or blows, or with both. The limits of tyrants are prescribed by the endurance of those whom they oppress. — Frederick Douglass, civil rights activist, Aug. 4, 1857

151

accusation, coupled with the media coverage and Internet inflamed by press-release-probable-cause-affidavits, completely deprives the citizens of Grand Jury protection from malicious prosecutions and the right to a fair and speedy trial before an impartial jury.

47.     WILSON and HAMILTON are being sued in their representative or respondent superior capacity.   All Defendants were directly involved in the criminal conspiracy and violations of 42 U.S.C. Sections 1983 and 1985; 18 U.S.C. Sections 1962 and 1964; and 18 U.S.C. Sections 241 and 242.   HAMILTON was very aware of the events and criminal actions of TUMLINSON, LERMA, COTTON, THREE UNIDENTIFIED, KLEKAR and others who were aiding and abetting the cover-up for TUMLINSON's felony activity and the felony activity of the THREE UNIDENTIFIED, LERMA, COTTON,  KLEKAR and others and he failed and refused to investigate or take any corrective action.   WILSON was very aware of the events and criminal actions of DE LA VEGA, HERNANDEZ, RICHTER, TRAVIS, BOGAN, HUGHEY, WAGGONER, NEWELL, BRINKMANN, FOSTER, BARTZ, RUPPART, and others who were aiding and abetting the cover-up for BRINKMANN's and DE LA VEGA's felony activity and the felony activity of MCDONALD, MCCABE, BRADLEY, HOBBS, RYE, and others and he failed and refused to investigate or take any corrective action.

48.     BARNES will establish a long-standing tradition, habit, custom, and practice of obstruction, retaliation, and civil rights violations by these same individuals and policy makers in WILLIAMSON COUNTY and TRAVIS COUNTY, TEXAS. Based on information and belief, in particular court records and public records obtained from WILLIAMSON COUNTY, TRAVIS COUNTY, and from the Western District,

these Defendants have been involved in similar activity in the past, and have been engaged in a pattern of fraudulent conduct relating to other incidents for a period of decades. This habit, practice, and custom had been long established and engrained prior to BARNES' encounters with these Defendants. These Defendants have exhibited a habit, practice, and custom of abusing their social, economic, and political power to coerce and control others with intimidation, threats, force, and retaliation long before the aggravated assault, aggravated kidnapping, and aggravated perjury involved in this case, and had the policy makers of WILLIAMSON COUNTY and TRAVIS COUNTY, TEXAS taken adequate and appropriate action to address, alleviate, and prevent these continuous acts that so clearly violate current constitutional law and civil rights legislation, Plaintiffs would not have been injured, harmed, or subjected to substantial losses, injuries, and damages.

49.   It is well-established that governmental entities whose policies and procedures or habits, customs, and practices permit these types of abuses of office and power are liable under 42 U.S.C. § 1983 for constitutional torts that are in compliance with the county's customs, practices, policies or procedures. A governmental entity is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels. In this case, TRAVIS COUNTY, WILLIAMSON COUNTY, TCSD, and WCSD are liable because it/they sanctioned the custom, practice and/or policy or procedure of illegal searches and seizures and/or violating their rights to be free of unreasonable and wanton searches and seizure and/or sanctioned the use of probable cause affidavits as press releases to deprive the accused of a fair trial, due process, and

153

presumption of innocence and/or sanctioned multiple arrests and bail bond requirements for the same incident; and sanctioned malicious, vindictive, and retaliatory prosecutions, and/or sanctioned the unconstitutional control over the grand jury process by the prosecutors. Defendants actions were a customary practice and/or policy or procedure that was sanctioned by WCSD, TCSD, WILSON, HAMILTON, TRAVIS COUNTY, and WILLIAMSON COUNTY, and out of which BARNES was deprived of her civil rights secured by statute and by both the Texas and United States Constitutions. Liability for TRAVIS COUNTY and WILLIAMSON COUNTY is established under §1983 because the arrest, mistreatment, and prosecution of an individual with no justification, is a persistent, widespread practice of county employees -- namely officers/deputies -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy. HAMILTON's, WILSON's, TCSD's, WCSD's, TRAVIS COUNTY's, and WILLIAMSON COUNTY's actual or constructive knowledge of this practice, custom, and/or policy or procedure and of numerous prior incidents of officers/employees unlawfully arresting citizens, assaulting citizens, being abusive to citizens, over-charging with a felony, unconstitutionally manipulating the PC affidavit as a press release, abuse of pretrial bail, and engaging in retaliatory, vindictive, selective, or malicious prosecutions establishes habitual practices and accession to that custom by their policy makers. HAMILTON's, TRAVIS COUNTY's, WILSON's, and WILLIAMSON COUNTY's unspoken policy of unlawfully arresting citizens, mistreating them, and maliciously prosecuting them, is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. In the alternative, HAMILTON,

154

TCSD, TRAVIS COUNTY, WILSON, WCSD, and WILLIAMSON COUNTY are liable under §1983 for failure to adopt a policy precluding officers/employees from unlawfully arresting citizens, mistreating, or maliciously prosecuting them, because such failure to adopt such a policy is one of intentional choice.[78] The harm inflicted on Plaintiffs was the result of action on the part of the government entities that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the result of the entity's custom. Further, the entity's policy or custom was the proximate cause and the "moving force" behind the deprivations.

50.     The county policies and practices with respect to criminal investigations and the judicial process is established, influenced, and shaped by the HAMILTON, TCSD, WILSON, WCSD, the TRAVIS COUNTY and WILLIAMSON COUNTY Attorneys, the WILLIAMSON COUNTY and TRAVIS COUNTY District Attorneys, the WILLIAMSON COUNTY and TRAVIS COUNTY District Judges, and WILLIAMSON COUNTY and TRAVIS COUNTY Commissioner's Courts. These elected officials are responsible for the behavior, actions, and activity of their attorneys, agents, employees, representatives, and law enforcement personnel. The governmental culture and county policies and practices of these counties are conducive to and supportive of obstruction of

---

[78] *See* Paragraph 35 in Section IV above. *See* also, *Oklahoma v. Brown*, 520 U.S. 397, 406-07, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Harris,* 489 U.S. at 388-92, 109 S.Ct. 1197; *Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993); *see also Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991); *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Even in the absence of an "explicitly adopted rule or regulation," *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 870 (2d Cir.1992), a plaintiff may prove the existence of municipal policy if he can show that the unlawful act was done or approved by the person with final policy-making authority in the area in which the action was taken. *See Pembaur,* 475 U.S. at 480-81, 106 S.Ct. 1292. Custom, on the other hand, may be the basis for municipal liability even where the practice "has not been formally approved by an appropriate decisionmaker," if "the relevant practice is so widespread as to have the force of law." *Brown,* 520 U.S. at 404, 117 S.Ct. 1382. Where unconstitutional conduct of subordinates is "permanent" and "well settled," *see Monell,* 436 U.S. at 691, 98 S.Ct. 2018, a municipality can be held liable because the practice is "so

155

justice, retaliation, abuse of office, abuse of power, coercion, threats, violence, violations of constitutional and civil rights, and oppression, particularly against members of suspect classes based on race, sex, social-economic class, and/or status as an informant or complainant exposing wrong-doing by employees, agents, representatives, attorneys, and law enforcement personnel.  When it comes down to the final policy makers, the County Judges and Commissioner's Courts, County Attorneys, District Attorneys, District Judges, Sheriffs, and local law enforcement, serve the vital and crucial role because they hold the ultimate power or authority and should therefore be held ultimately accountable for the policy, practice, habit, and custom of WILLIAMSON COUNTY and TRAVIS COUNTY.  While acting in their individual capacity when carrying out the grievances and activity set forth herein, it was their ability to benefit and profit from the use of governmental position and power that provided the means and mechanism to retaliate against Plaintiffs and obstruct justice.  These governmental entities, through their agents, employees, representatives, attorneys and law enforcement personnel used unlawful means or abused lawful process to violate BARNES' equal protection, due process, and due course of law rights; and to deprive her of any legal recourse through intimidation, lack of fairness and impartiality, bullying, retaliation, obstruction, destruction of evidence, and denial of other valuable constitutional rights.  Counties and supervisors are liable for constitutional violations committed by county employees when those violations result directly from a municipal custom or policy. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989); *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000).

---

manifest as to imply the constructive acquiescence of senior policymaking officials." *Sorlucco,* 971 F.2d at 871.

156

51.   TRAVIS COUNTY and WILLIAMSON COUNTY failed to properly hire, train, supervise and discipline its employees; and in this regard, Plaintiffs will show that (1) the training or hiring procedures of the counties' policymakers were inadequate, (2) the counties' policymakers were deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injuries. *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). These policies or customs were not inadvertent, or merely unintentionally negligent oversights, but were the result of an intentional choice made by the prosecutors presenting the training during the initial hiring phase and subsequent "in-house training" for the law enforcement personnel. The vast majority of local law enforcement training occurs in WILLIAMSON COUNTY and TRAVIS COUNTY as part of an in-house training program often "taught" by representatives of the local prosecutors' offices or the policy makers of the respective Sheriff's departments. New recruits and seasoned law enforcement personnel are taught by the prosecutors and policy makers how to circumvent or "get around" constitutional parameters and restrictions. The focus is on over-charging alleged crimes as felonies, so the prosecutors have "room to bargain" and on fabricating or doctoring the reports and records so that evidence or statements are admissible at trial, irregardless of the constitutionality of the obtainment of that evidence and on drafting PC affidavits as press releases to deprive the accused of a fair trial and presumption of innocence and in manipulation of the grand jury process. Law enforcement personnel are actually trained and encouraged to disrespect the constitution and disobey the law in "enforcing" the law. It becomes a game to impress the prosecutors rather than a true effort to improve the community and protect the citizens against crime. The emphasis is on obtaining

convictions, whatever the costs, rather than solving the crime and finding the true perpetrator. The policy and custom emphasizes convictions and punishments, rather than the truth and justice. This is a policy and procedure that is embraced and encouraged by the prosecutors and judges who are politically elected and motivated in this regard. In light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy and purposeful intent of this training is so likely to result in violations of constitutional rights, that the policymakers of these counties can reasonably be said to have been deliberately indifferent to the need to protect the citizens, act in good faith in solving crimes and filing charges, and in the avenues and procedures employed to obtain convictions, rather than see that justice is done.

52.     This deliberate indifference on the part of the policy makers for the counties and for their respective sheriff's departments is highlighted by their complete lack of response to BARNES' repeated attempts to resolve the constitutional violations and continued retaliation and malicious prosecutions, as well as the failure of the counties or either of their respective sheriff's departments to take any remedial or corrective action to cause their personnel to cease and desist or to protect BARNES and her family from the continued harassment, defamation, punishment, losses, injuries, and damages that are on-going, escalating, and accruing without any sign of abatement. The constitutional violations against BARNES are just the tip of the iceberg as will be shown by the actions against others similarly situated and many of BARNES' clients. This is not just an isolated incident. The retaliation against free speech and right to petition the government for redress of grievances is well recognized in these counties, particularly when the

158

speech is directed towards the elected officials, judges, prosecutors, or law enforcement personnel. There have been numerous arrests that are clearly unconstitutional, such as arrests of a man for "shooting the finger" at an off-duty cop; of a young woman because the officer did not like her bumper sticker; of another young woman because she objected to the officer entering her apartment without a warrant and then stating "I know my rights;" of a man who objected to an officer coming into his home without a warrant; an elderly woman who spoke up to help a friend; a woman sending in a complaint against a public office; a woman who sent an email complaining to an employee of the government; a young woman for "public intoxication" just because of what she was wearing; brutally assaulting a hand-cuffed older man just because he called the officer a "pussy;" and the list goes on. These constitutional rights were well established prior to these incidents and false arrests. Often law enforcement officers assault the citizens and turn it around and claim that the citizen assaulted them—just as TUMLINSON and RUPPART did to BARNES. Often citizens are so abused, they require hospitalization and some die in custody. Nothing is ever done to address, educate, or train these known abuses out of existence.

53. In this case, all of the policy makers were well aware of the on-going retaliation, harassment, defamation, multiple arrests, and malicious prosecutions against BARNES, and they deliberately and intentionally took no action to prevent or mitigate the harm, damage, and injury their actions caused. The motives of the counties and their sheriff's departments were contrary to constitutional standards and evidence a complete disregard for the constitutional rights of the citizens. The counties and their sheriff's departments not only should have known of the risks of harm, but had actual knowledge

159

of the on-going harm as a direct result of these customs, practices, policies, and procedures; yet, they took no corrective or remedial action. Plaintiffs will show a deliberate pattern and practice of constitutional violations committed by the law enforcement personnel and prosecutors over the past ten years, as well as the fact that the policy makers, county officials, and sheriffs were aware of these practices and customs that were likely to endanger the constitutional rights of its citizens.

54.     HAMILTON, ESCAMILLA, GUERRERO, WILSON, ANDERSON, CARNES, BRADLEY, RYE, and HOBBS were final policy makers for TRAVIS COUNTY and WILLIAMSON COUNTY, respectively, thereby rendering the respective counties liable under 18 U.S.C. § 1983 for their constitutional torts.

55.     Moreover, TRAVIS COUNTY and WILLIAMSON COUNTY are liable for inadequate training of their deputies, employees, and prosecutors under §1983. These counties failed to act, by training and supervising their subordinates, or taking some action to put a halt to frivolous and bad faith arrests, harassment, retaliation, and especially malicious prosecutions that are motivated solely by animus and desire to retaliate and have a chilling effect on officers of the court zealously representing their clients. These final decision and policy makers continue to adhere to an approach or system that they know or should know has failed to prevent these same constitutional violations in the past. That failure to act encourages, rewards, and escalates the continuity of these bad faith actions and police brutality. These decisions by the policymakers reflect a deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decisions. Liability attaches to TRAVIS COUNTY and WILLIAMSON COUNTY because their failure to train amounts to deliberate

indifference to the rights of the persons with whom these deputies/employees/prosecutors come in contact. In particular, Plaintiffs allege that the training programs in relation to the tasks the particular deputies/employees/prosecutors must perform are inadequate in the respect that the programs fail to teach new deputies/employees/prosecutors that unlawfully arresting, prosecuting, or punishing innocent citizens violate citizens' constitutional rights. As such, the deficiency in training actually caused said Defendant deputies/employees/prosecutors to violate Plaintiffs' constitutional rights. TRAVIS COUNTY and WILLIAMSON COUNTY had evidence that the abuses were occurring and had notice of same, but repeatedly failed to make any meaningful investigation into charges that constitutional rights were being violated; that failure to take meaningful action to address the conditions demonstrates deliberate indifference.

56.    Prior to and at all times relevant to this suit, HAMILTON, GUERRERO, and ESCAMILLA developed, established and maintained widespread practices, polices, habits, and customs at the TRAVIS COUNTY Sheriff's Department, TRAVIS COUNTY Pre-trial Services, and TRAVIS COUNTY Attorney's Office, respectively, exhibiting deliberate indifference and conscious disregard to the constitutional rights of persons in TRAVIS COUNTY, which caused the violation of Plaintiffs' rights. HAMILTON was well aware of TUMLINSON's propensities, including his disrespectful treatment of inmates when he worked in the jail, his fellow workers, and officers of the court who were in the courthouse conducting business because all of these complaints and concerns were in TUMLINSON's personnel files.

57.    Prior to and at all times relevant to this suit, WILSON, ANDERSON, CARNES, HOBBS, RYE, and BRADLEY developed, established and maintained

widespread practices, polices, habits, and customs at the WILLIAMSON COUNTY Commissioner's Court, WILLIAMSON COUNTY Sheriff's Department, WILLIAMSON COUNTY District and County Attorney's Office, and WILLIAMSON COUNTY District and County Courts, exhibiting deliberate indifference and conscious disregard to the constitutional rights of persons in WILLIAMSON COUNTY, which caused the violation of Plaintiffs' rights. These final policy-makers, as well as the WILLIAMSON COUNTY Commissioner's Court, knew about these malicious prosecutions, false arrests, defamation, and harassment and failed and refused to take any corrective action; they knew these deputies and other employees were violating BARNES constitutional rights in retaliation against her for zealously representing her clients and filing lawsuits against WILLIAMSON COUNTY and WCSD in the past. Therefore, the policymakers encouraged and approved their subordinates' unlawful acts because they ratified both the subordinate's decision and the basis for it—to retaliate and discourage others from taking like action—to cause a chilling effect on first amendment rights. It would be difficult to find anyone employed in law enforcement, or by WILLIAMSON COUNTY, WCSD, or the prosecutors' office who were not aware of the hostility and animosity by these Defendants against BARNES, certainly the memos, emails, and caution flags that were continuously published against BARNES would place any policy maker on notice of what was going on and the escalation of same. Certainly, during the Arnold Garza case when BROOKS issued the edict directing WCSD to follow, escort, and/or monitor BARNES every time she came to the courthouse would have placed policy makers on notice of the unconstitutional escalation of the level of harassment and curtailment in her right to practice law and earn a livelihood unhindered by elected

162

officials of WILLIAMSON COUNTY.

58.    It is inconceivable that a lawyer practicing in TRAVIS COUNTY and WILLIAMSON COUNTY for so many years, who is arrested on a first degree felony, would not warrant a good faith investigation and review of the case against her to ascertain the weakness and absence of the evidence in the case and lack of probable cause to arrest her.  No reasonable policy maker would have failed to conduct such a good faith investigation prior to ruining the reputation, career, and practice of an officer of the court. The policy makers in both of these counties exhibited a deliberate indifference and conscious disregard for the constitutional rights of Plaintiffs and persons similarly situated when they failed to cause or conduct a good faith investigation into these false allegations prior to allowing their subordinates and employees to so maliciously defame BARNES in the media and permanently on the Internet.  Any reasonable decision maker would have known that these allegations would ruin BARNES' career, practice, and reputation and that there would be no way to recover from the harm, injury, and damage that was reasonably foreseeable.  This is especially heightened by the fact that BARNES had been the target of retaliation and many false arrests and malicious prosecutions prior to these latest false arrests and malicious prosecutions—this history of bad faith by county deputies and prosecutors should have heightened the alert and concern.  The fact that both counties have failed and refused to provide BARNES with discovery and a timely resolution and speedy jury trial is further evidence that these policy makers know that the arrests were wrongful and the prosecutions are malicious; otherwise, they would not hide the evidence, stall the case, resist discovery, and continue to obstruct justice. Further, no reasonable policy maker would have devised the malicious scheme to abuse

163

process under C.C.P. art. 46B and Texas Health and Safety Code, Title 7, Subtitle C to permanently banish BARNES to a state mental hospital for the criminally insane when BARNES has not ever hit, punched, poked, shoved, scratched, bruised, or hurt anyone. BARNES has been repeatedly hit, poked, shoved, scratched, bruised, and hurt by county employees and law enforcement personnel. It is inconceivable that any reasonable policy marker would believe in good faith that a trial lawyer who has been practicing almost 30 years would be "incompetent to stand trial" and if they did really believe that in good faith, then they would have had no problem allowing BARNES her constitutional and statutory right to a jury trial, to confront the evidence and cross examine the witnesses, and to call experts and fact witnesses in her own defense. These Defendants failed and refused to even provide BARNES with a copy of any pleadings or orders and failed and refused to give her any notice of the "hearings." BARNES was not even allowed to attend the "hearing" resulting in the year-long civil commitment without any semblance of due process. No reasonable policy maker would have believed in good faith that those "hearings" comported with due process, equal protection, or due course of law.

59.     It was the widespread practice, custom, habit, and/or administrative policy of HAMILTON, ESCAMILLA, GUERRERO, WILSON, ANDERSON, CARNES, BRADLEY, RYE, and HOBBS, as the final policy makers, to advise, instruct, and train the prosecutors and law enforcement investigators and personnel to improperly investigate, report, file, and respond to corruption, unlawful conduct, or wrong-doing on the part of county employees, law enforcement personnel, or members of the criminal justice system in their respective counties, and to cover-up and obstruct the complaints, investigations, or reports of any such corruption, unlawful conduct, or wrong-doing; and

164

to retaliate against any civilians reporting such activity. The bulk of local law enforcement training is conducted in WILLIAMSON COUNTY and TRAVIS COUNTY at the respective WCSD and TCSD, utilizing the prosecutors, who rather than teach better ethical police practices, they teach officers and deputies what to say and do to "get around the constitution" and to escape liability for the county or municipality. There is no respect for the Constitution, rather it is viewed in a derogatory light, as a hindrance to "getting things done," and an unwanted restraint on "authoritarian" behavior. This has lead to the abusive and disrespectful mentality that runs rampant amount certain deputies and prosecutors, which is often directed more forcefully towards female defense lawyers who do not simply plea bargain all their cases. This widespread practice, custom, habit, and/or administrative policy is evidenced by the number of persons prosecuted or threatened with prosecution or subjected to harassment and false arrests for engaging in such activity, which is perceived as a threat.

60. HAMILTON, as Sheriff of TRAVIS COUNTY, had the duty to properly advise, instruct, and train law enforcement administrators, directors, and officers, including TUMLINSON, COTTON, LERMA, UNIDENTIFIED THREE, and KLEKAR, to require or provide appropriate in-service training or re-training, supervision, and discipline to establish and promote a healthy and lawful respect for constitutional rights, rather than promoting and encouraging ways and means of getting around the constitutional protections, and covering up for any such violations. As a result of the above described policies, practices, habits, and customs the individual Defendants believed that their actions would be tolerated, encouraged, and rewarded. Under the specific direction and/or acquiescence and acting under the wide-spread practices of

165

HAMILTON, said individual Defendants, jointly and severally, knowingly, recklessly, and with deliberate indifference and callous disregard of Plaintiffs' rights, engaged in the aforementioned unlawful and/or unconstitutional activity in violation of the aforementioned constitutional rights.  HAMILTON knew or should have known that the said individual Defendants would engage in the described conduct in violation of Plaintiffs' constitutional rights due to the aforesaid policies, habits, practices, and customs, as well as the failure to properly supervise and discipline said individual Defendants, and HAMILTON had the power to prevent or aid in the prevention of the commission of said wrongs, and could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and conscious disregard of Plaintiffs' rights, failed or refused to do so.  Therefore, because HAMILTON both directed and engaged in the unconstitutional practices, and because they are the final policy makers, TRAVIS COUNTY is liable for any harm, injury, or damages caused to Plaintiffs by these Defendant employees of TRAVIS COUNTY.  Plaintiffs suffered and continue to suffer harm, injury, and damage as a foreseeable consequence of the constitutional violations.

61.    ESCAMILLA, as TRAVIS COUNTY Attorney, had the duty to properly advise, instruct and train law enforcement administrators, directors, and officers, as well as the prosecutors and court personnel, including SWAIM, GUERRERO, SAENZ, and MORGAN, to require or provide appropriate in-service training or re-training, supervision, and discipline to establish and promote a healthy and lawful respect for constitutional rights, rather than promoting and encouraging ways and means of getting around the constitutional protections, and covering up for any such violations.  As a result

166

of the above described policies, practices, habits, and customs the individual Defendants believed that their actions would be tolerated, encouraged, and rewarded. Under the specific direction and/or acquiescence and acting under the wide-spread practices of ESCAMILLA, said individual Defendants, jointly and severally, knowingly, recklessly, and with deliberate indifference and callous disregard of Plaintiffs' rights, engaged in the aforementioned unlawful and/or unconstitutional activity in violation of the aforementioned constitutional rights. ESCAMILLA knew or should have known that the said individual Defendants would engage in the described conduct in violation of Plaintiffs' constitutional rights due to the aforesaid policies, habits, practices, and customs, as well as the failure to properly supervise and discipline said individual Defendants, and ESCAMILLA had the power to prevent or aid in the prevention of the commission of said wrongs, and could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and conscious disregard of Plaintiffs' rights, failed or refused to do so. Therefore, because ESCAMILLA both directed and engaged in the unconstitutional practices, and because they are the final policy makers, TRAVIS COUNTY is liable for any harm, injury, or damages caused to Plaintiffs by these Defendant employees of TRAVIS COUNTY. Plaintiffs suffered and continue to suffer harm, injury, and damage as a foreseeable consequence of the constitutional violations.

62.    WILSON, as Sheriff of WILLIAMSON COUNTY, had the duty to properly advise, instruct, and train law enforcement administrators, directors, and officers, including, HERNANDEZ, RICHTER, TRAVIS, BOGAN, NEWELL, HUGHEY, WAGGONER, BARTZ, BRINKMANN, DE LA VEGA, FOSTER, and

167

RUPPART, to require or provide appropriate in-service training or re-training, supervision, and discipline to establish and promote a healthy and lawful respect for constitutional rights, rather than promoting and encouraging ways and means of getting around the constitutional protections, and covering up for any such violations. As a result of the above described policies, practices, habits, and customs the individual Defendants believed that their actions would be tolerated, encouraged, and rewarded. Under the specific direction and/or acquiescence and acting under the wide-spread practices of WILSON said individual Defendants, jointly and severally, knowingly, recklessly, and with deliberate indifference and callous disregard of Plaintiffs' rights, engaged in the aforementioned unlawful and/or unconstitutional activity in violation of the aforementioned constitutional rights. WILSON knew or should have known that the said individual Defendants would engage in the described conduct in violation of Plaintiffs' constitutional rights due to the aforesaid policies, habits, practices, and customs, as well as the failure to properly supervise and discipline said individual Defendants, and WILSON had the power to prevent or aid in the prevention of the commission of said wrongs, and could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and conscious disregard of Plaintiffs' rights, failed or refused to do so. Therefore, because WILSON both directed and engaged in the unconstitutional practices, and because they are the final policy makers, WILLIAMSON COUNTY is liable for any harm, injury, or damages caused to Plaintiffs by these Defendant employees of WILLIAMSON COUNTY. Plaintiffs suffered and continue to suffer harm, injury, and damage as a foreseeable consequence of the constitutional violations.

63.     ANDERSON, CARNES, BRADLEY, GRIFFITH, as the final policy

168

makers for WILLIAMSON COUNTY and as the District Attorney, had the duty to properly advise, instruct, and train law enforcement administrators, directors, and officers, as well as prosecutors and court personnel, including RYE, HOBBS, BROOKS, MCDONALD, MCCABE, GRIFFITH, to require or provide appropriate in-service training or re-training, supervision, and discipline to establish and promote a healthy and lawful respect for constitutional rights, rather than promoting and encouraging ways and means of getting around the constitutional protections, and covering up for any such violations. Under the specific direction and/or acquiescence and with the participation and wide-spread practices of ANDERSON, CARNES, BRADLEY, GRIFFITH, it was the administrative policy, habit, practice, and/or custom of said Defendants to require or provide appropriate in-service training or re-training, supervision, and discipline to establish and promote a healthy and lawful respect for constitutional rights, rather than promoting and encouraging ways and means of getting around the constitutional protections, and covering up for any such violations. As a result of the above described policies, practices, habits, and customs the individual Defendants believed that their actions would be tolerated, encouraged, and rewarded. Under the specific direction and/or acquiescence and acting under the wide-spread practices of ANDERSON, CARNES, BRADLEY, GRIFFITH, said individual Defendants, jointly and severally, knowingly, recklessly, and with deliberate indifference and callous disregard of Plaintiffs' rights, engaged in the aforementioned unlawful and/or unconstitutional activity in violation of the aforementioned constitutional rights. ANDERSON, CARNES, BRADLEY, GRIFFITH, knew or should have known that the said individual Defendants would engage in the described conduct in violation of Plaintiffs' constitutional rights due

169

to the aforesaid policies, habits, practices, and customs, as well as the failure to properly supervise and discipline said individual Defendants, and ANDERSON, CARNES, BRADLEY, GRIFFITH had the power to prevent or aid in the prevention of the commission of said wrongs, and could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and conscious disregard of Plaintiffs' rights, failed or refused to do so. Therefore, because ANDERSON, CARNES, BRADLEY, GRIFFITH, both directed and engaged in the unconstitutional practices, and because they are the final policy makers, WILLIAMSON COUNTY is liable for any harm, injury, or damages caused to Plaintiffs by these Defendant employees of WILLIAMSON COUNTY. Plaintiffs suffered and continue to suffer harm, injury, and damage as a foreseeable consequence of the constitutional violations.

64.     All of the deprivations set forth herein were all well-recognized at the time of these events, as shown by various published and circulated trade publications for law enforcement, e.g., a 2006 publication which specifically stated:

> Protecting Civil Rights: A Leadership Imperative:  All law enforcement leaders recognize the ethical and legal imperatives to which they and their officers must adhere to ensure that civil rights of all individuals in their communities are protected. Law enforcement officers, in fact, are the most visible and largest contingent of the nation's guardians of civil rights. Every police officer commits to upholding the nation's prime guarantor of rights, the U.S. Constitution, when sworn into office. To be effective, a police department and its individual officers must be seen primarily as protectors of civil rights, rather than agents of social control whose main purpose is to limit individual freedoms. The effectiveness of police in their varied missions—from law enforcement to community service—depends on the trust and confidence of the community. Public trust and confidence are severely reduced when individuals' civil rights are compromised. And when any community perceives that its civil rights are systematically violated by the police, all sense of trust, cooperation, and partnership between the police and that community will be undermined.

Understanding these ethical imperatives, law enforcement leaders must be continually vigilant to ensure that the actions of their officers do not violate civil rights and do not compromise public support. Officers are granted a tremendous amount of authority and discretion to enforce the law, that is, to protect individual rights from being infringed upon by others in the community. At the same time, officers themselves must act within the confines of the Constitution while executing their tremendous power and wide discretion. They must never consider themselves above the law while executing their responsibility to enforce the law. This commitment is what distinguishes police in constitutionally based, democratic societies like ours from police in nondemocratic countries, where they too often are perceived as oppressive agents of a government whose main purpose is to restrict, rather than protect, the rights of civilians...Law enforcement leaders bear the tremendous responsibility to ensure that individual officers and units within their agencies uphold the law and its most basic guarantees...In the case of officers who systematically violate civil rights, their behavior must not be tolerated and action must be decisive and uncompromising. Effective leaders, supported by the managers who serve them, must strive to identify and intervene when officers exhibit potentially problematic behavior before it escalates to the point of violating civil rights.

Against this backdrop, the seriousness of law enforcement leaders' responsibility to communicate a consistent and far-reaching commitment to civil rights protections cannot be overstated. Although laws, departmental policy directives, and standard operating procedures are critically important, law enforcement executives' leadership and communication skills are the most critical elements for ensuring that officers regularly exercise sound judgment and engage in professional and ethical policing.

Law enforcement leaders can and must demonstrate a fundamental and complete allegiance to civil rights protections in a coordinated manner using multiple approaches. They must clearly convey a simultaneous commitment to effective law enforcement and civil rights protection; they must codify this commitment in their agency's mission statements; they must ensure that their department's polices are clear, sound, and consistent with civil rights guarantees; they must train and supervise officers in manners that are consistent with this commitment; and they must respond to alleged civil rights violations with vigilance and with fair and decisive action. As law enforcement leaders succeed in these regards and make these efforts transparent to the public, they validate the core premise that civil rights protection is not only an ethical and legal imperative but a practical imperative as well. Protecting civil rights is good for police, good for the community, and essential for maintaining the partnerships that must exist between the two...We must remember that any oppression, any

171

injustice, any hatred is a wedge designed to attack our civilization...It should be clear to police leaders that they must develop policies, training, and accountability."[79]

65.     HAMILTON, TRAVIS COUNTY and the TCSD are not an arm of the State of Texas.  HAMILTON and TCSD are acting on behalf of TRAVIS COUNTY and not the State of Texas.  HAMILTON, TRAVIS COUNTY, Texas and the TCSD and TRAVIS COUNTY prosecutors have the habit, custom, practice, policy, or procedure of:

(1)     blocking access to the grand jury by intercepting mail addressed specifically to the Foreman of the Grand Jury and preventing citizens from appearing before the Grand Jury when any credible citizen should be able to present matters to the grand jury for investigation;

(2)     preventing the victims of assaults by public servants or employees of TRAVIS COUNTY from filing criminal charges, having equal access to the courts, from presenting grievances, or having access to Victim's Services;

(3)     allowing employees of TRAVIS COUNTY to intentionally sensationalize arrests and draft the PC affidavits for a press release rather than for truthfulness as a way to manipulate and taint public perception and opinions to further deprive the accused of a fair trial and destroy the presumption of innocence.  They know the accused is locked up and cannot defend themselves, while the culprits are actively publishing misinformation, misleading information, and flat out dishonest information;

(4)     allowing a reviewer to override a recommendation not to hire if the employee can convince the reviewer that his poor performance or bad attitude is the result of failure to properly train and/or supervise;

(5)     failing to re-train, educate, counsel, discipline, or supervise employees and courthouse security personnel in order to prevent these unwarranted attacks, rudeness, and bullying of the public and officers of the court who must enter the courthouse to conduct business and earn their livelihood;

(6)     allowing employees or courthouse security personnel to assault members of the public and officers of the court coming to the courthouse to conduct business and earn a livelihood and then destroying the video recordings of the events that would prove the official misconduct; and then blocking any avenue or recourse the public or officer of the court has to report and rectify the abusive conduct;

---

[79] Protecting Civil Rights:  A Leadership Guide for State, Local, and Tribal Law Enforcement, Prepared by the International Association of Chiefs of Police, September 2006.

172

(7)     allowing the revocation of bond by pretrial services, practicing law without a license, and without due process when the accused person has not ever violated any term or condition of his pretrial release, and using three multiple bail bonds merely to punish, injure, damage, and oppress;

(8)     allowing employees to use the signature of Irma Guerrero to cause the issuance of a warrant without her involvement, knowledge, or oversight, and without following the law;

(9)     allowing the use of instrumentality owned by the State of Texas to be used by TRAVIS COUNTY and TCSD to assault officers of the court during their appearances at the court conducting business before the court.  This happened on two separate occasions at the TRAVIS COUNTY courthouse and both times tortiously interfered with the contracts BARNES had with her clients.  BARNES was only there at the courthouse on both of those occasions as an officer of the court to conduct business on behalf of clients that she was representing;

(10)    punishing accused persons pretrial when they are accused of "hitting a cop" but taking them to the "special housing" in the back part of the jail, stripping their clothes off, sticking them in a freezing cold cell, and not allowing them to be released when their bond is posted;

(11)    detaining, restraining, searching, and seizing BARNES in violation of her Fourth Amendment expectation of privacy and guarantee to security from unreasonable search and seizure without reasonable suspicion and/or probable cause;

(12)    continuing to hold BARNES long after her bond had been posted in bad faith, to further harm, punish, and injure her; and then placing her out on the street late so that she is in further danger of harm;

(13)    subjecting BARNES to another malicious assault and search simply for reporting her missing property at discharge from the jail;

(14)    falsely and maliciously charging BARNES with the commission of crimes without probable cause to believe that such crimes had occurred and on the sole basis of hatred and/or anger;

(15)    allowing a policy of falsely charging and re-arresting someone who is out on a $50,000 bond with a misdemeanor, over six months after the alleged crime, without probable cause, continuing to delay the resolution of the case in bad faith, and then plotting and scheming with other malicious prosecutors rather than seeing that justice is done;

(16)    allowing and encouraging a policy whereby the prosecutors and deputies can continuously violate clear constitutional rights of the citizens with impunity and no corrective action or disciplinary investigations or consequences;

173

(17)    failing to intervene, where such intervention would have prevented the violations and/or damages of Plaintiffs; and

(18)    allowing a pattern or practice of civil rights violations including the following:

• Unlawful or excessive use of force
• Inadequate training on use-of-force techniques
• Racial profiling and racial/sexual/economic discrimination
• Illegal stops and searches
• Intimidation by police
• Harassment of civilians in retaliation for reported misconduct
• Inadequate supervision
• Failure to establish a civilian complaint process and failure to investigate officer misconduct.

66.    WILSON, WILLIAMSON COUNTY and the WCSD are not an arm of the State of Texas.   WILSON and WCSD are acting on behalf of WILLIAMSON COUNTY and not the State of Texas.  WILSON, WILLIAMSON COUNTY, Texas and the WCSD and WILLIAMSON COUNTY prosecutors have the habit, custom, practice, policy, or procedure of:

(1)    blocking access to the grand jury and preventing citizens from appearing before the Grand Jury when any credible citizen should be able to present matters to the grand jury for investigation;

(2)    preventing the victims of assaults, abuses, and false arrests by public servants, elected officials, deputies, or employees of WILLIAMSON COUNTY from filing criminal charges, having equal access to the courts, from presenting grievances, or having access to Victim's Services; and retaliating with further arrests, bail bonds, charges, and accusations of "filing a false police report" when they attempt to do so;[80]

---

[80] BARNES has attempted repeatedly for over a decade to file criminal charges and civil suits against these elected officials, deputies, investigators, prosecutors, and employees of WILLIAMSON COUNTY, to no avail.   Initially BARNES' letters received nonsensical responses like the District Attorney would say that the complaints against the elected officials would have to be brought by the County Attorney; and the County Attorney would say that the charges were felonies and would have to be brought by the District Attorney; the Texas Rangers would say they had to be invited in by the District or County Attorney to begin an investigation; the Attorney General would say to contact the F.B.I. and the F.B.I. simply called and told the culprits in WILLIAMSON COUNTY; and the retaliation would begin all over again and no one would do anything about the corruption, constitutional violations, bullying tactics, illegal abuses, unlawful activity, and retaliation.  Many lawyers will not practice in WILLIAMSON COUNTY for these reasons; and many people will not travel into WILLIAMSON COUNTY due to the abuses.  The retaliation

174

(3)     devising schemes to gain access to and search private residences such as BARNES based solely on the malice of SCHEFFLER and the deputies without a warrant, or such as using fake 911 hang-up calls like in the Arnold Garza case to force law enforcement into a private residence to search the home, arrests the owner, and search the vehicles, all without a warrant or probable cause, and then retaliate against those citizens who refuse to plea bargain and their lawyer who chooses to expose it rather than coerce the client into a plea bargain;

(4)     allowing a policy where deputies can use excessive force to surround a private residence with weapons drawn, peering into windows and searching private residences, including the use of a scope on a high-powered rifle, without a warrant;

(5)     allowing employees and prosecutors of WILLIAMSON COUNTY and deputies/investigators with the WCSD to intentionally sensationalize arrests and draft the PC affidavits for a press release rather than for truthfulness as a way to manipulate and taint public perception and opinions to further deprive the accused of a fair trial and destroy the presumption of innocence.  They know the accused is locked up and cannot defend themselves, while the culprits are actively publishing misinformation, misleading information, and flat out dishonest information;

(6)     allowing employees and prosecutors of WILLIAMSON COUNTY and deputies/investigators with the WCSD to intentionally taint the potential jury pool with defamatory *per se* statements to the media and deliberately publish inadmissible evidence in order to support the malicious motive and destroy the credibility of the accused, undermine the defense, and prevent the accused from obtaining a fair trial;

(7)     maliciously abusing the "visiting judge" assignments and court-appointed lawyer system for political reasons and to unconstitutionally manipulate the prosecution in order to deprive the accused of their day in court, right to speedy trial, and right to clear their name and regain their life, reputation, familial relations, and livelihood;

(8)     allowing bad faith prosecutors to intentionally and deliberately teach, train, and coach the deputies and other law enforcement personnel how to get around the constitutional requirements, and how to fabricate evidence, write probable cause affidavits to maximize the harm to the accused, and how to over-charge with a felony to give the prosecutors "room to negotiate" rather than being honest and working with integrity and using the best law enforcement practices;

(9)     failing to re-train, educate, counsel, discipline, or supervise employees, deputies, investigators, and prosecutors in order to prevent and remedy a long history of abusing the public and arrestees and ignoring the legal parameters of the constitutions and falsely over-charging arrestees and fabricating evidence and manufacturing charges to embarrass, humiliate, and harm without probable cause;

---

and brutal activity has a chilling effect on bail bondsmen and defense lawyers and others who know what is happening, so they do nothing to expose it or confront the offenders.

175

(10)    allowing, encouraging, and rewarding employees, deputies, investigators, and prosecutors who abuse and bully the public, engage in abusive false arrests, falsely over-charge arrestees, fabricate evidence, hide and destroy exculpatory evidence, falsify or sensationalize probable cause affidavits, commit aggravated perjury, and maliciously prosecute the citizens of this country and then destroying the evidence that would prove the official misconduct; and then blocking any avenue or recourse the public or officer of the court has to report and rectify the abusive and bullying conduct;

(11)    allowing a policy where the prosecutors will meet with the deputies and plan a way to charge a person in retaliation, rather than based on probable cause, and thereby destroy exculpatory evidence, such as the address print out and map from the census bureau that was in existence and in the alleged victim's hands when she met with the deputies, and tamper with the governmental records so that the written reports would appear that the deputies were dispatched to BARNES' residence where shots were fired, when in fact, they were dispatched to Spoons Restaurant, then two hours later attempted to locate 33 Indian Trail in Leander rather than Liberty Hill—they were never dispatched to 419 Indian Trail, and they knew before they plotted and schemed that GITTEL was not sent to 419 Indian Trail in Leander and GITTEL was not ever sent out to talk to BARNES;

(12)    allowing a policy where deputies can violate state law and tow and search a legally parked vehicle without justification or probable cause just because they do not like the owner;

(13)    allowing the revocation of surety bail bonds without any semblance of due process in order to *sua sponte*, without warning, abusively incarcerate people as pretrial punishment, causing serious, outrageous, and irreparable harm;

(14)    allowing courthouse employees to use the rubber stamped signature of elected officials in order to practice law without a license or make judicial decisions that harm others involved in court proceedings and to cause said harm often without the elected officials involvement, knowledge, or oversight, and without following the law;

(15)    allowing the use of instrumentality owned by the State of Texas to be used by WILLIAMSON COUNTY and WCSD to assault, abuse, and punish citizens of this country and State without justification or probable cause;

(16)    allowing deputies, law enforcement personnel, and prosecutors to steal from the public and then retaliating against officers of the court who report and object to the unlawful and illegal official misconduct;

(17)    punishing accused persons pretrial and keeping them incarcerated until they agree to plea bargain;

176

(18)   abusing the court appointed lawyer system and the "visiting" judge system to railroad persons accused of a crime for political reasons, in bad faith, or to protect the county from liability when the deputies, elected officials, or employees have used excessive force or engaged in false and retaliatory arrests;

(19)   maliciously abusing C.C.P. art. 45B and Tex. Health & Safety Code, Title 7, Subtitle C, for political reasons, in bad faith, to impose pretrial punishment, or to protect the county from liability when the deputies, elected officials, or employees have used excessive force or engaged in false and retaliatory arrests;

(20)   attempting to and actually detaining, restraining, searching, and seizing BARNES in violation of her Fourth Amendment expectation of privacy and guarantee to security from unreasonable search and seizure without reasonable suspicion and/or probable cause;

(21)   falsely and maliciously charging BARNES with the commission of crimes without probable cause to believe that such crimes had occurred and on the sole basis of hatred and/or anger;

(22)   allowing a policy to delay the prosecution of a case and schemes to deprive the accused of their freedom pending trial so they can prepare their defense, obstruct justice and discovery, abuse process to deprive the accused of a speedy trial and impose the maximum punishment pretrial without any semblance of due process;

(23)   allowing and encouraging a policy whereby the prosecutors and deputies can continuously violate clear constitutional rights of the citizens with impunity and no corrective action or disciplinary investigations or consequences;

(24)   failing to intervene, where such intervention would have prevented the violations and/or damages of Plaintiffs; and

(25)   allowing a pattern or practice of civil rights violations including the following:

• Unlawful or excessive use of force
• Inadequate training on use-of-force techniques
• Racial profiling and racial/sexual/economic discrimination
• Illegal stops and searches
• Intimidation by police
• Harassment of civilians in retaliation for reported misconduct
• Inadequate supervision
• Failure to establish a civilian complaint process and failure to investigate officer misconduct.

177

67.     Without all the records, BARNES can cite several armed home invasions without a warrant in addition to her own. Arnold Garza in December 2009; Barry and Candi Cooper by WCSD in March 2009 and WCSD also used CPS in that case as they have with BARNES in the past. It is the habit, practice, and custom of WCSD to abuse the CPS process and to contact the schools to further harass and punish parents through their children or threats of removing the children from persons WILLIAMSON COUNTY deems "unfit." BARNES can also show the pattern, practice, and custom of retaliating against anyone with knowledge who attempts to speak out and correct the abuses, or at least shed light on them.

68.     **§ 1983 - Qualified Good Faith Immunity**. A government official is entitled to qualified immunity unless his act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing. The qualified immunity inquiry is purely objective--the subjective intentions of the actor is irrelevant. The determination of objective reasonableness must be based on a version of the facts most favorable to BARNES. To the extent that credibility questions exist, a fact-finder continues to be necessary. In the instant case, BARNES alleges that Defendants are not entitled to claim "qualified good faith immunity." Defendants never had a good faith belief in their conduct because they acted in a manner demonstrating that they were plainly and seriously incompetent and knowingly violated BARNES' civil rights and at all times acted with clear malice and malicious intent. No reasonable law enforcement officer, prosecutor, judge, or lawyer would have reasonably believed that there was sufficient probable cause to charge or indict BARNES of a 1st degree felony or any other charge

178

under the laws of this State. No reasonable law enforcement officer, prosecutor, judge, or lawyer would have reasonably believed that there were valid grounds to revoke pretrial bails and to subject BARNES to repetitive arrests. No reasonable law enforcement officer, prosecutor, judge, or lawyer would have reasonably believed that BARNES committed the offense of filing a false police report or the offense of interfering with the duties of a public servant. Further, no reasonable law enforcement officer, prosecutor, judge, or lawyer would have reasonably believed that T.C.C.P. art. 46B could be utilized in conjunction with a blatant abuse of Tex. Health & Safety Code, Title 7, Subtitle C, to permanently deprive BARNES of her constitutional right to a speedy trial before a fair and impartial jury and subject her to an indefinite pretrial incarceration and imposition of cruel and unusual punishment without any semblance of due process or due course of law, or would reasonably believe that a Star Chamber set up was constitutional. These defendants' conduct was so patently violative of these constitutional rights, of which reasonable officials would have known without guidance from the courts. BARNES was unlawfully assaulted, arrested, and indicted; and ultimately, maliciously prosecuted, had her bonds revoked repeatedly without due process, and ultimately condemned to the cruel and unusual punishment of a state mental unit for the criminally insane in violation of the Texas Constitution and laws, and the United States Constitution and laws. The Supreme Court has construed § 1983 broadly to effectuate its purpose of providing a remedy for official misconduct by state officials. Any reason given by Defendants for their unlawful actions and/or omissions does not warrant the application of qualified good faith immunity because they had no lawful reason to arrest and maliciously prosecute BARNES, revoke or increase her bonds, or conspire to banish her without any semblance

179

of due process or impose an indefinite cruel and unusual pre-trial punishment without affording BARNES a speedy and fair jury trial. BARNES is being held against her will in a state mental unit for the criminally insane until she agrees to plea bargain and relinquish her right to a jury trial, agrees to follow the advice of Defendant, SCHREIBER, (which is essentially, to plea bargain because he does not try cases), and agrees to stop accusing Defendants of engaging in a conspiracy. This attempt to coerce BARNES into pleading guilty to a crime she did not commit is also, unconstitutional.[81] BARNES has asserted violations of her constitutional rights to be free from unreasonable seizure and this right was clearly established at the time of Defendants' actions. Moreover, Defendants' actions were objectively unreasonable in the sense that they knew or reasonably should have known that the actions taken within their authority or responsibility would violate the constitutional rights of BARNES.

69. **§1983 – Federal Law Violations.** In addition to providing a remedy for deprivations of constitutional rights, section 1983 also makes actionable violations of "laws." A violation of a federal statute is cognizable when the violation trammels a right secured by federal law. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 67 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading. In this regard, Plaintiffs plead violations of the following federal laws that were intended

---

[81] "[N]either the body nor mind of an accused may be twisted until he breaks." *Culombe v. Connecticut,* 367 U.S. 568, 582, 81 S.Ct. 1860, 1867, 6 L.Ed.2d 1037; *see Arizona v. Fulminante,* 499 U.S. 279, 286-87 n. 2, 111 S.Ct. 1246, 1252 n. 2, 113 L.Ed.2d 302; *Smith v. Duckworth,* 856 F.2d 909, 912 (7th Cir.1988) (setting forth numerous relevant factors to be used in determining whether defendant's will was overborne, including age, educational level, intelligence, length of detention, duration of questioning, as well as existence of physical punishment or deprivation).

to benefit Plaintiffs:  42 U.S.C. § 1985 (2); 18 USC § 241, 242; 18 USC § 1961-1968; 18 USC § 1512; 18 USC § 1513; 18 USC § 1343; 18 USC § 1957.

70.    **§1983 - False Arrest and/or False Imprisonment**.  The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 69 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading. BARNES further alleges that Defendants, jointly and/or severally violated his Fourth Amendment rights when Defendants unreasonably falsely arrested, detained, and imprisoned BARNES repeatedly and then indefinitely on February 28, 2011.

71.    BARNES pleads a § 1983 claim for false arrest[82] under the Fourth Amendment as Defendants arrested BARNES without probable cause.  Defendants did not have probable cause to arrest because the facts and circumstances within their knowledge were not reasonably sufficient to warrant a prudent public servant, officer, judge, or prosecutor to believe that BARNES had committed or was committing an offense.  On an objective basis, it is obvious that no reasonably competent public servant, officer, judge, or prosecutor would have concluded that the facts warranted BARNES' detention, much less her arrest, imprisonment, indictment, and prosecution.

72.    BARNES also pleads a §1983 claim for false imprisonment under the Fourth Amendment as Defendants falsely imprisoned BARNES on numerous occasions by frank breaches of the pretrial release agreements, surety bail bond contracts, false charges, and malicious abuse of process, including but not limited to, the malicious abuse of process under T.C.C.P. art. 46B and Texas Health and Safety Code, Title 7, Subtitle C,

---

[82] *See Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (characterizing arrest as "curtailment of a person's liberty").

181

Chapter 574.

73.     **§ 1983 - Malicious Prosecution and §241, §242, and §1985 –**

**Conspiracy**. The allegations contained in Paragraphs 1 through 180 of Section IV and in

Paragraphs 1 through 72 immediately above are herein incorporated by reference, the

same as if fully set forth verbatim for any and all purposes of this pleading.  BARNES

also pleads causes of action for malicious prosecution under §1983 and conspiracy under

§1985, as well as clear and knowing violations of 18 U.S.C. §241 and 18 U.S.C. §242.

These actions were the result of vindictive behavior by the said Defendants and were not

otherwise supportable.

74.     BARNES' constitutional rights were trammeled; she was publicly

defamed, maliciously prosecuted, and summarily banished in direct retaliation for her

exercise of 1st amendment rights, defending her clients zealously, exposing corrupt

practices, and as criminal punishment because of the filing of civil actions for repeated

violations of her civil rights.

75.     There is ample evidence of this malicious retaliation and official

misconduct for over a decade preceding these latest retaliatory acts against BARNES for

zealously representing her clients and exposing the rampant and blatant abuses and

violations of constitutional and civil rights, which shows an appearance of vindictiveness

and a "realistic likelihood" of vindictiveness.  The essence of prosecutorial vindictiveness

is retaliation by a prosecutor against a defendant for the defendant's exercise of a

constitutional or statutory right, and the chilling effect that such retaliation has on the free

exercise of those rights.   In determining whether there is to be a presumption of

unconstitutional prosecutorial vindictiveness, appropriate inquiries must be made of

182

whether the situation is one in which there exists a substantial or realistic likelihood of such a motive. BARNES has previously exercised her constitutional rights, both individually and on behalf of her clients, with shocking and outrageous reaction by the county prosecutors, law enforcement and other employees, and elected officials. Each time after BARNES' prior exercise of a procedural substantive legal right, WILLIAMSON COUNTY and TRAVIS COUNTY acts to punish the exercise of such rights, therefore, such actions give rise to a rebuttable presumption of vindictiveness.

75.     Immunity was never intended to shield intentional or egregiously bad acts by prosecutors. Checks and balances in the legal system-- for example, the power of State Bar Associations to disbar -- are supposed to prevent abuse. However, numerous studies have proven this to be a false assumption as prosecutors are rarely sanctioned by the State Bar for their egregious prosecutorial misconduct. Absolute immunity was never meant to suppress evidence, dilute police procedure, or violate civil rights. But when checks and balances within the system refuse to work, then it becomes a blank check on the use of power.

76.     The prosecutors, BRADLEY, MCDONALD, MCCABE, SWAIM, HOBBS, RYE, who acted in concert and who conspired together against BARNES, do not enjoy absolute immunity that honest prosecutors acting in good faith would enjoy. The conspiratorial misconduct here has nothing to do with the proper administration of justice. It is the antithesis of the administration of justice because it has stripped the process of structural, fundamental fairness and actually imperils the fair administration of justice. The court should re-visit absolute immunity for prosecutors because it only encourages malicious, vindictive, politically-motivated, selective, and retaliatory

183

prosecutions and depletes State's resources; as well as a lack of fairness in the adversarial proceedings.

77.     Plaintiffs will prove that Defendants misused and abused and conspired to abuse and misuse their public offices and the judicial process for political purposes by investigating and prosecuting BARNES without probable cause and outside the laws of the State of Texas, knowing that the facts, evidence, and testimony did not support the criminal charges they prosecuted. A prosecutor and court are not permitted to fabricate jurisdiction over a citizen for the purpose of inflicting retaliatory, vindictive, and malicious injury and harm to liberty and property interest to cause a chilling effect on 1st amendment rights and a nullification of 4th , 5th , 6th , 8th , and 14th amendment rights. Defendants acts of engaging in a criminal conspiracy without any arguable basis that there was a crime committed merely to injure another does not vest the court with any lawful jurisdiction; and when that fabrication of jurisdiction is the result of a political motivation, or in retaliation against a citizen for their free exercise of their 1st amendment rights, then their conduct is removed from the scope of activities shielded by absolute immunity. These actors cannot be assumed to be acting on behalf of the State or any legitimate government or "with colorable authority" when they so clearly, blatantly, deliberately, knowingly, and intentionally violate their oaths of office, the United States Constitution, the Texas Constitution, and the laws they profess to enforce. This is not a country or State of dictators or monarchies or oppressors, but one of laws, and no person should use an office of public trust to place himself above the laws and Constitutions. No man or set of men should be allowed to do what the State cannot do because this would be acting outside the scope of official authority. There is no legitimate "advocative

184

misconduct" because any "advocative conduct" would necessarily be based upon deliberate and intentional "investigative misconduct" and deliberate and intentional constitutional violations and unlawful conduct that was fabricated and orchestrated in order to maliciously abuse process and violate the Constitutional Bill of Rights.

78.     The State of Texas is simply not free to maliciously, vindictively, or selectively prosecute its citizens or fraudulently manipulate and abuse the grand jury process, and counties cannot do what the State of Texas is not free to do.  Plaintiffs will prove that these malicious prosecutors pursued the charges pursuant to a criminal conspiracy to harm, injure, and damage Plaintiffs for political, retaliatory, and personal animosity reasons.  Plaintiffs will prove that Defendants misused and abused their law enforcement authority and the judicial process to pursue a series of maliciously motivated investigations and prosecutions without probable cause in an effort to discredit, demean, and dehumanize BARNES and cause irreparable harm to her family, business, reputation, practice, and property.  Plaintiffs will prove that these malicious prosecutors never had probable cause to vindictively pursue BARNES or to support the charges they intentionally reported to the media or the counts charged, and that, throughout the investigation of the cases, they were aware that inculpatory evidence was suborned, manufactured, manipulated, or contrived, and at the same time that they were disregarding, failing to preserve, destroying, and/or suppressing exculpatory evidence. Defendant never had any evidence to support any of these charges, and their sole purpose was to secure a career-ending, embarrassing indictment and media frenzy to permanently mar BARNES' reputation due to the Internet.  Plaintiffs will prove that Defendants acted outside the scope of their official duties in conducting a maliciously motivated "witch

185

hunt" that was motivated by sexual and political animus, initiating and continuing to prosecute in the absence of probable cause as an artifice to continue to harm, injure, damage, embarrass, humiliate, demean, dehumanize, and defame BARNES personally and professionally. Defendants repeatedly misused and abused their authority and the judicial process to advance their own malicious, political agenda with extreme hatred and prejudice towards a female competitor who opposed their corrupt practices and routine abuses based on race, sex, or socio-economic status prejudice. The Defendants' conduct falls outside the scope of their official duties.

79.     BARNES had a right not to be deprived of liberty or property as a result of any governmental misconduct occurring in the investigative phase of a criminal matter. The prosecutors conspired throughout the pre-indictment phases of these multiple arrests and prosecutions to cause a sequence of events that would result in the injury, damages, and losses ultimately sustained by BARNES, her children, and her clients; and these injuries, damages, and losses were not only reasonably foreseeable consequences of the vindictive and malicious actions, but were the intended result and object of the conspiracy.

80.     Defendants GITTEL, POPPA, BRINKMANN, WILSON, FOSTER, HERNANDEZ, RICHTER, TRAVIS, BOGAN, NEWELL, HUGHEY, WAGGONER, BARTZ, DE LA VEGA, HOBBS, BRADLEY, MCCABE, and MCDONALD, acting under color of state authority, maliciously charged BARNES with aggravated assault with a deadly weapon on a pubic servant, and tendered false information concerning said charges to the court and media in order to lead the court and the public to believe that probable cause existed when there was none, create an irreparably harmful media frenzy,

186

and cause another false arrest and imprisonment of BARNES.[83]

81.    Defendants TUMLINSON, KLEKAR, and HAMILTON, acting under color of state authority, maliciously charged BARNES with aggravated assault against a public servant, and tendered false information concerning said charges to the court and media in order to lead the court and the public to believe that probable cause exists when there is none and to create an irreparably harmful media frenzy and to cause another false arrest and imprisonment of BARNES.

82.    Defendants DE LA VEGA, WILSON, BRINKMANN, WILSON, FOSTER, HERNANDEZ, RICHTER, TRAVIS, BOGAN, FOSTER,, NEWELL, HUGHEY, WAGGONER, and HOBBS, acting under color of state authority, maliciously charged BARNES with filing a false police report and making a false alarm, and tendered false information concerning said charges to the court and media in order to lead the court and the public to believe that probable cause exists when there is none and to create an irreparably harmful media frenzy and cause another false arrest and imprisonment of BARNES.

83.    Defendants TUMLINSON, KLEKAR, HAMILTON, ESCAMILLA, and SWAIM, acting under color of state authority, maliciously charged BARNES with a interference with the duties of a public servant, and tendered false information

---

[83] *Ramos v. City of New York*, 729 N.Y.S.2d 678, 696 (App. Div. 1st Dept. 2001); *See* Andrea Elliott, City Gives $5 Million to Man Wrongly Imprisoned in Child's Rape, N.Y. Times, Dec. 16, 2003, at B3; See Jim Dwyer, Prosecutor Misconduct, at a Cost of $3.5 Million, N.Y. Times, Oct. 22, 2008, at A27; *Leka v. City of New York*, 04-civ-8784 (S.D.N.Y. 2004), Stipulation of Settlement filed March 3, 2008; Benjamin Weiser, Settlement for Man Wrongly Convicted in Palladium Killing, N.Y. Times, March 30, 2009, at A19 (also noting that the state of New York separately paid plaintiff $600,000 on a parallel action brought under the state's Unjust Conviction Act); *Zahrey v. Coffey*, 221 F.3d 342, 353 (2d Cir. 2000); *Burns v. Reed*, 500 U.S. 478, 492 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Thompson v. Connick*, 2005 WL 3541035 (E.D. La. Nov. 15, 2005), aff'd 553 F.3d 836 (5th Cir. 2008); and aff'd by equally divided court en banc 578 F.3d 293 (5th Cir. 2009); *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992);

187

concerning said charges to the court and media in order to lead the court and the public to believe that probable cause exists when there is none and to create an irreparably harmful media frenzy and to cause another false arrest and imprisonment of BARNES.

84.   **§ 1983 - Malicious Abuse of Process and Pretrial Captivity, and §1985 – Conspiracy**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 83 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.  BARNES also pleads causes of action for malicious abuse of process, including but not limited to, the malicious abuse of process under T.C.C.P. art. 46B and Texas Health and Safety Code, Title 7, Subtitle C, Chapter 574, as more fully set forth herein.

85.   **42 USC § 1985(2) – Conspiracy**. The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 84 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

86.   Defendants conspired against BARNES for the purpose of impeding, hindering, obstructing, or defeating the due course of justice with the intent to deny to BARNES the equal protection of the laws, and to injure her, her property, her practice of law, her reputation, and her familial relations simply because she lawfully enforced, or attempted to enforce, the right of clients and a distinct class of persons, to the equal protection of the laws.  BARNES' clients were minorities, innocent citizens who were being vindictively or selectively prosecuted, or citizens who were discriminated against or prosecuted for political or economic reasons.  BARNES did not plea bargain because

---

*Pottawattamie County v. McGhee* (Fabricating evidence to convict an innocent person was clearly established at the time of the misconduct in 2010 and 2011. *See, Mooney v. Holohan*, 294 U.S. 103 (1935)).

188

her clients were not guilty as charged or were being denied equal protection under the law. BARNES did not cower or kowtow to the bullying and attempts to intimidate, and was, therefore repeatedly and habitually subjected to retaliatory harassment, defamation *per se*, false arrests, and annoying attitudes from certain politically oriented people and employees subject to their control and influence.

87.     The aim of the conspiracy was to inflict serious injury, damage, and harm; and then to create an impenetrable circle of impunity, with everyone culpable but no one accountable. Each defendant pointing to the other as a superceding intervening cause, when in reality, they were all involved in the conspiracy, and, therefore should be jointly accountable for all of the reasonably foreseeable consequences of their concerted actions. First, they jumped at any chance to charge BARNES with a crime, then over-charged it to make it a first degree felony, sensationalized it in the media with false PC affidavits so that BARNES is deprived of the presumption of innocence, tried in the media, and denied a fair trial before a fair and impartial jury. Then, the manipulate the judicial process, including the grand jury process, and gain control over the proceedings with "visiting judges" and court-appointed lawyers they know are incompetent, lazy, unethical, or all of the above in order to completely deprive BARNES of her constitutional rights. Lastly, maliciously abuse process to indefinitely banish BARNES without a trial.

88.     Due to the deliberate misinterpretation and misapplication of Tex. C.C.P. art. 46B and blatant violations of Tex. Health & Safety Code, Title 7, Subtitle C, the Texas Constitution, Art. I, §§ 3, 3a, 8, 9, 10, 11, 11b, 12, 13, 14, 15, 15-a, 16, 19, 20, 23, 27, 28, and 29, and the 1st, 4th, 5th, 6th, 8th, and 14th Amendments to the United States Constitution, BARNES is being unconstitutionally held against her will in captivity since

189

February 28, 2011, and has incurred hospital bills in excess of $200,000.00; lost her close relationship with her children (not even allowed any physical contact with her children, one a minor, for over a year); lost personal property, assets, and income in excess of $350,000.00; lost accounts receivables in excess of $150,000.00; lost her real lawyers and retained expert witnesses; lost her law practice, long-established phone numbers, websites, domain names, and bank accounts; and lost her reputation. It took the combined action of all the defendants, aided and assisted by the mass media sensationalism and defamation *per se*, to create the result of such an extended indefinite pretrial deprivation of liberty and imposition of such a cruel and unusual punishment in lieu of BARNES' constitutional right to a speedy trial before a fair and impartial jury. There was never an independent, detached, and neutral intervening decision-maker to break the causal chain because the co-conspirators deliberately avoided any independent judgment or outside, objective, over-sight.

89.     BARNES was also deprived of equal protection under the law when Defendants unilaterally modified and then breached two separate $50,000.00 surety bail bond contracts. These two separate excessive and punitive surety bail bonds extracted $10,000.00 cash from BARNES; and after being coerced to part with $10,000.00 in cash, there was a complete failure of consideration because BARNES was deprived of the benefit of the bargain due to the unilateral breach of contract and intentional impairment of the contract by Defendants, WILLIAMSON COUNTY, TRAVIS COUNTY, BRADLEY, MCCABE, MCDONALD, SWAIM, ESCAMILLA, MORGAN, SAENZ, GUERRERO, CARNES, SHAVER, ANDERSON, BRINKMANN, and DE LA VEGA. Said Defendants never intended to keep their end of the bargain or deliver as represented

because they immediately began breaching it.   The excessive and punitive bond amounts were merely to injure, harm, and deprive BARNES of funds for her defense.

90.      It would be a perverse doctrine of tort and constitutional law that would exonerate the wrongdoer who enlists himself in a scheme to deprive a person of liberty, just because subsequent wrongdoers built upon the initial intentional wrong.   The lengthy, indefinite, extended pretrial detention, imposition of cruel and unusual punishment, defamation, and the deprivation of BARNES' substantial liberty interest[84] was the object of the conspiracy and the legally cognizable result of the concerted actions of the Defendants and the deliberate misconduct of the perjury, fabrication of evidence, and suppression and destruction of exculpatory evidence.   It was reasonably foreseeable that these concerted actions would be used against BARNES and ultimately deprive her of her liberty for the rest of her life.   All defendants acted in concert to overcharge BARNES and obtain a 1st degree felony indictment, knowing under their scheme, they could incarcerate BARNES for the rest of her life without any evidence or a jury trial or any semblance of due process.

---

[84] As the Supreme Court of Illinois acknowledged, "it is well settled that detention of an individual at a mental health care facility implicates a substantial liberty interest" (*Radazewski v. Cawley*, 639 N.E. 2d 141, 143 (Ill. 1994)).  A defendant found "incompetent to stand trial" ( regardless of whether he obtained due process and the requisite jury trial as provided under Texas Health & Safety Code, Title 7, Subtitle C, or not), is subject to as many years in a mental health facility as the maximum potential prison sentence for a defendant found guilty of the same charged offense.  BARNES is being detained against her will in a mental health facility and could potentially spend the rest of her life there, without ever receiving any semblance of due process or due course of law.  Therefore, a substantial liberty interest-a potentially long-term confinement in a mental health facility-is implicated following a finding of "incompetent to stand trial." *See People v. Marshall*, 273 Ill.App.3d 969, 974-75, 210 Ill.Dec. 318, 652 N.E.2d 1294 (1995) (a substantial liberty interest is implicated when one is detained in a mental health facility).   In addition, BARNES will continue to bear the inherent stigma associated with the underlying factual allegations as well as a civil commitment in a mental health facility requiring inpatient care reserved only for mental patients who pose a danger to themselves or others!  BARNES was also denied equal protection under the law because the writ of *habeas corpus* was suspended and the writ of right relief denied to BARNES. BARNES is also being deprived of equal protection under the law because BARNES was deprived of her right to appeal the commitment.  BARNES is also being deprived of equal protection under the law because she is being held to a completely different standard and criteria for competency than other defendants similarly situated.

91.    In order to employ this malicious Star Chamber scheme, all these co-conspirators needed was a bare outrageous accusation.  Just one single accusation, without any corroborating evidence, was sufficient to accomplish the object of the conspiracy because the law could be abused to set up a Star Chamber with the use of the "visiting" judge system where the accused cannot even object, strike, or recuse the hand-picked oppressor and with the use of the court-appointed attorney system where they force a court-appointed lawyer on the accused then revoke the bond without just cause or due process, knowing the court-appointed lawyer, also hand-picked, will waive all of the accused's rights and work with the malicious prosecutors to create the missing motive, destroy the defense, deprive the accused of their right to a jury trial, further sensationalize the defamation *per se* accusations, and allow the malicious prosecutors to impose any punishment they desire because the Texas Department of State Health Services works hand-in-glove with the courts and prosecutors, fabricating any diagnosis or finding and instituting any "treatment" they want.[85]  All without any objective standards or means for the accused to seek redress or due process because there is absolutely no presumption of

---

[85] In this case, the malicious prosecutors dictated the diagnosis of "delusional disorder" and BARNES is being indefinitely detained in hostile captivity because it is "implausible" that there would be a conspiracy against her and because she is not "rationally competent" when she insists upon her right to a jury trial and will not plea bargain and because she refuses to change her opinion about SCHREIBER and agree to follow his advice to plea bargain.  Thus, although BARNES has made 100s on all the objective examinations and been found to be factually competent, she has been deemed "rationally incompetent" (without any objective tests or scientific methodology), because of her beliefs and desired defense.  Those who are thrown into the TDSHS system must agree to plea bargain and surrender their right to a jury trial; follow the dictates of the court-appointed attorney and surrender their right to their own defense; and take anti-psychotic drugs, or they will remain "incompetent to stand trial."  BARNES has refused to surrender her constitutional rights and has insisted upon them, and for that reason alone, will remain "incompetent to stand trial."  One remains "incompetent to stand trial" until they agree to surrender and waive their right to a jury trial; and that was not ever envisioned by the Supreme Court in *Dusky v. United States*, 362 U.S. 402 (*per curiam* 1960).  This unequal protection under the law is occurring all over the country because over 50 years later, the *Dusky* standard remains ambiguous and not clearly defined, which lends itself to an arbitrary and capricious application. *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975).

192

innocence within the DSHS. The treatment of "incompetents" is far harsher and more restrictive than the treatment of NGRIs.

92.     Defendants, acting in concert under color of law and with the aid and assistance of the mass media, falsely and maliciously charged BARNES with a felony assault on a public servant (knowing it was not true), followed by an equally malicious and false charge of aggravated assault with a deadly weapon on a public servant, with WILLIAMSON COUNTY, WCSD, TCSD, TUMLINSON, FOSTER, HOBBS, BRINKMANN, SWAIM, and others intentionally painting a false picture of BARNES as a "very disturbed, crazy, lone-wolf radical, having trouble with authority, refusing to participate in the Census count, living in a secluded compound, shooting at neighbors and trespassers, stock-piling weapons, and going to Republic of Texas meetings" and they continued to embellish their distorted cognitive schema by stating that BARNES "had a complete break with reality," was "DANGEROUS" and needed "FORCED MEDICATION". To support these false and malicious allegations, HOBBS, MCCABE, BRADLEY, MCDONALD, SWAIM, WCSD, and WILLIAMSON COUNTY used the numerous prior retaliatory and false arrests of BARNES as evidence against her, when in reality they were the cumulative wrongful acts and misconduct of WCSD and WILLIAMSON COUNTY, HOBBS, RYE, and others employed by WILLIAMSON COUNTY.   MCCABE, BRADLEY, MCDONALD, BRINKMANN, WCSD, and WILLIAMSON COUNTY presented false information concerning said charges to the Grand Jury which led that entity to believe that probable cause exists to indict when there was none.   BARNES was deprived of a jury trial and forced to incur defense fees, expenses, and costs.   BRINKMANN, MCCABE, and DE LA VEGA committed

193

aggravated perjury to advance this conspiracy in violation of §1985 and to testify knowing they were going to put on perjured testimony to the jury in a malicious effort to convict BARNES to cover-up for their own wrong-doing and illegal activity.

93.     As pointed out in *Watson v. State*, 760 S.W.2d 756, 759 (Tex.App.-Amarillo 1988, pet. ref'd), "[t]he essence of prosecutorial vindictiveness is retaliation by a prosecutor against a defendant for the defendant's exercise of a constitutional or statutory right, and the chilling effect that such retaliation has on the free exercise of those rights." In determining whether there is to be a presumption of unconstitutional prosecutorial vindictiveness, appropriate inquiries must be made of whether the situation is one in which there exists a substantial or realistic likelihood of such a motive. For example, after the defendant's prior exercise of a procedural substantive legal right, the prosecutors' acts to punish exercise of such rights, such actions give rise to a rebuttable presumption of vindictiveness. *United States v. Johnson*, 91 F.3d 695 (5th Cir.1996); *United States v. Ward*, 757 F.2d 616, 620 (5th Cir.1985).

94.     **§ 1983 – Clearly or Firmly Established Constitutional Rights.** *See* Brief and Heightened Pleadings in Support of Plaintiff's Third Amended Original Complaint, filed in this cause, which is incorporated herein by reference the same as if set forth at length. It is firmly established that a constitutional right exists not to be deprived of liberty or property on the basis of perjury or false evidence fabricated by a government officer. *See Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir.1998) (parole officer); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir.1997) (police officers); *White*, 855 F.2d at 961 (same). There is ample pre-1997 (the year this conspiracy started with the first false arrest and cover-up) authority, "When a police officer creates false information

194

likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial . . . ." *Ricciuti,* 124 F.3d at 130; *see also Malley,* 475 U.S. at 346 n. 9, 106 S.Ct. 1092 (arrest unconstitutional if police officer obtained warrant from judicial officer on the basis of evidence that "no officer of reasonable competence" would have considered sufficient).   It has also long been established that a prosecutor who knowingly uses false evidence at trial to obtain a conviction acts unconstitutionally. *See Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Pyle v. Kansas,* 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935). These cases serve to inform every prosecutor that his knowing use of false evidence is unconstitutional.  Any prosecutor aware of these cases would understand that fabricating evidence in his investigative role violates the standards of due process and that a resulting loss of liberty is a denial of a constitutional right.   BARNES had a right not to be deprived of liberty as a result of fabrication of evidence and that right was clearly established in 2010.

95.    The Fourth Amendment proscribes unreasonable seizure of any person, person's home (including its curtilage) or personal property without a warrant. A seizure of property occurs when there is meaningful interference by the government with an individual's possessory interests, *Soldal v. Cook County,* 506 U.S. 56, 61, 113 S.Ct. 538, 543 (1992), such as when police officers take personal property away from an owner. The Amendment also protects against unreasonable seizure of their persons, including a brief detention. *United States v. Mendenhall,* 446 U.S. 544, 551, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980).

96.   The government may not detain an individual even momentarily without reasonable, objective grounds, with few exceptions. His refusal to listen or answer does not by itself furnish such grounds. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870 (1980). A person is seized within the meaning of the Fourth Amendment when by means of physical force *or* show of authority his freedom of movement is restrained, and in the circumstances surrounding the incident, a reasonable person would believe that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870 (1980). *Florida v. Royer*, 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983); *Dunaway v. New York*, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979). A search or seizure is generally unreasonable and unconstitutional, if conducted without a valid warrant, *Maryland v. Dyson*, 527 U.S. 465 (1999), and the police must obtain a warrant whenever practicable. *Andrews v. Fuoss*, 417 F.3d 813 (8th Cir. 2005).

97.   **§ 1983 – INJUNCTIVE RELIEF SOUGHT.** The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 96 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

98.   BARNES seeks injunctive relief against the prosecutors, MCCABE, MCDONALD, BRADLEY, and SWAIM, the "visiting judge" SHAVER, and the court-appointed lawyer, SCHREIBER, to cease and desist their criminal conspiracy and set aside the ill-begotten commitment orders and secure BARNES' immediate release from captivity and restore her pretrial liberty. BARNES further seeks injunctive relief against Texas Department of State Health Service to cease and desist with aiding and abetting

196

these malicious prosecutors by pretending that BARNES is incompetent to stand trial because the standard does not require that BARNES be willing to plead guilty, follow the directions of the court appointed lawyer, or stop believing that there is a conspiracy against her in order to be competent to stand trial. BARNES seeks injunctive relief to reinstate her surety bail bonds as they existed on February 27, 2011, and restore her pre-trial liberty.

99. **§ 1983 – 42 USC § 1988 – Attorney's Fees, Expert Fees, Costs of Court Recovery.** The allegations contained in Paragraphs 1 through 180 of Section IV and in Paragraphs 1 through 98 immediately above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

100. The Civil Rights Attorney's Fees Awards Act of 1976 provides that one who prevails in a section 1983 action is entitled to recover attorneys' fees. Prevailing plaintiffs are entitled to recover attorneys' fees unless special circumstances would render such an award unjust. BARNES is seeking recovery of her attorney's fees, court costs, and expenses in bringing and presenting these claims.

## SECOND CLAIM FOR RELIEF - - Racketeer Influenced and Corrupt Organizations Act
### [18 U.S.C. §§1961 et seq.]

1. BARNES realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 180 of Section IV and further allege as against the WILLIAMSON COUNTY Defendants and all of them, jointly and severally, as follows:

2. Plaintiffs will show that within a fifteen-year period, WILLIAMSON COUNTY, WCSD, CARNES, ANDERSON, HOBBS, RYE, BRADLEY, MCCABE, MCDONALD, have engaged in an enterprise with criminal intent; along the way they

197

have been joined by the other WILLIAMSON COUNTY Defendants, and other employees and deputies of WILLIAMSON COUNTY, as well as SCHEFFLER, SHAVER, AND SCHREIBER. BARNES and her children have been significantly harmed and damaged in their persons and property by the actions of this enterprise, and they now seek recovery for the damages caused as well as a forfeiture of all the ill-begotten gains; specifically WCSD, WILLIAMSON COUNTY, and all its employees, deputies, agents, representatives, prosecutors, and court-appointed lawyers and experts, named as Defendants herein should forfeit all the revenue each obtained as a result of the illegal activities to Plaintiffs and Plaintiffs should recover treble damages, legal fees, and costs of court.

3.     Plaintiffs will show significant patterns of behavior over said fifteen-year period, which includes, but is not limited to, obstruction of justice, fraud, theft, kidnapping, false arrests, false imprisonment, assaults, threats, extortion under color of authority, fraudulent schemes and artifices, false pretenses and representations, and deprivation of the right of citizens to the honest services of their elected local officials.

4.     The U.S. Supreme Court has instructed federal courts to follow the continuity-plus-relationship test in order to determine whether the facts of a specific case give rise to an established pattern. Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." (*H.J. Inc. v. Northwestern Bell Telephone Co.*) Continuity is both a closed and open ended concept, referring to either a closed period of conduct, or to past conduct that by its nature projects into the future with a threat of repetition.

198

5.      Anti-SLAPP (strategic lawsuit against public participation) laws can be applied in an attempt to curb alleged abuses of the legal system by individuals or corporations who utilize the courts as a weapon to retaliate against whistle blowers, victims, or to silence another's speech.  RICO is alleged because Plaintiffs will show that said Defendants and governmental employees conspired and collaborated to concoct fictitious legal complaints and charges solely in retribution and retaliation against BARNES for her speech, affiliations, and practice representing clients who are being maliciously prosecuted.   In maliciously pursuing BARNES, Defendants violated the following federal laws:

18 U.S.C. § 1512

18 U.S.C. § 1513

18 U.S.C. § 241

18 U.S.C. § 242

6. Commencing on or about the 1st day of June 1997, and continuing through the present, Defendants acting together and in necessary concert with others as part of an association-in-fact, conducted and conspired to conduct a fraudulent scheme and enterprise through a pattern of illegal racketeering activity, specifically a scheme, furthered by use of wires and mails, to defraud and obtain property, monies, reputation, and rights under fraudulent pretenses from BARNES and to force BARNES to incur and suffer substantial debts, damages, injuries, and losses based upon her speech, affiliations, beliefs, sex, race, creed, and social class, in violation of 18 USC §§ 1512, 1513, 241, 242, 1341 & 1343 and 18 USC 1962 (c) and (d).  The defendants and each of them knowingly and willfully devised, conducted, and conspired to conduct, a scheme and artifice to

199

defraud, injure, and harm BARNES based upon their desire to punish BARNES' speech, affiliations, and practices, and upon racial prejudice, sexual hatred, prejudice based on creed and social standing, and desire for unjust enrichment through numerous false and fraudulent pretenses, representations and promises, among others:

a. Soliciting individuals in key positions to aid, assist, and participate in the fraudulent, illegal, and unethical schemes or to cover-up and conceal the schemes or wrongful conduct of their coconspirators, and to use and abuse these positions of power, influence, and control to harass, intimidate, threaten, coerce, obstruct, and retaliate against BARNES by appealing to the sexual stereotypes against female lawyers, sexual prejudices, racial prejudices, and social class prejudices of these individuals to further their fraudulent scheme for their own unjust enrichment by misusing and manipulating the press and media, knowing it would result in permanent defamation on the Internet;

b. Demanding and increasing the punishment, through abuse of power to arrest, revoke bonds, and increase or deny bonds, in order to gain compliance, submission, or conformity from BARNES to protect their own individual interests and to cover-up and hide their illegal and unethical activity;

c. Soliciting individuals to participate with implied assurance of their continuing employment and advancement with benefits in a government job and with the implied threat of lack of employment or advancement in a government job;

d. Using and abusing their position of public trust and standing in the community to enlist the aid of others to retaliate against, damage, injure, and punish another for protected speech and exposure of public corruption;

e. Using and abusing their elected offices and positions in the community to injure, harm, damage, and punish another and to costs them or force them to incur excessive fees for no good faith reason, and then to deprive them of their familial relationships, reputation, and liberty;

f. Using and abusing their elected offices and positions in the community to commit crimes and engage in fraudulent, deceptive, illegal, unconstitutional, and criminal activity to the harm and detriment of members of a suspect class based upon improper prejudices and hatred;

g. By sending memorandum and other communications to solicit the aid,

200

assistance, and participation of others in their retaliatory schemes against their intended targets;

h.   Masking and concealing from their victims information which would reveal that charges are false or evidence is fabricated or testimony is perjured, including exculpatory evidence, which would reveal the truth and restore their freedom, in order to coerce them into a plea bargain so they pay fines and costs to the system, to facilitate the Defendants' fraudulent schemes, or to cover-up and hide the fraudulent schemes, in order to secure their elected office or employment rank/income; and

i.   Using the U.S. mails, and interstate wires via telephone and facsimile transmissions to execute such schemes.

## THE FRAUDULENT SCHEME

7.   During the above described period, the Defendants intentionally, knowingly, and maliciously violated the law and confiscated property and funds legally belonging to BARNES.  The use of the media, false PC affidavits, and malicious abuse of process under CCP art. 46B and Texas Health and Safety Code, Title 7, Subtitle C, were essential and integral parts of these fraudulent scheme to deprive BARNES of her rights as a citizen and deprive her of her liberty.

8.   Defendants, WCSD and the defendant deputies, HOBBS, RYE, BRADLEY, MCCABE, MCDONALD, CARNES, ANDERSON, BRINKMANN, and SCHEFFLER have engaged in patterns, habits, and customs of racial and/or sexual prejudice and hatred as well as obstruction and retaliation for those who might expose their civil rights' and constitutional rights' violations.  BARNES, by virtue of her license to practice law and her livelihood of representing citizens of this State and nation in the courts of Travis and Williamson Counties, has become aware (through personal observations and experiences) of certain unconstitutional habits, practices, customs, policies and procedures employed by certain law enforcement agencies, prosecutors, and

201

elected officials that are unconstitutional and unlawful. Due to BARNES' diligent and honest representation of her clients, (members of suspect classes based on race and/or sex and/or political beliefs or associations), and BARNES' refusal to supply funds and favors to certain elected officials, and BARNES' constant exposure of such corruption and refusal to sell-out her clients, BARNES has become the relentless target of dishonest prosecutors and elected officials who resent BARNES' speech, associations, and activity.

9. BARNES, her children, and her clients were systematically retaliated against by BARNES' competitors in restraint of trade because she had objected to and threatened to report and did report official misconduct, wrongdoing, or malfeasance on the part of public officials, including allegations of criminal behavior.

10. When BARNES exposed and threatened to expose the corruption, Defendants retaliated, and enlarged the conspiracy to effectuate a malicious and retaliatory scheme to further defraud, damage, and injure the Plaintiffs and BARNES' clients. As part of a on-going scheme, the Defendants intentionally pretended to be acting in a lawful and ethical manner, and then when questioned or exposed turned the attack on BARNES, her family, and her clients and illegally converted her assets for their own use and unjust enrichment and then grossly inflated the costs of bail bonds for pretrial release, exposed her property to theft and destruction, and intentionally enlisted others to put undue financial pressure on Plaintiffs when there was no legitimate governmental interest in piling on exorbitant pretrial punishment.

11. In particular, and as a part of the on-going scheme, the more BARNES fought to obtain the exculpatory evidence they so craftily attempted to hide, the angrier and more vengeful they became. It was clear that their intent was to beat BARNES into

202

silence and submission so that their crimes would not be exposed. They took direct action to ensure that BARNES would not receive a fair trial, or any trial, and would not receive legal representation, so that their vicious scheme would succeed and they would be rid of BARNES and her credibility would be destroyed so that no one would listen to her or believe her and so that she could never run against these corrupt elected officials. Defendants acted in concert to ensure that no legal counsel would come in to represent BARNES by getting SCHREIBER to so hopelessly destroy the defense and screw up the case, and to prevent any chance of reasonable discovery or pretrial preparation, or any hope of a fair trial. These Defendants knew that their actions and positions would reasonably prevent BARNES from obtaining competent legal counsel, prevent her from conducting meaningful discovery and adequately preparing for trial, and prevent her from putting on her best defense. These Defendants acted deliberately, knowingly and intentionally in this regard with utmost malice and ill will. All the actions and conduct occurred behind closed doors or in telephonic conversations that were obscured and concealed from BARNES, despite having sought and obtained a court order to prevent such *ex parte* communications.

12. These Defendants have engaged in this pattern of fraudulent conduct and racketeering activity for a period of many years. These Defendants have controlled this area for decades utilizing these same oppressive tactics and abuses of office against the citizens of this State. This has been an on-going pattern, practice, and custom for decades and as such constitutes racketeering activity to control the wealth and development of the county, unjustly enrich the members of the conspiracy, and to prevent non-white individuals from living freely, or advancing or prospering in this county.

203

## THE CRIMINAL ENTERPRISE

13.     The racketeering enterprise, within the meaning of 18 U.S.C. Section 1961, is an association in fact of certain local lawyers, prosecutors, judges, law enforcement personnel, county employees, and elected officials, including but not limited to and various employees, agents, and representatives of WILLIAMSON COUNTY, organized around this local "good ole boy" system in a county still plagued by a rich KKK history, sexual, racial, and social class prejudices and based on each individual's and entity's particular function within the enterprise. These various associates function as a continuing unit of oppression, control, influence, and power utilizing abuses of power and position, coercion, threats, intimidation, and retaliation.

14.     The enterprise hereinafter referred to as WILLIAMSON COUNTY RETALIATORS, is an entity separate and apart from the pattern of activity in which it engages, to wit:

   a.     the enterprise has a distinct structure based on the essential functions of its members and the elected and social-economic positions they hold in the county through family name or wealth, business ownership, elected positions, employment in the criminal justice system, or membership in overt and covert organizations.

   b.     the enterprise has employed numerous employees in order to discharge the functions of the WILLIAMSON COUNTY RETALIATORS, including the use of tax funds, governmental funds, and public funds to pay employees and advance the organizational activities.

   c.     the enterprise has a distinct structure including all of the local Defendants, and those who they control with the same methodologies.

15.     The common purpose of the enterprise was and is to maintain power and control and escape accountability and liability for violations of the laws and constitutions, and to make sure that no individual of certain races, sex, and social economic classes

204

advance to any significant position of power or control if they have not been proven to be supporters of the WILLIAMSON COUNTY RETALIATORS and those members of the county elite they protect, and any person who attempts to aid and assist members of these suspect classes are targeted as well.   Members of the WILLIAMSON COUNTY RETALIATORS had no capability or intention to engage in fair, honest, or ethical conduct or to comply with the Constitutions of the United States or Texas and it is the policy, habit, practice, and custom of the WILLIAMSON COUNTY RETALIATORS to disenfranchise, demean, oppress females, persons affiliated with certain organizations or political groups, and members of minority races and the lower social economic classes as they have been deemed undesirable and unworthy of protection or due process or due course of law or equal access in the courts, and the courts are not open to these victims in WILLIAMSON COUNTY, Texas.   Members of the protected elite in WILLIAMSON COUNTY refer to these actions as "economic cleansing" and they actively target members of this suspect class.  Any lawyer who attempts to advocate for the suspect class is retaliated against severely and punished without any semblance of due process.

## THE PREDICATE ACTS OF MAIL AND WIRE FRAUD

16.    Commencing many years ago with roots in the Ku Klux Klan and continuing through the present, the WILLIAMSON COUNTY RETALIATORS, and other persons acting in concert with them, did knowingly and willfully devise a scheme and artifice to persecute individuals of a suspect class based solely upon their sex, race, or social economic class, and retaliate against any lawyer who zealously represents members of the suspect class or who exposes the abuses of the WILLIAMSON COUNTY RETALIATORS, through numerous false and fraudulent arrests, charges,

205

incarceration, detentions, searches, seizures, pretenses, representations, promises, acts, and practices, relating to legal rights, access to the courts, and equal protection of the law, in violation of 18 U.S.C. 1341, 18 U.S.C. 1343, and 42 U.S.C. 1983, including but not limited to the following:

    a.    In commerce and in furtherance of the scheme, these Defendants caused to be delivered by electronic transmission, mailed using U.S. mails or faxed or emailed using interstate wires, various defamatory memorandum, legal opinions and bad faith pleadings designed solely to disenfranchise and deprive the victims or those who assist them or expose the corruption;

    b.    expressly represented in numerous letters, emails, orders, pleadings, billing statements, imposition of fines and court costs, probation fees, and collection demands, which these Defendants caused to be delivered by employees, or mailed using U.S. mails or faxed or emailed using interstate wires, that deprive and disenfranchise the victims or unjustly enriched the members of the organization at the expense or to the detriment of the victims.

### THE PATTERN OF UNLAWFUL RACKETEERING ACTIVITY

17.    All of the predicate acts of racketeering activity are directly related to the unjust enrichment of members of the WILLIAMSON COUNTY RETALIATORS at the expense of and to the detriment of Plaintiffs, and members of the suspect classes based on race and social economic status, as part of the fraudulent scheme.

18.    All of the predicate acts of racketeering activity are part of the nexus of the affairs and functions of the racketeering enterprise.

19.    The individual Defendants were enabled to commit the predicate offenses by virtue of their position in the enterprise or involvement in or control over the affairs of the enterprise. Any reference to "Defendants" in this section only applies to the aforementioned WILLIAMSON COUNTY Defendants.

20.    All of the predicate acts of racketeering activity occurred after the

effective date of 18 U.S.C. Section 1961 et. seq.

21.     The predicate acts of racketeering activity began many decades ago and have been carried on for many years and are continuing.

22.     The pattern of racketeering activity is currently ongoing and open ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

23.     Numerous schemes have been completed involving repeated criminal conduct that by its nature projects into the future with a threat of repetition and the resulting oppression of the victims, and the minority population specifically.

24.     The predicate acts have the same or similar purposes, results, participants, victims, and methods of commission.  The actions have oppressed minorities for years and excluded blacks from this County due to a systemic and overwhelming racial and economic prejudice against minorities and the economically disadvantaged by the elite class.

## DEFENDANT'S ASSOCIATION WITH THE RACKETEERING ENTERPRISE AND PARTICIPATION IN THE PATTERN OF RACKETEERING ACTIVITY.

25.     At all times herein the Defendants made numerous interstate telephone calls and used the U.S. mail, Federal Express and/or facsimile and email transmissions over interstate telephone lines, in the course of business, for purposes of carrying out the various schemes detailed supra.

26.     Defendants are all associated with the racketeering enterprise and all benefit from the perpetuation of this privileged organization as part of its business practices sanctioned by its leaders, often politically elected members, and violated:

    a.    18 U.S.C. §1962(c) by conducting and participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by committing numerous violations of 42 U.S.C. 1983, 18 U.S.C. §1343, and

207

18 U.S.C. §1341 as detailed herein; and

b. 18 U.S.C. §1962(d) by conspiring to violate provisions of 18 U.S.C. §1962; and/or 42 U.S.C. 1983 and/or

c. aided and abetted in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

27. The affiliated persons or entities were associated with the racketeering enterprise as its labor supplier and initiators benefited and unjustly enriched the affiliated persons or entities, and violated:

a. 18 U.S.C. §1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by committing numerous violations of 42 U.S.C. 1983, 18 U.S.C. §1343, and 18 U.S.C. §1341 as detailed infra; and/or

b. 18 U.S.C. §1962(d) by conspiring to violate any of the provisions of 18 U.S.C. §1962; and/or 42 U.S.C. 1983 and/or

c. aided and abetted the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

## PLAINTIFF'S DAMAGES AND INJURY TO BUSINESS OR PROPERTY

28. BARNES was injured in her relationships, loss of liberty, business, practice of law, finances, and property as a direct result of the pattern of racketeering in that from June 1, 1997 through the present, she has been continually defamed and maliciously maligned by these Defendants to competitors, clients, friends, and others with and before whom she conducts business and her trade, and she has been obstructed, hindered, and further retaliated against in her business activities, she has been disenfranchised and derived of her constitutional and civil rights, including her privacy and liberty. This conspiracy has not terminated and is on-going.

## THIRD CLAIM FOR RELIEF—Texas—Intentional Infliction of Emotional Distress and Mental Anguish

1.     In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.     The claims brought by Plaintiffs under this section only apply to Defendants, SCHEFFLER, SWAIM, MORGAN, TUMLINSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, HOBBS, RYE, WILSON, HAMILTON, BRINKMANN, HUGHEY, DE LA VEGA, HERNANDEZ, RICHTER, TRAVIS, BOGAN, FOSTER, WAGGONER, NEWELL, SCHREIBER, ESCAMILLA, COTTON, LERMA, UNIDENTIFIED THREE, ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVESON, HURST, ANONYMOUS, CARGILE, NEWTON, BERGAMO, GITTEL, GRIFFITH, CLIFTON, HUMES, RUPPART, KXAN, KVUE, and KEYE.  Any reference to "Defendants" in this section only applies to the aforementioned Defendants and does not include their respective employer-County.

3.     As a pendent state cause of action, at all times material and relevant herein, said Defendants by acts and/or omissions and under color of state law, or as competitors or news media and reporters, intentionally and/or recklessly inflicted emotional duress and mental anguish upon Plaintiffs, thereby they claim the tort of intentional infliction of emotional distress.  Plaintiffs allege that the Defendants acted intentionally and/or recklessly when they maliciously maligned and defamed BARNES,

209

unlawfully and maliciously assaulted, kidnapped and maliciously prosecuted BARNES, and subjected BARNES to unlawful arrests and unconstitutional pre-trial captivity to deprive her of constitutional rights, and further allege that such conduct was extreme, shocking, and outrageous.  The actions of said Defendants caused Plaintiffs to suffer emotional distress and mental anguish; and the emotional distress and mental anguish suffered by them was so severe that it required treatment and no reasonable person should be expected to endure such abuse and mistreatment.

4.      The conduct of Defendants was so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.  SCHEFFLER, HOBBS, RYE, SWAIM, MORGAN, BRADLEY, MCCABE, MCDONALD, HUGHEY, RUPPART, GITTEL, TUMLINSON, CARNES, SHAVER, BRINKMANN, HUGHEY, DE LA VEGA, HERNANDEZ, RICHTER, TRAVIS, BOGAN, FOSTER, WAGGONER, NEWELL, SCHREIBER, COTTON, LERMA, UNIDENTIFIED THREE, ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVESON, HURST, ANONYMOUS, CARGILE, NEWTON, BERGAMO, GRIFFITH, CLIFTON, HUMES, and RUPPART, all exhibited by false accusations, actions, demeanor, and offensive speech an utmost malicious intent to harm, injure, and damage Plaintiffs.

## FOURTH CLAIM FOR RELIEF—Texas—Invasion of Privacy, Criminal Trespass, Unreasonable Search and Unreasonable Seizure

1.      In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

210

2.      Texas courts of law have held that Article 1, Section 9 of the Texas Constitution may provide greater or less protection than the Fourth Amendment, and the Texas legislature has enacted many statutory provisions dictating the practices and procedures that must be followed in making arrests and conducting searches. As a result, the Texas law of search and seizure is distinctive.

3.      On January 8, 2010, BARNES was subjected to an unreasonable search and seizure. The false PC affidavit and predictable media frenzy violated Plaintiffs' right to privacy and BARNES' right to be free from unreasonable searches and seizures.

4.      On May 8, 2010, BARNES was subjected to a criminal invasion of privacy, criminal trespass, aggravated assault, armed home invasion, unreasonable search and seizure, and false arrest without a lawful warrant, probable cause or other lawful authority in violation of BARNES' rights under the 4th, 5th, 6th, and 14th amendments to the United States Constitution and Texas Constitution Art. I, Sections 3, 3a, 9, 10, 19, and 29.

5.      On May 11-14, 2010, BARNES was subjected to a false arrest, aggravated assault, aggravated kidnapping, armed home invasion, burglary of her residence, burglary of her buildings, and burglary of her vehicles on May 11-14, 2010 without a lawful warrant, probable cause or other lawful authority in violation of BARNES' rights under the 4th, 5th, 6th, and 14th amendments to the United States Constitution and Texas Constitution Art. I, Sections 3, 3a, 9, 10, 19, and 29. The false PC affidavit and predictable media frenzy violated Plaintiffs' right to privacy and BARNES' right to be free from unreasonable searches and seizures.

6.      On May 14, 2010, BARNES was subjected to an unreasonable search and

211

seizure.

7. On June 9, 2010, BARNES was subjected to an unreasonable search and seizure.

8. On June 28, 2010, BARNES was subjected to an unreasonable search and seizure.

9. On July 9, 2010, BARNES was subjected to an unreasonable search and seizure.

10. On February 28, 2011, BARNES was subjected to an unreasonable search and seizure.

## FIFTH CLAIM FOR RELIEF—Texas—False Arrest and False Imprisonment

1. In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2. Furthermore, the claims brought by Plaintiffs under this section only apply to Defendants, TUMLINSON, LERMA, KLEKAR, GUERRERO, MORGAN, SAENZ, SWAIM, BRADLEY, HOBBS, RYE, MCDONALD, MCCABE, SHAVER, SCHREIBER, BRINKMANN, DE LA VEGA, FOSTER., HERNANDEZ, ANDERSON, Any reference to "Defendants" in this section only applies to aforesaid Defendants and does not include TRAVIS COUNTY or WILLIAMSON COUNTY.

3. As a pendent state cause of action, at all times material and relevant herein, said Defendants, by acts and/or omissions and under color of state law, willfully detained BARNES without her consent and without authority of law. BARNES pleads

212

false arrest and false imprisonment as Defendants had the intent to confine her, and carried out the intent by putting her in a position so that she could not move, let alone leave by force. Said confinement resulted in harmful detention, without consent, and without authority of law. Defendants arrested Plaintiff without probable cause. Defendants did not have probable cause to arrest because the facts and circumstances within their knowledge were not reasonably sufficient to warrant a prudent officer to believe that BARNES had committed or was committing any felony or interference with the duties of a public servant or false report or false alarm. On an objective basis, it is obvious that no reasonably competent officer would have concluded that the facts warranted BARNES' detention, much less her arrest or prosecution.

4.     Defendants then imprisoned BARNES without just cause. Then, acted maliciously and in concert to effectuate a fraudulent indictment on BARNES, based not on the truth, but based upon a convenient conclusion and calculated fabrications accusing BARNES of shooting at a criminal trespasser. The report initially made by POPPA and GITTEL did not state a crime in Texas. BARNES was deprived of equal protection, due process, and due course of law because of the conspiracy. BARNES was eventually deprived of her rights, liberty, family, and property without any semblance of due process or due course of law.

5.     Thereafter, Defendants acting in concert with a common intent, and pursuant to a common plan and scheme maliciously prosecuted BARNES, thereby causing her to incur expenses, fees, and costs in excess of $300,000 to defend against these false and malicious charges, resulting in financial distress and severe mental anguish and emotional distress.

213

6.     Plaintiffs will prove (1) willful detention, (2) without consent, and (3) without authority of law.[86]  Absence of adequate justification or authority of law results in a cause of action for false imprisonment.[87]  The detention or imprisonment must be performed with authority of law, free of any fraud or subterfuge, to be valid.[88]

7.     No law enforcement officer, prosecutor, lawyer, or judge could have reasonably believed that the results of such blatant constitutional violations would constitute authority of law.  The probable cause affidavits were false and fraudulent and did not correlate to the facts.  The magistrate was not neutral and detached.  The searches and seizures were conducted without a valid warrant.  Property was wrongfully confiscated.  Bonds were revoked without due process or due course of law.  Incompetent, unethical, and ineffective lawyer was forced on BARNES for the sole purpose of depriving her of due process, equal protection, due course of law, speedy trial, jury trial, fairness, liberty, property, family relations, and other valuable and fundamental rights.  Process under Tex. C.C.P. art. 46B was maliciously abused and Tex. Health & Safety Code, Title 7, Subtitle C was blatantly violated in furtherance of the malicious conspiracy to deprive BARNES of due process, equal protection, due course of law, speedy trial, jury trial, fairness, liberty, property, family relations, and other valuable and fundamental rights.

8.     BARNES was subjected to a false arrest[89] and false imprisonment on January 8-9, 2010; May 11-13, 2010; June 9, 2010; June 28, 2010; July 8, 2010; July 9-February 28, 2011; and February 28, 2011-current.

---

[86] *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985).
[87] *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).
[88] *Wal-Mart Stores v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998).

214

## SIXTH CLAIM FOR RELIEF—Texas—Defamation

1.      In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.      Unlike the United States Constitution, the Texas Constitution expressly guarantees the right to bring reputational torts. The Texas Constitution's free speech provision guarantees everyone the right to "speak, write or publish his opinions on any subject, being responsible for abuse of that privilege." Likewise, the Texas Constitution's open courts provision guarantees that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex.2000); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Thus, defamed plaintiffs who need only prove a lower culpability standard than actual malice may recover compensation for "actual injury." *Gertz*, 418 U.S. at 349. However, actual injuries are not limited to out-of-pocket losses. *Gertz*, 418 U.S. at 350. "Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Gertz*, 418 U.S. at 350 (emphasis added); *see also Time, Inc. v. Firestone*, 424 U.S. 448, 460, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976). The Supreme Court stated: "In [*Gertz*] we made it clear that States could base awards on elements other than injury to reputation, specifically listing 'personal humiliation, and

---

[89] *See Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (characterizing arrest as "curtailment of a person's liberty").

215

mental anguish and suffering' as examples of injuries which might be compensated consistently with the Constitution upon a showing of fault." *Time, Inc.*, 424 U.S. at 460, 96 S.Ct. 958. *See Milkovich v. Lorain Journal, Co.*, 497 U.S. 1, 19-20, 20 n. 6, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); RESTATEMENT (SECOND) OF TORTS § 566 (1977); W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 113A, at 813-814 (5th ed. 1984).

3.     Defendants, TUMLINSON, KLEKAR, HAMILTON, LERMA, COTTON, GITTEL, BRINKMANN, HOBBS, FOSTER, DE LA VEGA, ANDERSON, CARNES, SHAVER, BRADLEY, MCCABE, MCDONALD, MORGAN, SAENZ, GUERRERO, and SWAIM intentionally and maliciously caused defamatory statements to be published to the news media, on the Internet, in the national media, and business journals knowing the detrimental and destructive impact it would have on BARNES' 25-year-old business and ability to earn a livelihood and practice law.  Defendants did this as retaliatory punishment of BARNES and to distract from their corrupt, abusive, and dishonest practices.  The media defendants and their employees aided and abetted the malicious prosecutions, rather than fulfilling their duty to investigate prior to blindly repeating what they were fed by the malicious prosecutors and bad faith law enforcement employees.  Then, the media defendants intentionally allowed a forum for BARNES' competitors to made defamatory per se, demeaning, and derogatory comments about her by hiding behind an alias to conceal their identities, which the media defendants then protected.

4.     Defendants, TUMLINSON, SWAIM, MORGAN, SAENZ, GUERRERO, HOBBS, FOSTER, DE LA VEGA, BRINKMANN, BRADLEY, MCDONALD,

216

MCCABE, and others intentionally made false and defamatory *per se* statements to the media knowing it would deprive BARNES of a fair trial and pollute the potential jury pool and turn the public against BARNES and hold her up to ridicule, contempt, hatred, ill-will, and damage her reputation both personally and professionally and harm and injure her children, tortiously interfere with her business relations, and damage her clients' cases.

5.     Defendants, CARGILE, NEWTON, and BERGAMO, further sensationalized the written media with dramatic and defamatory video news features. Representing false and defamatory statements were made by neighbors, when none of BARNES' neighbors would have made those allegations.  None of these "journalists" made any effort whatsoever to get BARNES side of the incident and published defamatory per se allegations knowing and intentionally damaging her reputation, destroying her business, and preventing her from obtaining a fair trial by polluting the potential jury pool.

6.     The video news features were even more defamatory and BARNES will introduce the video recordings, where the reporters made gross misrepresentations of material fact to aid and abet the malicious prosecutions, even claiming that BARNES had routinely fired shots at neighbors, that neighbors were afraid of BARNES, and that neighbors had trouble with BARNES, when there is no basis whatsoever to these false accusations made in the media merely to pollute the potential jury pool because these false accusations are permanently imbued on the Internet.  ANONYMOUS even stated that BARNES had admitted to the crime.

217

7.     HOBBS and FOSTER immediately gave media interviews solely to inflame the public, pollute the potential jury pool, publicize clearly inadmissible defamatory information, comment on the case and disparage BARNES' credibility, deprive BARNES of a fair trial, and immediately inflict pretrial harm, damage, and injury on BARNES' businesses, practice of law, treatment before the courts, and ability to earn a livelihood.

8.     FOSTER intentionally made untruthful statements and paraded them as established facts in order to deprive BARNES of due process, presumption of innocence, and a fair trial, when he said that he was "[t]otally freaked out. I can't believe this is happening. This has never happened. She did everything appropriate and the response was Mrs. Barnes shooting at her five times. Luckily, it did not hit her (the worker) because we could be working a murder right now." FOSTER told another reporter that BARNES told GITTEL "to leave after the temporary U.S. Census Bureau employee knocked on her door Saturday," and that "[s]he was apparently not getting off of her property fast enough, and Ms. Barnes decided to shoot five rounds in her direction." FOSTER knew that GITTEL never said that she "knocked on [BARNES'] door Saturday." Further, FOSTER had no basis for stating BARNES' thought process as if they were established or admitted by claiming that BARNES "decided to shoot five rounds in her direction." This was deliberate manipulation of the prosecution to harm, injure, and damage BARNES.

9.     HOBBS had conspired with the prosecutors and WCSD and immediately published to the media their theory of motive by falsely claiming that BARNES was "a disturbed individual" and he intentionally and knowingly misrepresented material fact

about his partner-in-crime, RYE, trespassing on BARNES' property, which started this entire scenario when he stated that "a visiting judge issued a court order for Rye to go by her house to drop off evidence for a case, after Barnes refused to pick it up from the courthouse." HOBBS and RYE knew for a fact that no "visiting judge issued a court order for RYE to go by her house to drop off evidence for a case" and knew for a fact that BARNES had not "refused to pick it up from the courthouse." BARNES had repeatedly made trips to the WILLIAMSON COUNTY Attorney's Office to pick up the audio-video recordings, but it was RYE who, after first hiding them a claiming they did not exist, continued to thwart discovery and withhold them for weeks after the "visiting judge" ordered him to produce them. The transcripts from that case proves this fact and both RYE and HOBBS knew the truth at the time HOBBS deliberately lied to the media. Further, HOBBS intentionally defamed BARNES by claiming that "[s]he refuses to follow any rules or law of the state of Texas on a consistent basis," and that "his office began dealing with Barnes in 1997 when she was stopped for a traffic violation and had to be forced from her vehicle," and that "[i]t always stems from authority and her problem with it." HOBBS continued the defamation stating that in the 2003 malicious prosecution that HOBBS and RYE were both involved in, "[f]inally the officer had to spike her tires, break her window, remove her from the vehicle" when he knows for a fact that this is a gross misstatement of material fact because he and RYE were involved in that malicious prosecution. During the interview, HOBBS sat with a large red file in front of him and deliberately placed BARNES in a false and defamatory light, and stated that "she yells, she screams, her attitude is totally inappropriate, constantly has to be called down by a judge," and "[s]he is becoming more and more aggressive in the

219

courtroom, ignoring orders of visiting judges to sit down to let them finish talking, she becomes physically aggressive in her postures," and other derogatory, demeaning, and defamatory accusations that he knew were false and misleading, with malice.

10.     ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVESON, HURST, and ANONYMOUS, with malice and a conscious disregard and deliberate indifference to the rights, safety, and welfare of BARNES took advantage of media blogs to intentionally deprive BARNES of due process, a fair trial, and presumption of innocence by publishing defamatory per se allegations of fact, fueling and inflaming the public, and polluting the potential jury pool.  Anonymity does not protect individuals from the abuse of speech or allow them to harm, injure, or damage others under the Texas Constitution, Art. I, § 8[90] or the Fourth Amendment to the United States Constitution.

11.     BRADLEY, MCCABE, and MCDONALD sent a scathing, malicious defamatory *per se* letter to North Texas State Hospital Maximum Security Unit (hereinafter referred to as MSU-DSHS) solely to dictate the diagnosis and direct the mistreatment and punishment.  The document was four pages and contained scathing, defamatory pre se statements and was false and misleading, written to leave the impression that BARNES had actually engaged in all the conduct as stated in the false arrests and malicious prosecutions.  The false accusations were presented as facts because BRADLEY, MCCABE, and MCDONALD knew that the state hospitals for the criminally insane based "treatment" recommendations based on the facts presented by the

---

[90] Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege;" ANONYMOUS went far beyond just a statement of opinion, ANONYMOUS intentionally misstated the facts to make BARNES look guilty when ANONYMOUS stated that BARNES "admitted to it!!!!!!!!!!"

220

prosecutors and courts. At all times during BARNES' unconstitutional captivity, she has been treated as if she had engaged in all this conduct and is being held until she admits that she did all these false allegations and that she is "delusional," agrees to follow the advice of SCHREIBER and agrees to plea bargain. BARNES has been told repeatedly that it is "implausible" that there would be a conspiracy against her and therefore she is "delusional" because the prosecutors say she is and the court found that she was.

12.    Even after BARNES obtained a court order to enjoin the information flowing to the media from the prosecutors and WCSD for the sole purpose of trying BARNES in the media and polluting the potential jury pool in order to deprive BARNES of a fair trial and due process, BRADLEY continued to communicate false, misleading, and defamatory information to the media in order to bolster and prove their theory of motive.[91]   BRADLEY knew that this would be permanently posted on the Internet and deprive BARNES of due process, untainted jury, and a fair trial. KXAN also knowingly violated the court order by publishing these manipulative "facts." Both BRADLEY and

---

[91] **Barnes unfit to stand trial in attack**
**Accused of firing at Census worker in May 2010**
Updated: Wednesday, 01 Jun 2011, 9:12 AM CDT
Published : Wednesday, 01 Jun 2011, 9:12 AM CDT
WILLIAMSON COUNTY, Texas (KXAN) - A Williamson County woman charged with opening fire at a Census worker a year ago has been declared incompetent to stand trial.
Carolyn Barnes, an attorney, is currently receiving treatment in a state hospital. The ruling that she is not competent to participate in her own defense was based on a May psychiatric examination, said Williamson County District Attorney John Bradley.
Barnes is charged with aggravated assault in the May 2010 attack. The Census worker was not hit in the shooting, but Barnes is accused of firing several shots.
According to Williamson County jail records, Barnes had been booked into the Williamson County jail eight times before for charges ranging from contempt of court to making a terroristic threat. In 2002, a Williamson County jury found Barnes guilty of interfering with a routine traffic stop.
Barnes' arrest history does not stop in Williamson County. In January Barnes was arrested at the Travis County Courthouse after she allegedly hit a Travis County deputy at the security checkpoint after he found a knife in her possession and asked her to leave it in her car.
In February a Williamson county judge appointed Barnes an attorney and postponed the trial until June to give Barnes a chance to find her own attorney.
A conviction in the aggravated assault charge that Barnes faces carries a penalty of up to five years in prison.

221

KXAN knew or should have known that these "facts" were not true or accurate, knew that BARNES had been deprived of due process, that BARNES was unlawfully and unconstitutionally "declared incompetent to stand trial," that the "exam" by HUMES was not a "May psychiatric examination," that BARNES was not "receiving treatment in a state hospital," that "a Williamson county judge" did not "postponed the trial until June to give Barnes a chance to find her own attorney," or that "[a] conviction in the aggravated assault charge that Barnes faces caries a penalty of up to five years in prison." This bad faith press release was solely to convict BARNES in the media and cut off any possibility of due process or chance of a fair trial—it was clearly intended by BRADLEY, MCCABE, and MCDONALD to prove their theory of motive and cover-up for the 15 years of defamation *per se* that WILLIAMSON COUNTY and WCSD started back in 1999 when BARNES first sued WILLIAMSON COUNTY and the WCSD. This is not an isolated incident, but is the culmination of a pattern and habit that was been systematically escalating and building for 15 years. BRADLEY knew that these communications had been enjoined and forbidden by court order, but, as is his habit, practice, and custom, he proceeded nevertheless with a conscious disregard and deliberate indifference to the rights, safety, and welfare of Plaintiffs because he believes he is above the law when the state and federal courts have steadfastly failed and refused to take any action to correct this corrupt system or to protect the citizens from this abuse of power. ANDERSON got away with it before BRADLEY, it still continues unabated, and grows and compounds daily.

13.    All of this defamation accomplished its intended bad faith result, and was a reasonably foreseeable consequence and the intended result of the Defendants'

concerted actions to cause harm and inflict pain, injury, and damages on Plaintiffs. These were clearly calculated falsehood and these statements obviously discredited BARNES in her chosen calling and caused irreparable and permanent damage to her professional and personal reputation.

14.     These Defendants acted with actual malice--that is, knowledge of, or reckless disregard for, the falsity of their statements- the knowingly false statements and the false statements made with reckless disregard of the truth, do not enjoy constitutional protection. *Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)). Defendants maliciously and repeatedly published statements accusing BARNES of heinous crimes knowing that she worked in an industry where reputation is paramount. The reprehensibility of defendants' conduct reflects repeated acts of defamation, which threatened financial ruin, and resulted from malice.

15.     BARNES will prove that HOBBS, FOSTER, WCSD, TCSD, TUMLINSON,  BRADLEY, MCCABE, MCDONALD, BRINKMANN, GITTEL, TRAVIS COUNTY, WILLIAMSON COUNTY, KXAN, KEYE, KVUE, CARGILE, BERGAMO, NEWTON, RYALL, ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVE SON, HURST, and ANONYMOUS defamed her in the mass media with permanent posting on the Internet, and that HOBBS, FOSTER, BRADLEY, MCCABE, MCDONALD, BRINKMANN, TUMLINSON, ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVE SON, HURST, and ANONYMOUS did so with malice and reckless disregard for the truth, and that the STATESMAN and AUSTIN LEGAL gave competitors and co-conspirators a

forum to further defame BARNES.  BARNES will further prove that they (1) published a statement about BARNES, a private individual, (2) that was defamatory concerning BARNES, while (3) acting negligently regarding the truth of the statement.[92]  These published statement were defamatory *per se*, permanent on the Internet, and were false, which prevented BARNES from having a fair trial, or any semblance of due process, equal protection, or due course of law.

16.   HOBBS,   FOSTER,   BRADLEY,   MCCABE,   MCDONALD, BRINKMANN, and TUMLINSON, who made and published the defamatory statements did so in the course and scope of their employment, as spokespersons or representatives of the their respective counties, WILLIAMSON and TRAVIS, and did so at the behest of, in the interest of, and with the knowledge of the said counties; so the defamatory statements were published by WILLIAMSON COUNTY and TRAVIS COUNTY..

17.   RYALL, CARGILE, BERGAMO, and NEWTON, who made and published the defamatory statements did so in the course and scope of their employment, as spokespersons or representatives of the media defendants, and did so at the behest of, in the interest of, and with the knowledge of the media defendants; so the defamatory statements were published by the STATESMAN, KVUE, KXAN, KEYE, and they are vicariously liable.

18.   ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVE SON, HURST, and ANONYMOUS who were competitors of BARNES or co-conspirators acted in bad faith to defame and personally attack BARNES in a public forum, and did so at the behest of, in the interest of, and with the knowledge

---

[92] *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Harvest House Publishers v. Local Church*, 190 S.W.3d 204, 210 (Tex. App.--Houston [1st Dist.] 2006, pet. denied); *Saudi v. Brieven*, 176

224

of the STATESMAN, and the STATESMAN did nothing to monitor or prevent the defamation and personal attacks, and the STATESMAN and AUSTIN LEGAL has deliberately left them permanently posted on the Internet to continuously defame BARNES and deprive her of a fair trial and due process; so the defamatory statements were published by the STATESMAN, and they are vicariously liable.

19.     These defendants intentionally injured BARNES' reputation, both personally and professionally, and exposed her to public contempt and ridicule, as well as impeached her reputation for honesty and integrity.   These statements were made intentionally to discredit her and deprive her of a fair and speedy trial.  BARNES, her children, her clients, and her business were substantially damaged, injured, and harmed as a direct and proximate result of these publications and will continue to be damaged, injured, and harmed in the future by the permanent and perpetual republications on the Internet.

20.     Mental anguish damages are recoverable in a defamation case.[93]   The ordeal of the defamation cost BARNES her liberty, her reputation, her credibility, her livelihood and ability to earn a living, her familial relationships, her business interests, real and personal property, money, time, clients, and deprived her of her health, sleep, good nutrition, and caused her embarrassment and humiliation in the community in which she lived and worked, disrupted her family, and distressed her children.  Plaintiffs are suffering years of a high degree of mental pain and emotional distress that surpasses worry, anxiety, vexation, embarrassment, or anger, and includes tortuous interference with familial relations and a loss of consortium, companionship, care, comfort, support,

---

S.W.3d 108, 117-18 (Tex. App.--Houston [1st Dist.] 2004, pet. denied).
[93] *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002) (*Bentley I*).

225

and solace. Moreover, BARNES suffered physical, mental, and emotional harm from over a dozen physical assaults, permanent disfigurement, permanent nerve damage, PTSD, and depression from indignation, extreme frustration with the lack of fairness and due process, being held in captivity where she was repeatedly assaulted and abused, having her honor and integrity impugned, and her family's related suffering added to her own emotional distress and mental anguish. BARNES' children suffered extreme emotional distress and mental anguish as well due to the same frustration with the complete lack of fairness and due process, and in witnessing the abuse and captivity of their mother and sole caretaker, as well as the loss of care, companionship, comfort, support, and solace from their mother. The mental anguish suffered by Plaintiffs far exceeded mere disappointment, anger, resentment or embarrassment, although it did include all of these. The severe mental anguish and extreme emotional distress includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and public humiliation.[94] Plaintiffs' entire lives were disrupted and destroyed due to the malice and unconstitutional pretrial punishment, which was cruel and unusual. BARNES was repeatedly accused of calculated falsehoods and the inherent hatred and prejudice towards female lawyers fueled the media sensationalism, which provided an unfettered platform for unfair trade practices by allowing competitors and co-conspirators to widen and deepen the personal attacks and further defame and injure Plaintiffs and deprive BARNES of any hope of a fair trial, equal protection, due process, or due course of law.

---

[94] *See Parkway*, 901 S.W.2d at 444 (quoting *Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App.--Corpus Christi 1979, no writ)).

21.     Further, on May 19, 2011, with the intent to indefinitely deprive BARNES of her freedom, liberty, and other valuable constitutional rights, including but not limited to a speedy jury trial before a fair and impartial tribunal, equal protection under the law, due process, and due course of law, MCCABE authored a defamatory letter and correspondence to the MSU with utmost malice knowing that it would taint the process and prevent BARNES release.

22.     These statements were defamatory *per se.* A statement is defamatory *per se* if it injures a person in his office, business, profession, or occupation, or if it is a false statement that accuses him of committing a crime.[95] "Our law presumes that statements that are defamatory *per se* injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish."[96] "Once injury to reputation is established, a person defamed may recover general damages without proof of other injury."[97] There is a presumption of damages for statements that are defamatory *per se.* When a rebuttable presumption exists, the burden of producing evidence shifts to the party against whom the presumption operates.[98]

23.     "For a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable."[99] These Defendants were publishing

---

[95] *See Morrill v. Cisek*, 226 S.W.3d 545, 549–50 (Tex. App.-Houston [1st Dist.] 2006, no pet.).

[96] *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002) (*Bentley I*) (citing *Leyendecker & Assoc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984)).

[97] *Leyendecker*, 683 S.W.2d at 374.

[98] *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.-Houston [1st Dist.] 2010, pet. denied).

[99] *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.-Tyler 2008, pet. denied) (citing *Milkovich* v. Lorain Journal Co., 497 U.S. 1, 19, 110 S.Ct. 2695, 2706 (1990); *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002)).

false statements of fact.[100] Plaintiffs will prove that (1) the defendants published a factual statement (2) that was capable of defamatory meaning (3) concerning BARNES (4) while acting with negligence, (BARNES is a private individual), and that some of the Defendants acted with actual malice or a reckless disregard concerning the truth of the statement.[101] A statement is capable of defamatory meaning if it is both false and injurious to the reputation of the person about whom it is made.[102] "[A] private individual may recover damages from a publisher or broadcaster of a defamatory falsehood as compensation for actual injury upon a showing that the publisher or broadcaster knew or should have known that the defamatory statement was false."[103] Plaintiffs will further show that the statements contained false, defamatory facts rather than opinions or characterizations.[104] Further, an issue is not a public issue simply because it is a controversy of interest to the public.[105] Instead, the inquiry concerns whether people in the public were debating the specific issue and whether the media was covering that debate.[106] A matter can be a public issue because people in the public are discussing it or because people other than the immediate participants in the controversy are likely to feel the impact of its resolution.[107]

---

[100] *See El-Khoury v. Kheir*, 241 S.W.3d 82, 85 (Tex. App.-Houston [1st Dist.] 2007, pet. denied); *AccuBanc Mortg. Corp. v. Drummonds*, 938 S.W.2d 135, 149 (Tex. App.-Fort Worth 1996, writ denied) ("Defamation involves the publication of a false statement of fact about the plaintiff.").

[101] *Vice v. Kasprzak*, 318 S.W.3d 1, 12 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

[102] *See Casso v. Brand*, 776 S.W.2d 551, 554 (Tex. 1989); *see also* Gertz, 418 U.S. at 339–40, 94 S.Ct. 2997, 3007; *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726 (1964).

[103] *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 811, 819 (Tex. 1976); *A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 80, 82–83 (Tex. App.-Fort Worth 1982, writ ref'd n.r.e.).

[104] *Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 198 (Tex. App.-Corpus Christi 2003, no pet.).

[105] *Klentzman v. Brady*, 312 S.W.3d 886, 905 (Tex. App.-Houston [1st Dist.] 2009, no pet.) (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 454, 96 S.Ct. 958, 965 (1976)).

[106] *Id.* (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 572 (Tex. 1998)).

[107] *See McLemore*, 978 S.W.2d at 572. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759–61, 105 S.Ct. 2939, 2945–46 (1985) (allowing common-law presumption of falsity to exist for private

228

24. Further, Plaintiffs are entitled to recover exemplary damages against Defendants, jointly and severally, in the greatest amount allowed by law. Plaintiffs will show that Defendants acted intentionally, knowingly, or with malice. Defendants acted with a specific intent to harm and injure Plaintiffs. Defendants did so out of retaliation, retribution, or revenge and the intended chilling effect on others exercising their first amendment rights was accomplished. Defendants caused these defamatory statements to be made in the community where Plaintiffs reside, practice law, go to school, and have their family and friends, as well as clients and prospective clients. Defendants knew the defamation would spread nationally once placed on the AP wire and Internet, and that the damage would be irreparable and the injury would be permanent; Defendants also maliciously contacted the trade journals and ABA Journal with their malicious defamation to ensure that BARNES would be defamed nationally to her peers and competitors.

## SEVENTH CLAIM FOR RELIEF—Texas—Conspiracy

1. In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2. As a pendent state cause of action, the representations, statements, acts, omissions and other conduct on the part of the Defendants as more fully set forth herein and described above constitute false, misleading and deceptive practices engaged in pursuant to a civil and criminal conspiracy. The actions of Defendants violated state law as well as 42 U.S.C. §1985, 18 U.S.C. §241, and 18 U.S.C. §242.

---

issues involving private non-media parties).

229

3.      This fraudulent and deceptive scheme could not have succeeded absent a conspiracy on the part of select individuals in Defendants' position.[108]   When the Defendants conspired to violate the public trust, repose, and reliance that BARNES placed in them, they conspired with others who could facilitate the cover-up of the illegal and unethical activity, conduct, and behavior and who could be reason of their duties as elected officials and governmental employees could exercise that degree of control by acts of coercion, threats, intimidation, force, violence, and retaliation to the extent necessary to deprive BARNES of due process and due course of law.

4.      Defendants GITTEL, POPPA, BRINKMANN, WILSON, FOSTER, HERNANDEZ, RICHTER, TRAVIS, BOGAN, FOSTER,, NEWELL, HUGHEY, WAGGONER, BARTZ, DE LA VEGA, HOBBS, BRADLEY, MCCABE, and MCDONALD, acting under color of state authority, maliciously fabricated, tampered with, and manipulated evidence and records not in general or in an abstract sense, but

---

[108] A civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex.1996); see also *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 559 (Tex.1937). "The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983) (citations omitted). A party who joins in a conspiracy is jointly and severally liable "for all acts done by any of the conspirators in furtherance of the unlawful combination." *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex.1979) (quoting *State v. Standard Oil*, 107 S.W.2d at 559) (emphasis added); see also *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex.1983) ("[O]nce a civil conspiracy is found, each co-conspirator is responsible for the action of any of the co-conspirators which is in furtherance of the unlawful combination."). Thus, if a conspiracy is proven, it can extend liability in tort beyond the active wrongdoer to those conspirators who may have merely planned, assisted, or encouraged the wrongdoer's acts. *See Carroll*, 592 S.W.2d at 926. All the plaintiff must show for the alleged conspirators to be held jointly and severally liable is that they acted "in pursuance of the common purpose of the conspiracy." *Carroll*, 592 S.W.2d at 928 (citing *Berry v. Golden Light Coffee Co.*, 160 Tex. 128, 327 S.W.2d 436, 440 (Tex.1959)) (emphasis added). "The gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968). All members of a conspiracy are liable for their co-conspirators' wrongful acts. And, even if a co-conspirator's acts occurred before the conspiracy formed, all the conspiring parties are liable for those acts, as long as those acts are made in furtherance of the "common goal" of the conspiracy-in this case, defaming and punishing BARNES without due process or jury trial. *See Akin*, 661 S.W.2d at 921; *Carroll*, 592 S.W.2d at 926.

230

with the specific intent to arrest, charge, and indict BARNES; and coached, coaxed, and coddled GITTEL, not to provide information generally to aid a good faith investigation, but specifically to implicate BARNES.   The nature of the misconduct here was the fabrication, manipulation, and tampering with the evidence against an already identified target.   The fabrication of the evidence was part and parcel of the scheme to deprive BARNES of her liberty, property, and reputation.  The constitutional line was crossed the moment the deputies shifted their focus from solving an alleged crime to framing BARNES. [109] HERNANDEZ immediately destroyed her notes from the interview with GITTEL and POPPA when the deputies, at the instigation of SCHEFFLER, shifted their focus from trying to locate the pasture near a condemned or vacant house from which a vagrant came and pointed a revolver at GITTEL, allegedly, and redirected their intent to harass, harm, and hinder BARNES.  No one care about the description of the location or the discrepancy in the address, or the print out from the Census Bureau and map from the Census Bureau that all clearly showed that GITTEL was not ever sent to BARNES' address.   Even when GITTEL stated that there were men's, women's and children's clothes on the clothesline, the absence of any such items on BARNES' property did not deter the malicious scheme, the deputies and prosecutors merely told GITTELL that BARNES had a man living with her and had a teenage son!  BARNES has not ever had a man living in her home!  Further, it did not matter than if you discharge a gun in the city limits, it is only a misdemeanor; and BARNES resides in the county.  It did not matter that Texas has passed the Castle Doctrine to protect homeowners from these very claims

---

[109] Pyle v. Kansas, 317 U.S. 213, 216 (1942); Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004); Washington v. Wilmore, 407 F.3d 274, 282-83 (4th Cir. 2005); Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc); Wilson v. Lawrence County, 260 F.3d 946, 954 (8th Cir. 2001); Ricciuti v.

by trespassers. It did not matter that the Census Bureau specifically instructs in its printed training manual for enumerators that they cannot go through locked gates without the owner's permission and consent—ironically, appearing under the Assault prevention section of the training manual. Said deputies and prosecutors met immediately at the Cedar Park Annex that Saturday, May 8, 2001, and plotted and schemed to frame BARNES before they put together the photo array and went to GITTEL's home to get her to identify BARNES. When BARNES filed her probable cause affidavit against RYE, HERNANDEZ, TRAVIS, RICHTER, et al, said Defendants charged BARNES with aggravated assault with a deadly weapon on a pubic servant the next day, and tendered false information concerning said charges to the court and media in order to lead the court and the public to believe that probable cause exists when there is none, create an irreparably harmful media frenzy, and cause another false arrest and imprisonment of BARNES.

5.     Defendants TUMLINSON, KLEKAR, HAMILTON, ESCAMILLA, and SWAIM, acting under color of state authority, maliciously charged BARNES with aggravated assault against a public servant and interference with the duties of a public servant, and tendered false information concerning said charges to the court and media in order to lead the court and the public to believe that probable cause exists when there is none and to create an irreparably harmful media frenzy and to cause another false arrest and imprisonment of BARNES.

6.     Defendants DE LA VEGA, WILSON, BRINKMANN, WILSON, FOSTER, HERNANDEZ, RICHTER, TRAVIS, BOGAN, FOSTER,, NEWELL,

N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Riley v. City of Montgomery, 104 F3d 1247, 1253 (11th Cir. 1997).

232

HUGHEY, WAGGONER, and HOBBS, acting under color of state authority, maliciously charged BARNES with filing a false police report and making a false alarm, and tendered false information concerning said charges to the court and media in order to lead the court and the public to believe that probable cause exists when there is none and to create an irreparably harmful media frenzy and cause another false arrest and imprisonment of BARNES.

7.     The concerted representations, acts, omissions, and other conduct described above were producing causes of significant economic damages, mental anguish, and emotional distress to BARNES.  BARNES is entitled to recover from these Defendant conspirators, jointly and severally, damages arising out of the above mentioned false, misleading and deceptive trade practices of this conspiracy to defraud, retaliate, and injure.

8.     Plaintiffs will prove: (1) the defendants and another person acted together, (2) they acted to accomplish an object (an unlawful purpose or a lawful purpose by unlawful means), (3) they had a meeting of the minds on the object or course of action, (4) they committed one or more unlawful acts, and (5) the plaintiffs suffered damages as the proximate result of the unlawful acts.[110]

9.     BARNES is asserting a claim for damages, together with expenses, including attorney's fees, reasonably incurred by BARNES in asserting these claims.

10.     TUMLINSON, HOBBS, BRINKMANN, HERNANDEZ, SCHEFFLER, MCDONALD, MCCABE, CARNES, ANDERSON, BROOKS, RYE, and BRADLEY, enlisted the aid, assistance, and participation of WCSD and TCSD and the various

---

[110] *Ins. Co. Of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996).

233

employees and prosecutors of WILLIAMSON COUNTY and TRAVIS COUNTY to protect their interests due to the criminal justice systems' propensities and beliefs, the close association with and the social and political persuasion with as an active member of the same political party and service as both the representative of the county and as a coconspirator in this criminal conspiracy, and the employees/deputies/investigators of TCSD and WCSD, and secretly utilized their respective influence with these entities to cause the events that transpired thereafter; and also to protect the Defendants from criminal charges or indictments due to this close personal relationship with WCSD and TCSD.

11.    The representations, statements, acts, omissions and other conduct on the part of these Defendants as described above, constitute unconscionable actions or courses of action on the part of these Defendants and were undertaken in furtherance of the civil and criminal conspiracy as more fully described herein.  These unconscionable actions or courses of action on the part of these Defendants include the conduct of and in making false statements of material fact to the court and others, and enlisting the aid and assistance of other employees, agents, representatives, prosecutors, and elected officials of WILLIAMSON COUNTY and TRAVIS COUNTY, who then conspired against BARNES and caused injury, harm, and damages to BARNES for exposing the corruption and based upon hate crimes against the non-white population and females.

12.    The representations, acts, omissions and other conduct of these Defendants described above were committed knowingly, deliberately, and intentionally. These Defendants were actually aware, at the time of the conduct, of the falsity,

deception, unfairness and unconscionable nature of the conduct described above. Accordingly, these Defendants are liable to Plaintiffs for actual damages and exemplary damages, jointly and severally. They knew the truth because they either witnessed it or watched the video recording and they all knew that TUMLINSON was the aggressor; yet, they went along with the aggravated perjury and fabricated evidence to cover-up for the illegal actions of TUMLINSON committed out of anger, rage, and retaliation. Further, they knew the truth because they heard the initial accusations of GITTEL and they all knew that GITTEL was engaging in a criminal trespass, had not given BARNES' name or address, had not described the vagrant woman as BARNES and had not in any way implicated BARNES in her initial reports prior to the coaching, coaxing, and conning by WILLIAMSON COUNTY to manipulate a false arrest, false imprisonment, and malicious prosecution with all the reasonably foreseeable consequences and damages; yet, they went along with the aggravated perjury and fabricated evidence to cover-up for the illegal actions of GITTEL, HERNANDEZ, RYE, HOBBS, MCDONALD, TRAVIS, RICHTER, FOSTER, ANDERSON, BRINKMANN, MCCABE, BRADLEY, and CARNES committed out of anger, rage, and retaliation. Additionally, they knew the truth because they heard the recorded conversation and knew that BARNES had not filed a false police report or false alarm and that DE LA VEGA was engaging in a false arrest, false imprisonment, and aggravated perjury in furtherance of a criminal conspiracy; yet, they went along with the aggravated perjury and fabricated evidence to cover-up for the illegal actions of DE LA VEGA, GITTEL, HERNANDEZ, RYE, HOBBS, MCDONALD, TRAVIS, RICHTER, FOSTER, ANDERSON, BRINKMANN, MCCABE, BRADLEY, and CARNES committed out of anger, rage, and retaliation.

235

Ultimately, they knew the truth that BARNES had not breached any term or condition of her surety bail bond contract and that BARNES was not incompetent to stand trial; yet, they went along with the aggravated perjury, fraud, gross constitutional violations, irreparable defamation *per se*, and fabricated evidence to cover-up for the illegal actions of DE LA VEGA, GITTEL, HERNANDEZ, RYE, HOBBS, MCDONALD, TRAVIS, RICHTER, FOSTER, ANDERSON, BRINKMANN, MCCABE, BRADLEY, SHAVER, SCHREIBER, HUMES, and CARNES committed out of anger, rage, and retaliation.

13.     The representations, acts, omissions and other conduct of these Defendants described above were committed intentionally, deliberately, and knowingly because they did not accidentally or negligently join this conspiracy to cover-up for the wrongful actions of these Defendants, acting in concert, and to maliciously prosecute BARNES.  These Defendants had actual awareness of the falsity, deception, or unfairness of the act or practice, coupled with the specific intent that BARNES act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness or misplaced trust and confidence in the wrong people to act as competent, fair, and ethical fiduciaries in extending and keeping the terms and conditions of the plea bargain agreement, rather than cause significant delay, increase in costs of litigation, and cause more damage, injury, and losses to BARNES.  Accordingly, BARNES is entitled to recover actual damages and exemplary damages.

14.     These Defendants' conduct as described herein and the resulting harm, damage and loss to BARNES has necessitated the retention of attorney.  BARNES is, therefore, entitled to recover from these Defendants, jointly and severally, an additional sum to compensate the BARNES for a reasonable fee for such attorney's necessary

236

services in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals to other courts.

## EIGHTH CLAIM FOR RELIEF—Texas—Legal Malpractice, Breach of Fiduciary Duty, Failure to Perform Statutory Duties Under the Law

1.      In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.      SCHREIBER is liable to Plaintiffs for his legal malpractice.[111] SCHREIBER owed BARNES a duty; he breached that duty; that breach proximately caused the damages sustained by Plaintiffs; and damages occurred.[112] SCHRIEBER failed to comply with the applicable standard of care because he failed to do what an ordinarily prudent lawyer would have done and he did what an ordinarily prudent lawyer would not have done, under the same or similar circumstances. At all times, SCHREIBER failed to conduct himself as an ethical, reasonable, and competent lawyer. The failure of SCHREIBER to conduct himself as a reasonably prudent lawyer was a cause in fact of the damages, injuries, and losses sustained by Plaintiffs, and these damages, injuries, and losses were all reasonably foreseeable by SCHREIBER at the time he decided to engage in this unreasonable conduct. The acts and omissions of SCHREIBER were a substantial factor in bringing about the injury, damages, and losses and without which no harm would have occurred.[113] SCHREIBER, as a person of ordinary intelligence, should have anticipated the damage, injury, and losses to Plaintiffs

---

[111] *Morrill v. Graham,* 27 Tex. 646, 651 (1864).
[112] *Cosgrove v. Grimes,* 774 S.W.2d 662, 665 (Tex. 1989).
[113] *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex. 1980).

237

by his negligent, grossly negligent, and intentional acts. Plaintiffs seek to recover mental anguish damages due to the loss of BARNES' liberty interest and other gross constitutional violations by SCHREIBER's malicious and intentional conduct.[114]

3.     SCHREIBER owed BARNES a fiduciary duty of candor, honesty, loyalty, confidentiality, an obligation to deal fairly and in good faith with BARNES, and to place her interests and wishes above his own. SCHREIBER breached the fiduciary duty by making material misrepresentations of fact, conspiring with the prosecutors to harm BARNES, engaging in deception, failing to carry out the wishes of BARNES, violating BARNES' statutory and constitutional rights, engaging in other egregious conduct, and exhibiting a conscious disregard and deliberate indifference to the rights, safety, and welfare of BARNES.[115]

4.     Further, Plaintiffs will prove, by clear and convincing evidence, that the Plaintiffs' harm occurred as a direct result of fraud, malice, or gross negligence. Therefore, pursuant to Tex. Prac. & Rem. Code, § 41.003, Plaintiffs also seek punitive or exemplary damages for the intentional, vindictive, or malicious malpractice of SCHREIBER in order to punish him and deter him from engaging in this egregious conduct in the future.

5.     SCHREIBER committed legal malpractice, failed to represent BARNES best interests, conspired with the malicious prosecutors, held his interest paramount to BARNES and sacrificed her best interests and constitutional rights for his own personal advancement, violated BARNES constitutional and statutory rights, and breached the fiduciary duty and statutory duties he owed to BARNES.

---

[114] *Parenti v. Moberg*, No. 04-06-00497-CV, 2007 WL 1540952 at 3, (Tex.App.—San Antonio May 30, 2007, pet. denied) (holding mental anguish damages are recoverable for intentional or malicious conduct).

238

6.     BARNES was damaged, injured, and suffered significant losses because SCHREIBER was incompetent, vindictive, and unethical. SCHREIBER failed to conduct discovery; failed to designate experts and/or proper witnesses or to call any witnesses on behalf of BARNES' defense;  put his own interests above BARNES' interest; failed to know or research the substantive law; failed to get BARNES' consent or to inform BARNES' of his intended retaliatory actions, sabotage, and conspiracy to betray; failure to timely investigate; suffered from mental, emotional, or physical problems or was lazy or unethical such that he was afflicted with arrogance and a sexist attitude and prone to procrastination or incompetent behavior; failed to know or follow the law; made gross misrepresentations of material fact to the court; introduced incompetent hearsay testimony or accusations against BARNES; obstructed justice; repeatedly failed to follow BARNES' client instructions; conspired with the other male misogynist against BARNES and aided and abetted them in fabrication of a motive and malicious prosecution; and engaged in other intentional wrong-doing, especially libel, slander, defamation, civil rights violations, and fraud.  SCHREIBER breached the fiduciary duty owed to BARNES and the statutory duties as required by Texas Health and Safety Code, Title 7, Subtitle C. SCHREIBER also engaged in legal malpractice when he joined the malicious conspiracy, aided and abetted the malicious prosecution, maliciously abused process, aided and abetted the prosecution in the malicious abuse of process, and solicited HUMES to aid and abet the malicious abuse of process.

7.     BARNES incurred actual and consequential damages, in the past and future, as a direct and proximate result of the actions, malpractice, negligence, gross negligence, unlawful and unconstitutional conduct, and breaches by SCHREIBER.

---

[115] *Trousdale v. Henry,* 261 S.W.3d 221, 228 (Tex.App.—Houston [14th Dist.] 208, pet. denied).

239

Plaintiffs seek to recover a monetary judgment against SCHREIBER for any and all damages incurred or sustained as a direct result of SCHREIBER's misconduct, as well as punitive damages to punish him and deter him from such gross, malicious, and shocking behavior in the future.  Plaintiffs also seek the equitable remedy of fee forfeiture so that SCHREIBER is not unjustly enriched by his conduct.  Further, Plaintiffs seek to recover under the Texas Deceptive Trade Practices Act because SCHREIBER made express misrepresentations of material fact, failed to disclose critical information, engaged in an unconscionable course of action, that cannot be characterized as advice, judgment, or opinion.  Plaintiffs seek recovery of mental anguish damages, treble damages, and reasonable and necessary attorney's fees pursuant thereto.

8.     SCHREIBER committed legal malpractice, failed to represent BARNES best interests, conspired with the malicious prosecutors, held his interest paramount to BARNES and sacrificed her best interests and constitutional rights for his own personal advancement, violated BARNES constitutional and statutory rights, and breached the fiduciary duty and statutory duties he owed to BARNES.

9.     BARNES incurred actual and consequential damages, in the past and future, as a direct and proximate result of the actions, malpractice, negligence, gross negligence, unlawful and unconstitutional conduct, and breaches by SCHREIBER.

10.     Plaintiffs seek to recover a monetary judgment against SCHREIBER for any and all damages incurred or sustained as a direct result of SCHREIBER's misconduct, as well as punitive damages to punish him and deter him from such gross, malicious, and shocking behavior in the future.

240

**NINTH CLAIM FOR RELIEF—Texas—Intentional Infliction of Emotional Distress With Indefinite Pretrial Captivity**

1.    In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.    As a pendent state cause of action, BARNES brings a cause of action against these Defendants for unilateral modification without just cause and breach of surety bail bond contract without due process or due course of law, and breach of their express and implied representations, promises, assurances, and duties as well as their intentional infliction of emotional distress and mental anguish.  BARNES has sustained damages as a result of said breach and intentional infliction of emotional distress caused by the resulting indefinite pretrial incarceration, which damages exceed the minimum jurisdictional limits of this Court.  The actions of were extreme, outrageous, and shocking.

3.    Commitment to a mental hospital is a weighty curtailment of one's liberty. *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Such a restriction on liberty requires the protections afforded by due process. Those protections include the right to a fair hearing and as set forth in Texas Constitution Art. I, § 15-a and Texas Health and Safety Code, Title 7, Subtitle C, the right to notice, right to be heard, right to effective assistance of counsel, right to confront witnesses and evidence against one, right to call witnesses and present evidence on one's own behalf, and right to appear through counsel or *pro se*, or both.

4.    All Defendants, acting in concert, and contributing their own bad faith or

241

grossly negligent conduct in furtherance of the conspiracy to harm, injure, and damage BARNES, caused the unconstitutional pretrial captivity and imposition of cruel and unusual punishment without any semblance of substantive or procedural due process, equal protection under the law, or due course of law.  The pretrial captivity was a reasonably foreseeable consequence of the media frenzy and deliberate violations of constitutional rights, defamation *per se*, destruction of the presumption of innocence, and invasion of privacy; and the infliction of extreme emotional distress and immeasurable mental anguish were the direct and proximate result of the loss of freedom, denial of constitutional rights, curtailment of liberty, and the resulting losses, injuries, damages, and harm that are reasonably foreseeable consequences of indefinite pretrial captivity, violation of fundamental and structural due process and other constitutional rights, and the imposition of such cruel and unusual punishment without any semblance of procedural or substantive due course of law or equal protection under the law.  The actions and conduct of all the Defendants named in this civil suit, acting in concert, caused the indefinite pretrial captivity in very cruel and unusually punitive conditions and the damages, injuries, losses, and harm suffered by Plaintiffs are recoverable from all Defendants, jointly and severally.

### TENTH CLAIM FOR RELIEF—Texas—Tort Claims Act

1.      In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

242

2.      Plaintiffs brings suit against WILLIAMSON COUNTY, TRAVIS COUNTY, WCSD, and TCSD, pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 101.001 *et. seq.*(Vernon 2005 Supp. 2006), for the condition, misuse, or use of the following instrumentality or personal property:  the jails; arrests records; paper; computers; marked patrol cars and county owned truck; guns; rifle scope; bullet proof or hard vest; shackles; handcuffs; leather restraint belt with cuffs attached; criminal tag; leg iron; electronic monitoring with harmful electromagnetic frequencies; restraint jacket; hard straight board with restraints; hard neck brace; tow truck on June 1, 2011; audio and video equipment during July 2010 arrest, in jail, and in court; audio-video recording equipment; unhealthy "food" in jail; rubber stamp of official signatures; notary seal; driver's license and arrest photos; cameras; and fraudulent billing.

3.      Plaintiffs seek actual and compensatory damages, including:

Past reasonable and necessary medical expenses;

Future probably reasonable and necessary medical expenses;

Past lost earnings;

Future probable lost earnings;

Past physical pain and suffering, mental anguish, and emotional distress;

Future probable physical pain and suffering, mental anguish, and emotional distress;

Past property damages and losses;

Prejudgment interest;

Post judgment interest;

Reasonable and necessary attorney's fees; and

Court costs.

243

## ELEVENTH CLAIM FOR RELIEF—Texas—Malicious, Vindictive, Retaliatory, and Selective Prosecution

1. In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2. Plaintiffs assert a claim for malicious, vindictive, retaliatory, and selective prosecution by GITTEL, TUMLINSON, SWAIM, ESCAMILLA, DE LA VEGA, HOBBS, BRADLEY, MCCABE, and MCDONALD, with the aid and assistance of the employees and deputies of WILLIAMSON COUNTY and TRAVIS COUNTY, pursuant to a malicious conspiracy to harm, injure, and damage Plaintiffs in bad faith by depriving her of basic, fundamental, and structural due process and constitutional rights; and ultimately to inflict cruel and unusual pretrial punishment on BARNES and hold her in indefinite pretrial captivity in an unusual manner in cruel, inhumane, violent, and oppressive conditions.

3. No objectively reasonable and prudent lawyer under the same or similar circumstances would have believed that there was a good faith reason to prosecute BARNES for any felony offense arising out of either the TUMLINSON incident or the GITTEL story, or to charge BARNES with any felony or charge for interference with the duties of a public servant, filing a false police report or false alarm. Any objectively reasonable and prudent lawyer under the same or similar circumstances would have realized the significance of the exculpatory evidence and heeded that evidence, preserved it, and protected it.

4. The assault by TUMLINSON was captured on the TRAVIS COUNTY

244

courthouse security cameras and the truth was easily accessible to any objectively reasonable and prudent lawyer under he same or similar circumstances. Also, any objectively reasonable and prudent lawyer under the same or similar circumstances would not have believed that the use of a cell phone in the TRAVIS COUNTY courthouse was unlawful, impermissible, or in any manner interfered with the duties of TUMLISON. Further, any objectively reasonably lawyer under the same or similar circumstances would have considered the documented propensity, habit, demeanor, and practice of TUMLISON. No objectively reasonable and prudent lawyer would have filed the interference with the duties of a public servant charges against BARNES six months after the incident, and had her arrested in a publicly embarrassing and humiliating manner while she was appearing on behalf of a client as an officer of the court inside the bar, or required to her post a third bond arising out of the same false arrest when she was currently out on the second bond in the amount of $50,000 at the time of the third false and malicious arrest. No objectively reasonable and prudent lawyer under the same or similar circumstances would have continued the malicious prosecution and obstructed justice and blocked BARNES access to the relevant evidence to prepare her defense for over a year. No objectively reasonable and prudent lawyer under the same or similar circumstances would travel to WILLIAMSON COUNTY during the trial of BARNES and maliciously conspire with the malicious prosecutors to have BARNES thrown back in jail, deprive of her constitutional rights, and indefinitely held in pretrial captivity in cruel, violent, and inhumane conditions.

5.      No objectively reasonable and prudent lawyer under the same or similar circumstances would have filed charges against BARNES without considering the fact

245

that GITTEL would have been clearly trespassing for her story to ring true; the Census Bureau's training manual specifically forbid the enumerators from going through locked gates without the owner's express permission and consent; the address print out and map from the Census Bureau did not show that GITTEL was sent to speak with BARNES; GITTEL was not even sent to BARNES' address; the initial description of the woman, house, property, and events by GITTEL did not match the allegations in the probable cause affidavit or the deliberate reports to the media; Texas passed the Castle Doctrine intended to save land owners from the exact same type of prosecution; BARNES' property is not in the city limits but lies in a remote country setting; and even if shots had been fired at GITTEL and they had been fired in the city limits the charge would only be a misdemeanor, so the District Attorney and District Courts had no jurisdiction.  No objectively reasonable and prudent lawyer under the same or similar circumstances would have allowed clearly inadmissible and defamatory *per se* statements to be made to the media knowing it would deprive BARNES of a fair trial and presumption of innocence.  No objectively reasonable and prudent lawyer would continue to leak defamatory *per se* statements to the media after the trial judge had granted BARNES' motion to cease and desist the leaks to the media.  No objectively reasonable and prudent lawyer under the same or similar circumstances would file and continue to file bad faith motions requesting psychiatric exams for sanity, competency, and mental retardation to prove a motive for criminal punishment.  No objectively reasonable and prudent lawyer would block BARNES' access to the grand jury or right to a *Franks* hearing.  No objectively reasonable and prudent lawyer under the same or similar circumstances would have filed a motion to revoke the $50,000 surety bail bond based on an alleged

246

reason that BARNES' filed a false police report because no objectively reasonable and prudent lawyer under the same or similar circumstances would have believed that BARNES had filed a false police report or was "re-offending."   No objectively reasonable and prudent lawyer under the same or similar circumstances would have believed that one could lawfully and constitutionally impose a curfew, criminal tagging, electronic monitoring, house arrest, and other oppressive conditions on BARNES in addition to the outstanding $50,000 surety bail bond that was already in place securing her appearance at trial.   No objectively reasonable and prudent lawyer under the same or similar circumstances would believe the a pretrial confiscation of rifles and shotguns was lawful or constitutional, especially when GITTEL described the revolver in detail and no revolvers or handguns were found on BARNES' premises or anywhere in her vehicles, homes, buildings, trailers, storage units, or safe.   No objectively reasonable and prudent lawyer under the same or similar circumstances would have conspired to deprive BARNES of fundamental and structural due process rights, equal protection under the law, or subject BARNES to indefinite pretrial captivity in cruel and unusual conditions in solitary confinement and the MSU without any semblance of procedural or substantive due process.

6.     Plaintiffs will particularly introduce relevant evidence and testimony concerning the following material areas of the law:

Interference with the duties of a public servant

Castle Doctrine

Filing a false police report

Assault on a public servant

247

Bond revocations and warrants

Grand juries blocking equal access

Electronic monitoring, curfew, house arrest, confiscation of guns

Mental commitments

Competency to stand trial

Eyewitness identifications

Right to pretrial release and reasonable bail

Right to speedy trial

Right to exculpatory evidence

Due process, due course of law, and equal protection under the law

Abuse of media and destruction of presumption of innocence and other presumptions in favor of the accused.

## TWELVETH CLAIM FOR RELIEF—Texas—Malicious Abuse of Process

1.      In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.      MALICIOUS ABUSE OF PROCESS:  BARNES also pleads a cause of action for malicious abuse of process, including but not limited to, the malicious abuse of process under T.C.C.P. art. 46B and Texas Health and Safety Code, Title 7, Subtitle C, Chapter 574, in addition to the filing of false and fabricated charges through the use of orchestrated PC affidavits as press releases.

3.      Abuse of process is asserted against SCHEFFLER, HOBBS, RYE,

SWAIM, MORGAN, BRADLEY, MCCABE, MCDONALD, HUGHEY, RUPPART, GITTEL, TUMLINSON, ANDERSON, BROOKS, CARNES, SHAVER, BRINKMANN, BARTZ, HUGHEY, DE LA VEGA, HERNANDEZ, RICHTER, TRAVIS, BOGAN, FOSTER, WAGGONER, NEWELL, SCHREIBER, HUMES, COTTON, LERMA, UNIDENTIFIED THREE, GRIFFITH, and RUPPART.

4.     The elements of the cause of action for abuse of process include: (1) the defendant made an illegal, improper, perverted use of the process; (2) in so doing the defendant had an ulterior motive or purpose; and (3) damage resulted to the plaintiff from the irregularity.[116]

5.     BARNES will prove that she has suffered special damages, i.e. a physical interference with her person and property in the form of multiple arrests, multiple imprisonments and excessive and punitive bail amounts, and indefinite pretrial captivity in order to impose cruel and unusual punishment.[117] The malicious abuse of process in this case led to the indefinite pretrial captivity of BARNES in an unusual manner where she is being held in cruel, inhumane, deplorable, violent, and oppressive conditions without any semblance of recourse, due process, equal protection, or due course of law— she has no right to appeal and the writ of *habeas corpus* has been suspended, even the federal courts will not intervene and enforce her constitutional rights that should enjoy federal protection. Plaintiffs have suffered over $1,000,000.00 in damages, losses, costs, expenses, expert fees, legal fees, injuries, medical bills, and harm, and the damages, losses, costs, expenses, expert fees, legal fees, injuries, medical bills, and harm continue to mount and accrue. The damages are immense and irreparable, and the actions are

---

[116] *Detenbeck v. Koester*, 886 S.W.2d 477, 480 (Tex. App.-Houston [1st Dist.] 1994, writ dism'd).
[117] *See Martin v. Trevino*, 578 S.W.2d 763, 766769 (Tex. Civ. App.-Corpus Christi 1978, writ ref'd n.r.e.);

249

unabated, the malice continues, and there is no equal protection under the law for Plaintiffs. All of these damages were foreseeable consequences of the conduct and actions of Defendant, acting in concert pursuant to a malicious criminal conspiracy, and the damages were a direct and proximate result of those actions and conduct. Therefore, Plaintiffs are entitled to recover any and all actual and consequential, as well as punitive or exemplary, damages resulting from said malicious, unlawful, or unconstitutional conduct.

6.  *In Yick Wo v. Hopkins*, 118 U.S. 356, 6 Sup. Ct. 1064, 30 L.Ed. 220 (affirmed in *U.S. v. Wong Kim Ark*, 169 U.S. 644, 18 Sup. Ct. 456, 42 L.Ed. 890), the court stated: "*Though the law itself be fair on its face and impartial in appearance, yet if it is applied and administered by public authority with an evil eye and an unequal hand, so as to practically make unjust and illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.*"[118]

7.  When the fourteenth amendment forbade any state from depriving any person of life, liberty or property without due process of law, it was supposed that the intent of the people of the United States was to prevent the deprivation of any legal right in violation of the fundamental guaranties inhering, as often said, " *apply to all the instrumentalities of the state, to its legislative, executive, and judicial authorities; and therefore it has become a settled doctrine in the constitutional jurisprudence of this country that whoever by virtue of public position under a state government deprives*

---

see also *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 209 (Tex. 1996).
[118] To the same effect are the following cases: *C., B. & Q. Ry. v. Chicago*, 166 U.S. 226, 17 Sup. Ct. 581, 41 L.Ed. 979; *Henderson v. Mayor*, 92 U.S. 259, 23 L.Ed. 543; *Chy Ling v. Freeman*, 92 U.S. 275, 23

250

*another of property, life or liberty without due process of law, or denies or takes away*

*the equal protection of the law, violates the constitutional inhibition, and he acts in the*

*name and for the state, and is clothed with the state's power, his act is that of the state.*

This must be so, or, the constitutional prohibition has no meaning, and the state has

clothed one of its agents with the power to annul or evade it."[119]

## THIRTEENTH CLAIM FOR RELIEF—Texas—Tortious Interference with Familial Relations

1.      In support of a pendent state cause of action, the allegations set forth in

Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as

if fully set forth verbatim for any and all purposes of this pleading, and further allege as

follows:

2.      Plaintiffs have suffered irreparable and extensive interference with

familial relations and damages far in excess of the mental anguish and emotional distress

previously plead in that Plaintiffs were a close family prior to the malicious imposition of

pretrial punishment, captivity, and months where Plaintiffs were not even allowed to

communicate, and over a year of no physical contact.  BARNES' children lost their

emotional, mental, and physical support suddenly without any warning or notice or time

---

L.Ed. 550; *Neal v. Delaware,* 103 U.S. 370, 26 L.Ed. 567; *Soon v. Crowley,* 113 U.S. 703, 5 Sup. Ct. 730, 28 L.Ed. 1145; Ex parte Abrams, 56 Tex. Cr. R. 478, 120 S.W. 883.

[119] *C., B. & Q. Ry. v. Chicago,* 166 U.S. 226, 233, 234, 17 Sup. Ct. 581, 41 L.Ed. 979, citing Ex parte Virginia, 100 U.S. 346, 347, 25 L.Ed. 679; *Scott v. McNeal,* 154 U.S. 34, 14 Sup. Ct. 1108, 38 L.Ed. 896. The court has said: "But a state may not, *by any of its agencies,* disregard the prohibition of the fourteenth amendment. Its *judicial authorities* may keep within the letter of the prescribed forms of procedure in its courts and give the parties interested the fullest opportunity to be heard, and yet it might be that its *final action* would be inconsistent with the amendment. In determining what is due process of law, regard must be had to substance, and not to form." *Chicago, Burlington, etc., Ry. v. Chicago,* 166 U.S. 226, 17 Sup. Ct. 581, 41 L.Ed. 979. Again, in another case, "though the law itself be fair on its face and impartial in appearance, yet if it is applied and administered by public authority with an evil eye and unequal hand, …it is still within the prohibition of the Constitution." Yick Wo v. Hopkins, 118 U.S. 373, 6 Sup. Ct. 1064, 30 L.Ed. 220. See, also, *Henderson v. Mayor,* 92 U.S. 259, 23 L.Ed. 543; *Chy Ling v. Freeman,* 92 U.S. 275, 23 L.Ed. 550; *Neal v. Delaware,* 103 U.S. 370, 26 L.Ed. 567; *Soon v. Crowley,* 113 U.S. 703, 5 Sup. Ct. 730, 28 L.Ed. 1145.

251

to make preparations under extreme, shocking, and inhumane circumstances, and were completely left without any means of financial support or assistance. BARNES and her children lost their companionship, solace, support, comfort, care, and time together. This was cruel, inhumane, shocking, outrageous, calculated, planned, and inflicted with utmost malice.

3.     Plaintiffs allege that the conduct of Defendants, all acting in concert, in furtherance of the criminal conspiracy causes significant and irreparable losses to the family unit and the close ties between the Plaintiffs because of the cruel and unusual imposition of pretrial punishment and separation, as well as the barriers to communication and contact between Plaintiffs, as well as the loss of opportunities to Plaintiffs due to the malice and bad faith of these criminal actors. Plaintiffs have suffered the loss of comfort, companionship, solace, advice, support, interaction, travel, education, business opportunities, contacts, and development that the close relationships between mother and child bring. The malice, ill-will, and bad faith of Defendants fractured the family fabric and destroyed the foundation and security of the family home and investments. Plaintiffs suffered losses, harm, injury, and damages far in excess of $1,000,000.00, for which they are justly entitled to recover from Defendants, jointly and severally because this malicious criminal conspiracy could not have succeeded without the joint, several, and compounding participation by all the Defendants fulfilling their planned and orchestrated roles.

4.     All Defendants named herein contributed their actions and conduct to the conspiracy that resulted in such unmitigated and malicious damage to this family unit, and are all jointly and severally responsible for all the consequential and resulting harm, injury, damages, and losses.  The Defendants whom the jury finds acted with malice or in a shocking and outrageous manner should be assessed punitive or exemplary damages to punish or to make sure that this conduct is not repeated in the future.

### FOURTEENTH CLAIM FOR RELIEF—Texas—Tortious Interference with Business Relations and Contracts, and Violations of the Texas Deceptive Trade Practices Act

1.     In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.     In order to prevail on this cause of action, the officers were required to prove (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of their damage, and (4) that actual damage or loss occurred. *See Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex.1995).  When a defendant is both an agent of a party to the contract and the person accused of tortious interference, a plaintiff may assert the cause of action by additionally proving the defendant acted so contrary to the principal's interests that his actions could only have been motivated by personal interests. *Id.* at 796--798.

3.     Based upon all of the foregoing facts, BARNES was deprived of business relationships, contracts, and accounts receivables, as well as a complete cessation of a

253

private law practice that had been in existence since 1986 with the permanent loss of all the phone numbers associated therewith for over a decade, websites, and all the benefit of advertising and website placement, which has been taken over by the permanent bad faith defamation.  BARNES totally lost over 25 years of goodwill, contacts, and clients due directly to the malicious conduct of all Defendants acting in concert.  The conduct also violated the Texas Deceptive Trade Practices Act because BARNES' competitors were allowed to violate the fair trade laws and maliciously malign BARNES and her business with defamatory *per se* statements.   The media Defendants, their reporters and employees, as well as the anonymous contributors they allowed to post, completely destroyed BARNES' 25 year investment in goodwill, advertising, and placement.  Plaintiffs seek compensation for all the damage, losses, harm, and injury caused by these Defendants in tortiously interfering with BARNES' business relations and contract, and violations of the Texas Deceptive Trade Practices Act, and recovery of treble damages, exemplary or punitive damages, reasonable and necessary legal fees, and court costs.

## FIFTHTEENTH CLAIM FOR RELIEF—Texas—Breach of Surety Bail Bond Contract and Terms and Conditions of Pretrial Release

1.     In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.     BARNES had fully performed her end of the bargain on five different bail bond contracts required by WILLIAMSON COUNTY, WCSD, TRAVIS COUNTY, TCSD, and its various employees, prosecutors, judges, magistrates, agents, representatives, or elected officials; yet, WILLIAMSON COUNTY, WCSD, TRAVIS

COUNTY, TCSD, SWAIM, ESCAMILLA, GUERRERO, SAENZ, MORGAN, BRADLEY, MCCABE, MCDONALD, HOBBS, BROOKS, SHAVER, and CARNES unilaterally caused the breach of said bail bond contracts and the complete failure of consideration under said bail bond contracts after extracting well over $10,000 in cash from BARNES to secure her pretrial release. Plaintiffs suffered damages as a direct, proximate, and reasonably foreseeable consequence of the breaches and unilaterally interference with these surety bail bond contracts and pretrial release contracts, and Plaintiffs seek to recover judgment for the damages, losses, injuries, and harm sustained, especially the indefinite pretrial captivity that forever deprived BARNES of her right to a speedy and fair trial in a timely and meaningful manner and the imposition of cruel and unusual punishment without any semblance of due process, due course of law, or equal protection under the law. To the extent that the jury finds that these Defendants acted with malice or with a conscious disregard or deliberate indifference to the rights, safety, or welfare of Plaintiffs, then Plaintiffs seek exemplary or punitive damages.

### SIXHTEENTH CLAIM FOR RELIEF—Texas—Declaratory Judgment

1. In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2. DECLARATORY JUDGMENT. Plaintiffs request that this Court issue a declaratory judgment that Defendants unlawfully deprived BARNES of her right to free speech, freedom of association, to privacy and to be left alone, to be free of pretrial punishment and captivity, to a speedy trial, to a fair jury, to represent herself, to one bail

255

without unilateral modifications or breaches, to exculpatory evidence, to due process, to equal protection under the law, to be free from unreasonable searches and seizures, and right to redress of grievances without retaliation and malicious, vindictive prosecutions.

3.      Further, Plaintiffs request that this Court permanently enjoin Defendants, and their agents and those acting in concert with them, from maintaining an unconstitutional political patronage system or retaliatory scam whereby freedoms of political beliefs, speech, assembly, association, affiliation, and other valuable rights are infringed upon; and requiring Defendants to adopt and implement written and enforceable policies and procedures, along with a written policy and procedure to enforce, discipline, and timely rectify any breach in these written policies and procedures to prevent these retaliatory, malicious, and vindictive actions in the future. Additionally, Plaintiffs request that this Court order Defendants to dismiss the malicious, vindictive, and groundless prosecutions because BARNES is not guilty as charged, their unconstitutional actions have forever deprived BARNES of a speedy and fair trial, and they have already extracted cruel and unusual punishment pretrial and any further attempt to punish would be barred by double jeopardy protections. Plaintiffs are entitled to attorney's fees as are equitable and just, as authorized by the Declaratory Judgment Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997), and Plaintiffs seek all relief available pursuant thereto.

## SEVENTEENTH CLAIM FOR RELIEF—Texas—Malice and Exemplary or Punitive Damages

1.      In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as

256

follows:

2.      Plaintiffs pray that this court enter a monetary judgment in an amount sufficient to punish the Defendants whom the jury finds acted intentionally, knowingly, deliberately, maliciously, vindictively, or to retaliate against BARNES, and to deter them from engaging in such conduct in the future.

3.      Plaintiffs are not seeking punitive or exemplary damages from the counties provided that the declaratory relief is granted and WILLIAMSON COUNTY, TRAVIS COUNTY, WCSD, and TCSD are required to adopt and implement in a timely and meaningful fashion written policies and procedures that will correct, address, and prevent these on-going habits, practices, and customs within local law enforcement and rid our system of abusive and oppressive law enforcement personnel and malicious prosecutors, and develop and adopt a meaningful system for the citizens to seek redress of their grievances and prompt and meaningful disciplinary action against government employees who violate the policies, procedures, or efforts to reform this bad faith and unconstitutional conduct.  Plaintiffs are also not seeking punitive or exemplary damages from any defendant that proves on the trial of this cause that they were acting in good faith, and not participating in the criminal conspiracy.  Plaintiffs are seeking punitive and exemplary damages specifically against TUMLINSON, LERMA, COTTON, UNIDENTIFIED THREE, SWAIM, MORGAN, GITTEL, RYE, HOBBS, BRADLEY, MCCABE, MCDONALD, GRIFFITH, BRINKMANN, HUGHEY, HERNANDEZ, DE LA VEGA, FOSTER, BROOKS, RUPPART, CARNES, ANDERSON, GRIFFITH, CLIFTON, SCHEFFLER, SCHREIBER, KXAN, and those individuals who posted defamatory comments on the Internet with an intent to harm BARNES because BARNES

257

has directly observed the malice or has seen direct evidence of the malice or dishonesty of these Defendants and knows they were actively involved in the criminal conspiracy. The other named Defendants may be subject to punitive or exemplary damages depending upon the findings in discovery and by the jury.

## EIGHTEENTH CLAIM FOR RELIEF—Texas—Individual Liability

1. In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2. As a pendent state cause of action, the individual actions of Defendants, TUMLINSON, KLEKAR, COTTON, LERMA, UNIDENTIFIED THREE, HAMILTON, SWAIM, ESCAMILLA, MORGAN, SAENZ, GUERRERO, GITTEL, SCHEFFLER, BRADLEY, MCCABE, MCDONALD, HOBBS, RYE, HERNANDEZ, BRINKMANN, BARTZ, BOGAN, NEWELL, HUGHEY, WAGGONER, TRAVIS, FOSTER, RICHTER, RUPPART, SCHREIBER, HUMES, SHAVER, CARNES, ANDERSON, BROOKS, WILSON, BERGAMO, CARGILE, NEWTON, GITTEL, POPPA, RYALL, ONE THAT KNOWS, ANOTHER THAT KNOWS, LIBERALS R. CLUELESS, NATIVESON, HURST, ANONYMOUS, GRIFFITH, and CLIFTON, are the proximate and/or producing cause of BARNES' and Plaintiffs' damages, losses, harm, and injuries because they knew the true intent of the actions of Defendants in contriving false arrests, false imprisonments, malicious prosecutions, defamations, and indefinite pretrial captivity, with the resulting confiscation and loss of personal property, assets, and funds belonging to Plaintiffs based on hatred, malice, prejudice, to punish the

exercise of rights protected by the 1st amendment, and to retaliate against and attack BARNES.

3.    As a pendent state cause of action, the Defendants had a professional responsibility under the Texas rules of practice and procedure as well as disciplinary rules of professional conduct and judicial conduct not to engage in unconstitutional, illegal, unethical, and criminal activity or in any manner prepare any plans or in any manner participate in any fraudulent practice which when measured by generally accepted standards for said professionals and elected officials and persons holding offices of public trust was reasonably likely to result in any damage or injury to the property, lives, safety, health, or welfare of others or BARNES. These Defendants also had a professional responsibility that when they became aware of a course of action taken against the interest of BARNES which might violate applicable state or federal laws or regulations and which was likely to have an adverse effect on the rights and interests of BARNES, to refuse to act and to refuse to consent to the planned course of action.

4.    Persons holding positions of public trust owe the highest duty under the law to act in utmost good faith and a duty of good faith, fair dealing, and honesty and therefore had an obligation to make good faith disclosures of all facts relevant to the transactions, threats, consequences, and plea bargain.

5.    By the conduct described in the foregoing paragraphs, these Defendants breached their public trust duty owed to BARNES resulting in substantial injury, damages, and loss. Therefore, these Defendants are sued in their individual capacity, jointly and severally.

6.    WILLIAMSON COUNTY, TRAVIS COUNTY, WCSD, and TCSD

259

entered into a fraudulent and misleading bail bond agreement and pretrial release agreement, and knew that their promises, representations, and assurances were relied upon by BARNES and that she entrusted them with the proper conduct of the State of Texas and its elected officials and proper respect and protection for the constitution and laws of this State and Nation, and they made those promises, representations, and assurances deliberately and intentionally to mislead BARNES and cause her to place trust, confidence, and repose in them to do right under the law and facts of the case. At all times, they knew that BARNES would so trust and rely upon their contractual agreements, promises, representations, and assurances, would part with over $10,000 in cash.

7.     All the misrepresentations and deceptive conduct described above were committed by Defendants personally, and acting in concert.   This conduct was intentional, or pleading in the alternative, was done with gross negligence and malice. Such conduct was, moreover, a part of and consistent with a plan, scheme, or design, and/or pattern of conduct, engaged in by Defendants as a result of racial hatred, sexual prejudice, and malice.  The actions and resulting damages would not have occurred but for the malice and extreme sexual prejudice and racial hatred towards non-white citizens and females harbored by Defendants, as well as the negative stereotyping of female lawyer and criminal defense lawyers.

8.     Accordingly, BARNES prays that, upon hearing hereof, the Court should find and hold that these Defendants are individually liable for any and all damages, costs and/or attorneys' fees assessed against any other party in this case, jointly and severally. Any reference to "Defendants" in this section only applies to the aforementioned

Defendants and does not include WILLIAMSON COUNTY or TRAVIS COUNTY.

## NINTEENTH CLAIM FOR RELIEF—Texas—Governmental Liability and _Respondeat Superior_ Liability

1.      In support of a pendent state cause of action, the allegations set forth in Paragraphs 1 through 180 of Section IV are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading, and further allege as follows:

2.      As a pendent state cause of action, WILLIAMSON COUNTY, WCSD, TRAVIS COUNTY, and TCSD are the governmental entities that are responsible for the actions and conduct of their employee, agents, representatives, deputies, and prosecutors and are responsible and liable for the actions and conduct resulting in harm, injury, losses, and damages to Plaintiffs that were reasonably foreseeable consequences of such actions and conduct. HAMILTON and WILSON are liable as the sheriffs of TRAVIS COUNTY, TCSD, and WILLIAMSON COUNTY, WCSD, respectively, and are therefore responsible and liable for the actions and conduct of the deputies under their command. By the conduct described in the foregoing paragraphs, these Defendants breached their public trust duty owed to BARNES resulting in substantial injury, damages, and loss.

## JURY DEMAND

In accordance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues raised in this civil action that are triable of right, or by choice, to a jury.

261

## DAMAGES

1.     As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiffs have suffered general damages which include but are not limited to the following:  both physical and emotional injury, including but not limited to financial losses, real property losses, personal property losses, and other losses to BARNES and Plaintiffs in excess of $700,000.00, incurrence of medical bills in excess of $250,000.00, liquidated damages in excess of $1,000,000.00, loss of family relations, loss of business relations and contracts, loss of business assets and goodwill, loss of cell phone, loss of diamond bracelet, pain and suffering, emotional and mental anguish, and personal humiliation, shock and outrage, along with severe emotional distress, both in the past and in the future, and loss of income and earning potential in the past and in the future.  BARNES seeks damages in the amount of $7,000,000.00 from the Defendants, jointly and severally, and each of the Plaintiff children seek damages in the amount of $1,000,000.00 each from the Defendants, jointly and severally.   Plaintiffs seek exemplary, punitive, or treble damages, reasonable and necessary legal fees, and all costs of court to be assessed against Defendants, jointly and severally.

2.     Said injuries have caused Plaintiffs to incur special damages which include but are not limited to: lost income, defamation injury, damages to practice, lost business opportunities, investment income, and personal property rights, both tangible and intangible, and the incurrence of past medical bills, probable future medical bills, incurrence of expert fees, attorneys' fees, costs, and expenses associated with criminal charges and resulting pretrial captivity, as well as this action caused by the excessive

pretrial punishment and denial of fundamental structural rights.

3.    Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C.S. § 1988, a prevailing party in a § 1983 case is entitled to recover her attorney's fees.   Hence, Plaintiff further prays for all costs and attorney fees associated with bringing the present case to trial.    Further, with respect to the violations of the RICO statute by WILLIAMSON COUNTY and WCSD, BARNES is entitled to recover attorney's fees and costs of court, for which Plaintiffs pray.  Additionally, with respect to the declaratory judgment relief sought and other pendent state court causes of action and claims, the Defendants' conduct as described herein and the resulting harm, damage and loss to BARNES has necessitated the retention of an attorney.  BARNES is, therefore, entitled to recover from these Defendants, jointly and severally, an additional sum to compensate the BARNES for a reasonable fee for such attorney's necessary services in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals to other courts.

4.    In addition, Plaintiff prays for punitive damages against all individual Defendants, jointly and severally, or as determined by the jury.  Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing.   Punitive damages may be assessed under § 1983 when a Defendant's conduct is shown to be motivated by malice, evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others.   While governmental entities are absolutely immune from § 1983 awards of punitive damages, such damages may be awarded against a public employee, public servant, or elected official in their individual capacity.  Therefore, Plaintiff alleges and prays for punitive

damages against all individual Defendants, as such individual Defendants actually knew that their conduct was unconstitutional, and/or was callously indifferent to its legality.

5. Further, in accordance with Federal Rule of Civil Procedure 8(a), Plaintiffs request that this Court issue a declaratory judgment that Defendants unlawfully deprived BARNES of her right to free speech, freedom of association, to privacy and to be left alone, to be free of pretrial punishment and captivity, to a speedy trial, to a fair jury, to represent herself, to one bail without unilateral modifications or breaches, to exculpatory evidence, to due process, to equal protection under the law, to be free from unreasonable searches and seizures, and right to redress of grievances without retaliation and malicious, vindictive prosecutions.

6. Further, in accordance with Federal Rule of Civil Procedure 8(a), Plaintiffs request that this Court permanently enjoin Defendants, and their agents and those acting in concert with them, from maintaining an unconstitutional political patronage system or retaliatory scam whereby freedoms of political beliefs, speech, assembly, association, affiliation, and other valuable rights are infringed upon; and requiring Defendants to adopt and implement written and enforceable policies and procedures, along with a written policy and procedure to enforce, discipline, and timely rectify any breach in these written policies and procedures to prevent these retaliatory, malicious, and vindictive actions in the future.

7. Additionally, in accordance with Federal Rule of Civil Procedure 8(a), Plaintiffs request that this Court permanently enjoin Defendants from further engagement in these malicious, vindictive, and groundless prosecutions because BARNES is not guilty as charged, their unconstitutional actions have forever deprived BARNES of a

264

speedy and fair trial, and they have already extracted cruel and unusual punishment pretrial and any further attempt to punish would be barred by double jeopardy protections.

8.     Further, in accordance with Federal Rule of Civil Procedure 8(a), Plaintiffs request that this Court enter a monetary judgment for all actual and consequential damages, both economic and non-economic, and both past and future, up to the fullest extent allowed under the law, taking into consideration any applicable statutory protective caps on recovery in suits of this nature; and enter a monetary judgment in an amount sufficient to punish TUMLINSON, KLEKAR, UNIDENTIFIED THREE, COTTON, LERMA, BRINKMANN, TRAVIS, RICHTER, HERNANDEZ, SCHEFFLER, BOGAN, HUGHEY, WAGGONER, FOSTER, RYE, HOBBS, MCCABE, MCDONALD, BRADLEY, SWAIM, ESCAMILLA, MORGAN, SAENZ, GUERRERO, HAMILTON, WILSON, ANDERSON, CARNES, DE LA VEGA, SHAVER, SCHREIBER, HUMES, and any other agents, employees, or representatives of WILLIAMSON COUNTY, TRAVIS COUNTY, WCSD, and/or TCSD who may have participated in intentional, knowing, deliberate, malicious, vindictive, or retaliatory actions against Plaintiffs, and sufficient in amount to deter them from engaging in such constitutional infringements and unlawful conduct in the future.

## PRAYER FOR RELIEF AND DEMAND FOR JUDGMENT

WHEREFORE, in light of the foregoing, Plaintiffs respectfully request the following:

1.     a judgment pursuant to 22 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983 declaring that the actions of Defendants violated the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the

265

United States Constitution, and Texas Constitution, Art. I, §§ 3, 3a, 8, 9, 10, 11, 11b, 12, 13, 15, 15-a, 16, 19, 23, 27, 28, and 29, and intruded on Plaintiffs' privacy, seclusion, and right to be left alone in violation of the Constitution, laws, and common laws of this Nation and State;

2.  an award of damages against the individual Defendants, jointly and severally, for violating Plaintiffs' constitutional rights under the United States and Texas Constitutions, and federal and Texas laws and common laws, as well as the pendent state court claims;

3.  an award of actual and consequential damages against TRAVIS COUNTY and WILLIAMSON COUNTY for violating the Plaintiffs' rights under the United States Constitution and federal law and under the Texas Tort Claims Act, and against WILLIAMSON COUNTY for the RICO violations;

4.  an award of actual and consequential damages against all Defendants, jointly and severally, for all monetary damages, liquidated damages, medical bills, loss of earning potential, and out-of-pocket costs and losses, including all lost wages and income, lost property, costs, expenses, bills, invoices, pain and suffering in the past and future, mental anguish and emotional distress in the past and in the future, reputational damages, loss of companionship, care, comfort, and solace, or other such damages incurred or suffered as a direct, proximate, and foreseeable result of consequence of the unlawful or unconstitutional conduct of said Defendants;

5.  an order directing all defendants to turn over and destroy any and all derogatory and defamatory *per se* records, documents, or other material generated by or resulting from the illegal, unlawful, or unconstitutional actions of said Defendants, that would not exist but for the wrong-doing of Defendants, expunging all criminal records, and restoring BARNES to her pre-constitutional violations status, including the erasure and striking of stigmata, flags, and labeling associated with mental commitments;

6.  an award of attorney's fees reasonably and necessarily incurred in bringing and prosecuting this action;

7.  an award of all costs of court, expert fees, and court reporter fees for discovery in this cause, against all Defendants, jointly and severally;

8.,  an award of enhanced damages (punitive or exemplary damages, or

266

treble damages) as provided by common law or statute, from Defendants, jointly and severally;

9.  an award of pre- and post-judgment interest as recoverable at law; and

10.  such other and further relief, at law or in equity, as the Court deems just and proper.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray that upon trial of the merits, she recover compensatory damages against Defendants, jointly and severally; that Plaintiff also recover punitive damages against Defendants in an amount to punish and/or deter and to make an example of those Defendants in order to prevent similar future conduct; and, that Plaintiff recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Plaintiff prays for all pre-judgment and post judgment interest that can be assessed against the Defendants in the event of recovery; and that Plaintiff recover against each Defendant any and all other general or specific relief to which she may prove herself justly entitled, whether at law or in equity.

Respectfully submitted,

Carolyn Barnes
721 Thompson Drive, Unit 2C
Kerrville, Texas 78028

BY: _____
Carolyn Barnes
State Bar No. 01761550
*Attorney-in-Charge for Plaintiffs*

**Demand for Jury Trial**

Plaintiff, _Carolyn Barnes_, hereby demands trial by jury pursuant to FED. R. CIV. P. 8(b).

267



Carolyn Barnes
KSH-Unit 2C
721 Thompson Drive
Kerrville, Texas 78028

July 9, 2011

Clerk, U.S. District Court
Western District of Texas
United States Courthouse
200 W. 8th Street, Room 130
Austin, Texas 78701-9620

RE:  Civil Action No. A-12-CA-028-LY, Carolyn Barnes v. Dennis Tumlinson, et al

Dear Clerk,

Enclosed please find the Third Amended Original Complaint for filing in the above captioned cause.  Due to the mailing restrictions, I am going to have to mail this pleading in four separate envelopes and ask that you follow the page numbers when they arrive so that it is re-assembled in order.  I have also numbered the envelopes on the outside.

After receiving the notice of threat to dismiss for non-compliance with Rule 8, I attempted to shorten the complaint over the weekend. After deleting approximate 100 pages, I found that I was deleting relevant portions necessary to show the Section 1983 cause of action.  It is difficult to draft a pleading when the court has previously ordered me to replead and include all causes of action and all defendants, knowing I have no access to my files, records, or other documents necessary to prove an unmistakable habit, custom, pattern, policy and procedure of retaliation and violations of constitutional rights over a 15-year period.

I simply cannot satisfy both of the courts demands to include everything and yet remain short and concise.  This is not a case where there was only one event and a few defendants.  In the beginning of this campaign, there were only a few, but over the years, WILLIAMSON COUNTY enlisted the aid and assistance of the law enforcement and criminal justice system community with all of their false publications against me.

It is my hope that the court will take the nature of these proceedings into account, along with the substantial and irreparable injuries suffered by my children and me.

Thank you for your kind assistance in this matter.

Very truly yours,

Carolyn Barnes



U.S. POSTAGE
PAID
KERRVILLE,TX
78028
JUL 13,'12
AMOUNT
**$6.85**
00029149-05



1004   78701

USPS TRACKING NUMBER



9502 5102 9149 2195 5580 68

Clerk, U.S. District Court
Western District of Texas
United States Courthouse
200 W. 8th Street Rm 130
Austin, TX 78701-9620

Carolyn Barnes
KSH- Unit 2C
121 Thompson Drive
Kerrville, TX 78028

PRIORITY
MAIL
UNITED STATES POSTAL SERVICE™
www.usps.gov

LABEL107R, OCT 1997

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

2014 MAR 18 AM 11: 39

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | | |
|---|---|---|
| CAROLYN BARNES, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 1:12-CV-028-LY |
| | § | |
| TRAVIS COUNTY SHERIFF'S | § | |
| DEPARTMENT, ET AL., | § | |
| DEFENDANTS. | § | |

## ORDER

Before the court is the above styled and numbered cause filed by Plaintiff *pro se* Carolyn Barnes on January 9, 2012. On February 10, 2014, the court rendered an order that, *inter alia*, provided that Barnes must file an amended complaint not to exceed 30 pages, in a single, concise document complying with Rule 8's pleading requirement, on or before Friday, March 14, 2014. The order also provided that absent the filing of an amended complaint in compliance with Rule 8 by that deadline, the court would dismiss Barnes's claims against all defendants. Also before the court is Barnes's Motion for Copies of Relevant Pleadings and Motion to Extend Time filed February 26, 2014 (Clerk's Doc. No. 49). By her motion, Barnes requests "more time . . . due to her harsh captivity by 'external forces,'" as well as copies of her original 569 page complaint.

In May 2012, the Magistrate Judge first directed Barnes to file an amended complaint on or before May 31, 2012. Barnes requested, and was granted, two extensions of that deadline. On July 16, 2012, Barnes filed a 267-page Third Amended Complaint. Barnes supplemented her complaint with a 248-page "Brief and Heightened Pleadings in Support of Plaintiff's Third Amended Original Complaint," which, along with other supplements, brought the complaint to 569 pages. Due to the voluminous nature of the pleadings, the Magistrate Judge, on January 22, 1013, directed Barnes to

**TAB B**

replead her claims in compliance with Rule 8 no later than March 1, 2013. The Magistrate Judge reminded her that failure to follow the court's directive could result in the dismissal of her case. In response, Barnes filed a document titled "Plaintiff's Motion for a More Definite Statement and Due Process Notice of the Exact Reasons the Third Amended Complaint is Defective or Deficient and Motion to Extend Time to Amend after Receipt of Due Process Notice of How the Third Amended Complaint is Not a 'Coherent and Concise Complaint' or How it Violates Fed. R. Civ. P. 8." In his Report and Recommendation rendered April 25, 2013, the Magistrate Judge recommended that this court dismiss with prejudice Barnes's claims against all defendants for failure to comply with a court's order. *See* Fed. R. Civ. P. 41(b) (authorizing a court to dismiss a case for "failure to the plaintiff . . . to comply with the[] federal rule or any order of court.").

On September 30, 2013, to give Barnes ample opportunity to cure the procedural defect, this court vacated its order accepting and adopting the Magistrate Judge's Report and Recommendation, granted Barnes's request for an extension of time to file an amended complaint, and provided that Barnes must file a single, concise document complying with Rule 8's pleading requirement on or before October 23, 2013. Due to returned mail, Barnes requested another extension. On February 10, 2014, the court granted the extension, warning her that this was her "final opportunity to replead her claims in a meaningful fashion." Should she fail to comply, the court would dismiss her complaint with prejudice under Rule 41(b). In her February 26, 2014 response, Barnes concedes she received the court's February 10 order but fails to comply. As of this date, Barnes has not filed an amended complaint. Instead, she asks for another extension. Barnes has, again, failed to comply with Rule 8's pleading requirement and an order of the court.

Having considered the applicable law and the case file, the court concludes that Barnes's claims against all defendants should be dismissed for failure to comply with the court's order. *See* Fed. R. Civ. P. 41(b); *see also Bryson v. United States*, 553 F.3d 402 (5th Cir. 2008). Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Barnes's Motion for Copies of Relevant Pleadings and Motion to Extend Time (Clerk's Doc. No. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Barnes's claims alleged against all defendants in this action are **DISMISSED WITH PREJUDICE**.

SIGNED this _____18th_____ day of March, 2014.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE